UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
X------------------------------------------------------------------X

RIZWAN RAJA,

                                    Plaintiff,            **19-cv-___ (____)**

              -Against-

JOHN W. BURNS and THE CITY OF NEW YORK,

                                    Defendants.

X------------------------------------------------------------------X


**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR A
<u>TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION</u>**


Daniel L. Ackman

Law Office of Daniel L. Ackman
222 Broadway, 19th Floor
New York, NY  10038
(917) 282-8178
dan@danackmanlaw.com

Counsel for Plaintiff


**March 7, 2018**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................1

FACTUAL AND LEGAL BACKGROUND ......................................................1

    Rizwan Raja, His Practice and the OATH-TL Tribunal...................................1

    The Suspension Letter Charges ........................................................................5

ARGUMENT ....................................................................................................6

    I.  STANDARD OF REVIEW.........................................................................6

II.  A SUSPENSION WITHOUT A HEARING IS A
    DENIAL OF DUE PROCESS.......................................................................8

III.  DENYING RAJA THE RIGHT TO CROSS-EXAMINE
    ACCUSERS ALSO VIOLATES HIS DUE PROCESS RIGHTS .....................11

IV.  ALJ BURNS MAY NOT SERVE AS JUDGE
    IN HIS OWN CASE...................................................................................13

V.  THE ALLEGATIONS AGAINST RAJA ARE
    UNLIKELY TO BE SUSTAINED ................................................................15

    CONCLUSION..........................................................................................18

**Preliminary Statement**

This action, brought pursuant to 42 U.S.C. § 1983 and local law, is on behalf of Rizwan

Raja, who has been registered representative in the New York City Taxi and Limousine (TLC)

Tribunal and the Office of Administrative Trials and Hearings-Taxi and Limousine Tribunal for

14 years, but who has been threatened by defendants with a summary suspension of his right to

practice starting on March 8, 2019. The imminent suspension is based on false and legally

deficient charges and would be in violation of plaintiff's right to Due Process of Law.

Unless this Court intervenes, Raja will lose his livelihood and his taxi driver clients will

lose the assistance of a dedicated advocate who is one of the most experienced and capable

practitioners in the OATH-Taxi Limousine Tribunal, which is now under the jurisdiction of the

Office of Administrative Trials and Hearings (OATH). Even if the charges against Mr. Raja were

accurate, which they plainly are not, John W. Burns, the OATH administrative law judge who

intends to both prosecute *and* adjudicate the charges has not even attempted to state a rationale

for suspending Mr. Raja without a fair hearing. Indeed, Mr. Burns apparently plans to try Mr.

Raja without hearing any testimony and without allowing Mr. Raja any right to cross-

examination the witnesses against him.

**FACTUAL AND LEGAL BACKGROUND**

**Rizwan Raja, His Practice and the OATH-TL Tribunal**

By way of background, Rizwan Raja, 47, was born and raised in Pakistan. After earning

degrees in both law and accounting, he immigrated to the United States in 1996 and gained his

United States citizenship in 2002. Raja speaks Urdu, Hindi and Punjab as well as English.

Declaration of Rizwan Raja (RRD) ¶¶ 2, 5. This ability benefits his taxi driver clients, as more

than 45 percent of yellow taxi drivers were born in South Asia. TLC 2018 Taxicab Factbook at 15.[1] In addition to serving his clients, since 1998, Raja has served on the organizing committee of the New York Taxi Workers Alliance (NYTWA), an advocacy group for yellow cab, green car, black car, livery and app-dispatched drivers. RRD ¶ 6.  Prior to his career as an registered representative, Raja worked for the Bank of New York, for MetroPlus, an HMO company, and as a yellow taxi driver. RRD ¶ 7.

