UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
RIZWAN RAJA,

        Plaintiff,

        - against -

JOHN W. BURNS and THE CITY OF NEW
YORK,

        Defendants.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
19-CV-01328 (AMD) (RER)

PAMELA K. CHEN, United States District Judge:

On March 7, 2019, Plaintiff Rizwan Raja filed an Order to Show Cause for a Temporary Restraining Order ("TRO"). At a hearing later that day, the Court[1] orally denied Plaintiff's motion without a written decision. (3/8/2019 Minute Entry.) However, in addition to identifying the relevant factual allegations, the Court cited several cases on which it had relied in denying the requested TRO. On March 8, 2019, Plaintiff filed a Motion for Reconsideration pursuant to Local Rule 6.3 and Federal Rule of Civil Procedure 59(e). (Motion for Reconsideration ("Motion"), Dkt. 8, at 1.) For the reasons set forth herein, that motion is denied. The Court takes this opportunity both to explain the denial of reconsideration and amplify its ruling at the March 7 hearing denying the TRO, in writing.

**STANDARD OF REVIEW**

"A motion for reconsideration should be granted only when the defendant identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL*

---

[1] Although this matter is assigned to District Court Judge Ann M. Donnelly, because she was in trial when Plaintiff's TRO motion was filed, the undersigned, as Miscellaneous Judge, handled the request.

*Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) (internal quotations and citation omitted). "[R]econsideration will generally be denied unless the moving party can show that the Court overlooked controlling decisions or factual matters that were put before it on the underlying motion . . . and which, had they been considered, might have reasonably altered the result before the court." *Nnebe v. Daus*, No. 06-CV-4991 (KMK), 2006 WL 2309588, at *1 (S.D.N.Y. Aug. 7, 2006) (internal quotations and citation omitted); *see also Mirkin v. XOOM Energy, LLC,* No. 18-CV-2949, 2018 WL 6381456, at *1 (E.D.N.Y. Dec. 6, 2018) ("Motions for reconsideration are held to a strict standard. . . .") (quotation omitted).

## DISCUSSION

Plaintiff makes two arguments in his reconsideration motion.[2] First, Plaintiff argues that the Court's reliance on *Schneider v. Chandler*, 16-cv-6560 (DLC), 2018 WL770395 (S.D.N.Y. Feb. 7, 2018) and *Locurto v. Safir*, 264 F.3d 154 (2d Cir. 2001) was inappropriate because "[n]either case concerns the summary suspension or revocation of a license or benefit . . . ." (Motion, at 1.) Second, Plaintiff argues that the Court should follow the holdings in *El Boutary v. City of New York*, 18-CV-3996 (ARR) (JO), 2018 WL 6814370 (S.D.N.Y. Dec. 26, 2018) and *Padberg v. McGrath-McKechnie*, 203 F. Supp. 2d 261 (E.D.N.Y. 2002) to find that he is entitled to "some kind of hearing" before Defendants suspend him with respect to his "registered representative" status before the Office of Administrative Trials and Hearings. (Motion, at 3.)

The Court begins by addressing Plaintiff's second argument. Plaintiff's reasoning as to why he is entitled to a pre-suspension hearing is two-fold. First, he argues that since the charges supporting Plaintiff's suspension do not "present[] any immediate threat," (*id.*), Plaintiff is entitled

---

[2] For purposes of this motion, the Court assumes the parties' familiarity with the relevant factual allegations, Plaintiff's original written submission, and the arguments made during the March 7 hearing.

2

to the benefit of the general rule that "'[o]rdinarily, the due process clause of the Fourteenth Amendment requires that a state or local government afford persons some kind of hearing prior to depriving them of a significant liberty or property interest.'" (*Id.* (quoting *Locurto*, 264 F.3d at 171.))  Plaintiff also argues that, as in *El Boutary* and *Padberg*, the "factual allegations supporting [Plaintiff's] suspension[] [are] uncertain," further supporting Plaintiff's contention that he is entitled to a pre-suspension hearing.  (*Id.*)

