# DANIEL L. ACKMAN

ATTORNEY AT LAW

_____

222 BROADWAY, 19TH FLOOR   o   NEW YORK, NY 10038

TEL: 917-282-8178

E-MAIL: dan@danackmanlaw.com

May 1, 2019

**VIA ECF:**
Hon. Ann M. Donnelly
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn New York 11201

Re: Raja v. Burns, et al, 19-cv-01328 (AMD)

Your Honor:

      I represent the plaintiff in the above-referenced action and am writing to respond to defendants' letter of earlier today. Much of our response will repeat our statements from our April 8 letter to the Court as defendants make many of the same arguments.

      First, as with defendants' initial request, we welcome a conference, as we would also like to move for partial summary judgment as to liability, though we disagree with their proposed briefing schedule.

      Second, defendants continue to distort the record. Their letter begins by stating that this action "stems from [plaintiff Rizwan Raja] misconduct as a registered representative." In fact, there has been no finding of any misconduct by Mr. Raja, not by this court and not by any administrative court. Instead, this action stems from the summary suspension of Mr. Raja by the Offices of Administrative Trials and Hearings (OATH) based solely on one-sided affidavits prepared by OATH official for a few disgruntled and confused clients.

      Defendants' letter is correct that Mr. Raja has since been afforded a hearing where he was allowed to cross-examine some, but not all, of his accusers. Ultimately, the administrative charges were settled with no finding or admission wrongdoing. Tellingly, OATH did not challenge that Mr. Raja had been practicing at OATH for many years or that his skills were well known and in demand by taxi drivers. That hearing at the Office of Administrative Trials and

Hearings was scheduled after the preliminary injunction motion. It would never have happened—certainly it was never promised—had Mr. Raja not filed this action.[1]

Third, defendants improperly rely on Judge Chen's denial of Mr. Raja's motion for a preliminary injunction. This denial was not on the merits. Like most ruling preliminary injunction rulings, it was tentative and by definition preliminary. Moreover, the ruling contained no formal findings of fact or conclusions of law. At any rate, such a decision is not the law of the case going forward so "the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981).

Fourth and most important, the fact that Mr. Raja was eventually afforded a *post*-suspension hearing does not erase the fact that he was improperly denied all *pre*-suspension process. *See, e.g., El Boutary v. City of New York*, 2018 WL 6814370, 18-CV-3996 (ARR) (E.D.N.Y. 2018) (taxi driver found in violation of TLC rules post-suspension, but claim that he was denied pre-suspension hearing sustained); *Padberg v. McGrath-McKechnie*, 203 F.Supp.2d 261, 276 (E.D.N.Y. 2002), aff'd 60 Fed. Appx. 861 (2d. Cir.), cert. denied, 540 U.S. 967 (2003). Indeed, in *Padberg*, the taxi driver plaintiffs were granted summary judgment on their pre-deprivation due process claim after being denied a preliminary injunction earlier in the case.

Thus, defendants' suggestion that the post-suspension hearing erased this constitutional wrong is incorrect. Certainly, the case on which they, *Gilbert v. Homar*, 520 U.S. 924 (1997), does not stand for that proposition. *Gilbert*, rather, permitted the summary suspension of a police officer who had been arrested on felony drug charges while those charges were pending. That there was a felony arrest followed by the filing of a formal criminal charge was critical to the decision. These events afforded some assurance that the summary suspension was not baseless. Here, however, there was no arrest and no criminal charge, formal or otherwise. Instead, OATH relied on one-sided affirmations, after which it did no further investigation. There was, in short, nothing to assure that the suspension was not baseless. Such a practice is inconsistent with Due Process of Law. *Connecticut v. Doehr*, 501 U.S. 1, 14 (1991).

Most of all, *Gilbert* did not alter the general rule stated that "due process generally requires a state to afford its citizens 'some kind of hearing' prior to depriving them of" property. *Velez v. Levy*, 401 F.3d 75, 101 (2d Cir. 2005); *see also Nnebe v. Daus*, 644 F.3d 147, 158 (2d Cir. 2011) (noting general rule, albeit allowing for the possibility of exceptions). Moreover, "post-deprivation remedies (such as the possibility of an Article 78 action) do not suffice where the government actor in question is a high ranking official with final authority over significant matters." *Velez*, 401 F.3d at 101 (internal quotations omitted); *see also Nnebe,* 644 F.3d at 155 (noting defendants Article 78 defense, but rejecting sub silentio). The case defendants cite, *N.Y. State NOW v. Pataki*, 261 F.3d 156 (2d Cir. 2001), has nothing to do with summary suspensions.

Defendants also do not deny that even at the post-suspension hearing, defendants denied Mr. Raja the right to cross-examine at least some of his accusers. Mr. Raja was denied this right

---

[1] Even so, the charges against Mr. Raja were prosecuted by OATH and would have been adjudicated by the same agency, albeit not by the same individual.

despite the fact that the right to confront witnesses has been imbedded in American law for decades not just in criminal cases, but "in all types of cases where administrative and regulatory actions were under scrutiny." *Greene v. McElroy*, 360 U.S. 474, 496-97 (1959); *see also Goldberg v. Kelly*, 397 U.S. 254, 269 (1970) ("In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses").

Defendants also do not dispute that the allegations against Mr. Raja were mostly years old. Indeed, the most recent conduct raised in the Summary Suspension letter (that Mr. Raja had muttered a vulgar term to himself while walking away from a clerk's window) had occurred eight months before the suspension. Mr. Raja's alleged wrongs had all been known to OATH for years or months before it suddenly decided to suspend. Thus there was no urgency and nothing impractical about holding a pre-suspension hearing. The only reason to impose an immediate suspension was to punish Mr. Raja and to bully him before he could mount a defense.

Fifth, Mr. Raja's claims that he was denied fair warning both as to what conduct was barred and what penalties might be imposed may be resolved on summary judgment. As the Court of Appeals held in *Rothenberg v. Daus*, where the City was also a defendant, "Even in the civil regulatory context … we cannot defer to [an agency's] interpretation of its rules if doing so would penalize an individual who has not received fair notice of a regulatory violation." 2012 WL 1970438, *2 (2d Cir.2012) (internal quotation omitted). The pertinent OATH rules are a case study in vagueness. The primary rule under which Mr. Raja was charged purports to permit a representative to be summarily suspended and later permanently barred based on an allegation that he or she "lacks honesty and integrity." Nothing in the rule determines the duration of a suspension or whether a permanent bar might be imposed. "Elementary notions of fairness enshrined in our constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment, but also of the severity of the penalty that a State may impose." *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 574 (1996). The OATH rules fall far short or this constitutional standard.

Accordingly, plaintiff joins in defendants' request for a pre-motion conference. We cannot agree, however, with the protracted schedule defendants propose. Their suggestion that their motion to dismiss be due on June 12 would afford them 89 days to respond to the amended complaint, far more than the 21 days allowed by Fed. R. Civ. P. 12. We propose, instead that both parties serve their motion papers on May 21, allowing defendants roughly 5 weeks to respond to the amended complaint. Both sides would then file opposition briefs on June 4. We submit that two briefs per side would be enough in this case and that we could dispense with reply briefs.

             Respectfully submitted,

             /s/
             Daniel L. Ackman

cc: All Counsel (by ECF)