```
                    THE CITY OF NEW YORK
                   OFFICE OF ADMINISTRATIVE
                     TRIALS AND HEARINGS


P R E S E N T:      KEVIN CASEY
                    Administrative Law Judge

_____

In the matter of:

    OFFICE OF ADMINISTRATIVE TRIALS AND HEARINGS,

                          Petitioner,

                                          Index No.
                                          191903
        - against -


    RIZWAN RAJA,

                          Respondent.
_____


            March 22, 2019

            Office of Administrative Trials
              And Hearings
            100 Church Street
            New York, NY  10007



            Volume I, Pages 1 - 265
```

1  under the impression that we're here to determine whether the
2  suspension was even warranted, no, there's no question, we
3  have -- we're, we're, we're well within our authority to
4  summarily suspend someone.  That's not a point of
5  adjudication, that's, that's -- we have the, the force of law
6  is being [unintelligible] [11:42:03] in 6-25(d)(1), that we
7  can summarily suspend someone, and that's what we did and,
8  and mis-, and Mr. --
9              ALJ CASEY:  They're not entitled to a hearing
10 afterwards?
11             MR. JONES:  The, the, the, the hearing that they're
12 entitled to generally is a remote hearing, but in this case
13 Mr. Ackman is the second respondent to Mr. Raja, the second
14 respondent, who asked for a hearing and we granted him a
15 hearing.  So that -- regardless, we're not here to determine
16 whether the summary suspension is warranted, we're here to
17 try these facts on their face and ask fo-, and we're asking
18 for a permanent ban.  So that, that's, that's, that's why
19 we're, we're here, Judge.
20             ALJ CASEY:  Care to address his argument that he's
21 entitled to eight days' notice for that if you're seeking
22 revoc-, a revocation hearing?
23             MR. JONES:  Judge, he, he's -- sure.  And, and like
24 I said before, Judge, if he wants --
25             ALJ CASEY:  Well, he didn't get -- he doesn't have,

1   think we should have to, and it seems like Mr. Jones agreed
2   by e-mail yesterday, that we shouldn't have to address the
3   Hu-, the new charges, which are the Hussein charges.
4           MR. JONES: Not today.
5           ALJ CASEY: Hold on, don't interrupt, don't
6   interrupt, don't interrupt.
7           MR. ACKMAN: No, today.
8           MR. JONES: Sure.
9           MR. ACKMAN: I'm talking about today. But we also
10  think they shouldn't even be talked about at this hearing
11  because it totally poisons the well, especially if he's going
12  to misstate the charge as going to a bribery charge, which
13  it's not.
14          ALJ CASEY: Alright, but --
15          MR. ACKMAN: It's a much more serious charge.
16          ALJ CASEY: Just in terms of, in terms of
17  logistics, how you would like to proceed here. We have
18  witnesses here today, 'cause I would gather the same,
19  excluding the Hussein charges, that the same witnesses that
20  they're basing their summary suspension with the exception of
21  the, the language comment, which is not grounds for summary
22  suspension, summary suspension has to do with honesty and,
23  the way I read, right?
24          MR. JONES: Exactly.
25          ALJ CASEY: You can't summarily suspend someone for

1   saying something you believe was inappropriate, you know, an
2   off color remark or something. We agree on that, right?
3       MR. JONES: We agree.
4       ALJ CASEY: So that's not ground-, so we have
5   witnesses here today who are available to testimony about
6   summary suspension and those same witnesses are what you're
7   seeking to revoke his license on in the petition, right, or
8   his privileges in the pri-, petition, right?
9       MR. JONES: Yes.
10      ALJ CASEY: In addition to, putting aside Hussein?
11      MR. JONES: Yes.
12      ALJ CASEY: Right? So it's the same people?
13      MR. ACKMAN: Right.
14      ALJ CASEY: Okay.
15      MR. JONES: So yes, Judge, that's, that's why a
16  continuation instead of two separate trials, so is, is fine.
17  We're happy to -- the continuation could be Monday, Tuesday -
18  -
19      ALJ CASEY: Well, there's the matter of his
20  continued suspension. Now how long would it take you, how
21  much time would you like to investigate the Hussein charges?
22  Your position is that you've, you've had inadequate notice
23  for the Hussein charges, you can't defend against them on
24  three days' notice. What -- how much time would you like?
25      MR. ACKMAN: Well, it kind of depends on what

