UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
X------------------------------------------------------------------X

RIZWAN RAJA,

                                       Plaintiff,                  **19-cv-01328 (AMD)**

        -Against-                                 **AMENDED**
                                                                          **COMPLAINT**
JOHN W. BURNS and THE CITY OF NEW YORK,

                                                                       **JURY TRIAL**
                                    Defendants.                **DEMANDED**

X------------------------------------------------------------------X

       Plaintiff Rizwan Raja, by his attorney Daniel L. Ackman, and for his amended complaint, which is being filed with defendants' consent, alleges as follows:

## NATURE OF THE ACTION

    1.    This action is on behalf of Rizwan Raja, a registered representative at the New York City Office of Trials and Administrative Hearings, whose right to practice was summarily suspended by defendants starting on March 8, 2019 based on false and legally deficient charges. This suspension was in violation of plaintiff's right to Due Process of Law.

    2.    Even if the charges against Mr. Raja were accurate, which they plainly are not, John W. Burns, the acting commissioner of the NYC Office of Administrative Trials and Hearings (OATH) who ordered the suspensions, made no attempt to state a rationale for suspending Mr. Raja without a fair hearing.

    3.    Mr. Burns apparently intended to try Mr. Raja without hearing any testimony and without allowing Mr. Raja any right to cross-examination the witnesses against him, though OATH said it would and did afford Mr. Raja a hearing on the charges against him (but not before summarily suspending him) after this action was filed.

## JURISDICTION AND VENUE

4. This action arises and under the Fifth and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. § 1983, under the New York State Constitution, Article 1, § 12 and under New York law.

5. The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343(4), 1367 and 2201.

6. The acts complained of occurred in part the Eastern District of New York and venue is lodged in this Court pursuant to 28 U.S.C. § 1391(b). Plaintiff resides in the Eastern District of New York. OATH maintains its headquarters in the Southern District of New York, but its OATH TLC Tribunal is in the Eastern District of New York.

## JURY DEMAND

7. Plaintiff demands trial by jury in this action.

## PARTIES

8. Plaintiff Rizwan Raja is a resident of Nassau County and his principal place of business is in Queens County. He has been registered as an industry representative with a right to appear in the TLC Tribunal or the OATH TL Tribunal for roughly fourteen years.

9. Defendant John W. Burns is the first deputy commissioner and supervising administrative law judge for OATH.

10. Defendant City of New York is a municipality of the State of New York, which includes OATH as an administrative agency. The OATH-TL Tribunal is in Queens County.

## FACTUAL BACKGROUND

### Rizwan Raja and His Practice

11. Rizwan Raja, 47, was born and raised in Pakistan. After earning degrees in both law and accounting, he immigrated to the United States in 1996 and gained his United States citizenship in 2002.

12. Raja speaks Urdu, Hindi and Punjab as well as English. This ability benefits his taxi driver clients, as more than 45 percent of yellow taxi drivers were born in South Asia.

13. Raja is the sole breadwinner for his wife and four children, the oldest of who is in college. The summary suspension that OATH imposed was open-ended as there is no time limit in the OATH rules for ALJ Burns to decide whether any additional suspension is warranted (or whether the summary suspension itself was proper).

14. In addition to serving his clients, since 1998, Raja has served on the organizing committee of the New York Taxi Workers Alliance (NYTWA), an advocacy group for yellow cab, green car, black car, livery and app-dispatched drivers.

15. Prior to his career as an registered representative, Raja worked for the Bank of New York, for MetroPlus, an HMO company, and as a yellow taxi driver.

16. Raja became a registered or industry representative at the TLC Tribunal in 2005.[1]

17. In order to be named a representative at that time, applicants were required to sit for and pass an examination, demonstrating their knowledge of TLC rules and procedures.

18. Approximately 18 applicants sat for the exam along with Raja. Just three passed.

---

[1] The TLC Tribunal was transferred to OATH in 2011 by Executive Order 148. Available at http://www.nyc.gov/html/ajc/downloads/pdf/eo_148.pdf.

19.  While Raja acts in an extremely high volume of case, he keeps meticulous records of his clients and their matters.

20.  Since 2010, Raja has handled 20,000 cases. To be sure, only a minority of these cases results in hearings with the rest being resolved by settlement. About 70% of Raja's cases come from referrals by NYTWA, whose members pay Raja a discounted fee. In addition to hearings, Raja submits appeals, which tend to be brief, written arguments submitted through the tribunal website.

