UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
X----------------------------------------------------------------X

RIZWAN RAJA,

                             Plaintiff,         **19-cv-01328 (AMD)**

       -Against-

JOHN W. BURNS and THE CITY OF NEW YORK,

                        Defendants.

X----------------------------------------------------------------X


## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
## <u>MOTION FOR PARTIAL SUMMARY JUDGMENT</u>


**Daniel L. Ackman**
Law Office of Daniel L. Ackman
222 Broadway, 19th Floor
New York, NY 10038
Tel: (917) 282-8178
dan@danackmanlaw.com

**Attorney for Plaintiff**

**June 11, 2019**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................1

FACTUAL AND LEGAL BACKGROUND ........................................................2

  Rizwan Raja, His Practice and the OATH-TL Tribunal.................................2

  The Summary Suspension and Charges ........................................................5

  Raja's Response ..............................................................................................8

  The Petition and the Confusion Concerning Jurisdiction ...........................10

  Trial and Settlement .....................................................................................12

ARGUMENT.........................................................................................................12

  I.   STANDARD OF REVIEW ......................................................................12

  II.  OATH'S SUSPENSION OF RAJA WITHOUT
       ANY FORM OF HEARING DENIED HIM DUE
       PROCESS OF LAW ................................................................................13

     A.  The General Rule Requires a Pre-Suspension Hearing .......................13

     B.  *Locurto* and *Schneider* do not Support Defendants' Position ...............16

     C.  *All* Three Prongs of the *Mathews* Test Favor Plaintiff  ..........................16

     1.  The Private Interest is Profound ...................................................17

     2.  The Risk of Error is High ............................................................ 17

     3.  OATH's Interest in Summary Process is Minimal  .........................19

  III. OATH RULES 6-25(D) AND 6-25(C) ARE
       UNCONSTIUTIONALLY VAGUE BOTH AS TO
       CONDUCT AND PENALTY ..................................................................20

  IV. THE SETTLEMENT OF THE ADMINISTRATIVE
       CASE DOES NOT BAR THIS ACTION ...............................................24

CONCLUSION ......................................................................................................25

## TABLE OF CASES

**Cases**                                                                                                **page(s)**

*Bailey v. Pataki*, 708 F.3d 391 (2d Cir. 2013) ...........................................................18, 19

*Barry v. Barchi*, 443 U.S. 55 (1979) ...........................................................................14

*Bell v. Burson*, 402 U.S. 535 (1971) ...........................................................................14

*BMW of North America, Inc. v. Gore*, 517 U.S.
   559 (1996) ............................................................................................................23

*Carey v. Piphus*, 435 U.S. 247 (1978) ........................................................................24

*Carlson v. Green*, 446 U.S. 14 (1980) ........................................................................24

*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985) .........................................16

*Connecticut v. Doehr,* 501 U.S. 1 (1991). ..............................................................18, 19

*Delaney v. Bank of Am. Corp.*, 766 F.3d 163 (2d Cir. 2014)..........................................13

*El Boutary v. City of New York*, No. 118CV3996ARRJO,
   2018 WL 6814370 (E.D.N.Y. Dec. 26, 2018)..............................................14, 18, 19

*FCC v. Fox Television Stations, Inc.*,132 S.Ct. 2307 (2012)....................................21, 22

*FDIC v. Mallen*, 486 U.S. 230 (1988) .........................................................................15

*Fuentes v. Shevin*, 407 U.S. 67 (1972).........................................................................15

*Gilbert v. Homar*, 520 U.S. 924 (1997) ..........................................................15, 18, 20

*Goldberg v. Kelly*, 397 U.S. 254 (1970) .....................................................................16

*Harrell v. City of New York*, 138 F.Supp. 3d 479 (S.D.N.Y. 2015) .................................15

*Johnson v. United States*, 135 S.Ct. 2551 (2015) .........................................................22

*Kerman v. City of New York*, 374 F.3d 93 (2d Cir. 2004) ..............................................24

*Locurto v. Safir*, 264 F.3d 154 (2d Cir. 2001) .............................................................16

*Mackey v. Montrym*, 443 U.S. 1 (1979)........................................................................14

*Mathews v. Eldridge*, 424 U.S. 319 (1976).............................................................16, 17

*New Windsor Volunteer Ambulance Corps, Inc. v. Meyers,*
    442 F.3d 101 (2d Cir. 2006) ...................................................14

*Nnebe v. Daus*, 644 F.3d 147 (2d Cir. 2011) ...................................13, 14, 17, 18

*Patterson v. Coughlin*, 905 F.2d 564 (2d Cir.1990) ...........................................21

*Padberg v. McGrath-McKechnie*, 203 F.Supp.2d 261
    (E.D.N.Y. 2002) ...................................................15, 17, 18, 20

*Rothenberg v. Daus*, 2012 WL 1970438 (2d Cir. 2012)......................................21

*Schneider v. Chandler*, No. 16CV6560 (DLC),
    2018 WL 770395 (S.D.N.Y. Feb. 7, 2018) ................................16

*SEC v. Sloan*, 436 U.S. 103 (1978)...................................................................21

*Sessions v. Dimaya*, 138 S.Ct. 1204 (2018)........................................................21

*Smith v. Wade*, 461 U.S. 30 (1983) ...................................................................25

*Soto v. Gaudett*, 862 F.3d 148 (2d Cir. 2017)....................................................13

*Spinelli v. City of New York*, 579 F.3d 160 (2d Cir. 2009) ...............................14

*United States v. James Daniel Good Real Prop.*, 510 U.S.
    43 (1993).................................................................14, 15

*United States v. Rybicki*, 354 F.3d 124 (2d Cir. 2003) .....................................22

*Velez v. Levy*, 401 F.3d 75, 101 (2d Cir. 2005).............................................14, 15

*Zinermon v. Burch*, 494 U.S. 113 (1990)...........................................................15

**Preliminary Statement**

For more than 14 years, Rizwan Raja has served as industry representative in the NYC Taxi and Limousine tribunals, representing thousands of taxi driver clients. Suddenly, on March 1, 2019, the City's Office of Administrative Trials and Hearings (OATH) informed Raja by e-mail and an attached letter that OATH was summarily suspending his right to practice. This suspension would last 35 days. OATH suspended Raja without any hearing in the face of the settled principle that Due Process generally requires a state to afford its citizens some kind of hearing' prior to depriving them of property. It did so despite the fact that all the charges unproven and were based on one-sided affirmations drafted by an OATH employee for disgruntled clients, most of whom would not show up to testify at trial, and pertained to conduct that had occurred years before the suspension. It continued that suspension even after it quickly dropped two of its charges as plainly false. OATH did so even though it did not even allege that Raja or his practice represented any imminent threat. For these reasons, the summary suspension of Raja's right to practice and this cessation of his livelihood was in plain violation of Raja's right to Due Process of Law.

