UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------x

RIZWAN RAJA,

                                                Plaintiff,

              -against-

JOHN W. BURNS and THE CITY OF NEW YORK,

                                                Defendants.

-------------------------------------------------------------------------x

**DEFENDANTS' RESPONSE
TO PLAINTIFF'S LOCAL
RULE 56.1 STATEMENT**

19-CV-01328(AMD)(RER)

Defendants JOHN W. BURNS and the CITY OF NEW YORK, by their attorney, Zachary W. Carter, Corporation Counsel of the City of New York, submit this response to Plaintiff's L.R. 56.1 Statement of Undisputed Material Facts, dated June 11, 2019:

          1.      Rizwan Raja, 47, was born and raised in Pakistan.  After earning degrees in both law and accounting, he immigrated to the United States in 1996 and gained his United States citizenship in 2002.

          **Response**: Defendants dispute that this statement presents an issue of material fact in that it is entirely irrelevant to the propriety of summarily suspending plaintiff's non-attorney representative registration ("registration"). Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (in deciding motion for summary judgment, "[f]actual disputes which are irrelevant or unnecessary" to the claims at issue "will not be counted."); Cayemittes v. City of N.Y. Dep't of Hous. Pres. & Dev., 974 F. Supp. 2d 240, 243 (S.D.N.Y. 2013) (disregarding contents of 56.1 Statement that are "conclusory, speculative, irrelevant, argumentative, unsupported or otherwise inappropriate for consideration").

2.      Raja speaks Urdu, Hindi and Punjab as well as English.   Declaration of Rizwan Raja (RRD) ¶¶ 2, 5.  This ability benefits his taxi driver clients as more than 45 percent of yellow taxi drivers were born in South Asia.  TLC 2018 Taxicab Factbook at 15.[1]

**Response**: Defendants dispute that this statement presents an issue of material fact in that it is entirely irrelevant to the propriety of summarily suspending plaintiff's registration. Anderson, 477 U.S. at  248; Cayemittes, 974 F. Supp. 2d at 243.

3.      n [*sic*] addition to serving his clients, since 1998 Raja has served on the organizing committee of the New York Taxi Workers Alliance (NYTWA), an advocacy group for yellow cab, green car, black car, livery and app-dispatched drivers.  RRD ¶ 5

**Response**: Defendants dispute that this statement presents an issue of material fact in that it is entirely irrelevant to the propriety of summarily suspending plaintiff's registration. Anderson, 477 U.S. at  248; Cayemittes, 974 F. Supp. 2d at 243.

4.      Prior to his career as a registered representative, Raja worked for the Bank of New York, for MetroPlus, a HMO company, and as a yellow taxi driver.  RRD ¶ 7.

**Response**: Defendants dispute that this statement presents an issue of material fact in that it is entirely irrelevant to the propriety of summarily suspending plaintiff's registration. Anderson, 477 U.S. at  248; Cayemittes, 974 F. Supp. 2d at 243.

5.      Raja became a registered (or industry) representative at the TLC Tribunal in 2005.

**Response**: Defendants dispute that this statement presents an issue of material fact in that it is entirely irrelevant to the propriety of summarily suspending plaintiff's registration. Anderson, 477 U.S. at  248; Cayemittes, 974 F. Supp. 2d at 243.

---

[1] The Factbook is published by TLC in 2018 and is available on the TLC website at https://www1.nyc.gov/assets/tlc/downloads/pdf/2018_tlc_factbook.pdf.

6.      In order to be qualified as a representative at that time, applicants were required to sit for and pass an examination, demonstrating their knowledge of TLC rules and procedures.

**Response**: Defendants dispute that this statement presents an issue of material fact in that it is entirely irrelevant to the propriety of summarily suspending plaintiff's registration. Anderson, 477 U.S. at 248; Cayemittes, 974 F. Supp. 2d at 243.

7.      Approximately 18 applicants sat for the exam along with Raja. Just three passed. RRD 8; Ex. 1.[2]

**Response**: Defendants dispute that this statement presents an issue of material fact in that it is entirely irrelevant to the propriety of summarily suspending plaintiff's registration. Anderson, 477 U.S. at 248; Cayemittes, 974 F. Supp. 2d at 243.

