UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
X--------------------------------------------------------------X

RIZWAN RAJA,

                                    Plaintiff,        19-cv-01328 (AMD)

-Against-

JOHN W. BURNS and THE CITY OF NEW YORK,

                                    Defendants.

X--------------------------------------------------------------X


**MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION
TO DISMISS AND IN FURTHER SUPPORT FOR
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**



**Daniel L. Ackman**
Law Office of Daniel L. Ackman
222 Broadway, 19th Floor
New York, NY 10038
Tel: (917) 282-8178
dan@danackmanlaw.com

**Attorney for Plaintiff**

**July 11, 2019**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................................1

I. DEFENDANTS ARGUMENTS DEPEND ON THEIR
   REFUSAL TO ACCEPT FACTS ALLEGED AND
   THEIR ASSERTION OF FACTS THAT ARE CONTESTED
   AND UNPROVEN ..................................................................................................2

II. BECAUSE THE SUSPENSION WAS NOT RANDOM,
    BUT WAS ORDERED BY OATH'S HIGHEST OFFICER,
    A POSSIBLE POST-DEPRIVATION REMEDY DOES
    NOT DEFEAT PLAINTIFF'S CLAIM ...................................................................3

III. DEFENDANTS OFFER NO RATIONALE FOR
     SUSPENDING RAJA SUMMARILY AND CITE
     NO CASE THAT WOULD PERMIT OATH TO
     DO SO BASED ON BIASED, YEARS OLD CHARGES........................................4

IV. DEFENDANTS DO NOT DISPUTE THAT THE
    'HONESTY AND INTEGRITY' STANDARD IS
    VOID FOR VAGUENESS .......................................................................................6

V. THAT DEFENDANT BURNS PERSONALLY ORDERED
   AND PURSUED THE SUSPENSION IS SUFFICIENT
   TO STATE A CLAIM AGAINST HIM...................................................................7

VI. OATH'S RELIANCE ON AFFIDAVITS BY WITNESSES
    WHO FAILED TO APPEAR IS UNCONSTITUTIONAL ....................................8

VII. THIS COURT SHOULD EXERCISE JURISDICTION
     OVER PLAINTIFF'S STATE LAW CLAIMS.......................................................10

VIII. PLAINTIFF IS ENTITLED TO PROVE AND
      RECOVER DAMAGES ........................................................................................11

CONCLUSION ..............................................................................................................12

## TABLE OF CASES

| Case | page(s) |
|---|---|
| *Becker v. Illinois Real Estate Admin. & Disciplinary Bd.*, 884 F.2d 955 (7th Cir. 1989) | 6 |
| *Burka v. New York City Transit Authority*, 739 F. Supp. 814 (S.D.N.Y. 1990) | 10 |
| *Carey v. Piphus* 435 U.S. 247 (1978) | 11 |
| *Catanzaro v. Weiden*, 188 F.3d 56 (2d Cir. 1999) | 5 |
| *DiBlasio v. Novello*, 344 F.3d 292 (2d Cir.2003) | 3, 4 |
| *Donk v. Miller*, 365 F.3d 159 (2d Cir. 2004) | 5 |
| *Dwyer v. Regan*, 777 F.2d 825, 832 (2d Cir.1985) | 3 |
| *Edgecomb v. Housing Authority of Town of Vernon*, 824 F.Supp. 312 (D. Conn. 1993) | 10 |
| *El Boutary v. City of New York*, No. 118CV3996ARRJO, 2018 WL 6814370, (E.D.N.Y. Dec. 26, 2018) | 5, 6 |
| *Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106 (2d Cir. 2010) | 2 |
| *Galvin v. New York Racing Ass'n*, 70 F.Supp.2d 163 (E.D.N.Y. 1988) | 6, 9 |
| *Gilbert v. Homar*, 520 U.S. 924 (1997) | 5 |
| *Ginorio v. Contreras*, 409 F. Supp. 2d 101 (D.P.R. 2006) | 6 |
| *Goldberg v. Kelly,* 397 U.S. 254 (1970) | 9 |
| *Greene v. McElroy*, 360 U.S. 474, 496-99 (1959) | 9 |
| *Grichenko v. U.S. Postal Serv.*, 524 F. Supp. 672 (E.D.N.Y. 1981) | 11 |
| *Gullo v. Califano*, 609 F.2d 649, 650 (2d Cir. 1979) | 9 |
| *Heck v. Humphrey*, 512 U. S. 477 (1994) | 4 |
| *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877 (2d Cir.1996) | 3 |
| *Holt Bonding Co. v. Nichols*, 988 F. Supp. 1232 (W.D. Ark. 1997) | 6 |

