UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
X------------------------------------------------------------------X

RIZWAN RAJA,

                                         Plaintiff,         **19-cv-01328 (AMD)**

                -Against-

JOHN W. BURNS and THE CITY OF NEW YORK,

                                         Defendants.

X------------------------------------------------------------------X

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
FOR HIS MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff submits this brief reply memorandum to contest three discrete points in defendants' opposition brief. First, defendants badly mangle the *Mathews v. Eldridge* test and claim without any evidence that the likelihood of error is low and that the government interest weighs in favor of denying Mr. Raja a pre-deprivation hearing. Second, defendants argue against the undisputed evidence that OATH's action against Raja was not delayed because their "review" of old charges was "ongoing." Third, defendants wrongly assert that Raja "agreed" to his suspension by settling the OATH charges. Meanwhile, the plain fact is that Raja never conceded—and it was never found—that his suspension was in any way justified.

    **I. THERE IS NO REASON TO BELIEVE THAT THE LIKELIHOOD OF
       ERROR WAS LOW OR THAT THE GOVERNMENT INTEREST WEIGHS
       IN FAVOR OF SUSPENDING RAJA WITHOUT A HEARING**

Defendants contend that the likelihood of an erroneous suspension was low because they acted (albeit years after the fact) based on "several declarations." Def. Opp. Br. 4. But this factor provides no assurance. A declaration can be mistaken, self-serving or deliberately false. *See Connecticut v. Doehr*, 501 U.S. 1, 14 (1991). For example, OATH relied on Mr. Siddiquee's

- 1 -

statement that he paid Raja a fee, which Raja—who, unlike Siddiquee, testified under oath at a hearing—said he did not. Here, unlike in, for instance, *Gilbert v. Homar*, 520 U.S. 924 (1997), or *Krimstock v. Kelly*, 306 F.3d 40 (2d Cir. 2002), where police officers witnessed the offense and made an arrest, no one at OATH had any first-hand knowledge of the events in question. In this sense, this case is on all fours with *El Boutary v. City of New York*, No. 118CV3996ARRJO, 2018 WL 6814370, *7 (E.D.N.Y. Dec. 26, 2018). In both cases, the suspending agency relied on complainant's statements about events its officers did not see in summarily suspending the plaintiff.

Even if a declaration is factually accurate, it may be incomplete, lacking context or not pertinent to the governing legal standard. For example, Mr. Alam said that Raja failed to filed an appeal. But Alam did not clarify (or perhaps did not realize) that Raja had attempted to appeal his case, but was unable to do so through no fault of his own. Alam also omitted that Raja compensated him by representing him in two subsequent matters free of charge. In addition, Alam's testimony, even if taken at face, value does not demonstrate that Raja "lacke[d] honesty and integrity" because there is no evidence that Raja did not intend to complete the appeal at the time he agreed to do so. In short, reliance on declarations did nothing to assure that the suspensions were warranted.

Defendants also claim that the post-suspension hearing "further mitigated" the chance of error. But this statement is both irrelevant and false. It is irrelevant because the issue here is whether Raja should have been afforded some pre-deprivation process, not whether the post-deprivation process (which was, by the way, not scheduled at the time of the suspension) reached a correct result. It is false because the post-suspension process did *not* resolve the charges at all.

Instead, the OATH court urged the parties to settle. Thus the post-suspension process says nothing about the whether the initial suspension was (or was likely to be) accurate or erroneous.

The statement is false for another reason, too. As *Krimstock* and *Spinelli v. City of New York*, 579 F.3d 160 (2d Cir.2009), make clear, in provisional deprivations, the person "'erroneously deprived of a license cannot be made whole,'" by reinstatement. *Spinelli*, 579 F.3d at 171 (quoting *Tanasse v. City of St. George*, 172 F.3d 63 (10th Cir.1999)). There is no provision in OATH rules for compensating an industry representative wrongfully suspended after his reinstatement.