Raja became a registered (or industry) representative at the TLC Tribunal in 2005.[2] In order to be qualified as a representative at that time, applicants were required to sit for and pass an examination, demonstrating their knowledge of TLC rules and procedures. Approximately 18 applicants sat for the exam along with Raja. Just three passed. RRD ¶ 8; Ex. 3.[3] Though representatives are not lawyers, they may appear for clients in what is now known as the OATH TL Tribunal. 48 RCNY § 1-11. (The Rules included in Title 48 of the Rules of the City of New York will hereinafter be referred to as OATH Rules; pertinent rule are attached as Ex. 6). The tribunal itself employs 71 part-time hearing officers and presides over 160,000 cases annually as the TLC regulates more than 130,000 drivers as well as taxicab and for-hire vehicle owners, agents and brokers. Executive Order 148; OATH: The Central Tribunal for the City of New York.[4]

The rules governing TLC drivers, while meant to be in plain English, are fairly voluminous. Chapter 80 of the TLC Rules, which pertains to taxi and for-hire vehicle drivers, combines the

---

[1] The Factbook is published by the TLC in 2018 and is available on the TLC website at https://www1.nyc.gov/assets/tlc/downloads/pdf/2018_tlc_factbook.pdf.

[2] The TLC Tribunal was transferred to OATH in 2011 by Executive Order 148. Available at http://www.nyc.gov/html/ajc/downloads/pdf/eo_148.pdf.

[3] Exhibits are to the declaration of Rizwan Raja, sworn to on March 6, 2019.

[4] Available at https://www1.nyc.gov/assets/international/downloads/pdf/Presenting%20OATH%20The%20city's%20central%20tribunal.tr.pdf

previous chapters 54 and 55 and extends to 62 pages. Chapter 58, which covers the obtaining of taxicab license and rules for operating a taxicab, is 108 pages. Chapter 68, which pertains to adjudications, suspensions, revocations and the seizure of unlicensed vehicles, is 23 pages long. The TLC rules also contain an additional 18 chapters, though mostly not pertinent to the daily operations of taxi drivers. There are also NYC Administrative Code provisions that govern taxi drivers. And there are Code provisions and rules that govern non-TLC drivers who engage in unlicensed activities. *See, e.g.*, NYC Code § 19-506.

The penalties for violating TLC rules can be substantial. To cite a few examples, mandatory fines for refusing service range from $350-$1000. TLC Rule 80-02(e). Fines for overcharging a passenger less than $10 are in the same range. *Id*. But if the overcharge exceeds $10, the driver's license will be revoked. TLC Rule 80-02(e)(1). Bribery or failure to report bribery can result in a $10,000 fine and revocation of a license. TLC Rule 80-12(e). "Acts Against the Public Interest" can merit a fine of up to $350 plus a suspension of up to 30 days. TLC Rule 80-12(d). Reckless driving can result in a fine of $350-$1000. TLC Rule 80-14(a). Using a cell phone can lead to a $350 fine (or $250 if the drive pleads guilty. TLC Rule 80-14(e). Failing to "comply with all reasonable and lawful routing requests of the Passenger" can result in a $150 fine (or $100 if the driver pleads guilty). TLC Rule 80-16. There are, of course, many other rules covering all aspects of driving a taxi and serving passengers. In addition, TLC courts may adjudicate traffic law violations, which can result in fines plus "points" on a license. TLC Rule 80-13.

Beyond individual rules, the TLC Rules impose additional penalties on drivers for accumulating points based on individual violations. A driver who accumulates ten or more points within a 15-month period may have his or her license revoked. Application of this Rule can be complicated in that "When determining whether a suspension or revocation is required based on the accumulation of points in a 15-month period, the Commission will count backwards 15 months from the date of the most recent conviction for the violation carrying points that is cited in the summons

under this section." TLC Rule 80-17. At least 15 separate rules in Chapter 80 alone can lead to revocation. More than 25 rules permit suspension of a license. In addition to the rules, there is case law by OATH judges and TLC-OATH judges that is made available through searchable online databases maintained by OATH and the Center for New York City Law. *See* https://www1.nyc.gov/site/oath/trials/search-decisions.page.

Taxi driver respondents at the tribunal may appear without counsel. But given the complexity of the rules, the magnitude of the fines and the possibility of suspension or revocation, many seek assistance. If they retain counsel, either a lawyer or an authorized representative, they must do so at their own expense. *See* OATH Rule 1-11. A large majority of the persons who regularly appear in the tribunal are representatives, not lawyers. More than 90 percent of taxi drivers are first generation immigrants, whose first language is likely not English. TLC 2018 Taxicab Factbook at 15. OATH does not publish a list of authorized representatives, but it does publish a "list of representatives who have been suspended or permanently barred from appearing before the OATH Hearings Division." As of March 4, Raja's name was already on that list even though his summary suspension had not yet taken effect. *See* OATH website, https://www1.nyc.gov/site/oath/clerks-office/registered-representatives.page.