Plaintiff misstates the standard for deviating from the "general [rule that], 'individuals must receive notice and an opportunity to be heard before the Government deprives them of property.'" *El Boutary*, 2018 WL 6814370, at *4 (quoting *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 48 (1993)).  "Due process is flexible and calls for such procedural protections as the particular situation demands." *Gilbert v. Homar*, 520 U.S. 924, 930 (1997) (internal quotations and citation omitted); *see also id.* ("It is by now well established that due process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances.") (internal quotations and citation omitted).  As a result, the Supreme Court has found "on many occasions, that where a State must act quickly, or where it would be impractical to provide predeprivation process, postdeprivation process satisfies the requirements of the Due Process Clause." *Id*.  In fact, the Supreme Court has found, in an analogous context of an employee challenging a summary suspension, that "[a]n important government interest, accompanied by a substantial assurance that the deprivation is not baseless or unwarranted, may in limited cases demanding prompt action justify postponing the opportunity to be heard until after the initial deprivation." *Id*. at 930–31 (finding that a state employee, who was suspended without pay and without notice or an opportunity to be heard, was not constitutionally entitled to any pre-suspension due process when employer relied on the fact of his criminal arrest to suspend him).

Courts apply the *Mathews v. Eldridge*, 424 U.S. 319 (1976) three-factor balancing test to determine "what process is constitutionally due." *Id.* at 931.

> To determine whether predeprivation process is required, courts look to three factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedure used, and the probable value, if any, of additional or substitute safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute requirement would entail.

*Padberg*, 203 F. Supp. 2d at 277 (quoting *Mathews*, 424 U.S. at 335). Plaintiff's argument focuses on the second factor, since uncertainty about the factual allegations supporting Plaintiff's suspension is relevant to determining the risk of erroneous deprivation.

Plaintiff argues that, as in *El Boutary* and *Padberg*, the "factual allegations supporting [Plaintiff's] suspension[] [are] uncertain." (Motion, at 3.) At the March 7 hearing, Plaintiff argued more pointedly that the factual allegations cited by Defendants in support of the violations that Plaintiff was accused of were either demonstrably unfounded or ultimately untrue. However, Defendants' factual allegations, at this early stage, need only provide "'substantial assurance that the deprivation is not baseless or unwarranted.'" *El Boutary*, 2018 WL 6814370, at *7 (quoting *Gilbert*, 520 U.S. at 931); *see also Gilbert*, 520 U.S. at 933 ("[T]he purpose of any pre-*suspension* hearing would be to assure that there are reasonable grounds to support the suspension without pay."). In *El Boutary*, the charges at question were only supported by the complainants' informal statement and a cellphone video they had taken. 2018 WL 6814370, at *6. In *Padberg*, the summary suspensions were issued immediately after the government, through one undercover operation, alleged that the plaintiff-drivers had engaged in an illegal service refusal. 203 F. Supp. 2d at 272–73.

In the instant case, Defendants provide more support for their summary suspension than in either *El Boutary* or *Padberg*. First, while the *El Boutary* and *Padberg* plaintiffs were each

4

suspended after one alleged incident of misconduct, Plaintiff is accused of six different, but related, incidents of misconduct over three years. (Summary Suspension Notice ("Notice"), Dkt. 1-3, at 2–3.) Furthermore, Defendants support their allegations of misconduct with a variety of evidence, including three declarations signed under penalty of perjury (though not notarized), executed around the time the alleged misconduct occurred, and a contemporaneously filed incident report. (*See id.* at ECF[3] 12–14 (1/19/2018 Declaration of Mohammed Siddiquee); *id.* at ECF 16–19 (11/29/2017 Declaration of Saiful Alam); *id.* at 21–22 (2/14/18 Declaration of Joseph Kwaku Adu); *id.* at 24–25 (8/14/18 Incident Report).) The incident report indicates that Plaintiff was asked about and admitted to the behavior in the moments after it occurred. (*Id.* at 24.) Though this support for Defendants' summary suspension might not lower the risk of erroneous deprivation as much as when a suspension is supported by an independent, third party source, like an arrest, *see, e.g.*, *Gilbert*, 520 U.S. at 935, the Court finds that it is nonetheless enough to suggest that the deprivation is "not baseless or unwarranted" and shows "reasonable grounds" for the suspension. *See Mustafa v. Clark Cty. Sch. Dist.*, 157 F.3d 1169, 1177 (9th Cir. 1998) (finding that support for a summary suspension was "not baseless or unwarranted" when defendants relied on both a police report filed by the complainant and an ensuing discussion that the defendant-government officials had with the complainant after finding out about the police report).