1   MR. JONES:  Okay.
2   ALJ CASEY:  Put that aside.
3   MR. JONES:  Okay.
4   ALJ CASEY:  Keep it simple.
5   MR. JONES:  Okay.
6   ALJ CASEY:  You just heard the proposal I made. I'll, I'll hear your witnesses today. I'll give you a ruling at the end of the day whether I think continued -- whether I think the initial summary suspension was justified by -- based on your evidence, and then whether the suspension go forward. Either way, even if I say no, I don't think it should be go forward, we'll continue or yes, I think it should go forward and it was justified in the first place. You can present Mr. Hussein next week and then he can challenge that, take more time, and then I'll issue a written report and recommendation, more detailed or, I'm sorry, memorandum decision, (a) have you proved misconduct, (b) what, if any, penalties should come from that. Does that sound like a reasonable solution here? What, if any, objection do you have to that? I think it's pretty much what you're asking for already, when you're asking for adjournment, a continuance.
23  MR. JONES:  That's fair, Judge. It's fair.
24  ALJ CASEY:  Alright. Now --
25  MR. ACKMAN:  But, Judge, just to clarify, so you

1   MR. ACKMAN: Okay, sure, I thought you had it.
2   ALJ CASEY: I believe that the way we had it sorted
3   out this morning was that I was going to issue a ruling on
4   the summary suspension this afternoon and that after the
5   plead hearing on the petition, which was, I believe, he's
6   entitled to eight days' notice on, that I would issue, I
7   thought memorandum decision, I was looking at the rule based
8   on that, and your position is that I'm going to be issuing a
9   report and recommendation. How does that affect my, my
10  initial plan to issue a report -- issue a determination on
11  the summary suspension this afternoon?
12  MR. JONES: Yeah, Judge, we, we, we believe that
13  you do not have the authority to lift a summary suspension.
14  That's, that -- this, this, this entire proceeding was never
15  -- had to deal with whether or not a summary suspension was
16  warranted. I know that sometimes in the TLC Tribunal,
17  there's, there's, actually there's a mechanism in T- TLC
18  Tribunal that when someone, someone is summer- summarily
19  suspended that there is a proceeding determined whether or
20  not that was warranted. There is no procedure here for that
21  in this case, that's not what this is about. So what, what
22  we were here -- this is purely based on the facts that we're
23  asking for a permanent bar. That's, that's, that's my
24  understanding, that's how I take it that, with all due
25  respect, you don't have, you don't have the authority --

1          ALJ CASEY: I was -- I have this letter in front of
2     me, okay.
3          MR. JONES: You don't have the authority to change
4     that summary suspension.
5          ALJ CASEY: Well, let's try another way. The
6     parties, could the parties agree to alter the procedure in
7     terms of based on what we talked about this morning?
8          MR. JONES: I would have to take that to,
9     essentially, my client.
10         ALJ CASEY: Mm-hmm. Okay. Mr. Ackman, care to
11    respond?
12         MR. ACKMAN: Judge, Judge, first of all, this says
13    nothing about lifting a summary suspension either way or who
14    can do it. I mean, so --
15         ALJ CASEY: Let's try, let's rewind. I would
16    suspect that this letter refers to the summary suspension
17    notice, because the petition hadn't been filed yet, right?
18    It's dated March 7th.
19         MR. ACKMAN: That's right.
20         ALJ CASEY: Your position this morning was we're
21    here on a summary suspension hearing.
22         MR. ACKMAN: Right.
23         ALJ CASEY: And so this designation here is --
24    okay, continue. I just wanted to clarify that timing. So
25    now how does that -- does that change your answer or what

1  case, the prosecutor who became the judge was not the line
2  prosecutor, he didn't try the case.  He was the Cy Vance-type
3  figure, who merely approved seeking the death penalty in the
4  case and that was his sole role in the case.
5            ALJ CASEY:  Okay.  Here's what I, here's what I'm
6  going to do folks.  I think, after reading the letter, I'm
7  reading, I'm looking at the letter of March 7th, I'm a little
8  constrained in terms of what it says, I'm designated to issue
9  a report and recommendation.  I would strongly urge you, Mr.
10 Jones, to speak to whoever you need to speak to at the other
11 -- at -- whoever you need to speak to about this, seriously
12 reevaluate your position, and consider giving me explicit
13 authority to issue a memorandum decision.
14           MR. JONES:  I --
15           ALJ CASEY:  I, I, I'm telling you I would strongly
16 urge you to do that to avoid any problem.  I could be wrong,
17 I could have this totally wrong and, you know, I'm, I'm
18 speaking out of turn, but that would be, to me, is to
19 reevaluate your position.  That being said, I'm not going to
20 be in the position to issue a decision this afternoon on the
21 summary suspension.  What I can do is, we'll resume this
22 hearing on the 28th and I will work as expeditiously as I can
23 to issue either, either a report and recommendation or
24 memorandum decision, whatever I'm explicitly authorized to
25 do, and you could take whatever action you deem appropriate