### The OATH TLC Tribunal

21.  Though representatives are not lawyers, they may appear for clients in what is now known as the OATH TLC Tribunal. 48 RCNY § 1-11. (The Rules included in Title 48 of the Rules of the City of New York will hereinafter be referred to as OATH Rules). The tribunal itself employs 71 hearing officers (mostly part-time) and presides over 160,000 cases annually.

22.  The rules governing TLC drivers, while meant to be in plain English, are fairly voluminous. Chapter 80 of the TLC Rules, which pertains to taxi and for-hire vehicle drivers, combines the previous chapters 54 and 55 and extends to 62 pages. Chapter 58, which covers the obtaining of taxicab license and rules for operating a taxicab, is 108 pages. Chapter 68, which pertains to adjudications, suspensions, revocations and the seizure of unlicensed vehicles, is 23 pages long. The TLC rules also contain an additional 18 chapters, though mostly not pertinent to the daily operations of taxi drivers. There are also NYC Administrative Code provisions that govern taxi drivers. And there are Code provisions and rules that govern non-TLC drivers who engage in unlicensed activities.

23.  The penalties for violating TLC rules can be substantial.

24.  To cite a few examples, mandatory fines for refusing service range from $350-$1000. TLC Rule 80-02(e). Fines for overcharging a passenger less than $10 are in the same

range. But if the overcharge exceeds $10, the driver's license will be revoked. TLC Rule 80-02(e)(1). Bribery or failure to report bribery can result in a $10,000 fine and revocation of a license. TLC Rule 80-12(e). "Acts Against the Public Interest" can merit a fine of up to $350 plus a suspension of up to 30 days. TLC Rule 80-12(d). Reckless driving can result in a fine of $350-$1000. TLC Rule 80-14(a). Using a cell phone can lead to a $350 fine (or $250 if the drive pleads guilty. TLC Rule 80-14(e). Failing to "comply with all reasonable and lawful routing requests of the Passenger" can result in a $150 fine (or $100 if the driver pleads guilty). TLC Rule 80-16. There are, of course, many other rules covering all aspects of driving a taxi and serving passengers. In addition, TLC courts may adjudicate traffic law violations, which can result in fines plus "points" on a license. TLC Rule 80-13.

25. Beyond individual rules, the TLC Rules impose additional penalties on drivers for accumulating points based on individual violations. A driver who accumulates ten or more points within a 15-month period may have his or her license revoked. Application of this Rule can be complicated in that "When determining whether a suspension or revocation is required based on the accumulation of points in a 15-month period, the Commission will count backwards 15 months from the date of the most recent conviction for the violation carrying points that is cited in the summons under this section." TLC Rule 80-17.

26. At least 15 separate rules in Chapter 80 alone can lead to revocation. More than 25 rules permit suspension of a license.

27. In addition to the rules, there is case law by OATH judges that is made available through searchable online databases maintained by OATH and the Center for New York City Law.

28. Taxi driver respondents at the tribunal may appear without counsel. But given the complexity of the rules, the magnitude of the fines and the possibility of suspension or revocation, many seek assistance. If they retain counsel, either a lawyer or an authorized representative, they must do so at their own expense. *See* OATH Rule 1-11.

29. A large majority of the persons who regularly appear in the tribunal are representatives, not lawyers.

30. More than 90 percent of taxi drivers are first generation immigrants, whose first language is likely not English.

31. OATH does not publish a list of authorized representatives, but it does publish a "list of representatives who have been suspended or permanently barred from appearing before the OATH Hearings Division." As of March 4, Raja's name was already on that list even though his summary suspension had not yet taken effect.

### The Charges

32. During his entire career, neither the TLC nor OATH had accused Raja of misconduct of any kind. Suddenly, without so much as interviewing Mr. Raja about the events in question, on March 1, 2019, OATH Assistant General Counsel Timothy R. Jones sent Raja an e-mail with the subject heading "Summary Suspension Pursuant to 48 RCNY Section 6-25(d)(1)."

32. The e-mail informed Raja, "Pursuant to 48 RCNY Section 6-25(d)(1), you are hereby summarily suspended **starting March 8, 2019**, for incidents discussed in the annexed Summary Suspension letter." The e-mail itself continued, "If you wish to refute the allegations of misconduct … submit a letter to First Deputy Commissioner John Burns, no later than March 22, 2019. If you do not respond by March 22, 2019, First Deputy Commissioner Burns will render a final determination in this matter pursuant to 48 RCNY § 6-25(d)(1)." In sum, Mr. Burns would not only file the charges, he would adjudicate them as well.

33. Attached to the e-mail was a summary suspension letter signed by defendant Burns, who identified himself as First Deputy Commissioner and Supervising Administrative Law Judge of the Office of Administrative Trials and Hearing.