Later, OATH issued a so-called Petition asserting that Raja should be permanently barred from the OATH Tribunal. This petition relied on asserted violations of OATH Rule 6-25(d)(1), which permits OATH's Chief Administrative Law Judge to "summarily suspend or bar a representative upon a determination that the representative lacks honesty and integrity and that the lack of honesty and integrity will adversely affect his or her practice before the Tribunal." The enforcement of this rule against Raja is also a denial of Due Process in that the rule's vagueness denied him of fair warning not only of the conduct that would subject him to punishment, but also of the severity of the penalty might be imposed.

While Raja and OATH ultimately settled the administrative charges against him, that settlement included no admission of wrongdoing and, by its terms, is not admissible in any other litigation (such as this one). For these reasons, the settlement does not bar Raja from prosecuting the violation of his federal constitutional rights through this action and it does not prevent him from seeking compensatory (or punitive or nominal) damages. As the relevant facts are undisputed, Raja is entitled to summary judgment as to liability on Counts I-III of the Amended Complaint.

## FACTUAL AND LEGAL BACKGROUND

### Rizwan Raja, His Practice and the OATH-TL Tribunal

Rizwan Raja, 47, was born and raised in Pakistan. After earning degrees in both law and accounting, he immigrated to the United States in 1996 and gained his United States citizenship in 2002. Raja speaks Urdu, Hindi and Punjab as well as English. Declaration of Rizwan Raja (RRD) ¶¶ 2, 5. This ability benefits his taxi driver clients as more than 45 percent of yellow taxi drivers were born in South Asia. TLC 2018 Taxicab Factbook at 15.[1] In addition to serving his clients, since 1998 Raja has served on the organizing committee of the New York Taxi Workers Alliance (NYTWA), an advocacy group for yellow cab, green car, black car, livery and app-dispatched drivers. RRD ¶ 6. Prior to his career as a registered representative, Raja worked for the Bank of New York, for MetroPlus, a HMO company, and as a yellow taxi driver. RRD ¶ 7.

Raja became a registered (or industry) representative at the TLC Tribunal in 2005. In order to be qualified as a representative at that time, applicants were required to sit for and pass an examination, demonstrating their knowledge of TLC rules and procedures. Approximately 18

---

[1] The Factbook is published by the TLC in 2018 and is available on the TLC website at https://www1.nyc.gov/assets/tlc/downloads/pdf/2018_tlc_factbook.pdf.

applicants sat for the exam along with Raja. Just three passed. RRD ¶ 8; Ex. 1.[2] Raja continued

to serve full time in that capacity after it was transferred to OATH and became known as the

OATH-TL Tribunal.[3] Currently, the tribunal employs 71 part-time hearing officers and presides

over 160,000 cases annually involving the city's more than 130,000 for-hire vehicle drivers as

well as vehicle owners, agents and brokers. Executive Order 148; OATH: The Central Tribunal

for the City of New York.[4]

The rules governing TLC drivers are voluminous and often complex. Chapter 80 of the

TLC Rules, which pertains to taxi and for-hire vehicle drivers, combines the previous chapters

54 and 55 and extends to 62 pages. Chapter 58, which covers the obtaining of taxicab license and

rules for operating a taxicab, is 108 pages. Chapter 68, which pertains to adjudications,

suspensions, revocations and the seizure of unlicensed vehicles, is 23 pages long. The TLC rules

also contain an additional 18 chapters, though mostly not pertinent to the daily operations of taxi

drivers. There are also NYC Administrative Code provisions and rules that govern non-TLC

drivers who engage in unlicensed activities. *See, e.g.*, NYC Code § 19-506.

The penalties for violating TLC rules can be substantial. To cite a few examples,

mandatory fines for refusing service range from $350-$1000. TLC Rule 80-02(e). Fines for

overcharging a passenger less than $10 are in the same range. *Id.* But if the overcharge exceeds

$10, the driver's license will be revoked. TLC Rule 80-02(e)(1). "Acts Against the Public

Interest" can merit a fine of up to $350 plus a suspension of up to 30 days. TLC Rule 80-12(d).

---

[2] Exhibits are, unless otherwise noted, to the declaration of Daniel L. Ackman, sworn to on June 11, 2019. Many of the same exhibits were submitted during the OATH proceedings.

[3] The TLC Tribunal was transferred to OATH in 2011 by Executive Order 148. Available at http://www.nyc.gov/html/ajc/downloads/pdf/eo_148.pdf.

[4] Available at https://www1.nyc.gov/assets/international/downloads/pdf/Presenting%20OATH%20The%20city's% 20central%20tribunal.tr.pdf

Reckless driving can result in a fine of $350-$1000. TLC Rule 80-14(a). Using a cell phone can lead to a $350 fine. TLC Rule 80-14(e). Failing to "comply with all reasonable and lawful routing requests of the Passenger" can result in a $150 fine. TLC Rule 80-16. Other rules cover all aspects of driving a taxi and serving passengers. TLC courts may also adjudicate traffic law violations, which can result in fines plus "points" on a license. TLC Rule 80-13.

Beyond individual rules, the TLC Rules impose penalties on drivers for accumulating points based on adjudicated violations. A driver who accumulates ten or more points within a 15-month period may have his or her license revoked. Applying this Rule can be complicated in that "When determining whether a suspension or revocation is required based on the accumulation of points in a 15-month period, the Commission will count backwards 15 months from the date of the most recent conviction for the violation carrying points that is cited in the summons under this section." TLC Rule 80-17. In addition to the rules, there is case law that is made available through searchable online databases maintained by OATH and the Center for New York City Law. *See* https://www1.nyc.gov/site/oath/trials/search-decisions.page. At least 15 separate rules in Chapter 80 alone may lead to revocation. More than 25 rules permit license suspension.