8.      Raja continued to serve full time in that capacity after it was transferred to OATH and became known as the OATH-TL [*sic*] Tribunal.[3]

**Response**: Defendants dispute that this statement presents an issue of material fact in that it is entirely irrelevant to the propriety of summarily suspending plaintiff's registration. Anderson, 477 U.S. at 248; Cayemittes, 974 F. Supp. 2d at 243. Further disputed in that the citations included do not support the allegations of fact.

9.      Currently, the tribunal employs 71 part-time hearing officers and presides over 160,000 cases annually involving the city's more than 130,000 for-hire vehicle drivers as

---

[2] Exhibits are, unless otherwise noted, [*sic*] to the declaration of Daniel L. Ackman, sworn to on June 11, 2019. Many of the same exhibits were submitted during the OATH proceedings.

[3] The TLC Tribunal was transferred to OATH in 2011 by Executive Order 148. Available at http://www.nyc.gov/html/ajc/downloads/pdf/eo_148.pdf.

well as vehicle owners, agents and brokers.  Executive Order 148; OATH: The Central Tribunal for the City of New York.[4]

      **Response**:  Defendants dispute that this statement presents an issue of material fact in that it is entirely irrelevant to the propriety of summarily suspending plaintiff's registration. Anderson, 477 U.S. at 248; Cayemittes, 974 F. Supp. 2d at 243.  Further disputed in that the citations included do not support the allegations of fact.

      10.    Taxi driver respondents at the tribunal may appear without counsel.  But given the complexity of the rules, the magnitude of the fines and the possibility of suspension or revocation, many seek assistance.

      **Response**: Undisputed.

      11.    If they retain counsel, they must do so at their own expense.  *See* OATH Rule 1-11.  A large majority of the persons who act for respondents in the tribunal are representatives, not lawyers.

      **Response**: Defendants dispute that this statement presents an issue of material fact in that it is entirely irrelevant to the propriety of summarily suspending plaintiff's registration. Anderson, 477 U.S. at 248; Cayemittes, 974 F. Supp. 2d at 243.

      12.    OATH does not publish a list of authorized representatives, but it does publish a "list of representatives who have been suspended or permanently banned from appearing before the OATH Hearings Division."  As of March 2, Raja's name was already on that list even though his summary suspension had not yet taken effect.  *See* OATH website, https://www1.nyc.gov/site/oath/clerks-office/registered-representatives.page.

---

[4] Available at
https://www1.nyc.gov/assets/international/downloads/pdf/Presenting%20OATH%20The%20city
's%20central%20tribunal.tr.pdf.

**Response**: Disputed.    The website, https://www1.nyc.gov/site/oath/clerks-office/registered-representatives.page, shows that plaintiff was suspended between March 8, 2019 and May 9, 2019.

13.    Raja's name still appears on the list of suspended drivers even though his suspension ended on May 9.

**Response**: Disputed.    The website, https://www1.nyc.gov/site/oath/clerks-office/registered-representatives.page, indicates that plaintiff's suspension ended on May 9, 2019.

14.    While Raja acts in an extremely high volume of cases, he keeps meticulous records of his clients and their matters.   Since 2010, Raja has handled 20,000 cases. To be sure, only a minority of these cases results in hearings with the rest being resolved by settlement.   RRD ¶ 18.

**Response**: Defendants dispute that this statement presents an issue of material fact in that it is entirely irrelevant to the propriety of summarily suspending plaintiff's registration. Anderson, 477 U.S. at  248; Cayemittes, 974 F. Supp. 2d at 243.

15.    About 70% of Raja's cases come from referrals by NYTWA, whose members pay Raja a discounted fee. RRD ¶ 19.

**Response**: Defendants dispute that this statement presents an issue of material fact in that it is entirely irrelevant to the propriety of summarily suspending plaintiff's registration. Anderson, 477 U.S. at  248; Cayemittes, 974 F. Supp. 2d at 243.

16.    In addition to hearings Raja submits appeals, which tend to be brief, written arguments submitted through the tribunal website.   RRD ¶ 20.

**Response**: Defendants dispute that this statement presents an issue of material fact in that it is entirely irrelevant to the propriety of summarily suspending plaintiff's registration. Anderson, 477 U.S. at 248; Cayemittes, 974 F. Supp. 2d at 243.