*Hudson v. Palmer*, 468 U.S. 517 (1984)..................................................................................4

*Itar-Tass Russian News Agency v. Russian Kurier, Inc.*,
　140 F.3d 442 (2d Cir. 1998) ...............................................................................................10

*Knick v. Twp. of Scott, Pennsylvania*, __ S.Ct. __, 2019 WL 2552486
　(U.S. June 21, 2019) ........................................................................................................3, 4

*Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982) ........................................................4

*Monroe v. Pape,* 365 U.S. 167 (1961) ...................................................................................4

*New Windsor Volunteer Ambulance Corps, Inc. v. Meyers*,
　442 F.3d 101 (2d Cir.2006) ................................................................................................3

*Padberg v. McGrath-McKechnie,* 203 F.Supp.2d 261 (E.D.N.Y. 2002) ..........................4, 5

*Patsy v. Board of Regents of Fla.*, 457 U. S. 496 (1982) .......................................................4

*Richardson v. Perales*, 402 U.S. 389 (1971) .....................................................................8, 9

*Sassower v. Mangano*, 927 F. Supp. 113 (S.D.N.Y. 1996) ...................................................5

*Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234 (2d Cir. 2011) ..................11

*United Mine Workers v. Gibbs*, 383 U.S. 715 (1966)..........................................................11

*United States v. All Assets of Statewide Auto Parts*,
　97l F.2d 896 (2d Cir. 1992) ................................................................................................5

*Velez v. Levy*, 401 F.3d 75 (2d Cir. 2005) ...........................................................................4

*Warren v. Pataki*, 823 F.3d 125, 136 (2d Cir. 2016) ............................................................8

*Zinermon v. Burch*, 494 U.S. 113 (1990) .............................................................................3

## PRELIMINARY STATEMENT

Despite a 25-page brief, defendants fail to cite a single case where the state was permitted to summarily suspend an individual from exercising an important right based on old charges or on one-sided affirmations none of which implicates public health or safety. For that reason, defendants simply cannot justify their refusal to adhere to the general rule that Due Process requires at least some kind of hearing before the state can deny an individual an important right, especially where that right is critical to the individual's livelihood. Indeed, defendants do not even attempt to explain why it was necessary (or even desirable) for OATH to suspend Raja before a hearing instead of after. Meanwhile, defendants not even argue that OATH Rules 6-25(d)(l) and 6-25(c)—both permitting a suspension or even a permanent bar based on an industry representative or an attorney lacking "honesty and integrity"— are constitutionally enforceable. For these reasons, plaintiff is entitled to partial summary judgment on his Due Process/summary suspension claim.

Concerning defendants' motion to dismiss, their motion papers systemically refuses to acknowledge that facts alleged by the challenged complaint must be accepted as true. Worse, defendants ignore facts that are beyond dispute, especially the fact that years passed between OATH learning of complaints uttered by a few of Raja's clients and its sudden decision to summarily suspend his right to practice. Meanwhile, the motion to dismiss is premised on a legal theory—that a post-suspension hearing eliminates the need for pre-suspension process—which is simply not the law where the suspending agency acted deliberately and where the suspension was ordered by the agency's highest officer, in this case John W. Burns, OATH's First Deputy Commissioner and its Supervising Administrative Law Judge.