Defendants further argue that the government interest prong of the *Mathews v. Eldridge*, 424 U.S. 319 (1976,) test favors OATH's practice because "OATH's goal of ensuring the validity and integrity of the Tribunal" is important as to allow "severe" penalties." Def. Opp. Br. 6-7. This analysis simply misunderstands *Mathews*. As the Court of Appeals and the Supreme Court have emphasized, the *Mathews* "due process analysis" looks to the "reason … that justifies" the refusal to provide greater protection, not the interest purportedly served by the regulatory regime as a whole. *Kuck v. Danaher*, 600 F.3d 159, 164 (2d Cir.2010); *see also James Daniel Good Real Prop. v. United States*, 510 U.S. 43, 56 (1993) ("The governmental interest we consider here is not some general interest in forfeiting property but… the specific interest in seizing real property before the forfeiture hearing"). For this reason procedural due process rights were vindicated in *Krimstock*, which implicated the government's interest "in removing dangerous drivers from the road," 306 F.3d at 66; in *Valmonte v. Bane*, 18 F.3d 992, 1002 (2d Cir.1994), which concerned protecting children against abuse; and in *Spinelli* where the licensing agency was charged with protecting the public from unsecured firearms.

Even in cases involving the gravest national security concerns, the Supreme Court has held that the Constitution demands a meaningful opportunity to be heard. In *Hamdi v. Rumsfeld*, 542 U.S. 507 (2004), the Court held unconstitutional the procedures used by the U.S. military to detain a citizen captured in Afghanistan and designated an "enemy combatant," holding he was entitled to challenge his classification, "to receive notice of [its] factual basis for his classification, and a fair opportunity to rebut the Government's factual assertions before a neutral decisionmaker." *Id*. at 533. Indeed, the *Hamdi* court affirmed "'The imperative necessity for safeguarding these rights to procedural due process under the gravest of emergencies.… [F]or it is … under the pressing exigencies of crisis, that there is the greatest temptation to dispense with guarantees which, it is feared, will inhibit government action.'" 542 U.S. at 532 (quoting *Kennedy v. Mendoza-Martinez*, 372 U. S. 144, 164-65 (1963)). As these cases show, the central question here is not the legitimacy or importance of insuring proper conduct by representatives. The issue is the fairness and accuracy of the procedures by which individuals are determined to pose a threat sufficient to deny them a hearing—and what reasons, if any, government has for not making highly consequential determinations in a minimally fair and accurate manner.

The government interest also includes "the function involved and the fiscal and administrative burdens that the additional or substitute requirement would entail." *Mathews*, 424 U.S. at 335. Here, since OATH emphasizes that Raja ultimately received a full post-suspension hearing, there would have been no added burden on the agency had it simply allowed for that trial *before* the suspension. Once OATH admits, as it now has, that a post-suspension hearing was required, holding a pre-suspension hearing instead would be at no additional cost.[1] There is

---

[1] Alternatively, OATH could have offered some more limited process pre-suspension, such as reading Raja's written response or interviewing him, and then decided whether a suspension was warranted prior to the full trial it would eventually allow.

simply no coherent reason OATH did not do aside from its zeal to punish Raja without Due Process or to intimidate him into a concession.

## II. DESPITE JONES' FACE-SAVING DECLARATION THERE IS NO EVIDENCE THAT OATH'S 'REVIEW' OF CHARGES MADE YEARS EARLIER WAS 'ONGOING'

Despite the undisputed fact that OATH waited for years after his first alleged transgression before suspending Raja, defendants proclaim that "prompt action was taken in this case" and that a "review of the claims made against plaintiff was ongoing until February 2019." Def. Opp. Br. 7. For this proposition, defendants cite paragraph 19 of the Declaration of Timothy Jones dated July 11, 2019. Mr. Jones, however, does *not* say prompt action was taken. His declaration also does not mention any investigatory activity after August 2018. In truth, as even Jones admits, OATH drafted a statement for Siddiquee in January 2018. It drafted Alam's statement in November 2017. It drafted Adu's statement in February 2018. All of these statements were drafted by Mr. Holohan and inserted soon after in his "incident reports." In each of those reports, Holohan urged that Raja be summarily suspended and permanently barred.[2] Yet for nearly a year after Holohan's March 2018 report, OATH did not notify Raja of the charges against him, did not ask for his response and sought no penalty—a clear admission that there was no real urgency.