While Raja acts in an extremely high volume of case, he keeps meticulous records of his clients and their matters. Since 2010, Raja has handled 20,000 cases. To be sure, only a minority of these cases results in hearings with the rest being resolved by settlement. RRD ¶ 18. About 70% of Raja's cases come from referrals by NYTWA, whose members pay Raja a discounted fee. RRD ¶ 19. In addition to hearings, Raja submits appeals, which tend to be brief, written arguments submitted through the tribunal website. RRD ¶ 20.

Raja's abilities are respected by his the tribunals judges and by colleagues, who know his as competent, knowledgeable, honest and composed. *See* Declaration of Isaac Godinger. His services are important to NYTWA and its members. *See* Declaration of Bhairavi Desai. Raja is the sole

breadwinner for his wife and four children, the oldest of who is in college. RRD ¶ 4. The summary suspension that OATH would impose is open-ended as there is no time limit in the OATH rules for ALJ Burns to decide whether any additional suspension is warranted (or whether the summary suspension itself was proper).

<b>The Suspension Letter Charges</b>

During his entire career, neither the TLC not OATH had accused Raja of misconduct of any kind. RRD ¶ 21. Suddenly, without so much as interviewing Raja about the events in question, on March 1, 2019, OATH Assistant General Counsel Timothy R. Jones sent Raja an e-mail with the subject heading "Summary Suspension Pursuant to 48 RCNY Section 6-25(d)(1)." Ex. 1. The e-mail informed Raja, "Pursuant to 48 RCNY Section 6-25(d)(1), you are hereby summarily suspended **starting March 8, 2019**, for incidents discussed in the annexed Summary Suspension letter." The annexed summary suspension letter was from defendant ALJ Burns. The e-mail itself continued, "If you wish to refute the allegations of misconduct … submit a letter to First Deputy Commissioner John Burns, no later than March 22, 2019. If you do not respond by March 22, 2019, First Deputy Commissioner Burns will render a final determination in this matter pursuant to 48 RCNY § 6-25(d)(1)."

The charging letter, Ex. 2, lists five allegations in bullet points: (1) that Raja failed to register as a representative in violation of OATH Rule 6-23(b) in 2016; (2) that Raja misrepresenting his qualifications "so as to mislead" a respondent "into believing" that he was an attorney, also in 2016, in violation of OATH Rule 6-23(d); (3) that Raja "appropriat[ed] money under false pretenses, which evinces a lack of honesty and integrity that adversely affected his practice before the tribunal, in violation of 48 RCNY § 6-25(d)(l); (4) that Raja "submit[ed] a false statement" to the tribunal that he :knew, or reasonably should have known, to be false, fraudulent or misleading, in violation of 48 RCNY § 6-25(a)(9); and (5) that Raja "engag[ed] in disruptive verbal conduct that a reasonable

5

person would believe shows contempt or disrespect for the proceedings or that a reasonable person would believe to be intimidating, in violation of 48 RCNY § 6-25(a)(2)."

The letter went on the specify some of the charges and attached some evidence in exhibits. But some of the allegations are not supported at all. The "failure to register" allegation is simply false as his registration form for calendar year 2016 is attached as Exhibit 4 to his declaration. Moreover, the charging letter itself includes copies of Raja's registration forms dated 2017 and 2018, which he could have been barred from filing had he not registered in 2016 pursuant to OATH Rule 6-23(b). *See* Ex. 2 at Ex. 1 & 2. The "false statement" charge is not detailed in any way. The "appropriation of money charge" is supported by un-notarized affirmations by three of Raja's former clients who alleged that Raja accepted fees from them to file appeals that he did not file. These cases date from 2016, 2017 and January 2018. Ex. 2 at 2-3. The "misrepresentation of qualifications" charge is based on an affirmation from one of the three former clients who claims that Raja told him he was a lawyer, but also states that Raja gave him a business card that identified him as an industry representative. Ex. 5. The "disruptive verbal conduct" charge is based on Raja allegedly uttering a profanity under his breath, not during a proceeding or in a courtroom, but in a waiting area while walking away from a clerk's desk. Ex. 2 at 3.

Nothing in the charging letter offered any reason whatsoever why Raja should be suspended summarily as opposed to after a hearing or an opportunity to be heard. While Raja will defend these charges at the appropriate time, these charge are all factually false or legally insufficient for the reasons outlined below.