Furthermore, as noted by the Court at the March 7 hearing, the risk of erroneous deprivation is further mitigated by the post-deprivation process available to Plaintiff. *See Schneider*, 2018 WL 770395, at *5; *Locurto*, 264 F.3d at 174. As noted above, Plaintiff challenges the Court's reliance

---

[3] "ECF" refers to the pagination generated by the court's CM/ECF docketing system and not the document's internal pagination.

on *Schneider* and *Locurto*.[4] (Motion, at 1.) Plaintiff is correct that both cases deal with a more severe deprivation of property than the one faced by Plaintiff Raja: while Plaintiff currently faces suspension of his employment (of unspecified duration and unclear permanency), both the *Schneider* and *Locurto* plaintiffs faced final deprivations of their respective property interests. However, both the *Schneider* and *Locurto* courts, in determining whether the due process provided pre-final deprivation was adequate, relied on the same *Mathews* test that the Court now applies.[5] In its analysis of the second factor, the Honorable Judge Cote in *Schneider* noted that "courts consider both the significance of pre- and postdeprivation process." 2018 WL 770395, at *5 (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 547 n.12 (1985)). Similarly, in *Locurto*, the Second Circuit found that additional pre-final termination due process was not required, since "[a]n Article 78 proceeding [] constitutes a wholly adequate post-deprivation hearing for due process purposes." 264 F.3d at 175. Though the factual postures of these cases are different, the Court finds that the general proposition regarding the relevance of post-deprivation procedures still applies to the instant case.

---

[4] Though Plaintiff argued at the hearing that *Locurto* is a rogue case, he provides no cases to support that position in his Motion. Instead, he now argues that *Locurto* "does not hold or suggest that the officer or the firefighters could have been constitutionally *suspended* or terminated without any kind of hearing." (Motion, at 3 (emphasis added).) Plaintiff's statement is factually inaccurate. In *Locurto*, all three plaintiffs were summarily suspended after the incident in question. *See* 264 F.3d at 159. At least one of the plaintiffs was suspended without pay. *Id.* These suspensions continued until the government held hearings and issued decisions terminating plaintiffs' employment, over a month and a half after the suspensions began. *Id.* at 160–61. The *Locurto* plaintiffs did not challenge this lack of due process before their summary suspensions; they only contested the adequacy of the due process provided to them post-suspension, but pre-termination.

[5] *Locurto* does not explicitly mention *Mathews*, but in holding that a neutral adjudicator is not a "necessary component of due process at a pre-termination hearing," it relied heavily on the Supreme Court's holding in *Cleveland Board of Education v. Loudermill*, which did apply the *Mathews* three-factor test. *See Locurto*, 264 F.3d at 174 ("such a requirement would run contrary to the letter and the spirit of [*Cleveland Bd. of Educ. v.*] *Loudermill*").

Moreover, the Court does not have to rely on either *Locurto* or *Schneider* for the proposition that its analysis of the risk of erroneous deprivation should include consideration of the available post-deprivation procedures. *Padberg*, one of the cases Plaintiff urges the Court to consider, stands for the same proposition. *See* 203 F. Supp. 2d at 279 (noting in its analysis of the second *Mathews* factor that "in those cases in which the Supreme Court has upheld summary suspensions without a hearing, the availability of prompt, meaningful postsuspension procedures to rectify any erroneous or questionable deprivation has been a critical component of their analysis.").