1   good suspension, it was a bad suspension, whatever.
2          MR. ACKMAN:  And is there a rule saying that you
3   should do that in that case?
4          ALJ CASEY:  Off the top of my head, no, actually
5   there was case law that developed afterwards.  Actually now
6   that I think about it, it was -- it's not actually, it's
7   under Section 72 of the Civil Service Law, where people are
8   deemed incompetent and they immediately suspend them because
9   they're a danger to the fisc [phonetic] or a danger to the
10  agency, and we rule both on the incompetence issue as well as
11  the propriety of the immediately suspension, so, and I
12  believe that was developed in case law.  I'm speaking off,
13  like off the cuff here, I'm not 100 percent, 100 percent sure
14  about that, but that's what I plan to do.  I'm going to try
15  to balance your interests in having the suspension issue
16  resolved as promptly, this is the letter -- the letter of
17  March 7th is designating me, telling me what my authority is.
18  You're free to challenge that any way you want to challenge
19  it, but I would urge you, Mr. Jones, to reevaluate the
20  situation and --
21         MR. JONES:  So are, are we continuing this
22  afternoon?
23         ALJ CASEY:  We're continuing the hearing, yeah,
24  we're continuing the hearing --
25         MR. JONES:  Oh, so --

```
 1              memorandum decision and that I'd be issuing a report and
 2              recommendation.  Respondents objected.  Respondents had
 3              objected to that beforehand and I questioned that also.  And,
 4              as a matter of fact, we were unable to finish because for
 5              security concerns, we, we hadn't even been able to begin the
 6              cross of Respondent on the suspension charges by the end of
 7              the day.
 8                      Since then, I have received a new designation
 9              letter which makes clear that I'm going to be issuing a
10              memorandum decision that can be appealed directly -- is being
11              a final agency determination that can be appealed to an
12              Article 78 judge.
13                      Mr. Ackman, shortly afterwards, requested a ruling
14              on the summary suspension and I denied that for two reasons.
15              First, Respondent hadn't even cro-, hadn't been cross
16              examined by Petitioner yet; and two, my reading of the
17              designation letter was it didn't really provide for
18              bifurcated proceeding, it directed me to review the entire
19              record and then issue a decision.  I appreciate that it's a
20              change of position.  I apologize to Respondent if I suggested
21              otherwise.  But now that we've clarified things, and we
22              weren't able to finish it last week anyway, I intend to issue
23              one memorandum decision and I certainly will address the
24              propriety of the suspension and any continued suspension on
25              both sides have an exception.
```

1     ALJ KEVIN CASEY: Alright. We're on the record in
2  the matter of Office of Administrative Trials and Hearings v.
3  Rizwan Raja, OATH Index Number 191903. Please state your
4  appearances for the record.
5     MR. TIMOTHY JONES: Good morning, Judge Casey,
6  Timothy Jones for Petitioner.
7     MS. CYNTHIA FISHER: Good morning, Your Honor.
8  Cynthia Fisher, co-counsel for Petitioner.
9     MR. DANIEL ACKMAN: Daniel Ackman for Respondent.
10    MR. RIZWAN RAJA: Rizwan Raja, Respondent.
11    ALJ CASEY: Good morning. Today's date is March
12 28th. This is a continued hearing. What I'd like to do is
13 recap what's taken place since the last time we're on the
14 record. As you may recall, we started the proceeding on
15 March 22nd. At the beginning of the proceeding, I indicated
16 I would, I planned to do a bifurcated proceeding where I
17 would address the suspension issues on the first day and the
18 ultimate revocation issue today and that was to balance the
19 competing interests of both sides. Respondent's need to have
20 a prompt hearing on the suspension, but also Respondent's
21 opportunity to have notice and opportunity to prepare for the
22 charge brought today. And we were kind of in agreement and
23 then by mid-day or about later in the afternoon, Petitioner
24 brought to my attention the designation letter in the case,
25 which indicated that I was not authorized to issue a