34. The summary suspension letter listed five allegations in bullet points: (1) that Raja failed to register as a representative in violation of OATH Rule 6-23(b) in 2016; (2) that Raja misrepresenting his qualifications "so as to mislead" a respondent "into believing" that he was an attorney, also in 2016, in violation of OATH Rule 6-23(d); (3) that Raja "appropriat[ed] money under false pretenses, which evinces a lack of honesty and integrity that adversely affected his practice before the tribunal, in violation of 48 RCNY § 6-25(d)(l); (4) that Raja "submit[ed] a false statement" to the tribunal that he knew, or reasonably should have known, to be false, fraudulent or misleading, in violation of 48 RCNY § 6-25(a)(9); and (5) that Raja "engag[ed] in disruptive verbal conduct that a reasonable person would believe shows contempt or disrespect for the proceedings or that a reasonable person would believe to be intimidating, in violation of 48 RCNY § 6-25(a)(2)."

35. The letter went on the specify some of the charges and attached some evidence in exhibits. But some of the allegations are not supported at all. The "failure to register" allegation is simply false. He did register. Moreover, the charging letter itself includes copies of Raja's registration forms dated 2017 and 2018, which he could have been barred from filing had he not registered in 2016 pursuant to OATH Rules.

36. The "false statement" charge is not detailed in any way.

37. The "misrepresentation of qualifications" charge is based on an affirmation from one of the three former clients who claims that Raja told him he was a lawyer, but also states that Raja gave him a business card that identified him as an industry representative.

38. The "disruptive verbal conduct" charge is based on Raja allegedly uttering a profanity under his breath, not during a proceeding or in a courtroom, but in a waiting area while walking away from a clerk's desk.

39. The "appropriation of money charge" is supported by affirmations by three of Raja's disgruntled former clients who alleged that Raja accepted fees from them to file appeals that he did not file. These cases date from 2016, 2017 and January 2018.

40. The OATH prosecutors did not undertake any additional investigation of the clients' allegations. They did not interview Mr. Raja. Nor was there any evidence at the ultimate hearing on these charges that they had interviewed anyone else.

41. Nothing in the summary suspension letter offered any reason whatsoever why Raja should be suspended summarily as opposed to after a hearing or an opportunity to be heard. Most of the allegations were based on affirmations signed years earlier. There was no allegation that Mr. Raja's practice was causing or even threatening imminent harm.

42. The summary suspension was alleged to be "[i]n accordance with OATH rule 6-25(d)(l)," That rule provides: "Notwithstanding the provisions of subdivision (c) of this section [which pertains to penalties for violations of OATH rules], the Chief Administrative Law Judge may summarily suspend or bar a representative upon a determination that the representative lacks honesty and integrity and that the lack of honesty and integrity will adversely affect his or her practice before the Tribunal."

### The Preliminary Injunction Motion

43. On March 7, 2019, the day before the summary suspension was to take effect, Mr. Raja filed this action and a motion for a preliminary injunction or a preliminary restraining order. While, the case was assigned to Judge Donnelly, the motion was argued before Judge Chen, who

denied it. During the argument, Judge Chen expressed doubt that Mr. Raja would be denied a live hearing on the charges against him. But the judge also advised defendants as follows:

> THE COURT: … So perhaps, Ms. Stitelman [defendants' counsel], it is something to take back to your office and the related officers at OATH. To the extent you have any sway over them, I suggest they pay attention to this case… [I]f OATH does not want this Court interfering with what it is doing, it perhaps should hear Mr. Raja out sooner rather than later. All right?
>
> MS. STITELMAN: I understand.

44. On March 14, Mr. Raja filed a detailed written response to the summary suspension letter charges.

### The New OATH Charges

45. On March 19, 2019, defendants served a new set of charges on Mr. Raja in a document styled a "petition." The petition omitted two of the charges stated in the summary suspension letter (relating to failure to register and making a false statement) in an apparent acknowledgement that these charges were false. Along with the petition was a notice that a hearing had been scheduled for March 22.

46. Based on a review of reported OATH decisions, this trial would be the first in which an OATH judge would adjudicate charges filed by an OATH commissioner.

47. The petition, like the summary suspension letter, made several allegations that Mr. Raja had violated OATH Rule 6-25(d)(l).