Taxi driver respondents at the tribunal may appear without counsel. But given the complexity of the rules, the magnitude of the fines and the possibility of suspension or revocation, many seek assistance. If they retain counsel, they must do so at their own expense. *See* OATH Rule 1-11. A large majority of the persons who act for respondents in the tribunal are representatives, not lawyers. OATH does not publish a list of authorized representatives, but it does publish a "list of representatives who have been suspended or permanently barred from appearing before the OATH Hearings Division." As of March 2, Raja's name was already on that list even though his summary suspension had not yet taken effect. *See* OATH website,

- 4 -

https://www1.nyc.gov/site/oath/clerks-office/registered-representatives.page. To make matters worse, Raja's name still appears on the list of suspended drivers even though his suspension ended on May 9.

While Raja acts in an extremely high volume of cases, he keeps meticulous records of his clients and their matters. Since 2010, Raja has handled 20,000 cases. To be sure, only a minority of these cases results in hearings with the rest being resolved by settlement. RRD ¶ 18. About 70% of Raja's cases come from referrals by NYTWA, whose members pay Raja a discounted fee. RRD ¶ 19. In addition to hearings, Raja submits appeals, which tend to be brief, written arguments submitted through the tribunal website. RRD ¶ 20.

Raja's abilities are respected by the tribunal's judges and by his colleagues, who know him as competent, knowledgeable, honest and composed. *See* Declaration of Isaac Godinger. His services are important to the New York Taxi Workers Alliance, which arranges for Raja to represent its members for a discounted fee. *See* Declaration of Bhairavi Desai. PX 6 (Desai). Raja is the sole breadwinner for his wife and four children, the oldest of who is in college. RRD ¶ 4. The summary suspension that OATH imposed was open-ended as the suspension letter did not schedule a hearing and imposed no time limit for OATH to decide whether anypenalt was warranted or whether the summary suspension itself was proper.

### The Summary Suspension and Charges

During his entire career, neither the TLC not OATH had accused Raja of misconduct of any kind. RRD ¶ 21. Suddenly, without so much as an interview, on March 1, 2019, OATH Assistant General Counsel Timothy R. Jones sent Raja an e-mail with the subject heading "Summary Suspension Pursuant to 48 RCNY Section 6-25(d)(1)." PX 1. It attached a summary suspension letter dated February 28 and signed by defendant John W. Burns as First Deputy Commissioner and Supervising Administrative Law Judge of OATH. PX 2. The e-mail informed

Raja, "Pursuant to 48 RCNY Section 6-25(d)(1), you are hereby summarily suspended **starting**

**March 8, 2019**, for incidents discussed in the annexed Summary Suspension letter." The e-mail

itself continued, "If you wish to refute the allegations of misconduct … submit a letter to [Burns]

no later than March 22, 2019. If you do not respond by March 22, 2019, First Deputy

Commissioner Burns will render a final determination in this matter pursuant to 48 RCNY § 6-

25(d)(1)." In other words, the charges were *issued by Burns and would be resolved by Burns with*

*no live hearing planned.*

      The suspension letter listed six allegations, all based on conduct that had occurred from

six to 30 months earlier:

> (1) that in 2016 Raja appeared as a representative despite having failed to register as a representative for that year in violation of OATH Rule 6-23(b), which requires that non-lawyer representatives register annually;

> (2) that in November 2016 Raja misrepresented his qualifications to taxi driver Mohammed Siddiquee "so as to mislead" him "into believing" that he was an attorney in violation of OATH Rules § 6-23(d) and 6-25(d)(l);

> (3) that also in November 2016 Raja accepted a $100 fee from Siddiquee to file an appeal, but did not file it, violating OATH Rule 6-25(d)(l);

> (4) that in May 2017 Raja accepted a $100 or $150 fee from Saiful Alam to file an appeal which he did not file in violation of OATH Rule 6-25(d)(l);

> (5) that in December 2017 Raja accepted a $150 fee from Kwaku Adu to file an appeal and did not file that appeal, but instead returned the fee

> (6) that in August 2018 Raja "engag[ed] in disruptive verbal conduct that a reasonable person would believe shows contempt or disrespect for the proceedings or that a reasonable person would believe to be intimidating" in violation of OATH Rule 6-25(a)(2).

The letter added that on an unspecified date and in unspecified circumstances Raja "submit[ed] a

false statement" to the tribunal.

      The summary suspension letter made no suggestion that any investigation was ongoing; it

sought no evidence of information from Raja. It did attach affirmations signed by several of

Raja's former clients. But the most recent affirmation (by Adu) was dated February 14, 2018, more than a year before the summary suspension order. PX 2, Ex.5.[5]  Neither the e-mail nor the suspension letter claimed that Raja threatened imminent, immediate or ongoing harm whether to the tribunal or to his clients. Neither offered any rationale why Raja should have been suspended without a hearing as opposed to after the charges against him were tried or otherwise resolved.

At a later OATH trial of these charges, it became apparent that each of these affirmations was drafted by Kieran Holohan, who had taken a position titled Ombudsperson and Pro Se Clerk at OATH in January 2017. Tr. 277.  After drafting the affirmations for the driver-client's signature, Holohan would prepare a so-called "Incident Report" about the events at issue for the OATH general counsel. PX 4, 5; Tr. 314, 318. None of these incident reports were attached to the February 28, 2019 suspension letter. It became apparent through discovery, however, that Holohan attached to the incident reports his own detailed summary of the alleged misconduct, his commentary and his assertion of what rules the alleged conduct violated. PX 13. Holohan also included his recommendation as to the appropriate penalty. Indeed, in each case, Holohan recommended the same penalty and the most draconian penalty: summary suspension and a permanent bar from the OATH tribunal.

Holohan's report regarding Alam is dated December 5, 2017. PX 4. The incident concerning Siddiquee and Adu (both of whom never appeared at the later administrative trial) is dated March 24, 2018. PX 5. In short, all of Holohan's reports concerning the alleged violations of OATH Rule 6-25(d)(l) were submitted to the OATH general counsel at least 11 months before the summary suspension—and concerned events that occurred months or years before the

---

[5] The other affirmations were signed by Siddiquee on January 19, 2018, which concerned events of November 2016, and by Alam on November 29, 2017, concerning events of that month.

affirmations were signed. Neither Holohan nor anyone else at OATH conducted any further investigation after filing the incident reports. Tr. 307, 312-315, 333-334, 345.