17.     Raja's abilities are respected by the tribunal's judges and by his colleagues, who know him as competent, knowledgeable, honest and composed. *See* Declaration of Isaac Godinger.

**Response**: Defendants dispute that this statement presents an issue of material fact in that it is entirely irrelevant to the propriety of summarily suspending plaintiff's registration. Anderson, 477 U.S. at 248; Cayemittes, 974 F. Supp. 2d at 243.

18.     His services are important to the New York Taxi Workers Alliance, which arranges for Raja to represent its members for a discounted fee. See Declaration of Bhairavi Desai. PX 6 (Desai).

**Response**: Defendants dispute that this statement presents an issue of material fact in that it is entirely irrelevant to the propriety of summarily suspending plaintiff's registration. Anderson, 477 U.S. at 248; Cayemittes, 974 F. Supp. 2d at 243.

19.     Raja is the sole breadwinner for his wife and four children, the oldest of who is in college.  RRD ¶ 4.

**Response**: Defendants dispute that this statement presents an issue of material fact in that it is entirely irrelevant to the propriety of summarily suspending plaintiff's registration. Anderson, 477 U.S. at 248; Cayemittes, 974 F. Supp. 2d at 243.

20.     The summary suspension that OATH imposed was open-ended as the suspension letter did not schedule a hearing and imposed no time limit for OATH to decide whether anypenalt [*sic*] was warranted or whether the summary suspension itself was proper.

**Response**: Disputed in that the suspension letter, dated March 1, 2019 [Dkt. No. 1-3] requested a response from plaintiff to be received by March 22, 2019.  Further disputed in that the summary suspension was not "open-ended" where a hearing was scheduled within two weeks of the start of the suspension.  See Declaration of Emily K. Stitelman, dated June 11, 2019, Exhibit C.

21.     During his entire career, neither the TLC not [*sic*] OATH had accused Raja of misconduct of any kind.  RRD ¶ 21.

**Response**: Defendants dispute that this statement presents an issue of material fact in that it is entirely irrelevant to the propriety of summarily suspending plaintiff's registration. Anderson, 477 U.S. at 248; Cayemittes, 974 F. Supp. 2d at 243.

22.     Suddenly, without so much as an interview, on March 1, 2019, OATH Assistant General Counsel Timothy R. Jones sent Raja an e-mail with the subject hearing "Summary Suspension Pursuant to 48 RCNY Section 6-25(d)(1)." PX 1.  It attached a summary suspension letter dated February 28 and signed by defendant John W. Burns as First Deputy Commissioner and Supervising Administrative Law Judge of OATH. PX 2.   The e-mail informed Raja, "Pursuant to 48 RCNY Section 6-25(d)(1), you are hereby summarily suspended **starting March 8, 2019**, for the incidents discussed in the annexed Summary Suspension letter." The e-mail itself continued, "If you wish to refute the allegations of misconduct . . . submit a letter to [Burns] no later than March 22, 2019.  If you do not respond by March 22, 2019, First Deputy Commissioner Burns will render a final determination in this matter pursuant to 48 RCNY § 6-25(d)(1)."

**Response**: Undisputed.

23.     The suspension letter listed six allegations, all based on conduct that had occurred from six to 30 months earlier.  The letter added that on an unspecified date and in unspecified circumstances Raja "submit[ed] [*sic*] a false statement" to the tribunal.

**Response**: Disputed in that the March 1, 2019 suspension letter [Dkt. No. 1-3] does not support the allegations of fact and note that this allegation is conclusory and argumentative. Cayemittes, 974 F. Supp. 2d at 243.

24.     The summary suspension letter made no suggestion that any investigation was ongoing; it sought no evidence of [*sic*] information from Raja.  It did attach affirmations signed by several of Raja's former clients.  But the most recent affirmation (by Adu) was dated February 14, 2018, more than a year before the summary suspension order.  PX 2, Ex. 5.[5]

**Response**: Disputed in that the March 1, 2019 suspension letter [Dkt. No. 1-3] does not support the allegations of fact as OATH did request a response from plaintiff before March 22, 2019.  Otherwise undisputed.