### I. DEFENDANTS ARGUMENTS DEPEND ON THEIR REFUSAL TO ACCEPT FACTS ALLEGED AND THEIR ASSERTION OF FACTS THAT ARE CONTESTED AND UNPROVEN

As is well known, on a motion to dismiss, facts plausibly alleged in the complaint must be accepted as true. *See*, *e.g.*, *Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010). Defendants, however, refuse to do that. Indeed, their motion relies repeatedly on unproven and false assertions that contradict the allegations in the Amended Complaint (PX 14). Defendants' brief states, for example, that "This case stems from the misconduct of plaintiff," Def. Br. 1, even though no misconduct has been proven even now, and certainly none had been proven at the time Raja was suspended from his right to practice. Defendants assert that Raja was afforded  adequate notice and an opportunity to be heard on the summary suspension." *Id*. In reality, he received no hearing on his suspension—either before or after. The suspension was summary and the trial that followed was (as it turned out) to adjudicate the allegations in the petition, not the propriety of the summary suspension. Defendants contend that Raja had fair notice that misrepresenting his qualifications or "disruptive verbal conduct" could lead to his suspension. *Id*. at 2, 16. But OATH did not even contend that this alleged misrepresentation permitted his suspension. Raja's suspension was based on allegations concerning his honesty and integrity. PX 2 at 3: Tr. 31-32. They repeatedly insinuate that Raja's "verbal conduct" was "disruptive" enough to merit a suspension, Def. Br. 2, 7, 8, though there has been no allegation that his muttered remark disrupted anything. They suggest that summarily suspending Raja was permitted "in the interest of public health and safety." *Id*. at 15. In truth, neither the summary suspension letter nor the petition made any allegation concerning health or safety. Perhaps most important, defendants fail to accept or even acknowledge the overriding fact that OATH suspended Raja not immediately when it learned of his alleged wrongdoing and issued formal "incident reports" internally (PX 4, 5), but years after the fact.

## II. BECAUSE THE SUSPENSION WAS NOT RANDOM, BUT WAS ORDERED BY OATH'S HIGHEST OFFICER, A POSSIBLE POST-DEPRIVATION REMEDY DOES NOT DEFEAT PLAINTIFF'S CLAIM

Defendants cite *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 882 (2d Cir. 1996), for the proposition that "there is no constitutional violation (and no available §1983 action) when there is an adequate state postdeprivation procedure to remedy a random, arbitrary deprivation of property or liberty." Def. Br. 14-15 (quoting decision). But as the Second Circuit has explained many times post-*Hellenic*, a post-deprivation hearing "can provide constitutionally sufficient process" only where "the deprivation was caused by a state agent's conduct that was random and unauthorized." *New Windsor Volunteer Ambulance Corps, Inc. v. Meyers*, 442 F.3d 101, 115–16 (2d Cir. 2006) (internal quotations omitted). This exception to the general rule requiring a pre-deprivation hearing rule is based "on the rationale that the state cannot reasonably anticipate such conduct." *Id*. In such circumstances, as the Supreme Court explained just last month, "It is not even possible for a State to provide pre-deprivation due process for the unauthorized act of a single employee." *Knick v. Twp. of Scott, Pennsylvania*, __ S.Ct. __, 2019 WL 2552486, at *8 (U.S. June 21, 2019).

This "random act" exception to the general pre-deprivation hearing requirement is, however, a narrow one. It "does not apply where the deprivation was caused by high-ranking officials who had final authority over the decision-making process." *New Windsor*, 442 F.3d at 116 (citing and quoting *Zinermon v. Burch*, 494 U.S. 113, 127 (1990); *Dwyer v. Regan*, 777 F.2d 825, 832 (2d Cir.1985), modified, 793 F.2d 457 (2d Cir.1986); *DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir.2003), cert. denied, 541 U.S. 988 (2004) and other cases) (internal quotations omitted).[1] Where a "high ranking" official "had the authority to suspend summarily [Raja's right

---

[1] *Hellenic* itself acknowledges the limited nature of the exception: "When the deprivation occurs in the more structured environment of established state procedures, rather than random acts, the availability of

- 3 -

to practice], and had the duty … to ensure that the department followed the prescribed procedures governing summary suspensions, … any abuse of that authority that rose to the level of a due process violation cannot be considered random and unauthorized." *Velez v. Levy*, 401 F.3d 75, 92–93 (2d Cir. 2005) (quoting *DiBlasio*, 344 F.3d at 302 (internal quotations omitted)).