Jones does aver that OATH "completed" its investigation in February 2019. But he offers no information about what, if anything, OATH did to "complete" it after taking its last witness statement. Did anyone re-interview the complainants? Jones does not say. Did OATH interview Raja' colleagues, his other clients, or its own ALJs about Raja? Apparently not. Did OATH

---

[2] Holohan filed another incident report concerning MD Hossain in October 2018. *See* Jones Decl. ¶ 18. The Hossain complaint is not referenced in the summary suspension letter at all for reasons that have never been explained. Of course, even this incident report was filed four months before the suspension.

interview anyone else? Did it review any documents. Jones does not claim any of that. Certainly, OATH never spoke to Raja. Thus, despite defendants' efforts to back and fill, all the evidence in the record indicates that OATH's investigation of the facts alleged in the summary suspension letter was complete (or as complete as it ever would be) by March 2018.

At most, Jones offers an excuse for OATH's failure to act promptly. He says Raja's case was assigned to Assistant General Counsel Dennis Brogan back in November 2016. In March 2018, Jones says that Mr. Brogan "began gathering information and drafting his findings, but never completed his investigation" before he resigned in April 2018. Jones Decl. ¶ 16. In short, Jones admits that OATH had all the information that it would include in its summary suspension letter a year before it ordered the summary suspension. That it now blames Mr. Brogan for dropping the ball does not change the fact.

### III. THE SETTLEMENT AGREEMENT DOES NOT CONCEDE WRONGDOING AND DOES NOT DEFEAT RAJA'S CLAIMS

Defendants argue that "even if the Court were to find that [Raja's] summary suspension … was not warranted … summary suspension is nevertheless supported by" the stipulation of settlement "wherein plaintiff agreed to be suspended." This argument ignores the language of the stipulation itself, which provides, "This Stipulation shall not be admissible in, nor is it related to, any other litigation or settlement negotiation." Nevertheless, defendants seek not only to admit the document, but to use it as conclusive proof against Raja.

Defendants also suggest that Raja "agreed" to a 35-day suspension that was already complete. But for an agreement to "support" a penalty, it must concede that the penalty was justified. Defendants avoid saying so, but Raja admitted no wrong, and his agreement was induced by the fact that he was facing a permanent ban, which he was certainly eager to avoid, and by his being prosecuted by a vague regulation. Also, because he was found guilty of no

- 7 -

wrong, he knew he could pursue compensation for his lost earnings in this action. If anything can be read into the stipulation, it would equally logical to conclude that by agreeing to a brief suspension when they had insisted on a permanent ban, OATH conceded its charges against Raja were mostly or completely false. Either way, there has been no admission by or finding against Raja. Thus, a jury or this Court may still find that OATH's unconstitutional suspension of his right to practice entitles Raja to damages.

## CONCLUSION

For these reasons and all the reasons stated in plaintiff's prior memoranda, plaintiff's motion for partial summary judgment as to liability on Counts I-III of the Amended Complaint should be granted.

Dated: New York, New York
      July 16, 2019

                                                  __/s/_____
                                                  Daniel L. Ackman
                                                  Law Office of Daniel L. Ackman
                                                  222 Broadway, 19th Floor
                                                  New York, NY 10038
                                                  Tel: (917) 282-8178
                                                  dan@danackmanlaw.com
                                                  *Attorney for Plaintiff*