## ARGUMENT

### I.    STANDARD OF REVIEW

To obtain a preliminary injunction, a movant must show (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the

merits to make them a fair ground for litigation and a balance of hardships tipping decidedly

toward the party requesting the preliminary relief. *Citigroup Glob. Markets, Inc. v. VCG Special*

*Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010) (citing *Jackson Dairy, Inc. v.*

*H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979)). The "serious questions" standard

permits a district court to grant a preliminary injunction in situations where it cannot determine

with certainty that the moving party is more likely than not to prevail on the merits of the

underlying claims, but where the costs outweigh the benefits of not granting the injunction. *Id.*

"The standard for an entry of a TRO is essentially the same as for a preliminary injunction,"

except that a TRO is often granted ex parte but thereafter has a limited lifespan. *Free Country*

*Ltd v. Drennen*, 235 F.Supp. 3d 559, 565 (S.D.N.Y. 2016).

    Here, Raja faces the loss of his ability to engage in his chosen trade, which constitutes

irreparable harm. *Tom Doherty Associates, Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 37 (2d

Cir.1995). The Second Circuit also recognized in *Semmes Motors, Inc. v. Ford Motor Co.*, 429

F.2d 1197, 1205 (2d Cir.1970), that a monetary award is inadequate to compensate for the

termination of a business. Such an injury is clearly non-speculative, and would not be adequately

compensated by a monetary award sometime in the distant future. Thus, Judge Dearie found in a

decision involving taxi driver suspensions that there was "undoubted irreparable harm." *Padberg*

*v. McGrath-McKechnie*, 108 F.Supp. 2d 177, 183 (E.D.N.Y. 2000); *see also Nnebe v. Daus*, No.

06-CV-4991 (KMK), 2006 WL 8426640, at *1 (S.D.N.Y. Sept. 6, 2006) (In case involving taxi

driver license, "[I]t is plain that 'Loss of a business constitutes irreparable harm") (internal

quotations and citations omitted).

    Moreover, "When an alleged deprivation of a constitutional right is involved, most courts

hold that no further showing of irreparable injury is necessary." *Bery v. City of New York*, 97

F.3d 689, 694 (2d Cir. 1996) (citation omitted); *see also Brewer v. W. Irondequoit Cent. Sch. Dist.*, 212 F.3d 738, 744-45 (2d Cir. 2000) (discussing cases finding irreparable harm from First, Fourth and Eighth Amendment violations); *Covino v. Patrissi*, 967 F.2d 73, 77 (2d Cir. 1992); *Charette v. Town of Oyster Bay*, 159 F.3d 749, 755 (2d Cir. 1998); *Rathgaber v. Town of Oyster Bay*, 492 F.Supp. 2d 130, 139 (E.D.N.Y. 2007).

## II.     A SUSPENSION WITHOUT A HEARING IS A DENIAL OF DUE PROCESS

A registered representative is not granted a license in so many words. But once registered, an individual has the right to appear before OATH (OATH Rules 1-11, 6-23, 6-24) and that right may only be "suspend[ed] or bar[red] … for good cause." OATH Rule 6-25(c). The right to appear may be renewed annually by filing a new registration for each calendar year. OATH Rule 6-23(b). For that reason, a representative's right to practice is functionally equivalent to other state-issued licenses that may be suspended or revoked, but only for cause.

"Once licenses are issued, ... their continued possession may become essential in the pursuit of a livelihood." *Bell*, 402 U.S. at 539. The Supreme Court and the Court of Appeals have consistently held that individuals have a protected property interest in trade licenses and other licenses where they may only be revoked for cause or "a satisfactory showing" of wrongdoing. *See, e.g.*, *Barry v. Barchi*, 443 U.S. 55, 64 & n. 1 (1979); *Mackey v. Montrym*, 443 U.S. 1, 10 (1979). As the Court of Appeals stated in *Spinelli v. City of New York*, "Where a license can be 'suspended only upon a satisfactory showing' of misconduct, the licensee has 'a property interest in his license sufficient to invoke the protection of the Due Process Clause." 579 F.3d 160, 169 (2d Cir. 2009) (quoting *Barry*, 443 U.S. at 64). In such circumstances, the right created by state law may only be suspended or revoked after the licensee is afforded due process of law. *See, e.g.*, *Barry*, 334 U.S. at 64 (horse trainer's license); *Mackey*, 443 U.S. at 11  (driver's license), *Bell v.*

*Burson*, 402 U.S. 535, 539 (1971) (driver's license); *Spinelli*, 579 F.3d at 169  (gun dealer's license); *Nnebe v. Daus*, 644 F.3d 147, 158 (2d Cir. 2011) (taxi driver's license).