In *Padberg*, the court found that the post-deprivation procedures "provided little, if any, protection" because the procedures provided did not allow the plaintiffs to "speak on their behalf or present evidence in their defense." *Id.* at 280. In contrast, in the instant case, Plaintiff is offered significant post-suspension process. He is entitled to not only an Article 78 hearing, but also an administrative process, the details of which are not fully known at this early point but will include the opportunity to provide a written response and evidence on his behalf within 14 days of his suspension taking effect, and a proceeding of some kind, (Notice, at 3–4; *see also* Chapter 6: OATH Hearings Division – Rules of Practice, Dkt. 1-7, at ECF 7 ("After the summary suspension or bar, the [plaintiff] will be given an opportunity to be heard in a proceeding . . . .")), before a final deprivation decision is made. *Cf. Padberg*, 203 F. Supp. 2d at 280 ("When the procedures in place do not allow for the presentation of potentially exculpatory evidence, there is little doubt that due process rights are in jeopardy.").[6]

---

[6] Of course, a final determination as to whether the post-suspension procedures actually provided are constitutionally adequate is premature until these procedures occur. Plaintiff has provided no evidence, either in the instant motion, his Order to Show Cause briefing, or at the hearing, that he will not be offered the opportunity to present evidence or argument on his behalf in a hearing.

Therefore, given that the material supporting Plaintiff's suspension shows that it is not baseless or unwarranted and that significant post-suspension procedures are available, the Court does not find that the second *Mathews* factor favors Plaintiff, but is, at this point in time, as the Court stated at the March 7 hearing, neutral as to both parties. At the hearing, the Court agreed with Plaintiff that the first *Mathews* factor favors Plaintiff, but then found that the third factor favors Defendants. For the reasons discussed above, the Court does not reconsider that finding, nor its finding that Plaintiff has failed to show that he is likely to succeed on the merits or that there is a serious question as to the merits of his claim at this time.[7] *Mullins v. City of New York*, 626 F.3d 47, 52–53 (2d Cir. 2010); *see also Free Country Ltd. v. Drennen*, 235 F. Supp. 3d 559, 565 (S.D.N.Y 2016) (noting that the standard for an TRO "is essentially the same as for a preliminary injunction" but that "a TRO, perhaps even more so than a preliminary injunction is an

---

[7] The Court also found at the hearing that Plaintiff had failed to show that he will suffer irreparable harm if the requested TRO is not issued. *See Mullins*, 626 F.3d at 52 (party seeking TRO or preliminary injunction must show irreparable harm). Plaintiff's reconsideration motion does not seem to dispute this finding either. Furthermore, though Plaintiff, at the hearing, argued that he need not show irreparable harm when alleging a constitutional violation, the Court finds that this exception to the TRO burden is limited to certain constitutional contexts, of which procedural due process violations are not one, where the nature of the right at issue makes monetary compensation difficult. *Compare Bery v. City of New York*, 97 F.3d 689, 693–94 (2d Cir. 1996) ("Violations of *First Amendment* rights are commonly considered irreparable injuries for the purposes of a preliminary injunction.") (emphasis added), *and Brewer v. Irondequoit Cent. Sch. Dist.*, 212 F.3d 738, 744–45 (2d Cir. 2000), *superseded on other grounds in Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163 (2d Cir. 2001) (noting irreparable harm found in Fourth and Eighth Amendment violations), *with Padberg v. McGrath-McKechnie*, 108 F. Supp. 2d 177, 182–83 (E.D.N.Y. 2000) (making irreparable harm determination on facts in procedural due process case), *and Pinckney v Board of Educ. of Westbury Union Free Sch. Dist.*, 920 F. Supp. 393, 400 (E.D.N.Y. 1996) (finding that procedural due process claim is not per se irreparable harm for purposes of injunctive relief because movant could be made whole with money damages). Therefore, even if Plaintiff's reconsideration motion were successful, he would not be entitled to the preliminary injunctive relief he seeks at this time.

extraordinary and drastic remedy one that should not be granted unless the movant, by a clear showing, carries the burden the persuasion.") (internal quotations and citation omitted).

## CONCLUSION

Because "Plaintiff has failed to prove that this Court overlooked controlling authorities that would compel a different ruling[,]" *Nnebe*, 2006 WL 2309588, at *5, and for the reasons stated above, Plaintiff's motion for reconsideration is denied.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: March 11, 2019
      Brooklyn, New York