1   memorandum decision and that I'd be issuing a report and
2   recommendation.  Respondents objected.  Respondents had
3   objected to that beforehand and I questioned that also.  And,
4   as a matter of fact, we were unable to finish because for
5   security concerns, we, we hadn't even been able to begin the
6   cross of Respondent on the suspension charges by the end of
7   the day.
8           Since then, I have received a new designation
9   letter which makes clear that I'm going to be issuing a
10  memorandum decision that can be appealed directly -- is being
11  a final agency determination that can be appealed to an
12  Article 78 judge.
13          Mr. Ackman, shortly afterwards, requested a ruling
14  on the summary suspension and I denied that for two reasons.
15  First, Respondent hadn't even cro-, hadn't been cross
16  examined by Petitioner yet; and two, my reading of the
17  designation letter was it didn't really provide for
18  bifurcated proceeding, it directed me to review the entire
19  record and then issue a decision.  I appreciate that it's a
20  change of position.  I apologize to Respondent if I suggested
21  otherwise.  But now that we've clarified things, and we
22  weren't able to finish it last week anyway, I intend to issue
23  one memorandum decision and I certainly will address the
24  propriety of the suspension and any continued suspension on
25  both sides have an exception.

```
1     Q:   Good morning, Mr. Holohan.
2     A:   Good morning.
3     Q:   Could you please state your age for the record.
4     A:   Fifty-one.
5     Q:   And what borough do you reside in?
6     A:   Kings.
7     Q:   Could you tell us a little bit about your educational
8  background?
9     A:   Well, I went to St. John's University, graduated in
10 1990; went to St. John's Law School, graduated in 1994; and in
11 2016, I got a Master of Fine Arts and Creative Writing from the
12 Vermont School of Fine Arts.
13    Q:   And are you currently employed?
14    A:   Yes.
15    Q:   Where?
16    A:   Here at OATH.
17    Q:   And how long have you been at OATH?
18    A:   A little over two years, since January of 2017.
19    Q:   What was your -- what's your current job title?
20    A:   I'm the Ombudsperson and Pro Se Clerk here at OATH.
21    Q:   Was that your job title when you started at OATH?
22    A:   Yes.
23    Q:   Alright.  Could you walk us through a little bit about
24 the creation of this position, the Ombudsperson and the Pro Se
25 Clerk?
```