48. The petition demanded that Mr. Raja be permanently barred from practicing before OATH pursuant to OATH Rule 6-25(d)(l) and OATH Rule § 6-25(c). Rule 6-25(c) allows the OATH Chief Administrative Law Judge or his or her designee to "for good cause, suspend or bar from appearing before the Tribunal an attorney or representative who fails to abide by these rules." It adds, "The suspension may be either for a specified period of time or indefinitely until

9

the attorney or representative demonstrates to the satisfaction of the Chief Administrative Law Judge or his or her designee that the basis for the suspension no longer exists."

49. The petition also added a new allegation based on an affidavit by different former client of Mr. Raja, which was sworn to on October 4, 2018.

50. Defendants undertook no additional investigation concerning the October 2018 charges, but never explained why they had not been included in the summary suspension letter.

51. Mr. Raja denied all the charges in his written response to the summary suspension letter, in his trial testimony and in a written answer to the petition.

### The OATH Trial and Its Resolution

52. OATH Judge Kevin Casey was assigned to preside over the trial as it commenced on March 22. Judge Casey ruled first that he would rule on whether to lift the summary suspension charges first and later on the addition charges included in the petition. He indicated he would be writing a memorandum of decision on all charges.

53. Later on the first day of trial, however, the OATH prosecutor, Tim Jones, produced a so-called designation letter dated March 7 and signed by Mr. Burns. That letter stated that Judge Casey was authorized only to write a report and recommendation to Mr. Burns, who would then issue a final ruling on the charges. Mr. Jones also took the position that Judge Casey had no authority to lift the summary suspension. The result was that Judge Casey never ruled on the propriety of the summary suspension.

54. Later, during the trial, Mr. Burns issued a second designation letter. It permitted Judge Casey to rule on the charges rather than just recommend a ruling to Mr. Burns.

55. At the trial Mr. Jones announced that two of the four clients who had made allegations against Mr. Raja would not appear, but he offered their written affirmations. These

affirmations were accepted into evidence, though Mr. Raja had no opportunity to question these accusers.

56. Mr. Raja's summary suspension remained in effect after the first trial date and indeed after the trial continued on March 28 and on April 4.

57. At the end of the trial, Judge Casey arranged for another OATH ALJ, Judge Kara Miller, to preside over a post-trial settlement conference.

58. Judge Miller presided over one such conference with the parties in court on April 4 and at during follow-up sessions by telephone on April 8. The parties did reach a settlement of the administrative charges, which was reduced to a stipulation of settlement signed on April 11.

59. By its terms, the stipulation of settlement, which was drafted by OATH, is not admissible in any other litigation.

60. There has been no admission of wrongdoing by Mr. Raja

61. Defendants' unlawful actions in suspending Mr. Raja without a hearing and in denying him other aspects of Due Process are intentional.

62. Defendants' unlawful actions are taken either with malice or with reckless indifference to Raja's clearly established constitutional rights.

### FIRST CLAIM FOR RELIEF / DUE PROCESS – SUSPENSION WITHOUT HEARING

63. Plaintiff repeats and re-alleges paragraphs 1 through 63 as if the same were fully set forth herein.

64. By summarily suspending plaintiff's right to practice without affording him any opportunity to be heard, defendants deprived plaintiff of due process of law, and of the rights, remedies, privileges, and immunities guaranteed to every citizen by the Fifth and Fourteenth

Amendments of the United States Constitution of the United States in violation of 42 U.S.C. § 1983.

65. Defendants have acted under pretense and color of State law and in their individual and official capacities and within the scope of their employment. Said acts by said defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly, and with the specific intent to deprive plaintiff of his constitutional rights secured by 42 U.S.C. § 1983 and by the Fifth, and Fourteenth Amendments to the United States Constitution.

66. Defendants' actions were deliberate, reckless, and indifferent to plaintiff's constitutional rights.

**SECOND CLAIM FOR RELIEF / DUE PROCESS – FAIR WARNING OF THE LAW**

67. Plaintiff repeats and re-alleges paragraphs 1 through 66 as if the same were fully set forth at length herein.

68. By defendants' implementing, promulgating, and continuing to enforce and/or effectuate a rule that is unconstitutionally vague, plaintiff has been denied his right to practice his trade without reasonably clear and published standards established by law. In so doing, defendants have deprived and will continue to deprive plaintiff of fair notice, due process of law, and the rights, remedies, privileges, and immunities guaranteed to every citizen of the United States in violation of 42 U.S.C. § 1983 and of rights guaranteed by the Fourth, Fifth and Fourteenth Amendments of the United States Constitution.