### Raja's Response

On March 7, the day before his summary suspension would take effect, Raja moved for a preliminary injunction or temporary restraining order, asking this Court to restrain defendants from suspending him. That motion was heard by Judge Chen, who denied it from the bench and denied reconsideration of that order. ECF 3/8/19 Min. Entry & #9. Raja then submitted to OATH a detailed refutation of the charges on March 14, eight days before the deadline, in the hope that his summary suspension would be lifted swiftly.

Raja's response included a letter brief and a detailed declaration by him, denying the allegations in the summary suspension letter. PX 6. He also submitted supporting documents, including declarations by Isaac Godinger, a lawyer with decades of experience in the TLC Tribunal and the OATH-TL Tribunal, and by Bhairavi Desai, the Executive Director of the New York Taxi Workers Alliance, which has arranged for Mr. Raja to represent its members, and by longtime clients. Godinger, a lawyer for 45 years, who practices at OATH and in many courts, swore: "I have often referred clients to [Raja], or had him assist me in their representation, when I was unable to appear at the TLC-OATH Tribunal. I have never heard any of them complain about his services." PX 6 (Godinger Dec.). Godinger added:

> In my view, Mr. Raja is very well respected by lawyers who appear at the
> Tribunal, as well as by his fellow TLC representatives and by Tribunal
> judges. Certainly, I view him as an honest, knowledgeable and skilled
> advocate for drivers. The Tribunal is a very stressful environment in which
> a lawyer or representative might have ten or more cases and several
> hearings in one day. Still Mr. Raja almost always maintains his composure.
> I have never seen him solicit clients or seek an unfair advantage. I have
> never heard anyone claim that Mr. Raja is dishonest or lacks integrity. If
> his right to practice were to be suspended, it is my understanding that it

would do substantial harm not just to him and his family, but to the respondents he represents at the TLC-OATH Tribunal.

As to the specific charges, in brief summary, Raja demonstrated that the "failure to register" allegation was simply false by attaching his registration form for calendar year 2016 to his declaration. Raja Declaration (RRD) ¶ 24, PX 7. Moreover, the summary suspension letter itself includes copies of Raja's registration forms dated 2017 and 2018, which he could have been barred from filing had he not registered in 2016 pursuant to OATH Rule 6-23(b). *See* PX 2 at Ex. 1 & 2. The "false statement" charge was not detailed in any way. As to the charge that Raja claimed he was a lawyer to one client during his 14 years of practice, Raja noted that Siddique, his accuser, also claimed that Raja gave him a business card on which Raja identified himself as an industry representative. PX 2, Ex. 3, ¶ 9. The "disruptive verbal conduct" charge is based on Raja allegedly uttering a profanity under his breath, not during a proceeding or in a courtroom, but in a waiting area while walking away from a clerk's desk. PX 2 at 3.

Raja denied that he misappropriated money from or made any false statements. Siddique, never paid him a fee, Raja said; the reason he did not file was that he was never retained. Raja's contemporaneous notes and a review of his bank records confirmed Raja's recollection of this event. In two cases, his clients willingly gave him funds in exchange for a service. This not misappropriation. The other two clients did pay him a fee, Raja said, but he was not able to file their appeals for reasons beyond his control. Nevertheless, he did his best to make good on his obligation. RRD ¶¶ 29-37.

In Alam's case, Raja took the first step toward an appeal, which was to order an audiotape of the hearing at which Raja had not appeared. For reasons unknown, the audiotape was delayed. Until that time, the tribunal's practice had been to permit a late filing of the appeal when the audiotape had been ordered but not produced. In this event, however, the court refused

to permit a late filing. To make good on the fee that Alam paid, Mr. Raja offered to appear in two new matters free of charge, which he did. RRD ¶ 34.

In Adu's case, the driver had been cited for running a red light based on evidence from a red-light camera. In such cases, vehicle owners are served summonses by the Department of Transportation/Parking Violations Bureau. TLC-licensed drivers (even if not the owner) may also be cited by the TLC. Where the driver was also the vehicle owner, the TLC OATH appeals tribunal had been dismissing such summonses on double jeopardy grounds. Thus Mr. Raja's practice was to check whether the respondent was the owner of the vehicle in question. When he checked with the OATH clerk, he was told that Adu did not own the vehicle. RRD ¶¶ 35-36. Under these circumstances, there was no viable appeal. Mr. Raja's contemporaneous note states: "Not an owner driver. Appeal can't be filed." PX 8.

Moreover, Mr. Raja did not "appropriate" the fee. He returned it, as Adu himself stated in paragraph 12 of his affirmation and which is reflected in Mr. Raja's notes. Returning the money itself defeats any misappropriation charge. At most, Adu's affirmation alleges neglect or breach of contract. But in reality, Mr. Raja did nothing wrong. He was under no obligation to file what would have been a frivolous appeal.  Not filing and returning the fee was a correct and honest course of action. Every representative (like every lawyer) makes mistakes, but not every mistake is dishonest.

In sum, certain suspension letter charges could be dismissed out of hand. Others might have to be resolved based on opposing testimony and credibility assessments. None of the charges were self-evident; all were disputed. None merited a summary suspension.

### The Petition and the Confusion Concerning Jurisdiction

Upon receipt of Raja's response to the suspension letter, OATH took no action as to Raja's demand that his summary suspension be lifted. Instead, on March 19, OATH notified

Raja that it had scheduled a hearing for March 22. On the same day, OATH served a new set of

charges in a so-called Petition along with an extensive a discovery demand. PX 9, 10. The

petition dropped two of the charges stated in the summary suspension letter, one alleging a

failure to register the other alleging a false statement. Meanwhile, it added one new charge based

on events that occurred between late August and early October, 2018. The new charge was based

on the affirmation by a taxi driver whose license had been revoked by the TLC and who retained

Raja in the hope Raja could convince the agency to reinstate him. Raja, the driver alleged, failed

to complete that assignment because the driver achieved reinstatement himself and  he demanded

a refund. The petition demanded that Raja be permanently barred from OATH.

On the first day of trial, with OATH ALJ Kevin Casey presiding, Timothy Jones, the

OATH prosecutor stated that the trial was not to determine whether Raja's suspension should be

lifted, but would determine only whether Raja should be banned permanently. Tr. 27. Judge

Casey disagreed at least initially, saying he would rule on the summary suspension after hearing

one day of testimony. Tr. 35.