25.     Each of these affirmations was drafted by Kieran Holohan, who had taken a position titled Ombudsperson and Pro Se Clerk at OATH in January 2017.  Tr. 277.  After drafting the affirmations for the driver-client's signature, Holohan would prepare a so-called "Incident Report" about the events at issue for the OATH general counsel.  PX 4, 5; Tr. 314. 318.

**Response**: Undisputed insofar as the term "driver-client" refers to plaintiff's clients.  Respondents are not clients of the Ombudsperson.

26.     Holohan attached to the incident reports his own detailed summary of the alleged misconduct, his commentary and his assertion of what rules the alleged conduct violated.

---

[5] The other affirmations were signed by Siddiqque on January 19, 2018, which concerned events of November 2016, and by Alam on November 29, 2017, concerning events of that month.

PX 13.  Holohan also included his recommendation as to the appropriate penalty.  Indeed, in each case, Holohan recommended the same penalty and the most draconian penalty: summary suspension and a permanent bar from the OATH tribunal.

**Response**: Undisputed.

27.  Holohan's report regarding Alam is dated December 5, 2017.  PX 4.  The incident concerning Siddiqee and Adu (both of whom never appeared at the later administrative trial) is dated March 24, 2018.  PX 5.

**Response**: Undisputed.

28.  Neither Holohan nor anyone else at OATH conducted any further investigation after filing the incident reports.  Tr. 307, 312-315, 333-334, 345.

**Response**: Disputed in that the citations included do not support the allegations of fact and note that the statement is conclusory and argumentative.  Cayemittes, 974 F. Supp. 2d at 243.  Further disputed because OATH's Office of General Counsel conducted an extensive investigation of plaintiff after various recommendations by Holohan.  See Declaration of Timothy Jones, dated July 11, 2019 ("Jones Declaration") ¶¶ 14-19.

29.  Raja submitted to OATH a detailed refutation of the charges on March 14, eight days before the deadline, in the hope that his summary suspension would be lifted swiftly.

**Response**: Disputed in that citations are not included.  Otherwise, undisputed.

30.  Raja's response included a letter brief and a detailed declaration by him, denying the allegations in the summary suspension letter.  PX 6.  He also submitted supporting documents, including declarations by Isaac Godinger, a lawyer with decades of experience in the TLC Tribunal and the OATH-TL [sic] Tribunal, and by Bhairavi Desai, the Executive Director

of the New York Taxi Workers Alliance, which has arranged for Mr. Raja to represent its members, and by longtime clients.

        **Response**: Undisputed.

        31.    As to the specific charges, in brief summary, Raja demonstrated that the "failure to register" allegation was simply false by attaching his registration form for calendar year 2016 to his declaration. Raja Declaration (RRD) ¶ 24, PX 7. Moreover, the summary suspension letter itself includes copies of Raja's registration forms dated 2017-2018, which he could have been barred from filing had he not registered in 2016 pursuant to OATH Rule 6-23(b). *See* PX 2 at Ex. 1 & 2.

        **Response**: Disputed insofar as it is unclear what the second sentence intends to allege. Otherwise, undisputed.

        32.    The "false statement" charge was not detailed in any way.

        **Response**: Defendants dispute that this statement presents an issue of material fact in that it is entirely irrelevant to the propriety of summarily suspending plaintiff's registration. Anderson, 477 U.S. at 248; Cayemittes, 974 F. Supp. 2d at 243.

        33.    As to the charge that Raja claimed he was a lawyer to one client during his 14 years of practice, Raja noted that Siddique, his accuser, also claimed that Raja gave him a business card on which Raja identified himself as an industry representative. PX 2, Ex. 3, ¶ 9.

        **Response**: Undisputed insofar as this was the argument plaintiff made in his March 14, 2019 response to OATH.

        34.    The "disruptive verbal conduct" charge is based on Raja allegedly uttering a profanity under his breath, not during a proceeding or in a courtroom, but in a waiting area while walking away from a clerk's desk. PX 2 at 3.

**Response**: Disputed in that the citations included do not support the allegations of fact and note that the statement is conclusory and argumentative. Cayemittes, 974 F. Supp. 2d at 243.

35.     Raja denied that he misappropriated money from or made any false statements.

**Response**: Disputed insofar as it is unclear what the statement intends to allege. Otherwise, undisputed.

36.     Upon receipt of Raja's response to the suspension letter, OATH took no action as to Raja's demand that his summary suspension be lifted.