Here, OATH's action was deliberate and based on a detailed summary suspension letter signed by its chief executive. Thus, in this case, "there *is* a constitutional violation, [so] federal courts are available to hear § 1983 suits despite the availability of adequate state procedures." *Hellenic,* 101 F.3d at 882 (2d Cir. 1996) (citing *Monroe v. Pape,* 365 U.S. 167, 183 (1961). In this case, defendants plainly could have provided pre-deprivation process. They just decided not to do so. As the *Knick* court also stated, "[Section 1983], after all, guarantees 'a federal forum for claims of unconstitutional treatment at the hands of state officials,' and the settled rule is that 'exhaustion of state remedies 'is not a prerequisite to an action under [42 U. S. C.] §1983.'" *Knick*, __ S.Ct. at __ (quoting *Heck v. Humphrey*, 512 U. S. 477, 480 (1994) and *Patsy v. Board of Regents of Fla*., 457 U. S. 496, 501 (1982)).

### III. DEFENDANTS OFFER NO RATIONALE FOR SUSPENDING RAJA SUMMARILY AND CITE NO CASE THAT WOULD PERMIT OATH TO DO SO BASED ON BIASED, YEARS OLD CHARGES

Defendants fail to cite a single case that supports OATH suspending Raja without a hearing. They cannot argue that Raja's alleged conduct threatened public health or safety so that he had to be punished immediately. As Judge Dearie wrote in *Padberg v. McGrath-McKechnie, "*If a taxicab driver has refused service on the basis of race, the Court sees little danger in holding him accountable at most ten days later at a meaningful hearing on the merits. Thus, the

---

postdeprivation procedures will not, *ipso facto*, satisfy due process." 101 F.3d at 880 (citing *Hudson v. Palmer*, 468 U.S. 517, 531, 533 (1984) and *Logan v. Zimmerman Brush Co*., 455 U.S. 422, 435-36 (1982).

- 4 -

Court is not suggesting that these offenders slip through the cracks, but rather that the urgency to impose summary discipline is not as great as with other conduct." 203 F.Supp.2d 261, 281 (E.D.N.Y. 2002). While defendants say in rote fashion that prompt action was necessary, they cite no case where any state agency summarily suspended a lawyer or a non-lawyer advocate based on contested allegations without a hearing. As in *Padberg*, a "[p]rompt, meaningful suspension hearing[] held" after the alleged misconduct "would meet the [agency's legitimate goal, providing the same impact and deterrent effect." *Id*.; *see also El Boutary v. City of New York*, No. 118CV3996ARRJO, 2018 WL 6814370, at *5-6 (E.D.N.Y. Dec. 26, 2018) (rejecting argument that a "prompt" post-suspension hearing obviates need for pre-suspension process).

Defendants' intermittent suggestion that "prompt action" was necessary, Def. Br. 14, is belied most of all by the fact that OATH did not act promptly. Indeed the agency did not act at all until two-and-a-half years after Raja's allegedly false statement to Siddiquee and 15 months after his representation of Adu—even though it had done all the investigating it would ever do. This belated action is in sharp contrast to the cases defendants cite. In *Gilbert v. Homar*, 520 U.S. 924 (1997), the university suspended its police office on the same day or the day after his arrest. In *United States v. All Assets of Statewide Auto Parts*, 97l F.2d 896 (2d Cir. 1992), the *in rem* seizure occurred while the alleged misconduct was ongoing. In *Catanzaro v. Weiden*, 188 F.3d 56 (2d Cir. 1999), the city quickly demolished the plaintiff's buildings based on a determination that they could collapse, fall into the street and destroy power lines at any moment.