The constitutional guarantee of due process means that, in general, "[I]ndividuals must receive notice and an opportunity to be heard before the Government deprives them of property." *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 48 (1993); see also *El Boutary v. City of New York*, 2018 WL 6814370, 18-CV-3996 (ARR) E.D.N.Y. 2018) (taxi driver's license); *Harrell v. City of New York*, 138 F.Supp. 3d 479, 488 (S.D.N.Y. 2015) (applying general rule to the TLC's warrantless seizure of vehicles); *Padberg v. McGrath-McKechnie*, 203 F.Supp.2d 261, 276 (E.D.N.Y. 2002), aff'd 60 Fed. Appx. 861 (2d. Cir.), cert. denied, 540 U.S. 967 (2003) (taxi driver's license). "The purpose of this requirement is not only to ensure abstract fair play to the individual. Its purpose, more particularly, is to protect his use and possession of property from arbitrary encroachment—to minimize substantively unfair or mistaken deprivations of property...." *James Daniel Good,* 510 U.S. at 53 (quoting *Fuentes v. Shevin*, 407 U.S. 67, 80–81 (1972)). Thus, government may dispense with "predeprivation notice and hearing ... only in 'extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event.' " *Id*. (quoting *Fuentes*, 407 U.S. at 82).

The possibility of an exception to the general rule requiring an pre-suspension hearing must be assessed by reference to the three-prong balancing test enunciated in *Mathews v. Eldridge*, 424 U.S. 319 (1976), that balances the private interest, the risk of an erroneous deprivation and the government's interest. Under *Mathews*, the Court must consider: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including

the function involved and the fiscal and administrative burdens that the additional or substitute requirement would entail." 424 U.S. at 335. Here, all three factors favor plaintiff.

The first *Mathews* factor is "the private interest that will be affected by the official action." *Id*. Here, Raja's interest in his de facto registration license is enormous. *See* Nnebe, 644 F.3d at 159 (concerning a taxi driver's license); *Padberg*, 203 F. Supp. 2d 261, 277 (E.D.N.Y. 2002) ("Plaintiffs' interest in their taxicab license is profound. Suspending their [licenses] does far more than inconvenience drivers; it deprives them of their very livelihood."). As Judge Dearie noted in *Padberg*, "The Supreme Court has recognized on a number of occasions that a person's means of support enjoys heightened significance as a property interest." 203 F.Supp.2d at 277-78 (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 543 (1985); *Bell*, 402 U.S. at 539, and *Goldberg v. Kelly*, 397 U.S. 254, 264 (1970). *Bell* is particularly notable, Judge Dearie wrote, because in that case, "[T]he Supreme Court specifically acknowledged that a driver's license, once issued, could become 'essential to the pursuit of a livelihood.'" *Padberg*, 203 F.Supp.2d at 278 (citations omitted). This is also the case with *Raja*, who supports his family with his earnings as a representative.

The second *Mathews* factor is "the risk of an erroneous deprivation ... through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." 24 U.S. at 335. Here, what *Mathews* calls, "the risk of error inherent in the truthfinding process" (*Mathews*, 424 U.S. at 344) is large and apparent. The summary suspension rests of dated charges leveled by affiants who have not offered live testimony and who have not been subject to cross-examination. These charges are made more dubious by the fact that Raja has been practicing in the tribunal for 14 years without ever being accused of misconduct and because some or even all of the allegations are defective on their face.

10

In certain "limited cases" the government may be permitted to dispense with a pre-deprivation hearing in part because there is "substantial assurance that the deprivation is not baseless or unwarranted" and because prompt action is necessary. *Gilbert v. Homar*, 520 U.S. 924, 930-31 (1997). But this case is not such a case. Defendants are not acting on some external, inherently reliable information such as a scientific test or a felony arrest made on probable cause identified by a police officer who witnessed the alleged crime. They are instead relying on one-sided affirmations and untested legal theories, some of which appear deficient on their face. Here, as in *El Boutary*, "there is no impartial government official or independent third party with any personal knowledge" of the incidents. "Nor did the plaintiff have even an informal opportunity to tell … his version of events." 2018 WL 6814370 at *7.