1  A:  I went back to my office and, you know, I have 27
2  employees so I probably dealt with one of the things that you have
3  to deal with on a regular basis.
4  Q:  Did you do any other investigation with this case?
5  A:  With respect to this case, I've just made sure that I
6  had all the records that are in NYCER of Taxi or any other sort of
7  TAMIS records and I pulled all of that together, along with the
8  affidavits and I submitted that to the general counsel's office.
9  Q:  Okay.
10         MR. JONES:  No further questions at this time.
11 **CROSS EXAMINATION OF MR. HOLOHAN**
12 **BY MR. ACKMAN**
13 Q:  Mr. Holohan, when you said you submitted the records to
14 general counsel's office, who exactly did you submit them to?
15 A:  Tanya Richard.
16 Q:  Tanya Richard.  And she is what?
17 A:  The General Counsel and Deputy Commissioner.
18 Q:  And what was the original charge that Mr. Hossain was
19 facing?
20         MR. JONES:  Objection.
21         ALJ CASEY:  If you know, I'll allow it.
22 A:  It's a consumer complaint.
23 Q:  Consumer complaint about what?
24 A:  I believe that it was an allegation that he overcharged
25 somebody.

```
1         ALJ CASEY:  I'll allow it.  Overruled.
2         MR. JONES:  Judge.
3         MR. ACKMAN:  I'll, I'll change the question.  I'll
4    withdraw the question.
5         ALJ CASEY:  Wait a minute.  Hold on.  One at a
6    time, one at a time.
7    Q:   Was it a practice that before someone was accu-, made,
8    accused of a criminal allegation through Brooklyn DA's office that
9    someone representing the state had spoken to the accused.
10   A:   Sometimes.
11   Q:   Who would that usually be?
12   A:   It would, might be the New York City Police Department
13   or it could be detective investigators that work for the Brooklyn
14   DA's office or some other entity.
15   Q:   Now, before you talked to Hossain, did you look into his
16   reputation for credibility?
17   A:   I looked at his history, so to speak.  Yeah, so --
18   Q:   His history of what?
19   A:   His driving history.
20   Q:   Before you talked to him.
21   A:   Correct.
22   Q:   And what about, did you inquire into his reputation for
23   credibility?
24   A:   I wouldn't know how to go about doing that.
25        MR. JONES:  Obje- objection, Judge.
```

```
 1      Q:   Well, okay.  Well, I'll just --
 2           ALJ CASEY:  Overruled.
 3      Q:   I'll ask a different question.
 4           ALJ CASEY:  Overruled.
 5      Q:   Did you, for example, look at the decision that led to
 6  his encounter with Mr. Raja?
 7      A:   Yes.
 8      Q:   And did you see that the judge found his testimony
 9  incredible?
10      A:   Yes.
11      Q:   And did you look at any other decisions where an ALJ had
12  ruled about, after a hearing with Mr. Hossain?
13      A:   No.
14      Q:   So, you didn't see any other decisions where an ALJ had
15  ruled his testimony incredible?
16      A:   I did not see any others.
17      Q:   Okay.  And did you ask anyone else whether his testimony
18  was known to be generally credible?
19      A:   I did not.
20      Q:   And you said you looked at his record?
21      A:   Driving record.
22      Q:   And he had a pretty bad record.  Right?
23      A:   I don't recall.
24           MR. JONES:  Objection, Judge.  Bad.  What does,
25  what does that mean?
```

```
 1      A:   He may have.
 2      Q:   But you don't recall that.
 3      A:   I, I, I --
 4      Q:   Okay.
 5      A:   I don't recall the negative either.
 6           MR. ACKMAN:  I'd like to offer this, I gave you --
 7           ALJ CASEY:  Are you going to question the witness
 8      about TLC rules?  I think it's conceded or not disputed that
 9      TLC has --
10           MR. ACKMAN:  I think he said he didn't know about
11      them.
12           ALJ CASEY:  Alright.  But he's not the right
13      witness for this.
14           MR. ACKMAN:  Alright.
15      Q:   Did a De- Department of Investigation ever come to you
16      to talk about Mr. Raja?
17      A:   No.
18      Q:   Did you, when Mr. Hossain told you that he was planning
19      to pay a bribe through his lawyer, did you take any action against
20      Mr. Hossain?
21      A:   No.
22      Q:   Alright.
23           MR. ACKMAN:  No further questions.
24           MR. JONES:  Yes, Judge, brief redirect.
25      REDIRECT EXAMINATION OF MR. HOLOHAN
```

```
 1        Let me get the decision.  Nothing.  And, judge, that
 2        document, Petitioner's 4, it's, it's, it's important because
 3        the Respondent testified on direct that he does not do work
 4        that is not paid for.  And he said that specifically for Mr.
 5        Siddique.  And it's important that two-and-a-half months
 6        later, he's doing work for Mr. Siddique.  A man with over
 7        20,000 clients in his career.
 8              I know I've up here for a while, Judge.  I'll
 9        conclude by saying I know we, we provided you with a lot of
10        testimony and a lot of evidence and a lot of exhibits.  And,
11        Judge, the Petitioner, OATH, is confident, confident that we
12        have satisfied our burden of a, of a preponderance of the
13        evidence for every single charge in the petitioner, Judge,
14        and the facts and the law demand that you find this
15        Respondent guilty of every single charge in the petition,
16        Judge.  And I would ask that, after you find the Respondent
17        guilty of every single charge in the petition, you penalize
18        the Respondent by permanently banning him from appearing at
19        OATH.  Thank you.
20              ALJ CASEY:  Thank you, Mr. Jones.  Alright.  The
21        trial is concluded.  I want to thank Mr. Ackman and Mr. Jones
22        for your zealous advocacy on behalf of your respective
23        clients.  I appreciate that.  And the record is going to be
24        closed.  I, I don't know if Judge Miller is going to have
25        enough time to talk to you.  Because she is the settlement
```

PROCEEDINGS

```
 1    judge, she is allowed to talk to each side separately and get
 2    their assessment.  So I'm going to see if she's available.
 3    But, again, I want to thank you folks for your
 4    representation.  I will try to work as expeditiously as I can
 5    to get this decision out and it will be issued shortly.
 6              MR. ACKMAN:  Thank you, Judge.
 7              MR. RAJA:  Thank you.
 8              MS. RICHARD:  Thank you, Judge.
 9              MR. JONES:  Thank you, Judge.
10              [END OF TRIAL]
```