69. Defendants' actions were deliberate, reckless, and indifferent to plaintiffs' legal rights.

### THIRD CLAIM FOR RELIEF / DUE PROCESS – FAIR WARNING OF PENALTY

70. Plaintiff repeats and re-alleges paragraphs 1 through 69 as if the same were fully set forth at length herein.

71. By defendants' implementing, promulgating, and continuing to enforce and/or effectuate a penalty scheme that is unconstitutionally vague, plaintiff has been denied his right to practice his trade without fair notice of the penalty that could be imposed. In so doing, defendants have denied plaintiff due process of law, and the rights, remedies, privileges, and immunities guaranteed to every citizen of the United States in violation of 42 U.S.C. § 1983 and of rights guaranteed by the Fourth, Fifth and Fourteenth Amendments of the United States Constitution.

72. Defendants' actions were deliberate, reckless, and indifferent to plaintiffs' legal rights.

### FOURTH CLAIM FOR RELIEF / DUE PROCESS – DENIAL OF RIGHT TO CROSS-EXAMINE

73. Plaintiff repeats and re-alleges paragraphs 1 through 72 as if the same were fully set forth herein.

74. By failing to afford plaintiff a hearing and the right to cross-examine some of his accusers, defendants have deprived plaintiff and will continue to deprive plaintiff of due process of law, and of the rights, remedies, privileges, and immunities guaranteed to every citizen by the Fifth and Fourteenth Amendments of the United States Constitution of the United States in violation of 42 U.S.C. § 1983.

75. Defendants have acted under pretense and color of State law and in their individual and official capacities and within the scope of their employment. Said acts by said defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of

their powers, and said defendants acted willfully, knowingly, and with the specific intent to deprive plaintiff of his constitutional rights secured by 42 U.S.C. § 1983 and by the Fifth, and Fourteenth Amendments to the United States Constitution.

76. Defendants' actions were deliberate, reckless, and indifferent to plaintiff's constitutional rights.

### FIFTH CLAIM FOR RELIEF / NYC CHARTER

77. Plaintiff repeats and re-alleges paragraphs 1 through 76 as if the same were fully set forth herein.

78. By suspending plaintiff without a hearing, by failing to afford plaintiff a hearing and the right to cross-examine all of his accusers and by suspending and otherwise penalizing plaintiff without reasonably clear standards and without reasonably clear penalty provisions, defendants have deprived plaintiff and will continue to deprive plaintiff of his rights under the Section 1046 of the New York City Charter, which requires that all parties shall be afforded an opportunity for a hearing within a reasonable time, that the parties be afforded due process of law, including the opportunity to be represented by counsel, to issue subpoenas or request that a subpoena be issued, to call witnesses, to cross-examine opposing witnesses and to present oral and written arguments on the law and facts.

79. Defendants' actions were deliberate, reckless, and indifferent to plaintiff's rights.

### SIXTH CLAIM FOR RELIEF / OATH RULES

80. Plaintiff repeats and re-alleges paragraphs 1 through 80 as if the same were fully set forth herein.

81. By suspending plaintiff without a hearing, by failing to afford plaintiff a hearing and the right to cross-examine his accusers, and by suspending and otherwise penalizing plaintiff without reasonably clear standards and without reasonably clear penalty provisions defendants

have deprived plaintiff and will continue to deprive plaintiff of his rights under OATH rules, including OATH Rule 6-11, which states that each party has the right to present evidence, to examine and cross-examine witnesses, to make factual or legal arguments and to have other rights essential for due process and a fair and impartial hearing.

82. Defendants' actions were deliberate, reckless, and indifferent to plaintiff's rights.

**WHEREFORE**, Plaintiff requests that the Court grant the following relief:

a. A judgment declaring that the Defendants violated the federal Constitution, New York common law and Local Law;
b. A declaration that the OATH rules under which Mr. Raja was prosecuted and penalized are unconstitutionally vague;
c. A declaration that the defendants' suspension of plaintiff's right to practice before affording him a fair hearing on the charges against him was unconstitutional;
d. A declaration that the defendants may not suspend plaintiff's right to practice without allowing him a some kind of hearing where he is entitled to present evident and state his defenses;
e. An order that defendants remove plaintiff's name from the published list of suspended or barred representatives;
f. Compensatory damages, including damages for lost income, out of pocket expenses and emotional harm, in an amount to be determined at trial;
g. Punitive damages against the individual defendants in an amount to be determined at trial;
h. An order awarding disbursements, costs, and attorney's fees; and
i. Such other and further relief as this Court may deem just and proper.

Dated: New York, New York
April 15, 2019

/s/
Daniel L. Ackman
Law Office of Daniel L. Ackman

222 Broadway, 19th Floor
New York, NY 10013
Tel: (917) 282-8178
E-mail: dan@danackmanlaw.com

*Attorney for Plaintiff*