But in the middle of the day, Jones presented Judge Casey with a so-called designation

letter from Deputy Chair Burns, that indicated that Casey lacked authority to rule on the merits

of the petition or the summary suspension. Tr. 143-44. Jones told the judge: "[W]e [that is,

OATH] believe that you do not have the authority to lift a summary suspension." Tr. 143.

Instead Judge Casey would only issue a report and recommendation Burns, the same individual

who signed the suspension letter. Based on the designation letter, Judge Casey changed his

earlier ruling and said that he would not determine the propriety of the summary suspension at

the end of the day. Tr. 159. Thus the summary suspension of Raja continued without any ruling

on its propriety.[6] Later in the trial, OATH changed its position again and said that Judge Casey could issue a decision on the charges rather than just report and recommend, but it did not, according to Judge Casey, allow for an immediate ruling on the summary suspension. Tr. 270, PX 11.

### Trial and Settlement

The trial continued for three separate days, ending on April 4. Judge Casey heard testimony from two to Raja's former clients. The other two who had signed affirmations, however, failed to appear. He also heard testimony from Holohan, two OATH employees who aided Holohan in drafting one of the client affirmations, from the OATH employee who happened to hear Raja mutter a profanity in a waiting area, from Raja, from Godinger and from Desai. Judge Casey also heard summations. He did not, however, resolve the allegations. Nor did Judge Casey rule on the propriety of the summary suspension.

Near the end of the trial, however, Judge Casey asked the parties if they would agree to discuss possible settlement with another OATH ALJ, Kara Miller. After a series of conference calls between Judge Miller, the parties and counsel, with Raja still facing the possibility of a permanent ban, the parties reached a settlement, which was reduced to writing and signed on April 11. Ackman Dec. ¶¶ 2-3.  That settlement agreement was filed under seal in this Court. As was noted in open court on May 15, the settlement does not contain any admission of wrongdoing and it specifically states: "This Stipulation shall not be admissible in, nor is it related to, any other litigation or settlement negotiation." ECF #21 (filed under seal). Thus the summary suspension extended from March 8 through April 11, 35 days.

---

[6] Judge Casey urged "Mr. Jones, to speak to whoever you need to speak to at the other -- at -- whoever you need to speak to about this, seriously reevaluate your position, and consider giving me explicit authority to issue a memorandum decision." Tr. 157.

**ARGUMENT**

### I.    STANDARD OF REVIEW

To be entitled to summary judgment, a movant must show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is appropriate where "the evidence, viewed in the light most favorable to the [opposing] party …, demonstrates that there are no genuine issues of material fact and that the judgment is warranted as a matter of law." *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 167 (2d Cir. 2014) (internal quotation omitted). "Summary judgment is appropriate when there can be but one reasonable conclusion as to the verdict, *i.e.*, it is quite clear what the truth is, and no rational factfinder could find in favor of the nonmovant." *Soto v. Gaudett*, 862 F.3d 148, 157 (2d Cir. 2017) (internal citations and quotation marks omitted). In determining whether an award is appropriate, the Court should consider the "pleadings, deposition testimony, answers to interrogatories and admissions on file, together with any other firsthand information including but not limited to affidavits." *Nnebe v. Daus*, 644 F.3d 147, 156 (2d Cir. 2011). In this case, plaintiffs' factual statements are supported by documentary evidence, sworn hearing testimony and defendants' admissions.[7]

### II.    OATH'S SUSPENSION OF RAJA WITHOUT ANY FORM OF HEARING DENIED HIM DUE PROCESS OF LAW

#### A.  The General Rule Requires a Pre-Suspension Hearing

A registered representative is not granted a license in so many words. But once registered, he or she has the right to appear before OATH, a right that may only be "suspend[ed] or bar[red] … for good cause." OATH Rule OATH Rules 1-11, 6-23, 6-24, 6-25(c). A

---

[7] To be clear, plaintiff does not contend that the merits of the administrative charges are undisputed. But there is no dispute about the nature and timing of the allegations.

representative may renew his right to appear annually by filing a new registration. OATH Rule 6-23(b). For that reason, a representative's right to practice is functionally equivalent to a state-issued license that may be suspended or revoked only for cause.

"Once licenses are issued, ... their continued possession may become essential in the pursuit of a livelihood." *Bell v. Burson*, 402 U.S. 535, 539 (1971). The Supreme Court and the Court of Appeals have consistently held that individuals have a protected property interest in trade licenses and other licenses where they may only be revoked for cause or "a satisfactory showing" of wrongdoing. *See, e.g.*, *Barry v. Barchi*, 443 U.S. 55, 64 & n. 1 (1979); *Mackey v. Montrym*, 443 U.S. 1, 10 (1979). As the Court of Appeals stated in *Spinelli v. City of New York*, "Where a license can be 'suspended only upon a satisfactory showing' of misconduct, the licensee has 'a property interest in his license sufficient to invoke the protection of the Due Process Clause." 579 F.3d 160, 169 (2d Cir. 2009) (quoting *Barry*, 443 U.S. at 64). In such circumstances, the right created by state law may be suspended or revoked only after the licensee is afforded due process of law. *See, e.g.*, *Barry*, 334 U.S. at 64 (horse trainer's license); *Mackey*, 443 U.S. at 11 (driver's license); *Bell*, 402 U.S. at 539 (1971) (driver's license); *Spinelli*, 579 F.3d at 169  (gun dealer's license); *Nnebe v. Daus*, 644 F.3d at 158 (taxi driver's license).