**Response**: Disputed insofar as OATH reviewed the submitted material and made a determination that plaintiff's suspension should not be lifted.  See Jones Declaration, ¶ 21-24.

37.     Instead, on March 19, OATH notified Raja that it had scheduled a hearing for March 22.  On the same day, OATH served a new set of charges in a so-called Petition along with an extensive discovery demand.  PX 9, 10.

**Response**: Disputed insofar as the discovery demand served by OATH was not extensive.  See PX 10, Dkt No. 23-10.

38.     The petition dropped two of the charges stated in the summary suspension letter, one alleging a failure to register the other charging that Raja had made a false statement. Meanwhile, it added one new charge based on events that occurred between late August and early October, 2018, concerning Raja's accepting a fee in order to attempt to convince OATH to rescind the revocation of a driver's license, but not completing that assignment because the driver secured the settlement himself.

**Response**: Disputed in that the citations included do not support the allegations of fact. See PX 9.  Otherwise, undisputed.

39.     The petition also demanded that Raja be permanently barred from OATH.

**Response**: Undisputed.

40.     On the first day of trial, with OATH ALJ Kevin Casey presiding, Timothy Jones, the OATH prosecutor stated that the trial was not to determine whether Raja's suspension should be lifted, but would determine only whether Raja should be banned permanently.  Tr. 27.

**Response**: Defendants dispute that this statement presents an issue of material fact in that it is entirely irrelevant to the propriety of summarily suspending plaintiff's registration. Anderson, 477 U.S. at  248; Cayemittes, 974 F. Supp. 2d at 243.  Defendants further dispute this statement insofar as Administrative Law Judge ("ALJ") Casey, was fully authorized to resolve all allegations against plaintiff, including his summary suspension, but in any event, ALJ Casey did not need to rule on the propriety of the summary suspension given the parties settled that proceeding.   See Letter, dated March 7, 2019, annexed to the accompanying Declaration of Emily K. Stitelman, dated July 11, 2019 ("July 11, 2019 Stitelman Decl."), as Exhibit 1, which permits ALJ Casey to submit a report and recommendation as to plaintiff's summary suspension; see also Letter, dated March 26, 2019, annexed to the June 11, 2019 Declaration of Daniel L. Ackman as Exhibit 11; Dkt. No. 21; Pl. SJ Mem., p. 12.

41.     Judge Casey disagreed at least initially, saying he would rule on the summary suspension after hearing one day of testimony.  Tr. 35.

**Response**: Defendants dispute that this statement presents an issue of material fact in that it is entirely irrelevant to the propriety of summarily suspending plaintiff's registration. Anderson, 477 U.S. at  248; Cayemittes, 974 F. Supp. 2d at 243.  Defendants further

dispute this statement insofar as ALJ Casey, was fully authorized to resolve all allegations against plaintiff, including his summary suspension, but in any event, ALJ Casey did not need to rule on the propriety of the summary suspension given the parties settled that proceeding. See July 11, 2019 Stitelman Decl., Exhibit 1; see also Letter, dated March 26, 2019, annexed to the June 11, 2019 Declaration of Daniel L. Ackman as Exhibit 11; Dkt. No. 21; Pl. SJ Mem., p. 12.

42.    But in the middle of the day, Jones presented Judge Casey with a so-called designation letter from Deputy Chair Burns, that indicated that Casey lacked authority to rule on the merits of the petition or the summary suspension. Tr. 143-44. Instead Judge Casey would only issue a report and recommendation Burns, the same individual who signed the suspension letter.

**Response**: Defendants dispute that this statement presents an issue of material fact in that it is entirely irrelevant to the propriety of summarily suspending plaintiff's registration. Anderson, 477 U.S. at 248; Cayemittes, 974 F. Supp. 2d at 243. Defendants further dispute this statement insofar as ALJ Casey, was fully authorized to resolve all allegations against plaintiff, including his summary suspension, but in any event, ALJ Casey did not need to rule on the propriety of the summary suspension given the parties settled that proceeding. See See July 11, 2019 Stitelman Decl., Exhibit 1; see also Letter, dated March 26, 2019, annexed to the June 11, 2019 Declaration of Daniel L. Ackman as Exhibit 11; Dkt. No. 21; Pl. SJ Mem., p. 12.