In other trades and professions, the right to a hearing prior to a license deprivation is afforded without question. Lawyers have such a right *See Sassower v. Mangano*, 927 F. Supp. 113, 115 (S.D.N.Y. 1996). So do horse trainers (*Donk v. Miller*, 365 F.3d 159 (2d Cir. 2004))

and racetrack veterinarians. *Galvin v. New York Racing Ass'n*, 70 F.Supp.2d 163, 170-72 (E.D.N.Y.), aff'd 166 F.3d 1200 (1998). The same is true of realtors, *Becker v. Illinois Real Estate Admin. & Disciplinary Bd.*, 884 F.2d 955, 958 (7th Cir. 1989), bail bondsmen, *Holt Bonding Co. v. Nichols*, 988 F. Supp. 1232, 1240–41 (W.D. Ark. 1997), and insurance salesmen. *Ginorio v. Contreras*, 409 F. Supp. 2d 101 (D.P.R. 2006). Why are industry representatives any different?

At the end of the day, defendants have offered some rational basis for prosecuting Raja—even if their allegations are false and certainly remain in dispute. But they have advanced no coherent reason for suspending him summarily. There was no threat to public safety. There was no ongoing conduct that needed to be stopped. There were no exigent circumstances. "No impartial government official or independent third party had any personal knowledge of" the alleged dishonest conduct. *El Boutary*, 2018 WL 6814370, at *7. There was no administrative burden on OATH that would have prevented it from holding a hearing first and suspending—if at all, if the charges were established—later.

### IV. DEFENDANTS DO NOT DISPUTE THAT THE 'HONESTY AND INTEGRITY' STANDARD IS VOID FOR VAGUENESS

Defendants' brief as to plaintiff's vagueness claim confuses the issue. They begin by stating falsely that "Plaintiff s suspension was premised on charges of misrepresenting himself as an attorney, misappropriating funds, and engaging in disruptive verbal conduct at OATH's office." Def. Br. 16. None of this is true. The summary suspension was based on his alleged violations OATH Rule 6-25(d)(l), which requires "a determination that the representative lacks honesty and integrity." PX 1; PX 2 at 3; Amended Compl. ¶ 43. The plea for Raja's permanent bar was premised on Rule 6-25(d)(l) and Rule 6-25(c). PX 9 at 5; Amended Compl. ¶ 48. It was not based on his alleged verbal conduct, on his alleged misappropriation of funds or his alleged

- 6 -

misrepresentation of his credentials—all of which are covered by Rule 6-23(d) or Rule 6-23(a). Thus defendants' contention that the rules about registration or misrepresenting credentials gave Raja "ample notice" is simply irrelevant to plaintiffs' actual cause of action, which relates to the vagueness of Rules 6-25(c) & (d). *See* Pl. brief at pages 20-21 and Header to Point III.

Similarly, defendants' argument that Raja was "on notice that misappropriating funds could result in immediate suspension" is immaterial as neither of the rules at issue even mentions misappropriating client funds (which, in any event, Raja never did). Instead, they impose a nebulous standard and permits the most draconian available penalty where "the representative lacks honesty and integrity and that the lack of honesty and integrity will adversely affect his or her practice before the Tribunal." OATH Rule 6-25(d)(1). Defendants do not even attempt to assert the clarity of constitutionality of this rule. Nor do defendants argue in support of Rule 6-25(c), which permits OATH to "suspend or bar" a representative even "indefinitely" for "[f]ailure to abide by these rules," meaning any rule in the entire chapter. Finally, they offer no argument that would permit *any* penalty from a brief suspension to a permanent bar for *any* rule violation without any guidance as what penalty was appropriate for what violation.

## V. THAT DEFENDANT BURNS PERSONALLY ORDERED AND PURSUED THE SUSPENSION IS SUFFICIENT TO STATE A CLAIM AGAINST HIM

Defendants contend that the Amended Complaint should be dismissed as to Mr. Burns because he was not sufficiently involved in the alleged constitutional wrong. In fact, Mr. Burns ordered the suspension as his signature is on the suspension letter. PX 2. Later, as alleged in the Amended Complaint, he wrote two so-called designation letters directing who should rule on both the suspension and on whether Raja should be permanently barred. The first of those letters would have allowed him to rule on the charges against Raja and prevented ALJ Casey from

promptly ruling on the suspension before adjudicating all the charges in the petition. Amended Compl. ¶ 55; *see also* Tr. 143-44, 159, 270.