The third *Mathews* factor is "the public interest," which "includes the administrative burden and other societal costs that would be associated with" additional process. 424 U.S. at 347). This factor, which often favors the state, is of no benefit to defendants here because that cannot claim that there would be any "added [administrative] burden for [OATH] to provide a hearing before it suspends instead of after." *El Boutary*, 2018 WL 6814370 at *7. Typically, the Supreme Court has allowed deprivation prior to a hearing in cases involving pressing and immediate threats to the public health and safety. *Padberg*, 203 F.Supp.2d at 280. Here no such threat exists and none has been alleged.

### III.   DENYING RAJA THE RIGHT TO CROSS-EXAMINE ACCUSERS ALSO VIOLATES HIS DUE PROCESS RIGHTS

The summary suspension letter invites a "written response." Ex. 2 at 3-4. It does not schedule or seem to contemplate a live hearing or any right of cross-examination. This practice is in violation of Due Process. As the right to confront witnesses has been imbedded in American law for decades. As Chief Justice Warren, writing for the Court in *Greene v. McElroy*, stated:

The right to cross-examination applies not just in criminal cases, but "also in all types of cases where administrative and regulatory actions were under scrutiny." 360 U.S. 474, 496-97 (1959). Likewise, in *Goldberg v. Kelly*, 397 U.S. 254, 269 (1970), the Court stated, "In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses."

In this setting, however, despite the fact that his livelihood is hanging in the balance, Raja stands to be denied this important right, which has been repeatedly been re-affirmed by the Court of Appeals as well. *See Townley v. Heckler*, 748 F.2d 109, 114 (2d Cir. 1984) (denial of due process rights by use of the post-hearing vocational report and denial of due process rights to cross-examine expert and present rebuttal evidence); *Gullo v. Califano*, 609 F.2d 649, 650 (2d Cir. 1979) (in Social Security hearing that where the agency relies on a doctor's report in making its judgment, the claimant must have an "opportunity to subpoena and cross-examine the declarant"); *Galvin v. New York Racing Ass'n*, 70 F.Supp.2d 163 (E.D.N.Y.), aff'd 166 F.3d 1200 (1998) ("[T]he lack of effective cross-examination due to the NYRA's failure to present its investigative reports through competent witnesses, made these allegations of wrongdoing essentially irrebuttable. The presentation of evidence in this manner is not consonant with due process."). While the right to cross-examine adverse witnesses "is important in the case of documentary evidence, it is even more important where the evidence consists of the testimony of individuals whose memory might be faulty or who, in fact, might be perjurers or persons motivated by malice, vindictiveness, intolerance, prejudice, or jealousy." *Goldberg*, 397 U.S. at 269–70.

Beyond violating the Due Process clause, the proposed practice is inconsistent with OATH's own rules, which allow "Each party … the right to present evidence, to examine and

cross-examine witnesses, to make factual or legal arguments and to have other rights essential

for due process and a fair and impartial hearing." OATH Rule 6-11(a). Defendants offer no

explanation why the same practice is not allowed in this case. Defendant's attempt to deny Raja

the right to cross-examine his accusers is not at all justified by any unusual circumstances and

evinces a clear disregard to constitutional norms.

### IV.    ALJ BURNS MAY NOT SERVE AS JUDGE IN HIS OWN CASE

ALJ Burns' signed the charging letter, which directs that any response to the charges be

directed to him, not to a different OATH judge or to a different panel of judges. This practice is a

plain violation of Due Process under both federal and New York law. The Supreme Court's

recent decision in *Williams v. Pennsylvania*, 136 S. Ct. 1899 (2016), is more than sufficient to

establish a constitutional violation. In *Williams*, the Supreme Court vacated a death sentence

ordered by the Pennsylvania Supreme Court because one justice of that court had, decades,

earlier, been the district attorney who approved his office's seeking the death penalty. The Court,

relying on decades of Due Process precedents, held "that under the Due Process Clause there is

an impermissible risk of actual bias when a judge earlier had significant, personal involvement as

a prosecutor in a critical decision regarding the defendant's case." 136 S.Ct at 1905. The Court

added: "The due process guarantee that 'no man can be a judge in his own case' would have little

substance if it did not disqualify a former prosecutor from sitting in judgment of a prosecution in

which he or she had made a critical decision." *Id*. at 1906. *Williams* further noted that "Due

process guarantees 'an absence of actual bias' on the part of a judge." *Id*. (quoting *In re