As Judge Ross recently wrote in *El Boutary v. City of New York*, a case involving the summary suspension of a taxi driver's license, "[I]t has long been settled that due process generally requires a state to afford its citizens 'some kind of hearing' prior to depriving them of property." No. 118CV3996ARRJO, 2018 WL 6814370, at *10 (E.D.N.Y. Dec. 26, 2018), (quoting *Velez v. Levy*, 401 F.3d 75, 101 (2d Cir. 2005)). Many Supreme Court and Second Circuit cases speak to this basic rule. In *United States v. James Daniel Good Real Prop.*, for example, the Court wrote that the constitutional guarantee of due process means that, in general,

- 14 -

"individuals must receive notice and an opportunity to be heard before the Government deprives them of property." 510 U.S. 43, 48 (1993). In *New Windsor Volunteer Ambulance Corps, Inc. v. Meyers,* the Second Circuit wrote, "In general, 'the Constitution requires some kind of a hearing before the State deprives a person of liberty or property.'" 442 F.3d 101, 115–16 (2d Cir. 2006) (quoting *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original); *see also Harrell v. City of New York*, 138 F.Supp. 3d 479, 488 (S.D.N.Y. 2015) (applying general rule to the TLC's warrantless seizure of vehicles); *Padberg v. McGrath-McKechnie*, 203 F.Supp.2d 261, 276 (E.D.N.Y. 2002), aff'd 60 Fed. Appx. 861 (2d. Cir.), cert. denied, 540 U.S. 967 (2003) (taxi driver's license).

"The purpose of this requirement is not only to ensure abstract fair play to the individual. Its purpose, more particularly, is to protect his use and possession of property from arbitrary encroachment—to minimize substantively unfair or mistaken deprivations of property . . . ." *James Daniel Good*, 510 U.S. at 53 (quoting *Fuentes v. Shevin*, 407 U.S. 67, 80–81 (1972)). Thus, as Judge Ross also noted, the government may dispense with "predeprivation notice and hearing . . . only in 'extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event.'" *Id*. (quoting *Fuentes*, 407 U.S. at 82). While there are, of course, exceptions to the general rule, the exception applies in extraordinary situations exist only where there is (1) "[a]n important government interest," (2) "a substantial assurance that the deprivation is not baseless or unwarranted," and (3) a need for "prompt action." *Gilbert v. Homar*, 520 U.S. 924, 930–31 (1997) (quoting *FDIC v. Mallen*, 486 U.S. 230, 240 (1988)).

There is no ground for an exception in this case. While OATH may have an interest in ensuring that the representatives (or the lawyers) appearing in its tribunals act with integrity, it

has no interest in their immediate removal without a hearing. Nor is there any assurance in this case that the deprivation was not baseless or unwarranted. To the contrary, it could be, and probably was, both.

### B.  *Locurto* and *Schneider* do not Support Defendants' Position

The cases on which Judge Chen relied in denying the TRO do not support OATH's disregard for the general rule. In *Schneider v. Chandler*, No. 16CV6560 (DLC), 2018 WL 770395 (S.D.N.Y. Feb. 7, 2018), the issue was not whether the plaintiff, Steven Schneider, was entitled to pre-deprivation process. Before he was suspended, Schneider had been afforded a several hours long meeting with the licensing agency, where he was accompanied by counsel. 2018 WL 770395 at *1. Schneider was also offered a second meeting before the suspension would go into effect, which he declined. Here, OATH did not meet with or interview Raja even once. In *Locurto v. Safir*, 264 F.3d 154 (2d Cir. 2001), the plaintiffs did not claim that they were denied a hearing. They complained instead that the commissioners, who reviewed and accepted the ALJs' recommended decisions were not neutral. It was this claim—the lack of a neutral judge pre-deprivation—that the Court of Appeals rejected. Neither case speaks at all to the issues in this action.

### C.  All Three Prongs of the *Mathews* Test Favor Plaintiff

The possibility of an exception to the general rule requiring a pre-suspension hearing is often assessed by reference to the three-prong balancing test enunciated in *Mathews v. Eldridge*, 424 U.S. 319 (1976). Under *Mathews*, the Court must consider: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved

and the fiscal and administrative burdens that the additional or substitute requirement would entail." 424 U.S. at 335. Here, all three factors favor plaintiff.

### 4. The Private Interest is Profound

The first *Mathews* factor is "the private interest that will be affected by the official action." *Id*. Here, Raja's interest in his de facto registration license is enormous. *See Nnebe*, 644 F.3d at 159 (concerning a taxi driver's license); *Padberg*, 203 F. Supp. 2d 261, 277 (E.D.N.Y. 2002) ("Plaintiffs' interest in their taxicab license is profound. Suspending their [licenses] does far more than inconvenience drivers; it deprives them of their very livelihood."). As Judge Dearie noted in *Padberg*, "The Supreme Court has recognized on a number of occasions that a person's means of support enjoys heightened significance as a property interest." 203 F.Supp.2d at 277-78 (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 543 (1985); *Bell*, 402 U.S. at 539, and *Goldberg v. Kelly*, 397 U.S. 254, 264 (1970)). *Bell* is particularly notable, Judge Dearie wrote, because in that case, "[T]he Supreme Court specifically acknowledged that a driver's license, once issued, could become 'essential to the pursuit of a livelihood.'" *Padberg*, 203 F.Supp.2d at 278 (citations omitted). This is also the case with *Raja*, who supports his family with his earnings as a representative.

### 5. The Risk of Error is High

The second *Mathews* factor is "the risk of an erroneous deprivation ... through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." 24 U.S. at 335. Here, what *Mathews,* 424 U.S. at 344, calls, "the risk of error inherent in the truthfinding process" is large and apparent. The summary suspension rested on dated charges leveled by affiants who had never been subject to cross-examination. These charges are made more dubious by the fact that Raja had been practicing in the tribunal for 14

years without ever being accused of misconduct and because some or all of the allegations are defective on their face.

This is also not a case where there was substantial assurance, or any assurance, that the suspension was justified. There was no felony arrest as there was in *Gilbert*. There was not even a pending misdemeanor charge as in *Nnebe*. There was no scientific evidence. Unlike in both *El Boutary* and *Padberg*, the alleged wrongdoing was not days before. It was years earlier (and drew no charges at the time). Defendants relied on one-sided affirmations, all of which were subject to contradiction, and untested legal theories. Indeed, defendants could arrange for only one out of three of these affiants to show up at trial. They relied on charges that were so evidently false that OATH itself dropped them when it filed its petition. Here, as in *El Boutary*, "There is no impartial government official or independent third party with any personal knowledge" of the incidents. "Nor did the plaintiff have even an informal opportunity to tell … his version of events." 2018 WL 6814370 at *7. The risk of error was made substantial by the fact that the OATH prosecutors relied on what the *Connecticut v. Doehr* court called "one-sided, self-serving, and conclusory submissions." 501 U.S. 1, 14 (1991). Worse, after drafting the affirmations and incident reports, OATH conducted no further investigation.