43.    Based on the designation letter, Judge Casey changed his earlier ruling and said that he would not determine the propriety of the summary suspension at the end of the day. Tr. 159.

**Response**: Defendants dispute that this statement presents an issue of material fact in that it is entirely irrelevant to the propriety of summarily suspending plaintiff's registration. Anderson, 477 U.S. at  248; Cayemittes, 974 F. Supp. 2d at 243.  Defendants further dispute this statement insofar as the citations included do not support the allegations of fact.  See PX 3, p. 147.  Defendants further dispute this statement insofar as ALJ Casey, was fully authorized to resolve all allegations against plaintiff, including his summary suspension, but in any event, ALJ Casey did not need to rule on the propriety of the summary suspension given the parties settled that proceeding.  See July 11, 2019 Stitelman Decl., Exhibit 1; see also Letter, dated March 26, 2019, annexed to the June 11, 2019 Declaration of Daniel L. Ackman as Exhibit 11; Dkt. No. 21; Pl. SJ Mem., p. 12.

44.      Thus the summary suspension of Raja continued without any ruling on its propriety.

**Response**: Disputed insofar as a ruling on plaintiff's summary suspension was not necessary due to the settlement between OATH and petitioner.  See Dkt. No. 21.

45.      Later in the trial, OATH changed its position again and said that Judge Casey could issue a decision on the charges rather than just report and recommend, but it did not, according to Judge Casey, allow for an immediate ruling on the summary suspension.  Tr. 270, PX 11.

**Response**: Defendants dispute that this statement presents an issue of material fact in that it is entirely irrelevant to the propriety of summarily suspending plaintiff's registration. Anderson, 477 U.S. at  248; Cayemittes, 974 F. Supp. 2d at 243.Defendants further dispute this statement insofar as a ruling on plaintiff's summary suspension was not necessary due to the settlement between OATH and petitioner.  See Dkt. No. 21.

46. The trial continued for three separate days, ending on April 4.

**Response**: Undisputed.

47. Judge Casey heard testimony from two to [*sic*] Raja's former clients. The other two who had signed affirmations, however, failed to appear. He also heard testimony from Holohan, two OATH employees who aided Holohan in drafting one of the client affirmations, from the OATH employee who happened to hear Raja mutter a profanity in a waiting area, from Raja, from Godinger and from Desai. Judge Casey also heard summations. He did not, however, resolve the allegations. Nor did Judge Casey rule on the propriety of the summary suspension.

**Response**: Defendants dispute that this statement presents an issue of material fact in that it is entirely irrelevant to the propriety of summarily suspending plaintiff's registration. Anderson, 477 U.S. at 248; Cayemittes, 974 F. Supp. 2d at 243. Defendants further dispute this statement insofar as a ruling on plaintiff's summary suspension was not necessary due to the settlement between OATH and petitioner. See Dkt. No. 21.

48. Near the end of the trial, however, Judge Casey asked the parties if they would agree to discuss possible settlement with another OATH ALJ, Kara Miller.

**Response**: Disputed in that citations are not included. Otherwise, undisputed.

49. After a series of conference calls between Judge Miller, the parties and counsel, with Raja still facing the possibility of a permanent ban, the parties reached a settlement, which was reduced to writing and signed on April 11. Ackman Dec. ¶¶ 2-3.

**Response**: Undisputed.

50. That settlement agreement was filed under seal in this Court. As was noted in open court on May 15, the settlement does not contain any admission of wrongdoing

and it specifically states: "This Stipulation shall not be admissible in, nor is it related to, any other litigation or settlement negotiation." ECF #21 (filed under seal).

        **Response**: Undisputed.

51.      Thus the summary suspension extended from March 8 through April 11, 35 days.

        **Response**: Undisputed.

Dated: New York, New York
       July 11, 2019

                Respectfully Submitted,

                ZACHARY W. CARTER
                Corporation Counsel of the City of New York
                Attorney for Defendants
                100 Church Street
                New York, New York 10007
                (212) 356-2011
                estitelm@law.nyc.gov

By:      _____

                EMILY K. STITELMAN
                Assistant Corporation Counsel