In the context of an alleged procedural due process violation, a plaintiff may establish the defendant's personal involvement, among other ways, by showing that the defendant participated directly in the alleged constitutional violation. *Warren v. Pataki*, 823 F.3d 125, 136 (2d Cir. 2016). Here, Mr. Burns participated by ordering the suspension—and without offering even a post-suspension hearing that the time he ordered the suspension. That alleged involvement is enough to state a claim against the OATH acting chief.

## VI. OATH'S RELIANCE ON AFFIDAVITS BY WITNESSES WHO FAILED TO APPEAR IS UNCONSTIUTIONAL

Defendants do not dispute that OATH used against Raja affirmations by complaining witnesses who failed to appear at trial and who could not be cross-examined. They cite, however, *Richardson v. Perales*, 402 U.S. 389 (1971), and contend that it is "well settled that the due process clause is not violated when hearsay evidence (such as the complainants' sworn statement) is submitted in an administrative hearing or trial." Def. Br. 19. This assertion misstates the holding of *Richardson* and is not the law.

In *Richardson*, the Court permitted the introduction of "a written report by a licensed physician who ha[d] examined the [Social Security disability] claimant and who sets forth in his report his medical findings in his area of competence … despite its hearsay character and an absence of cross-examination…." 402 U.S. at 402. *Richardson*, however, simply does not stand for the general proposition that a state agency may generally rely on hearsay in an adverse proceeding against a citizen. The Court explained its holding by noting that the reports were prepared by practicing physicians, that they "rested on accepted medical procedures and tests" and were "routine, standard, and unbiased medical reports by physician specialists concerning a

subject whom they had seen." None of these factors characterize one-time affirmations, by ordinary by possibly biased lay witnesses in this case.

In other cases both before and after *Richardson,* such as *Goldberg v. Kelly,* the Court established that the right to cross-examine even in an administrative hearing is essential to a hearing's "constitutional adequacy." 397 U.S. 254, 268 (1970). Thus, in *Greene v. McElroy*, a case concerning an administrative hearing, the Supreme Court concluded:

> Certain principles have remained relatively immutable in our jurisprudence. One of these is that where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue. While this is important in the case of documentary evidence, it is even more important where the evidence consists of the testimony of individuals whose memory might be faulty or who, in fact, might be perjurers or persons motivated by malice, vindictiveness, intolerance, prejudice, or jealousy…. This Court has been zealous to protect these rights from erosion. It has spoken out not only in criminal cases … but also in all types of cases where administrative and regulatory actions were under scrutiny.

360 U.S. 474, 496-99 (1959) (citations and footnotes omitted).

In the case at bar, the witnesses to be cross-examined were not experts, but lay witness. Even if well intentioned, their memory could be imperfect. In these circumstances, post-*Richardson* cases illustrate the enduring right to cross-examine. In *Gullo v. Califano*, for example, the Court of Appeals held in the context of a Social Security hearing that where the agency relies on a doctor's report in making its judgment, the claimant must have an "opportunity to subpoena and cross-examine the declarant." 609 F.2d 649, 650 (2d Cir. 1979). In *Galvin*, the New York Racing Association (NYRA) suspended the credentials of an equine veterinarian on horse drugging charges. The veterinarian challenged the suspension by filing a § 1983 action. The court enjoined the suspension because the notice was inadequate and, at the NYRA hearing, the agency relied—not wholly, but partly—on written investigative reports. The

court concluded: "[T]he lack of effective cross-examination due to the NYRA's failure to present its investigative reports through competent witnesses, made these allegations of wrongdoing essentially irrebuttable. The presentation of evidence in this manner is not consonant with due process." 70 F.Supp. 2d at 178 (footnote omitted). In short, where there are questions of credibility in light of the contrary evidence, the veterinarian could not be denied the opportunity to confront the witnesses on whom the NYRA relied. *See also Burka v. New York City Transit Authority*, 739 F. Supp. 814, 838-39 (S.D.N.Y. 1990) (drug tests termed "scientific evidence of questionable validity" may be admissible so long as there are procedures, including the right to examine witnesses, sufficient to challenge the test results"); *Edgecomb v. Housing Authority of Town of Vernon*, 824 F.Supp. 312, 315-16 (D. Conn. 1993) (public housing authority's reliance on hearsay, including a police report, to sustain eviction of tenant was improper where tenant had no opportunity to cross-examine). The same rule must apply here: OATH's use of affirmations by complaining witnesses who were unavailable at trial denied Raja due process of law.