Murchison*, 349 U.S. 133, 136 (1955)" and explained that its "precedents apply an objective

standard that, in the usual case, avoids having to determine whether actual bias is present. The

Court asks not whether a judge harbors an actual, subjective bias, but instead whether, as an

objective matter, the average judge in his position is likely to be neutral, or whether there is an

unconstitutional potential for bias." *Id.* at 1905 (quoting *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 881 (2009) (internal quotations omitted).

The Supreme Court proceeded to conclude that the former district attorney's "Chief Justice Castille's significant, personal involvement in a critical decision in Williams's case gave rise to an unacceptable risk of actual bias. This risk so endangered the appearance of neutrality that his participation in the case 'must be forbidden if the guarantee of due process is to be adequately implemented.'" *Id.* at 1908 (citing *Withrow v Larkin*, 421 U.S. 35, 47 (1975).

The Due Process violation is even more evident here than in *Williams* itself. While Justice Castille's involvement in the Williams prosecution occurred decades before his actions as one of a panel of judges, ALJ Burns' will adjudicate Raja's case just weeks after signing the charging letter. This practice is plainly inconsistent with Due Process.

The practice is barred by New York cases as well. In *Beer Garden, Inc. v. New York State Liquor Auth.*, 79 N.Y.2d 266 (1992). In *Beer Garden*, the State Liquor Authority issued a suspension notice to a premises over the signature of its counsel, Sharon Tillman. Tillman later became a commissioner and adjudicated in the matter. The New York Court of Appeals held that "one who has appeared, even if it be in form only, as counsel in the prosecution of legal charges" may not later adjudicate that very dispute." Id. at 277-278. The Court of Appeals noted, "Courts of this State, while finding no actual fault in the conduct of the hearing, have held 'as a matter of propriety' that administrative officers should recuse themselves in situations where prior involvement creates an appearance of partiality. Fundamental fairness requires at least that one who participates in a case on behalf of any party, whether actively or merely formally by being on pleadings or briefs, take no part in the decision of that case by any tribunal on which [that person] may thereafter sit." *Id.* at 278-79 (internal quotations and citations omitted). Thus, even

14

though Tillman's role as a prosecutor was fairly nominal and she was one of several commissioner-judges, the arrangement violated "the common-law rule of disqualification embodied by" the NY Judiciary Law § 14.

## V.    THE ALLEGATIONS AGAINST RAJA ARE UNLIKELY TO BE SUSTAINED

A defendant or respondent is entitled to due process of law and a fair hearing even if the charges against him are meritorious. In this case, however, the charges against Raja are false and certainly subject to dispute. ALJ Burns accuses Raja of not registering as a representative for calendar year 2016. In fact, he did register and his registration for that year, signed by Raja on December 21, 2015 is attached as Exhibit 4.

ALJ Burns accuses Raja with violating OATH Rule 6-25(a)(2) by using a vulgar term in a moment of frustration to describe a clerk with whom he had a difficult relationship. This remark was not made to the clerk, but was allegedly in earshot of another tribunal employee. Here, even if the facts alleged are true, there is no violation of Rule 6-25(a)(2). That rule prohibits a witness, party, representative or attorney from "Engag[ing] in any disruptive verbal conduct, action or gesture that a reasonable person would believe shows contempt or disrespect for the proceedings or that a reasonable person would believe to be intimidating." Raja's remark, made under his breath, was not during, in or about a proceeding. The remark, while perhaps rude and regrettable, was uttered in a waiting area and concerned difficulties with a clerical staff member. RRD ¶ 24. It did not disrupt a proceeding (or any other operation) of the tribunal.