OATH's primary charge was that Raja violated OATH Rule 6-25(d)(1). This rule requires not just "a determination that the representative lacks honesty and integrity" but a finding "that the lack of honesty and integrity will adversely affect his or her practice before the Tribunal." A proper adjudication of this rule required OATH to assess Raja's overall integrity, a complex task even after a fair hearing, and probably an impossible job without hearing from Raja. There is no administrative case law that could be used to guide that assessment. See *Bailey v. Pataki*, 708 F.3d 391, 402-03 (2d Cir. 2013) (noting the difficulty in applying "a novel

standard and new tools"). As it happened, determining whether Raja was guilty of the alleged violations took a three-day trial. And even then ALJ Casey was not prepared to issue an immediate ruling. Tr. 769-70. In sum, it was not an "uncomplicated [matter] that lends [itself] to documentary proof." *Doehr*, 501 U.S. at 8.

The uncertainty and complexity of the facts at issue is further demonstrated by the OATH's own slowness to action. The oldest substantial allegation in the suspension letter concerned Raja's interaction with Siddiquee in November 2016. For reasons it never explained, OATH did not obtain his statement until more than year after the fact. As it happened, Holohan filed his incident report about Siddiquee in March 2018, recommending, as always, that Raja be permanently barred. PX 5 (final page). Still, OATH did not act. It did not contact Raja to ask for his version of events. It did not charge him. It did not suspend him. The other alleged Rule 6-25(d)(1) violations occurred in 2017. Again, despite Holohan's report and his recommendation, OATH stood still. By its reticence, OATH essentially admits that Raja's guilt is, at worst, unclear, and that there was no pressing need to suspend.

### 6. OATH's Interest in Summary Process is Minimal

The third *Mathews* factor speaks to the government interest, not just to "the function involved" but also to "the fiscal and administrative burdens that the additional or substitute requirement would entail." This factor, which often favors the state, is of no benefit to defendants here. While OATH has an interest in assuring that the representatives who appear in its tribunal conduct themselves properly, it has no real interest in summarily suspending them as opposed to doing so (if at all) after a fair hearing. While OATH has an interest in assuring that representatives in its tribunal conduct themselves honestly, "It is just as obvious, however, that not every alleged misdeed … [creates] exigent circumstances." *El Boutary*, 2018 WL 6814370 at *7. OATH also cannot claim that there would be any "added [administrative] burden for

[OATH] to provide a hearing before it suspends instead of after." *Id*. After all, OATH is an agency whose main function is holding trials and hearings. It would be absurd for defendants to claim that having a hearing in this case—where OATH is the prosecutor as well at the adjudicator—would have been too burdensome. *See Bailey*, 708 F.3d at 403 (rejecting agency's argument that holding multiple hearings in a new program would be unduly burdensome).

Typically, the Supreme Court has allowed deprivation prior to a hearing in cases involving pressing and immediate threats to the public health or safety. *Padberg*, 203 F.Supp.2d at 280. Here no such threat exists and none was even alleged. Moreover, the fact that OATH took so long to charge Raja is an admission that there was no need for prompt action, which is an essential predicate to the government's right to summarily suspend. *Gilbert*, 520 U.S. at 931.

## III.     OATH RULES 6-25(D) AND 6-25(C) ARE UNCONSTIUTIONALLY VAGUE BOTH AS TO CONDUCT AND PENALTY

To justify its suspension, OATH's summary suspension letter relied on its Rule 6-25(d)(1).[8] That rule provides: "Notwithstanding the provisions of subdivision (c) of this section, the Chief Administrative Law Judge may summarily suspend or bar a representative upon a determination that the representative lacks honesty and integrity and that the lack of honesty and integrity will adversely affect his or her practice before the Tribunal." OATH's petition cited its Rule 6-25(c) as permitting it to permanently bar Raja from practicing. That rule provides:

> (1) Failure to abide by these rules constitutes misconduct. The Chief Administrative Law Judge or his or her designee may, for good cause, suspend or bar from appearing before the Tribunal an attorney or representative who fails to abide by these rules. The suspension may be either for a specified period of time or indefinitely until the attorney or representative demonstrates to the satisfaction of the Chief Administrative

---

[8] At trial, Jones, the OATH prosecutor, conceded that Raja could not be suspended based on his "saying something you [OATH] believe was inappropriate, you know, an off color remark or something," even if OATH did argue that his doing so violated OATH Rule 6-25(a)(2). Tr. 31-32.

Law Judge … that the basis for the suspension no longer exists. Both rules are unconstitutionally vague both as to conduct and punishment.

In *SEC v. Sloan*, a case concerning the summary suspension of trading in a security, the Court called "the power to summarily suspend …without any notice, opportunity to be heard, or findings based upon a record" an "awesome power with a potentially devastating impact" and said that a "clear [legislative] mandate" was necessary to confer it. 436 U.S. 103, 112 (1978). In *Rothenberg v. Daus*, a case where, as here, the City was a defendant, the Court of Appeals said, "Even in the civil regulatory context … we cannot defer to [an agency's] interpretation of its rules if doing so would penalize an individual who has not received fair notice of a regulatory violation." 2012 WL 1970438 (2d Cir. 2012) (internal quotation omitted).

Just a few weeks later, the Supreme Court ruled even more emphatically in *FCC v. Fox Television Stations, Inc.* The Court held:

> A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required. This requirement of clarity in regulation is essential to the protections provided by the Due Process Clause of the Fifth Amendment. It requires the invalidation of laws that are impermissibly vague.… [A] regulation is not vague because it may at times be difficult to prove an incriminating fact but rather because it is unclear as to what fact must be proved.

132 S.Ct. 2307, 2317 (2012) (internal citations, quotations and parentheticals omitted).

Even more recently, in *Sessions v. Dimaya*, in an immigration context, the Court wrote: "The prohibition of vagueness in criminal statutes … is an essential of due process, required by both ordinary notions of fair play and the settled rules of law." 138 S.Ct. 1204, 1212 (2018) (citations and internal quotations omitted). This doctrine, the Court added, "guarantees that ordinary people have 'fair notice' of the conduct a statute proscribes." *Id.* (quoting *Papachristou v. Jacksonville*, 405 U.S. 156, 162 (1972). Finally, "[T]he doctrine guards against arbitrary or

discriminatory law enforcement by insisting that a statute provide standards to govern the actions of police officers, prosecutors, juries, and judges." As Justice Gorsuch said concurring in *Dimaya*, "[V]ague laws … can invite the exercise of arbitrary power … by leaving the people in the dark about what the law demands and allowing prosecutors and courts to make it up." 138 S.Ct. at 1223-24 (J. Gorsuch, concurring). Similarly, in *Johnson v. United States*, another immigration case, the Court said that fair warning "principles apply not only to statutes defining elements of crimes, but also to statutes fixing sentences." 135 S.Ct. 2551, 2557 (2015).