## VII. THIS COURT SHOULD EXERCISE JURISDICTION OVER PLAINTIFF'S STATE LAW CLAIMS

Defendants ask this Court to deny jurisdiction over Raja's state law claims. The rule under 28 U.S.C. § 1367(a), however is that a district courts "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy…." Plaintiffs' state law claims "derive from a common nucleus of operative fact" and are "such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966); *see also Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 448 (2d Cir. 1998) ("the discretion to decline supplemental jurisdiction is available only if founded upon

an enumerated category of subsection 1367(c)"); *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 245 (2d Cir. 2011) (same).

Plaintiff's fifth claim for relief is premised on Section 1046 of the NYC Charter, which demands that respondents in city administrative hearings be afforded Due Process of Law. His sixth cause of action asserts a violation of OATH rules, which also requires that a respondent be allowed to cross-examine witnesses and that he has a right to a fair hearing. These claims are based on the same facts and the same policies and practices as the federal claims. None of the factors listed in 28 U.S.C. § 1367(c), such as the state law claim being novel or predominant over the federal claims, which permit a federal court to decline jurisdiction, is implicated here. Thus this Court can and should resolve these claims.

## VIII. PLAINTIFF IS ENTITLED TO PROVE AND RECOVER DAMAGES

Defendants cite the April 11, 2019 settlement agreement and say that it precludes a damages award. Again, defendants simply ignore the facts, in this instance that the settlement contains no admission of wrongdoing and that it specifically states it "shall not be admissible in, nor is it related to, any other litigation or settlement negotiation." ¶ 9. In *Carey v. Piphus*, the Court held that a Section 1983 plaintiff was not entitled to compensatory damages even if he was denied Due Process where the suspension was "substantially justified." 435 U.S. 247, 263 (1978). It follows that a plaintiff whose suspension was not justified may be entitled to damages. Since there has been no finding or admission that the suspension was substantially justified, the settlement does not bar a damage award.[2] *See, e.g.*, *Grichenko v. U.S. Postal Serv.*, 524 F. Supp.

---

[2] In this case, as in many cases, parties may settle even if they believe they were in the right and would be vindicated. Here, the OATH judge was urging a settlement, going so far as to arrange a settlement conference *after* the trial. Raja, meanwhile was facing a permanent loss of livelihood based on a vague standard. So agreeing to a serve a brief suspension with no admission of wrongdoing was arguably the better part of valor. While the terms of the settlement preclude either side from claiming an admission or

- 11 -

672, 678 (E.D.N.Y. 1981), aff'd, 751 F.2d 368 (2d Cir. 1984) (plaintiff may prove that after a proper hearing, he would have prevailed on his injury claim).

## CONCLUSION

In defiance of constitutional norms, defendants suspended plaintiff's right to practice, denying him his livelihood, without a hearing. They then proceeded to seek his permanent ban based on a nebulous, unconstitutionally vague standard both as to conduct and penalty. To do so, they relied on testimony by witnesses who could not be cross-examined. All of these actions constitute denials of plaintiff's right to Due Process of Law. For these reasons and all the reasons stated, defendants' motion to dismiss should be denied and plaintiff's motion for partial summary judgment as to liability on Counts I-III of the Amended Complaint should be granted.

Dated: New York, New York
July 11, 2019

\_\_/s/_____
Daniel L. Ackman
Law Office of Daniel L. Ackman
222 Broadway, 19th Floor
New York, NY 10038
Tel: (917) 282-8178
dan@danackmanlaw.com
*Attorney for Plaintiff*

---

proof of wrong, the fact that OATH agreed to a brief suspension for Raja rather than a permanent bar could just as well suggest that they would likely have lost had ALJ Casey renedered a judgment.