The charge that Raja misrepresented his credentials is equally baseless. The affiant who charges that Raja said he was a lawyer, Mohammad Siddiquee, also says that Raja gave him his business card. That card identifies Raja as an industry representative. Ex. 5. Raja never called himself a lawyer. RRD ¶ 26. It is, of course, quite possible that Siddiquee simply misremembers

the conversation as he says it occurred in November 2016 when he met Raja for the first time, though his affirmation is dated January 19, 2018, over a year later. Siddiquee also avers that Raja was interacting with other drivers. Perhaps Siddiquee simply assumed Raja was a lawyer because he saw him advising clients.

The charges that Raja misappropriated funds are based on affirmations by former clients that he accepted money (a total of $350) to file three appeals that he did not file. These actions are alleged to be in violation of OATH Rule 6-25(d)(1), which does not pertain to the appropriation of funds or the filing of appeals. The rule does claim to permit summary suspension or a bar of a representative "upon a determination that the representative lacks honesty and integrity and that the lack of honesty and integrity will adversely affect his or her practice before the Tribunal."

In any event, Raja did not misappropriate any client's funds in the sense that he took funds without permission. *See* Black's Law Dictionary definition of "Appropriation" [10th Ed 2014]. In two cases, his clients willingly gave him funds in exchange for a service. In the other case, there was no payment at all.

In Siddiquee's case, Raja did discuss his filing of an appeal for a violation that had already been adjudicated and quoted him a fee. But Siddiquee never paid the agreed fee so Raja did not prepare the appeal. (It often happens that a driver will discuss a case with one representative of attorney only to change his mind and hire other counsel or no counsel.) RRD ¶ 29. Concerning Saiful Alam, Raja did agree to file the appeal.[5] He took the first step, which was to order an audiotape of the hearing at which Raja did not appear. For reasons unknown, the

---

[5] The charging letter claims that Raja was paid $150, but in the next sentence says his fee was $100. Alam's affirmation says the fee was $150.

audiotape was delayed. Until that time, the tribunal's practice had been to permit a late filing of the appeal when the audiotape had been ordered but not produced. In this event, however, the court refused to permit a late filing. To make good on the fee that Alam paid, Raja offered to appear in two new matters free of charge, which he did. RRD ¶ 33. In Kwaku Adu's case, the driver had been cited for running a red light based on a red light camera. In such cases, vehicle owners are served summonses by the Department of Transportation / Parking Violations Bureau. Non-owner drivers may also be cited by the TLC, as was Adu. Where the driver is the vehicle owner, the TLC OATH appeals tribunal had been dismissing such summonses on double jeopardy grounds. At first, Raja believed that Adu could rely on that defense. But he later learned that Adu did not own the vehicle in question so there was no viable ground for an appeal. RRD ¶¶ 34-35. Raja, however, did not "appropriate" the fee. He returned it, as Adu himself states in paragraph 12 of his affirmation.

Beyond the factual inaccuracies underlying the "appropriation" charges, the summary suspension letter does not alleged that Raja's claimed dishonesty "will adversely affect his … practice before the Tribunal," which is an additional predicate for a Rule 6-25(d)(1) violation. At most, the charging letter claims neglect or a mistake, not a lack of integrity. And it does not allege that these mistakes were systemic or pervasive or even repeated since the last adversely affect his practice. Every representative (like every lawyer) makes mistakes, but not every mistake is dishonest. Perhaps Raja made a mistake and should have informed Adu that he had no tenable appeal argument sooner. But he did not "misappropriate" funds and there is no evidence that Raja was dishonest.

Finally, ALJ Burns' allegation that Raja submitted a "false statement to the Tribunal," Ex. 2 at 2, is not supported by any statement or evidence of any kind.

**CONCLUSION**

ALJ Burns' charges against Raja are factually and legally baseless. But even if Raja had violated the rules in question, the summary suspension of his license would deny Raja due process of law. The manner in which Raja is being permitted to defend the charges against him—without a hearing, without any opportunity to cross-examine witnesses, and before a judge who is also the prosecutor—would likewise deny Raja due process and would be in violation of OATH's own rules. For these reasons, this Court should issue a TRO and a preliminary injunction barring any suspension of Raja's right to practice at least until the allegations against him are resolved through a fair and constitutional process.

Dated: New York, New York
March 7, 2019

___/s/_____
Daniel L. Ackman
Law Office of Daniel L. Ackman
222 Broadway, 19th Floor
New York, NY 10038
Tel: (917) 282-8178
dan@danackmanlaw.com

*Attorney for Plaintiff*