By suspending Raja and seeking his permanent bar based on a regulation that punishes a lack of "honesty and integrity," defendants violated these fundamental principles. The terms "honesty" and "integrity" are nowhere defined in the OATH rules. They are not limited or interpreted by OATH case law. Un-narrowed by judicial construction or by regulatory history, their range of meaning remains, to use the Court of Appeals' term, "virtually limitless." *See United States v. Rybicki*, 354 F.3d 124, 135-42 (2d Cir. 2003) (en banc) (case law narrowing the meaning of "honest services" saves the term from being unconstitutionally vague). It is entirely unclear, as *Fox Television* puts it, what facts must be proved to demonstrate a violation.

In this case, OATH suspended and sought to bar Raja not based on any dishonest statement made in court or to the tribunal. Conduct of that kind is barred separately by OATH Rule 6-25(a)(9).[9] OATH did not charge him with encouraging anyone else to make a false statement to the tribunal, which is covered by Rule 6-25(a)(10). Rather, OATH would extend the "honesty and integrity" to statements Raja made to clients—that he would attempt to appeal their

---

[9] That rule bars an attorney or representative from "Submit[ting] a document, or present[ing] testimony or other evidence to the Tribunal which he or she knows, or reasonably should have known, to be false, fraudulent or misleading."

convictions. Indeed, OATH did not even allege—and certainly offered no evidence—that Raja's statements were false when made. OATH did not claim that Raja did not intend to file the appeal when he accepted those fees. Indeed, in his testimony, Raja explained that circumstances prohibited him from filing in the cases of Alam and Adu. (In Siddiquee's case, Raja testified that he had never been paid his fee and had not been retained.) By failing to define or cabin its vague terminology, OATH could penalize representatives for opining on their client's chance of prevailing— "I think you have a good defense" or "we can win this case"—and later being proved wrong. In sum, OATH seeks to be able to penalize a representative for failing to complete an assignment despite an honest effort to do so.

Even worse, OATH makes no effort to define what type of dishonesty merits what level of punishment. Both OATH Rules 6-25(c) and (d)(1) purport to grant the OATH Chief ALJ carte blanche to "suspend or bar" an attorney or representative for any "[lack of] honesty and integrity" no matter how trivial or severe. Nothing in its rules guides whether a suspension should be for a week as opposed to a year or what might merit a permanent ban. Submitting false evidence in court or an inadvertently false statements to a client could both lead to any penalty within a wide range. Also, while Rule 6-25(d)(1) requires a prospective finding that "that the lack of honesty and integrity will adversely affect his or her practice before the Tribunal," there is nothing in the rule (or in any case law) that guides how the Chief ALJ might make that determination. "Elementary notions of fairness enshrined in our constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment, but also of the severity of the penalty that a State may impose." *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 574 (1996). The OATH rules fall far short of this constitutional standard. Instead, they invite exactly the "arbitrary and discriminatory

- 23 -

enforcement" that the vagueness doctrine is designed to prevent. *Kolender v. Lawson*, 461 U.S. 352, 357–58 (1983).

## IV.    THE SETTLEMENT OF THE ADMINISTRATIVE CASE DOES NOT BAR THIS ACTION

The settlement of the administrative charges does not preclude this action. A plaintiff deprived of his constitutional right may recover, depending on circumstances, compensatory, punitive or nominal damages under 42 U.S.C. § 1983. *Carlson v. Green*, 446 U.S. 14, 22 (1980); *Carey v. Piphus*, 435 U.S. 247, 257, 266 (1978). In *Carey*, the Court held that a plaintiff who suffered a suspension from school without due process could still state a claim under § 1983 even where that suspension was "justified" albeit only for nominal damages. *See also Patterson v. Coughlin*, 905 F.2d 564, 568 (2d Cir.1990). In other words, where a defendant has deprived the plaintiff of property without affording him a hearing as required by the Due Process Clause, but the defendant proves that the adverse action would have been taken in any event, the plaintiff has not proved compensable injury, but may still be entitled to nominal damages. *Kerman v. City of New York*, 374 F.3d 93, 124 (2d Cir. 2004).

The settlement agreement signed by counsel for OATH and Raja specifically states that Raja does not admit the charges against him. ECF 21, ¶ 7. The stipulation also states that it "shall not be admissible in, nor is it related to, any other litigation or settlement negotiation." ¶ 9. Of course, OATH signed this stipulation knowing that this action was pending. Meanwhile, OATH Judge Casey made no finding of guilt or wrongdoing.

All told, there has been no finding that the summary suspension was justified. For that reason, if this Court or a jury were to find that the suspension was not justified in that Raja did not violate OATH rules, Raja would be allowed to recover compensatory damages. If the Court or jury found that defendants' conduct was malicious, intentional or in reckless disregard for

plaintiff's rights, he could also recover punitive damages. *Smith v. Wade*, 461 U.S. 30 (1983). And even if this Court or jury were to find that the suspension was justified, Raja could still recover nominal damages.

### CONCLUSION

Plaintiff submits that the charges against him are factually and legally baseless. That contention, of course, remains in dispute. But even if the charges could have been proven, defendants had no grounds for suspending a longtime representative without a hearing, especially while relying on contentious allegations and one-sided, biased affirmations. Defendants compounded this constitutional wrong by relying on vague and undefined regulatory standards. For these reasons and all the reasons stated, plaintiff is entitled to summary judgment as to liability on Counts I-III of the Amended Complaint.

Dated: New York, New York
        June 11, 2019

                                        __/s/_____
                                        Daniel L. Ackman
                                        Law Office of Daniel L. Ackman
                                        222 Broadway, 19th Floor
                                        New York, NY 10038
                                        Tel: (917) 282-8178
                                        dan@danackmanlaw.com
                                        *Attorney for Plaintiff*