1

1        UNITED STATES DISTRICT COURT
         EASTERN DISTRICT OF NEW YORK
2
     - - - - - - - - - - - - - - - -X
3    RIZWAN RAJA,                    : 19-CV-1328 (AMD)
                                     :
4              Plaintiff,            :
                                     :
5         -against-                  : United States Courthouse
                                     : Brooklyn, New York
6    JOHN W. BURNS AND THE CITY      :
     OF NEW YORK,                    :
7                                    : Thursday, March 7, 2019
               Defendants.          : 2:00 p.m.
8    - - - - - - - - - - - - - - - -X

9

10            TRANSCRIPT OF CIVIL CAUSE FOR
           PRELIMINARY INJUNCTION HEARING
11        BEFORE THE HONORABLE PAM K. CHEN,
            UNITED STATES DISTRICT JUDGE
12

13               A P P E A R A N C E S:

14   For the Plaintiff:       DANIEL L. ACKMAN, ATTORNEY AT LAW
                              222 Broadway
15                            19th Floor
                              New York, New York 10038
16                            BY:  DANIEL L. ACKMAN, ESQ.

17
     For the Defendant:       NEW YORK CITY LAW DEPARTMENT.
18                            ADMINISTRATIVE LAW DIVISION
                              100 Church Street
19                            Room 5-319
                              New York, New York 10007
20                            BY:  EMILY K. STITELMAN, ESQ.

21

22   Court Reporter:        DAVID R. ROY, RPR
                            225 Cadman Plaza East
23                          Brooklyn, New York 11201
                            drroyofcr@gmail.com
24
     Proceedings recorded by Stenographic machine shorthand,
25   transcript produced by Computer-Assisted Transcription.

1           (In open court.)

2           THE COURTROOM DEPUTY:  Civil cause for preliminary

3   injunction hearing, Docket Number 19-CV-1328, Raja versus

4   Burns, et al.

5           Would the parties please state their appearances

6   for the record.

7           MR. ACKMAN:  Daniel Ackman for the plaintiff,

8   Your Honor.

9           THE COURT:  Good afternoon.

10          MR. ACKMAN:  Good afternoon, Judge.

11          MS. STITELMAN:  Emily Stitelman for the Office of

12  the Corporation Counsel for the defendant.

13          THE COURT:  Good afternoon.

14          MS. STITELMAN:  Good afternoon.

15          THE COURT:  So I am presiding for the moment over

16  this matter, which is actually assigned to Judge Donnelly,

17  who is in trial because I am on miscellaneous duty today.

18  So that is how I ended up with this case.  I have received

19  and reviewed the plaintiff's submission which was filed

20  earlier today.

21          I assume you got half of it, Ms. Stitelman; is

22  that right.

23          MS. STITELMAN:  That's right, Your Honor, we have.

24          THE COURT:  All right.  And I realize, of course,

25  you have not had any time to respond in writing but

Proceedings                                                3

1    hopefully you had the chance to gather your thoughts on

2    this.

3              I'm happy to hear first from the defense on this,

4    although I want to give you my preliminary thoughts on it.

5              Having reviewed the submission as well as what I

6    consider at least the most relevant case law, I think

7    Mr. Ackman, you're going to have a difficult time convincing

8    me that the temporary restraining order is appropriate in

9    this case.  The plaintiff is alleging, in essence, a due

10   process violation based on the absence of a hearing pre his

11   impending suspension, which I gather will take effect

12   tomorrow, from being a registered representative to appear

13   on TLC matters before OATH, O-A-T-H, all capitals, all

14   capital letters; which isn't a license, but Plaintiff has

15   argued it is akin to a license.  It was certainly a

16   privilege that is granted to individuals who apply and

17   qualify to represent in a quasi legal lawyeristic fashion,

18   TLC drivers who are appearing before OATH on all kinds of

19   charges and violations.

20             The quick factual history, as I understand it, is

21   that back in February of 2018, the plaintiff received a

22   letter from John W. Burns, an ALJ, actually the supervising

23   ALJ and a first deputy commissioner for OATH advising

24   Mr. Raja that he was going to be suspended from acting as a

25   nonattorney representative before OATH based on certain

Proceedings                                      4

1  alleged misconduct which is set forth in a letter.  And

2  Mr. Raja was advised that the suspension would take place

3  beginning on March 8, 2019, which is today, actually -- oh

4  tomorrow.  I'm sorry, tomorrow.

5          Mr. Raja was also advised that if he wanted to

6  refute these findings of misconduct, that he had to submit a

7  written response to ALJ Burns by March 22, 2019.  And also

8  was advised that he should attach any evidence pertinent to

9  that resignation or the charges along with his written

10 submission.

11         Lastly, Mr. Raja was informed that if he failed to

12 respond by that date, ALJ Burns would render a final

13 determination in the matter and would then bar or then

14 Mr. Raja would be barred or banned from appearing at OATH,

15 except as a respondent.

16         The reason I say, Mr. Ackman, I think you have a

17 difficult case to argue for a TRO is that the question of

18 due process requirement in situations comparable to this, in

19 fact, many of them involving actual taxicab drivers, some of

20 the case law you cited to in your submission does set forth

21 a three-part test under *Matthew*, this is a Supreme Court

22 case in terms of deciding whether or not there actually is a

23 due-process violation.

24         And with respect to those three factors, the first

25 one being the interest or the property at interest at stake.

1   The second one -- let's see, let me pull it out of the

2   report.  The second one being the Government's interest,

3   both in terms of the action it takes as well as the

4   additional burden of providing more process, and then the

5   public interest in some general sense.

6          It seems to me, just as we found in a number of

7   cases that I have looked at, that while the first factor

8   certainly weighs in Mr. Raja's favor because certainly his

9   livelihood is at risk.  The second two factors do not favor

10  a finding of the due-process violation.  And it is factually

11  pending because here -- if nothing else -- let me put it

12  this way, I think the remedy he seeks, namely, to stop this

13  action is premature at best, because there is here a

14  structured process.  He did receive notice of the charges,

15  and opportunity to respond in writing.  It is unclear

16  whether or not he is going to get a hearing after he files

17  his responses.  But there is clearly as well, at least to my

18  understanding, the potential for an Article 78 proceeding if

19  he is dissatisfied with whatever happens before OATH.

20         So in this situation the question becomes whether

21  or not the Government has sufficient interest in promptly

22  suspending him and not adding an additional step of a

23  hearing before suspension, whereas here, he has the

24  potential to get a hearing within roughly three weeks of the

25  initiation of the process and the first notice that he gets.

Proceedings                                              6

1    And also a post-depravation remedy to an Article 78 if, in

2    fact, he is terminated from his registered representative

3    status.  So I apologize.  I am actually searching to make

4    sure I cited *Matthew* criteria correctly.  That is what I am

5    looking for at the moment.  Yes.

6             Okay.  So the three factors are private interest,

7    risk of erroneous depravation, and the Government's

8    interest.  So I misstated it earlier.  The Government's

9    interest does incorporate, of course, the public's interest

10   in carrying out whatever action it is.  Here it would be the

11   suspension of someone that OATH has decided should not

12   represent individuals before them, as well as the burden

13   that would come with introducing a pre-suspension hearing.

14            And then the second factor, which I did not

15   address before, is the risk of erroneous depravation.  So

16   here the risk of erroneous depravation is mitigated to an

17   extent by the fact that there is a prompt potential hearing

18   or at least an opportunity for Mr. Raja to contest the

19   allegations that have been made against him.  And, of

20   course, in his submission before this Court, he claims that

21   all of the allegations are false.  And he will have an

22   opportunity to raise his objections and oppose those

23   allegations or claims or accusations with his own statement

24   and evidence.  So by way of a longish preamble, that is how

25   I view this matter at the moment.

Proceedings                                          7

1          Let me hear from the City if they would like to

2   add anything further.  And then, of course, I will hear from

3   Plaintiff.

4          MS. STITELMAN:  Thank you, Your Honor.  I don't

5   have much to add to your statement.

6          You know, recognizing that due process is provided

7   here both in the opportunity to be heard that Plaintiff has

8   at OATH before a final determination is made and then by way

9   of an Article 78 proceeding.

10          And I do just want to add the vulnerable

11   population that Plaintiff served as a nonattorney

12   representative.  These are people who are in what they view

13   is a courtroom, an administrative tribunal and they feel

14   they cannot represent their interest and they're looking for

15   someone to do it for them.  So having someone with

16   allegations of misrepresentation, fraud to this vulnerable

17   population is really a concern for the City, Your Honor.

18          THE COURT:  Okay.  So you are sort of reinforcing

19   the notion that the City has a very significant interest in

20   the integrity of that OATH process and the integrity

21   relatedly of the representative who will be speaking on

22   behave of the TLC, in this case, drivers?

23          MS. STITELMAN:  That is correct, Your Honor.

24          THE COURT:  Okay.  And let me also mention before

25   I turn to the plaintiff --

Proceedings                                          8

1             And you can have a seat.

2             -- that some of the case law that I looked at

3    included the following:  The case of -- and I will spell

4    this -- *Nnebe, N-N-E-B-E, versus Daus, D-A-U-S, 644 F.3d*

5    *147*, Second Circuit case from 2011 -- I'm sorry, yes; which

6    was cited by Plaintiff in their request for a TRO.  The case

7    of *Schneider, S-C-H-N-E-I-D-E-R, PE versus Chandler, PE*

8    which is a district court case by Judge Cote in the

9    Southern District, C-O-T-E, reported at 2018 *Westlaw* 770395.

10            The case of *Rothenberg, R-O-T-H-E-N-B-E-R-G*, again

11   *versus Daus, D-A-U-S*, because that person happens to be or

12   was at the time the head of the Taxis Limousine Commission.

13   *481 F -- Federal Appendix 667, Second Circuit* case from

14   2012.  And in that case they actually cite and rely on *Nnebe*

15   and address some of the same issues relating to due process

16   claims, amongst other claims, brought by TLC driver relating

17   to suspension or termination due to failed drug tests or

18   convictions, criminal convictions.

19            Lastly, I looked at *Locurto, spelled L-O-C-U-R-T-O*

20   *versus Safir*, as in Howard Safir, the former police

21   commissioner, S-A-F-I-R, *254 F.3d 154,* which is a

22   Second Circuit Case from 2001.  It's worth noting that the

23   *Locurto* case that the issue had to do with termination of

24   the employee -- to the employee.  Obviously, arguably more

25   dramatic sanction or action, I guess, by the City.  And in

Proceedings                                          9

1  that case, the Circuit found that the availability of

2  post-depravation proceedings was a factor to be taken into

3  account in deciding whether or not the overall process that

4  was accorded to these employees violated due process.  And

5  there in *Locurto* there's similarly a complaint that there

6  was no hearing pre-termination.  So I think that case which

7  focused on the availability of Article 78 as being relevant

8  to finding no due-process violation is something that, I

9  think, makes it difficult for the plaintiff to, at least at

10  this stage, prevail on a motion for a TRO.

11       Okay.  So, Mr. Ackman, I will hear from you now.

12       MR. ACKMAN:  Yes.  Your Honor has went over a

13  bunch of topics, and I want to say, respectfully, I think

14  even after the correction, Your Honor got *Matthews* wrong.

15  First of all before you even get -- *Matthews* is a question

16  of mainly whether you have an exception to the general rule.

17  The general rule is that there should be a hearing before a

18  depravation, some kind of hearing, even though it's a

19  short-term depravation in this case, potentially.  We don't

20  know how long the suspension will last.  But even there,

21  there should be some kind of hearing and there's no reason

22  to go against the general rule in this case.

23       As to the *Matthew* factors, Your Honor missed, I

24  think, the most important one but then went back to it, the

25  second factor.  The first factor clearly favors the

1   plaintiff.  The second factor also favors the plaintiff,

2   that's the risk of error, because that is -- the full

3   purpose of some kind of hearing is to minimize error and

4   make not just abstract theories, but to minimize error.

5   We've laid out -- the reason we laid out why the charges

6   against Mr. Raja are so weak is because there's a strong

7   likelihood of error.  When you go straight to a suspension

8   without even talking to the victims of suspension, without

9   getting even -- having some kind of interview even with

10  getting his side of the story.

11          Now, one of the charges, for example, is just

12  self-evidently wrong that they didn't register.  We have his

13  registration document.

14          Another of the charges they provide no evidence at

15  all for and is that they provided a false statement to the

16  tribunal.  No evidence whatsoever.

17          A third charge that he muttered a profane comment

18  under his breath doesn't apply at all because it wasn't in a

19  proceedings, didn't disrupt the proceeding, didn't even

20  disrupt the clerk's action.

21          So three of the charges before you even get to

22  whether the factual -- if there's any factual basis for the

23  other three, which we, of course, dispute are just

24  self-evidently wrong.  So there's obviously a lot of error

25  at work here.  And the whole point of a hearing is to

1    minimize that chance of error, and that's why the general

2    rule is you have a hearing first.

3          But the other cases you cited I am very familiar

4    with those two.  *Nnebe,* they said you didn't need a

5    hearing -- or that case is now on appeal a second time.  You

6    didn't need a pre-depravation hearing for a very specific

7    reason, that the driver --

8          THE COURT:  Let me say this, a pre-suspension

9    hearing, right?

10          MR. ACKMAN:  Pre-depravation, I said.

11          THE COURT:  Yes.

12          MR. ACKMAN:  Pre-suspension.  Same thing.

13          THE COURT:  Right.  But --

14          MR. ACKMAN:  You didn't need it in that case for a

15   very specific reason.  The driver had been arrested and a

16   separate, not a judicial officer, but at least a police

17   officer had made a determination there were probable cause

18   that he committed a crime.  It wasn't something determined

19   by the TLC, that was a critical factor in allowing no

20   pre-depravation hearing in *Nnebe.*  That's not at all

21   existing here.  We have nothing from any -- on any neutral

22   source charging Mr. Raja with anything.  And actually the

23   charges -- there are from arguably the neutral source having

24   to do with the registration, are clearly wrong.

25          So --

Proceedings                        12

1          THE COURT:  But let me just stop you there.  I

2    mean, the exact language, as you know from *Nnebe* is, due

3    process does not require in all cases a hearing before the

4    State interferes with the protected interest so long as some

5    form of hearing is provided before an individual is finally

6    deprived of the property interest.

7          MR. ACKMAN:  Right.

8          THE COURT:  And I think that that is relevant when

9    I said pre-suspension versus pre-depravation because right

10   now the process is underway.

11         MR. ACKMAN:  Right.

12         THE COURT:  So all that has happened so far is he

13   has being suspended from March 8th at least until

14   March 22nd, which is less than two weeks.  And you are

15   assuming, but you do not know, that he will not get any

16   hearing before there is a final determination.  So I will

17   say to you that the second factor, while it weighs to some

18   sense in his favor based on your argument that there is no

19   basis for any of these six charges, although we have only

20   spoken about three and then there is then this risk of

21   error, should, to some extent, or have to be considered in

22   the broader context of what process he is getting before any

23   final depravation occurs.

24         MR. ACKMAN:  Well, there's already going to be

25   depravation started tomorrow, so it's not like -- we're not

Proceedings                                    13

1   trying to -- I mean, you say this is premature.  It's not

2   premature.  This thing starts tomorrow.

3          THE COURT:  Well, in the due process terms it is.

4   Because we cannot run around all the time in the federal

5   court interfering with a process that exists that will mean

6   for two weeks he might lose his pay --

7          MR. ACKMAN:  You can --

8          THE COURT:  -- and then he not --

9          MR. ACKMAN:  You certainly can.  The general rule

10  is you should have a hearing first.  OATH should know this,

11  of all people, and the Court --

12         THE COURT:  But that does not exist, right?

13         Would you agree with me that it is not OATH's

14  normal practice to give hearings to pre-suspension in all

15  different contexts?

16         MR. ACKMAN:  Yes, it is.

17         THE COURT:  What about the TLC drivers, they lose

18  their licenses on --

19         MR. ACKMAN:  No, correct.  That -- that's the one

20  instance where -- and that's allowed because there's an

21  arrest.  But in general cases --

22         THE COURT:  Or drug test, positive drug test.

23         MR. ACKMAN:  Yes, true.

24         But I want to -- and *Rothenberg* had to do with the

25  final termination.  There was nothing in *Rothenberg* about

1   the pre-depravation hearing or the lack thereof.  *Rothenberg*

2   had to do with postconviction hearing with postconviction

3   penalties without --

4          THE COURT:  Understood.  I understand there is no

5   risk of -- there is less of a risk of error.

6          MR. ACKMAN:  Much, much, much, much.

7          Certainly, but as to whether what OATH does

8   normally, yes, taxi drivers are suspended all the time for

9   things that they do, but only after they're convicted of

10  something they do.

11         The one exception is the arrest and, yes, the drug

12  test.  But there the drug test, as *Rothenberg* said, the

13  likelihood of error is much less because supposedly they

14  have this scientific test, and so that at least -- I mean,

15  we have a lot of problems where they do in *Rothenberg*.  But

16  that's the premise of it, is that they have a scientific

17  test.  They have a criminal charge by a police officer

18  that's been filed in court.  You don't have any of that

19  here.

20         And the reason I talk about three charges is

21  because three of them were just self-evidently false.  The

22  other three are based on testimony by drivers, not recent

23  cases, but mostly a few years ago.  So it's not like this is

24  something pressing.  There's no -- in order to violate the

25  general rule that there should be a hearing prior to a

1   depravation, there has to be some pressing reason.

2        Now, in *Nnebe* they found it was pressing because

3   the guy stood accused of a criminal act.  We have no

4   criminal act here.  As to the three charges that are based

5   on affidavits, we have, I would say at worst, neglectful

6   behavior.  I don't think there's anything wrong with

7   Mr. Raja's behavior in any event, and his explanations, I

8   think, are perfectly reasonable and -- and -- and accurate,

9   what -- he did nothing wrong in those cases.  But even if he

10  did do something wrong, there's no pressing danger to the

11  quote/unquote vulnerable population.  No one in this

12  vulnerable population is pressing for Mr. Raja's license to

13  suspended.  Just the opposite, if they were here, I think

14  they would say, do not suspend him.  Let him work.  If the

15  charges against him prove true, then suspend him or do what

16  you will.  But there is no pressing need to suspend him now,

17  Judge.

18       THE COURT:  Why not, though?  I mean, this system

19  relies on the integrity of these registered representatives

20  and there are allegations that he committed falsehoods,

21  which you dispute.  But nonetheless, the TLC and OATH have

22  an interest in protecting the individuals who will appear

23  before them, based on violations of City law, and who will

24  pay Mr. Raja in the interim to represent them.  So it seems

25  to me that the Government or the City has adequately

1  justified its pre -- or, I'm sorry, it's lack of hearing for

2  suspension or pre-suspension lack of hearing in --

3          MR. ACKMAN:  Your Honor --

4          THE COURT:  -- as it has in other cases.  And I

5  also want to say that I am not sure the case law stands for

6  the proposition that in our particular case because the

7  allegations are weaker than in some, that I could say that

8  OATH is required to give Mr. Raja -- compared to everybody

9  else who falls under the same structure or process a

10 pre-suspension hearing.

11         MR. ACKMAN:  There is no everybody else, Judge.

12 They haven't cited any other cases where they've done this.

13 As far as I know this is a unique practice.

14         THE COURT:  Again, when you say unique, unique to

15 Mr. Raja or unique to registered representatives?

16         MR. ACKMAN:  I'm not aware of any other instance

17 where a registered representative was summarily suspended.

18 And the weakness of the charges speak to the second *Matthews*

19 factor, but I submit you don't even get to the *Matthews*

20 factor until you have some pressing need demonstrated to

21 violate the general rule which is you have a hearing first,

22 then a suspension.  Even if it's a very brief hearing, an

23 interview of some kind, you should have some kind of check

24 on the veracity of the charges and then you proceed.

25         But then there is other problems.  I mean, you

Proceedings                                    17

1  said you don't know if he's going to get a hearing.  There's

2  no -- I mean, if he was going to get a hearing, presumably

3  they would have said it.  They said respond in writing, then

4  we'll discuss -- or they didn't schedule a hearing.

5          THE COURT:  But why should we get involved before

6  that actually gets determined?  In other words --

7          MR. ACKMAN:  Well, because it's already been

8  determined.

9          THE COURT:  Well, no.  I mean, I do not know if

10  there is going to be a hearing and you do not know if there

11  is going to be a hearing.  So the question is why should you

12  not have to wait until after you are denied the hearing and

13  some final determination is made to say, We were denied due

14  process?

15          MR. ACKMAN:  Well, if there's going to be a

16  hearing here, I'm sure my friend will say so.  So far, it's

17  a letter, doesn't indicate there's a hearing.  Ms. Stitelman

18  has not indicated there's a hearing.

19          And they didn't just get the papers this morning,

20  by the way.  I sent them the papers yesterday so they would

21  have a heads-up.  I spoke to him earlier -- not to

22  Ms. Stitelman.  She was just assigned later.  But the author

23  of the email suspending Mr. Raja, I spoke to him yesterday.

24  I sent him the papers, I think around 6:00 o'clock last

25  night.  So they had a -- they could have come in here an

1    said, No, we're giving him a hearing.  He's made a mistake.

2    But they're not saying there's a mistake.  There's no

3    hearing scheduled.  There's nothing in the charging letter

4    or the email about a hearing or the process of the hearing.

5    There's only prospect of a paper record, and that itself is

6    a constitutional violation based on the failure to allow him

7    cross-examination.

8            Now, certainly you can say it hasn't happened yet,

9    but you can enjoin their suspending him without giving him a

10   proper hearing, which would include testimony and

11   cross-examination.  That's in their own rules.

12           THE COURT:  Well, let me ask Ms. Stitelman this:

13   Would you agree, Ms. Stitelman, that if OATH or TLC, I do

14   not know who exactly would be the operating agency,

15   determined that Mr. Raja should lose his privileges as a

16   registered representative without a hearing after he

17   responds in writing, would you agree that that might be a

18   due-process violation?

19           MS. STITELMAN:  I would not.  Once the final

20   determination is made, then there is an opportunity to bring

21   an Article 78 in state court to see if there was an error of

22   law.  That is exactly what an Article 78 is designed for and

23   it is part of that process for the plaintiff here.

24           THE COURT:  Is it correct that it is not the

25   normal course for registered representatives to be summarily

1    suspended without a hearing, that Mr. Raja in that regard is

2    unique?

3              MS. STITELMAN:  No, not at all.  In fact, this is

4    completely in line with both Rule 65RPN -- or 48RPNY6-25D.

5              THE COURT:  Well, hang on a second.

6              MS. STITELMAN:  Sure.

7              THE COURT:  65 --

8              MS. STITELMAN:  48RPNY.

9              THE COURT:  Okay.

10             MS. STITELMAN:  6-25D.

11             THE COURT:  All right.  And what does that say,

12   very slowly?

13             MS. STITELMAN:  Sure.  Do you want me to read it

14   or summarize it?

15             THE COURT:  Sure, whichever.

16             MS. STITELMAN:  Okay.

17             THE COURT:  I mean, but I do not know how long.

18   Just go slowly.

19             MS. STITELMAN:  Okay.

20             So D1 states that, Notwithstanding the provisions

21   of Subdivision C above -- of this section, the chief

22   administrative law judge may summarily suspend or bar a

23   representative upon a determination that the representative

24   lacks honesty and integrity, and that the lack of honesty

25   and integrity will adversely affect his or her practice

1    before the tribunal.

2         Item Number 2 goes on to say that, Any action

3    pursuant to this subdivision be on notice to the

4    representative.  After the summary suspension or bar, the

5    representative will be given an opportunity to be heard in a

6    proceeding prescribed by the chief administrative law judge

7    or his or her designee.  Factors to be considered in

8    determining whether a representative lacks honesty and

9    integrity include, but are not limited to, considering

10   whether the representative has made false, misleading, or

11   inappropriate statements to parties or tribunal staff.

12        And then finally the next section, which is E,

13   states that, The decision of the chief administrative law

14   judge or his or her designee under C or D of this section

15   constitutes a final determination, and judicial review of

16   the decision may be sought pursuant to Article 78 of the

17   New York City Civil -- New York Civil Practice Law and Rule.

18        THE COURT:  Okay.

19        MS. STITELMAN:  So this provision is designed to

20   provide the process that Plaintiff here claims that he's not

21   getting.

22        THE COURT:  All right.  I guess that is what

23   troubles me most, Mr. Ackman, is that there is a process,

24   and your claim is that that process, which has been set

25   forth in those regulations and on its face, applies to any

1   registered representative, not just to Mr. Raja, that that

2   entire structure does not satisfy due process.

3           MR. ACKMAN:  Judge, we never denied that there's a

4   rule.  We cite the rule in our papers.  I think we quote the

5   rule.  I can't find where it's quoted, but we're

6   certainly -- and we certainly have a copy of it as an

7   exhibit.  So we're not denying that there's a rule that says

8   they could do it, but that doesn't make it constitutional.

9           Now, what I did say, and Ms. Stitelman didn't

10  contradict, is that I was not aware of this actually

11  happening to any registered representative.  So it's not

12  something they routinely do, even though there's a rule that

13  apparently allows them to do it, assuming the rule's

14  constitutional, which it's not.

15          THE COURT:  But you are challenging, then, this

16  entire rule.

17          MR. ACKMAN:  No, I'm not.  I'm challenging it as

18  applied.

19          THE COURT:  And the basis, though, for your

20  as-applied challenge is that the second element, namely, the

21  potential for error in Mr. Raja's case is more dire or

22  severe or demonstrable than anyone else?

23          MR. ACKMAN:  That's one basis -- well, I don't

24  know about anyone else because, like I said, I'm not aware

25  of any other case.  Certainly there's no reported case.  I

1   looked to find a reported case.  I found none.

2        THE COURT:  Okay.

3        MR. ACKMAN:  Now, I'm not -- I am saying that

4   there's a -- well, there's a possibility of error because

5   three of the charges immediately on their face are bogus.

6   So that leaves the other three which I think are equally

7   bogus, but not immediately apparent.  But it is apparent in

8   this sense that the rule that Counsel just cited doesn't

9   just say they did something wrong, it says that affects

10  their ability to practice before the tribunal.

11       Now, there's no allegation here that Mr. Raja even

12  if he screwed up an appeal two or three years ago is

13  incompetent for that reason or unable to proceed.  Really

14  he's done 20,000 cases in this tribunal.  There's complaints

15  on three of them, and they're not even about the cases.

16  They're like to identify himself as a lawyer?  His business

17  card says he's not a lawyer.  So that guy probably just made

18  a mistake.  He thought he was a lawyer because he was

19  wearing a suit and he was talking to drivers about their

20  legal issues which, of course, he's supposed to be doing.

21  So the charges here are flimsy at best, and that increases

22  the likelihood of error.  But like I said, you don't get

23  there because you have the general rule, which this Court

24  should apply, unless there's some reason not to and there's

25  no reason not to.

1            There's no suggestion here that there's something

2     dire or pressing that I need to suspend him now as opposed

3     to on March 22nd or on March 30th or on May 22nd after they

4     decide what they're going to decide.  And there is no -- and

5     we have not heard any statement that there's going to be a

6     hearing.  There's no reason to think there's going to be a

7     hearing.  If there is a hearing, great, we'll appear at the

8     hearing.  But if there's not, this Court should say he

9     cannot be suspended without a hearing.  There's nothing

10    wrong with that.

11           And Article 78, finally, is not a defense.  I

12    mean, I know there's *Locurto*, that's kind of a rogue case.

13    The Supreme Court has said in many context and many times

14    when there is a general and routine -- a practice and this

15    is a practice that's codified in a rule, that you do not

16    need -- you do not need to exhaust administrative remedies

17    before going to federal court.  Rather you can immediately

18    go to federal court to make sure you're not subject to

19    unconstitutional practices.  You might see in *Nnebe*, as

20    Your Honor cited, there's a mention of the Article 78

21    defense in that case and then it's totally ignored.  So the

22    Article 78 defense appears from time to time in

23    Second Circuit cases.  It's inconsistent with Supreme Court

24    precedent and with other Second Circuit cases.

25           If you look up like a case called *Rivera,* I think

Proceedings                              24

1    that's a Second Circuit case.  I don't have the cite book in

2    front of me, but I can try and get it on my computer if you

3    would like, that says Article 78 is not a defense to a

4    deliberate practice.

5              THE COURT:  But we are not talking about a

6    defense.  And I am going to point you to the language in

7    Judge Cote's judicial provisional technique, which I think

8    is quite insightful on this point, and that is the *Schneider*

9    decision.  And in it she said, As for the second factor, the

10   risk of erroneous depravation and the probable value of

11   additional procedures, which is the third factor, Courts

12   consider both the significance of the pre-imposed

13   depravation process.  And she cites the case of, a Supreme

14   Court case of *Cleveland Board of Education versus*

15   *Loudermill*, L-O-U-D-E-R-M-I-L-L, *470 U.S. 532 at 547,*

16   *Note 12*.  It's a case from 1985.  And then she goes on to

17   say, In the somewhat analogous situation where a tenured

18   public employee is discharged, the Second Circuit has held

19   that due process did not require a pre-termination hearing

20   before a neutral adjudicator because an Article 78

21   proceeding constitutes a wholly adequate post-depravation

22   hearing for due-process purposes.  And then it cites

23   *Locurto*, which is a case you are saying is on an outlier or

24   a rogue case, and this is from a 2018 decision by Judge

25   Cote.

1          Now, obviously, I recognize it is not the Circuit,

2    but I think her reasoning makes sense, which is what I had

3    said to you earlier, the risk of erroneous depravation is to

4    a large extent mitigated by the fact that he has a

5    pre-depravation process.  Maybe not pre-suspension process,

6    but he certainly has pre-final depravation process and that

7    will happen in two weeks.  If he avails himself of that

8    process, he will be able to submit some rebuttal to these

9    claims which you say are wholly unfounded and for which you

10   say you have hard proof that they are untrue, whether it is

11   the registration accusation or the statement that he

12   misrepresented himself with a card as a lawyer.

13          Again, I do not think it is appropriate and I do

14   not adopt your argument that I should consider the factors

15   in a vacuum, namely, what is the risk of erroneous

16   depravation as to Mr. Raja just in his case as opposed to

17   what is the process that is being followed by the City in

18   terms of suspension and then final determination of

19   depravation -- I'm sorry, of termination.  And that is why I

20   think Judge Cote is exactly right, that if this process were

21   endless if, for example, or there were no process by which

22   he could appeal the finding or determination of the ALJ in

23   the first instance, I would agree with you, that not just as

24   to Mr. Raja's case but any of the cases brought under the

25   same regime, there could be a due-process violation and it

1   would be appropriate for him to take some action to stop

2   that.  But here we are talking a clearly defined process

3   that is in the regulation, that is being followed, that he

4   can avail himself of as soon as by March 22nd to oppose the

5   action that is being taken and to refute the claims against

6   him.

7          MR. ACKMAN:  Judge, just because there's a clear

8   defined process in the regulation means nothing

9   constitutionally.  In the *Harrell* case as we cite in our

10  papers, the TLC thousands of times a year were seizing cars.

11  Judge -- I'm forgetting her name -- I forget the name of the

12  judge, but I shouldn't because it was also my case.  She

13  said all thousands of these as many times as they do it, not

14  only was it in a TLC rule, it was actually in a City statute

15  and she said that statute as applied here is

16  unconstitutional.  And so the fact that there's a regulation

17  that is supposedly being followed, which we don't know if

18  it's being followed in any consistent way because there's no

19  reported cases and we haven't heard of any other cases, even

20  though Ms. Stitelman -- you haven't heard of any other

21  cases, we don't know of any other cases, Ms Stitelman

22  doesn't know any, I don't know any, I don't know if Mr. Raja

23  knows any where they're suspended without a hearing, so we

24  don't know what they're doing normally.  All we know is what

25  they're doing in this case and that is rife with error

Proceedings                                    27

1   because they're charging him with not registering when he
2   plainly did register.
3          THE COURT:  But, again, why is it not enough that
4   he gets to make the exact same argument you are making to me
5   to OATH?
6          MR. ACKMAN:  Because he's going to be suspended
7   for two weeks before he gets to make any argument.
8          Why -- I think there's -- the shoe is really on
9   the other foot.  OATH should have to justify doing something
10  which is violently against the constitutional norm that
11  people that get hearings before they're punished, not after.
12  And it should be -- the -- the burden should be on OATH to
13  say, What fact do we cite here?  Can we cite here?  Have we
14  ever cited here that says Raja is practicing in a court
15  where he's practiced every day for 14 years and doing
16  thousands upon thousands of cases with nary a peep of any --
17  with no issues of his behavior in any of those cases until a
18  few days ago, what is so pressing that they need to suspend
19  him without a hearing?  There's nothing.  They don't cite
20  anything.  There is nothing.  There's nothing they could
21  cite.  It's just really bizarre behavior on their part.
22  Just because they have a rule that says they can do it, (A),
23  doesn't mean they can do it because the rule could be
24  unconstitutional as applied, and, (B), doesn't mean they
25  should do it.

1           I mean, it's just -- it seems like they've just

2    gone crazy here for some reason that they want to make some

3    kind of example of Mr. Raja citing cases that didn't occur

4    last week, last month, this week, this year.  Citing cases

5    that were heard in 2016 and 2017, I think early 2018 in one

6    case, but he did nothing.  And some of these affidavits are

7    dated years ago.  I don't know when they were actually

8    signed or how they came to anybody's attention, but they

9    certainly did nothing when it happened, assuming they got

10   notice of it.  And they certainly did nothing in 2016 when

11   he didn't -- quote/unquote, didn't register.  Of course, he

12   did register.  They didn't do anything -- if he didn't

13   register, they should have said, Why aren't you registered?

14   That's what they've done other times.  They've lost the

15   registration forms.  It's just an almost insane act and an

16   unconstitutional act, as well, which is the point here for

17   them to suspend him without taking any -- taking five

18   minutes to ask, Mr. Raja, look.  We have this affidavit.

19   What do you have to say about it?  Why can't they do that?

20   No reason.

21           THE COURT:  Yes, I think I made myself clear,

22   Mr. Ackman.  My problem now is not about the merits of what

23   he is going to argue as to why OATH is wrong or TLC is

24   wrong, but it is your claim of a due-process violation.  I

25   know that you are now saying it is an as-applied challenge,

Proceedings                                      29

1    but again, even looking at his particular factors, which I

2    am not sure is appropriate, I cannot find that he is going

3    to be irreparably harmed by having to wait two weeks to make

4    his case and because there is actually a process.  I do not

5    weigh those *Matthews* factors the same way you do.

6              Yes, the first factor, pursuing a livelihood, is

7    certainly important.  But again, that issue comes up in

8    terms of irreparable harm.  It is unfortunate that he is

9    going to lose his salary for two weeks, but that is not

10   necessarily something that cannot be compensated for down

11   the road if, in fact, it is determined that they improperly

12   suspended him and he continues in this lawsuit and you are

13   able to convince, for example, the Court that this is a

14   due-process violation, which I have my doubts about.  And if

15   in every case of someone losing their pay for some period of

16   time or even permanently in some cases were enough, then

17   obviously every case involving some termination from work or

18   loss of income would end up being irreparable harm.  And

19   that is a factor, obviously, outside of just analyzing the

20   due-process claim.  You are seeking a TRO, which is an

21   extraordinary remedy.  You are asking me to undo a City

22   process or City finding which leads in two weeks to more

23   process for Mr. Raja.  I am not stopping that process, but I

24   am certainly stopping the City from doing what it thinks is

25   appropriate at this time pending review in another 14 days

Proceedings                                                30

1    or so.  That is extraordinary, and I think you are skipping

2    over that fact.

3          I also do not agree with you that my weighing of

4    the *Matthews* factor at the second stage should be so

5    specific to what you say are the merits of his claim in

6    terms of the erroneousness of the depravation.  I think as

7    has happened in many cases you make a fair argument that the

8    process that they use, which does not involve a hearing,

9    does not require testing of the scientific sort in drug

10   testing or a conviction where there is a whole criminal

11   process that ensures the reliability to some extent on the

12   result, or at least provides greater support for that, that

13   I agree with you makes the TLC's determination for

14   suspension, summary suspension, certainly more vulnerable on

15   the second factor, the risk of erroneous depravation.  I do

16   not think that that weighs for the City in any way.  But I

17   do not think it substantially weighs for the plaintiff

18   because you argue the specific.  I would say the process in

19   general, which is what I am looking at, does not necessarily

20   mean that this is going to be a higher risk of erroneous

21   depravation.

22         In this instance, they have cited six different

23   reasons or bases, it is not just a single incident.  You

24   dispute them.  At least three of them I think are subject to

25   dispute or debate that involves at least two people claiming

1   something happened or did not happen as between your client

2   and some other people.  So I do not think the process itself

3   is so fraught with a potential for erroneous depravation,

4   and as I have said before and I do not mean to beat a dead

5   horse, I do think just as Judge Cote found in *Schneider*, the

6   consideration of what the risk is has to be tempered in some

7   ways or viewed in the context of what pre- and

8   post-depravation processes exist.  And here while there may

9   not be a pre-suspension process, there certainly is a

10  post-suspension process, certainly a chance for Mr. Raja to

11  respond and then if he disputes the ultimate ruling in an

12  Article 78 proceeding and if he is ultimately permanently or

13  finally terminated as a registered representative.

14          MR. ACKMAN:  Your Honor, may I just respond to a

15  few points?

16          THE COURT:  Yes.

17          MR. ACKMAN:  You keep saying, Your Honor, two

18  weeks.  But there's no two weeks limit here.  The Judge says

19  if he doesn't get a response, he will rule on March 22nd.

20  That doesn't mean he's going to rule on March 22nd if he

21  does get a response.  The summary suspension could go on --

22  well, we don't know how long.

23          THE COURT:  Agreed.

24          MR. ACKMAN:  So it's not two weeks.

25          Secondly, the reason I'm arguing a particular fact

1   is because that's the only thing we have.  If I had a whole

2   series of cases where they consistently got it wrong, or if

3   I have a whole series of cases where they consistently got

4   it right and that they suspended the guy and then determined

5   they were right to suspend him after having a hearing; or on

6   the other hand, if they suspended a guy and then determined

7   they were wrong to suspend him, we don't have other cases.

8   We only have one instance.  So that weakens the argument, I

9   grant, as to the likelihood of error.  What I do say is that

10  the charges here are so weak that the likelihood of error in

11  this particular case is quite high.

12          I don't know what the facts are of the *Schneider*

13  case.  I'm not familiar with that case, so I can't really

14  argue anything about it.  I would like to be able to read

15  that case and may send a letter in.

16          But I would like to say another case, a 2018 case

17  in this court in this building, *El Boutary*, where they said

18  it was a constitutional violation, which is spelled E-L,

19  second word B-O-U-T-A-R-Y.  They said it was a

20  constitutional violation to suspend him, even though they

21  had testimony from passengers.  They had a video, because

22  all of that could be challenged and it would properly be

23  challenged before he was suspended.  Now, we didn't -- in

24  that case we did not seek a TRO, but the Court ruled that

25  there was a constitutional violation, and then the case was

1    soon settled after that.  That settlement is public record.

2    So I think -- actually, it's not public -- I'm not sure if

3    it's a public record yet.  The fact of the settlement is, I

4    don't know if the -- what the terms of the actual settlement

5    are.  But there's a huge likelihood of error.  They're going

6    against the general rule.  They have no reason to go against

7    the general rule.  And then you say he gets a hearing after,

8    but the hearing he's going to get after is constitutionally

9    defective as well in that he's not going to get the right to

10   cross-examine the witnesses against him.  So the hearing

11   that they are proposing as a remedy to the summary of

12   suspension is itself unconstitutional.

13           THE COURT:  But, again, all of this is premature.

14   I mean, you are asking me to speculate about what process he

15   is going to get after this.  And all I am saying is you have

16   to acknowledge is you do not know what is going to happen

17   next and I do not know.  But you cannot have me say that

18   before we even know the full measure of the process he is

19   going to get, that it is somehow defective.

20           I understand that you feel very strongly and will

21   obviously advocate very strongly to OATH that the charges

22   bought against Mr. Raja are flimsy and unsupportable.  That

23   makes perfect sense and that strikes me as the way the

24   process ought to work.  There is a process and I also want

25   to note that the *El Boutary* case that you just cited does

1   say, In determining what process is due, accounts must be

2   taken of the length and finality of the depravation.

3         Here you have a suspension that will last some

4   period of time that has yet to be determined and has yet to

5   take effect.  But at a minimum of what I do know is that

6   within two weeks, he will be permitted to submit his

7   rebuttal and thereafter there may or may not be a hearing.

8   At that point if he is denied a hearing or if the length of

9   his depravation goes on beyond two weeks, you would have a

10  stronger argument.  But these things, it seems to me based

11  on all the case law, seem to operate on some sort of

12  continuum.  It is not simply that because he did not get a

13  hearing before, he was deprived in this case of his pay for

14  the next two weeks or his source of income for the next two

15  weeks, it's a due-process violation.  And right now I think

16  it is, at minimum, premature to say that there has been a

17  depravation at all of his due-process rights.  Or that there

18  has been a violation simply because he said the charges are

19  flimsy.

20        MR. ACKMAN:  But, Judge, as to the prematurity, I

21  don't see how you could even suggest that, Your Honor, with

22  all due respect.  First of all, they say it's going to take

23  effect on March 8th.  That's tomorrow.  I think that if we

24  take them at their word, they don't say might take effect.

25  They say it will take effect.  That's tomorrow.  It's not

1   premature.

2            Secondly --

3            THE COURT:  No.  As far as it is premature, I was

4   referring to whether or not he is going to get due process

5   here --

6            MR. ACKMAN:  There's no question --

7            THE COURT:  -- the plaintiff has a due-process

8   violation.

9            MR. ACKMAN:  Well, I mean, all you need to do is

10  look at their own words.  Hence, the reading of the

11  suspension letter, If you wish to refute these findings of

12  misconduct, you must submit to me no later than March 22nd a

13  written response or you may attach any evidence.  Then it

14  says, Your written response and submitted evidence will be

15  considered before a final determination is rendered.

16            To me that is very clear, they have no plan to

17  have a hearing.  They have no plan to allow

18  cross-examination.  If they planned to do that, they would

19  have scheduled a hearing for March 22nd or whenever.  They

20  would have scheduled a hearing if they wanted to have a

21  hearing.  They do that every day.  They know how it's done,

22  Judge.

23            THE COURT:  If they do not schedule a hearing and

24  they terminate him, then you can come back here and make an

25  argument about the final depravation.

Proceedings                                36

1          MR. ACKMAN:  But it's relevant right now because

2    you said we don't know what's going to happen, but we do

3    know what's going to happen in that they're not going to

4    have a hearing.  I mean, they say they're not.

5          THE COURT:  They do not say they are not.  They do

6    not say anything.  They just say submit something in writing

7    to us by X date.

8          MR. ACKMAN:  Your written response and submitted

9    evidence will be considered.  I mean, they don't say, We're

10   not having a hearing, but if they wanted to have a hearing

11   as they've claimed to have a hearing, they would have said

12   so.  They would have told their counsel, and she would have

13   said so.

14         THE COURT:  No.  But I mean, they do not have to

15   set a hearing because he might not submit anything, or they

16   may consider what he submits not worth having a hearing

17   over.  So, yes, there is no guarantee he is going to have a

18   hearing, but there is no guarantee he will not.  And that is

19   what you want me to assume.  Again, we are talking about a

20   process.  I am not convinced, and I know that the

21   centerpiece of your argument is that it is a due-process

22   violation simply not to have a hearing before he gets

23   suspended.  I do not agree with that based on the balance

24   within the *Matthews* factors.

25              I see that, of course, Judge Ross held it in

Proceedings                    37

1    *El Boutary* that, as you say, it is a more extreme situation

2    where you do not have some kind of hearing pre-depravation,

3    but bear in mind the context of that case was long after

4    some kind of suspension that was, in theory, temporary or

5    before more process was given.  That case, because of the

6    posture of it, involved a situation where the plaintiff

7    already was, you know, finally deprived of their property

8    interest.

9            MR. ACKMAN:  That's not right, no.  In that case

10   he was suspended without a hearing.  By the time Judge Ross

11   decided that case, the suspension was over.  But she -- what

12   she said was he was entitled to a remedy for the fact there

13   was an unconstitutional suspension.  She knew it -- in that

14   case, she knew everything that was going to happen because

15   it had already happened.

16           THE COURT:  And what was the remedy?

17           MR. ACKMAN:  We got damages.

18           THE COURT:  Okay.  Why does that make --

19           MR. ACKMAN:  But again --

20           THE COURT:  -- it not irreparable -- well, but

21   again --

22           MR. ACKMAN:  Because -- because the case is a

23   precedent for saying it's unconstitutional to deprive him of

24   a hearing.

25           THE COURT:  But let me address the posture then.

1          You have to show me irreparable harm.  If he can

2    be compensated for, as I mentioned earlier, any lost

3    wages --

4          MR. ACKMAN:  Right.

5          THE COURT:  -- how can you show irreparable harm?

6          MR. ACKMAN:  Well, that -- that -- okay.  That --

7    I wanted to make clear, that is a separate question and a

8    fair question, but it doesn't make it -- id doesn't say that

9    there's no constitutional violation.  But the irreparable

10   harm -- and the Court, the Second Circuit has stated that

11   when there's a constitutional violation, irreparable harm,

12   you don't need to find further irreparable harm.  But if you

13   did, we have it because not only is he losing his income,

14   he's losing his client relationships, his clients will

15   suffer.

16         THE COURT:  Why?  They can find someone else --

17         MR. ACKMAN:  He's -- he's --

18         THE COURT:  -- to represent them.

19         MR. ACKMAN:  They've already posted his name on a

20   list of suspended representatives even before today.

21         THE COURT:  And if it is undone, he will be

22   removed from that list.

23         MR. ACKMAN:  He will be removed from that list,

24   but meanwhile, people will see he is a suspended guy.  He is

25   suspect in some way.  The Court doesn't like him.  He --

Proceedings                                    39

1   he -- his client relationships will suffer.  His business

2   will end.  He cannot do this job somewhere else.  This is

3   the only place you could do this job.

4         THE COURT:  There is no question that during the

5   time he is suspended he will not be able to do this, but I

6   do not think you have shown that he can't restart his

7   business if he actually is not permanently barred from

8   the registration; and nor is this the type of business where

9   somehow there is a lasting effect of temporarily being on

10  the list.  His client base, I presume, is ever changing.

11  There are more and more taxi drivers who might need his

12  assistance.  He has represented 20,000 people, you say

13  successfully.  I just do not accept the notion that somehow

14  this will be the end of his business.  And it is not a

15  compensable harm just as happened in *El Boutary*, so the

16  period that he has been wrongly suspended, he will be

17  compensated should he prevail.

18        MR. ACKMAN:  I'm not so sure you can say that,

19  Judge.  If you have -- because the City will certainly say,

20  We don't know what he would have made during that time.  He

21  didn't have a right to make it, because he wasn't working.

22        THE COURT:  But that is a calculated difference

23  than his ability to collect it.  Just as you said in

24  *El Boutary*, the Judge decided that he was entitled to

25  damages.  I presume he got some measure of damages that the

Proceedings                    40

1   Judge was able to figure out.  I actually think it would be

2   quite easy in this situation because you tell me that he has

3   got meticulous records and he has represented 20,000 people,

4   I am sure he had some idea of his yearly salary or even

5   monthly salary.  So that does not strike me as a strong

6   argument.

7              Again, these are a little premature albeit

8   somewhat of an elusive description, but when it comes to

9   irreparable harm, I think it is also applicable.  He

10  undoubtedly, and I am not minimizing the difficulty it will

11  present to him and his family in terms of making money, but

12  that is certainly true of anyone who loses their job or

13  their employment for a period of time but can get

14  compensated later, because by being reinstated, which

15  hopefully will help if you prevail, or by getting

16  compensated for any wrongful --

17             MR. ACKMAN:  If it's a normal job -- he -- he's

18  called a salary -- he doesn't get a salary.  He gets fees

19  from clients.

20             THE COURT:  That are documented.  I mean, he

21  certainly can tell you how much he made --

22             MR. ACKMAN:  He can tell you --

23             THE COURT:  -- in a given year.

24             MR. ACKMAN:  He can tell me how much he made in

25  a -- in a -- in the previous two weeks.  Yes, certainly he

1  can do that.

2          But what he cannot do is go back to the people who

3  are not -- if you have a salaried job and you lose your job

4  for two weeks, presuming the person paying your salary pays

5  you back pay.  There is no back pay here.  And that is

6  another factor which --

7          THE COURT:  Well, he is not going to get it from

8  those people.  He is going to get it from the defendant if

9  they lose.

10          MR. ACKMAN:  Not all -- it's not --

11          THE COURT:  The whole point is you prove

12  a due-process violation such as found in *El Boutary,* there

13  is a remedy.  He gets compensated for the lost wages or

14  earnings he would have made had they not wrongly terminated

15  him or suspended him, right?

16          MR. ACKMAN:  Right.  But he doesn't -- there's no

17  way to value the loss to his reputation for being on this

18  list, and he will continue on the list for at least two

19  weeks.  Word will get -- it's a small community, Judge.

20  Word gets out.  People hear about it.  And he shouldn't be

21  on this list before he's had a hearing.

22          THE COURT:  In that regard I think you do not have

23  a strong argument.  This is not a business, an ongoing

24  concern where there is some loss of clientele that will be

25  permanent.  His is actually a much more fluid business.  It

1   is incidental that when people all of a sudden have a need

2   to go in front of OATH, they may call him.  Once he is off

3   the list, it does not strike me that he is going to be

4   injured in any way in terms of finding new people who never

5   saw the list before, never had a reason to look at the list

6   before.  There is a never-ending stream of people he

7   represents.  I am sure that is true based on his own

8   experience.

9            MR. ACKMAN:  That is true, Judge.  But people will

10  go to the court and see he's not there and will wonder and

11  they'll say, Why aren't you there?  And he's says, I was

12  suspended.  Why were you suspended?  Because they accused me

13  of dishonesty.  They didn't give me a hearing.  I assure

14  you, I was not dishonest.  I mean, the whole idea of these

15  appropriations, that charge is kind of a joke.  You know,

16  these people paid him money willingly.  He didn't

17  appropriate their money.

18           THE COURT:  I know.  You keep going back to the

19  merits, but I am just talking about whether there is going

20  to be such damage to --

21           MR. ACKMAN:  You're right.  I'll stick to that

22  point.  But the Court of the Second Circuit have said that

23  when there's a constitutional violation, that's enough for

24  irreparable harm.  And I'm giving you, the Court, other

25  reasons to find irreparable harm beyond that.  I don't think

Proceedings                                               43

1    you need to go beyond that, just like I don't think you need

2    to go beyond the general rule.  But there's reasons that

3    harm is -- irreparable harm doesn't mean you can't, like,

4    ever compensate for it.  It means it's hard to value, and

5    the value to his reputation for being on the list, from not

6    being in court for this period of time, which we don't know

7    how long it will be, for being branded a cheat by OATH

8    without a hearing, all of this is ongoing and difficult to

9    value reputational harm and financial harm, that is hard to

10   evaluate and that's why we stop it before it happens.

11   That's what the whole idea of a preliminary injunction is

12   about.  That's why we have TROs.  That's why it's a possible

13   remedy, because anything presumably can -- many things can

14   be compensated later, but certain things you want to stop

15   before they happen if you can.  And you should do it now

16   because you can, Your Honor, and it's in your jurisdiction.

17   It's within the law.  There's no reason not to because he

18   presents no threat to anybody.

19          The only threat here is the threat to Mr. Raja and

20   his clients because he's unjustly deprived of his livelihood

21   without reason, without hearing, without even being

22   interviewed.  That's just not due process, and he's never

23   going to get due process because he's going to get a hearing

24   before a judge who is also the prosecutor.  Where do they

25   get that?  He's going to get a hearing.  He's not going to

1   get a hearing at all where we can question the witnesses.

2   They're doing something unconstitutional and defending it by

3   another unconstitutional act that they're going to give him

4   post-depravation relief potentially, but they're never going

5   to give him a fair hearing.  They've said it.  You should

6   trust them.  Take them at their word.

7             THE COURT:  All right.

8             Did you want to respond, Ms. Stitelman?

9             MS. STITELMAN:  I have nothing specific further

10   unless you have a question.

11             THE COURT:  All right.  Well, let me do say this:

12   I mean, with respect to the TRO standard, which is very

13   similar, of course, to a preliminary injunction standard, in

14   theory a plaintiff could establish a basis for injunctive

15   relief or immediate relief shown if there's a serious

16   question as to the merits of his claim.  And I guess the

17   question for you is whether or not there is a serious

18   question.  Because I think Mr. Ackman, notwithstanding the

19   fact that I have been spending most of my time disagreeing

20   with him or even arguing against his point, certainly does

21   point out what has been found to be a somewhat overly

22   summary process when it comes to the TLC, and obviously

23   *El Boutary* stands for that, to some extent, because there

24   seems to be this rule that allows for the summary suspension

25   or termination of individuals who come within the purview of

1    the commission.  And I understand that the rationale, and

2    *El Boutary* also notes that, is that that kind of process can

3    be suspended where the Government has a significant interest

4    in -- or enough of an interest that it justifies taking

5    these extraordinary measures of denying people rudimentary

6    process before suspending them.  And certainly with respect

7    to drivers, that makes a lot of sense because they're out on

8    the street, the potential for harm is immediate and

9    recognizable.

10          With respect to Mr. Raja's representation of

11   people before an adjudicative body and given the nature of

12   what he has alleged to have done, it is just really a

13   situation where summary process is -- or at least is there

14   not a substantial question here that summary process as

15   applied here violates the due process in some way?

16          MS. STITELMAN:  I think the allegations here

17   specifically with respect to misappropriation of funds,

18   impersonation of an attorney and verbal abuse are serious

19   accusations that affect the workings of the tribunal.

20   Again, this population is a vulnerable population.  In one

21   of the affidavits supporting the misappropriation of funds,

22   it's taking money for a fee and then not doing what they

23   said they said -- he would do, not doing what he said he

24   would do.  And that could have long-term consequences for

25   the people that he is representing.

Proceedings                                    46

1      THE COURT:  Okay.

2      MS. STITELMAN:  And so to continue to have this

3  evidence that this is going on, that this --

4  misappropriation of funds saying, he's an attorney and

5  perhaps they rely on him in a different way, not returning

6  phone calls, acting in this way with this population who may

7  not have the savvy to know that this isn't appropriate,

8  really undermines the way OATH is supposed to work.  It can

9  harm them going forward.

10      THE COURT:  Well, I suspect Mr. -- thank you,

11  Ms. Stitelman.  You can have a seat for a second.

12      I suspect, Mr. Ackman, if you liken Mr. Raja to an

13  attorney, you certainly would agree that the Court would

14  take it quite seriously if there were allegations of

15  misappropriation of funds related to a lawyer and possibly

16  suspend that person pending some further process.

17      MR. ACKMAN:  It's an interesting analogy.  It goes

18  exactly the other way.  First of all, this is not -- the

19  word "misappropriation" is just used completely wrong.  An

20  appropriation of funds is when you take it, even though

21  you're not -- you take it from someone without permission.

22  That's an appropriation.  A misappropriation is taking it

23  from someone without permission and it's wrongful.  He

24  didn't misappropriate anything.  He was paid or fee for a

25  service -- or in two of the cases he was paid a fee for a

Proceedings                                      47

1   service.  In one of the cases he wasn't paid at all.  I

2   mean, that's his testimony.  I think it's at least -- and

3   I'm certainly not arguing the merits.  I'm just saying why

4   there's fair chance of error.

5           The other two cases he couldn't file the appeal

6   because they wouldn't -- he didn't have the tape, and then

7   he made good on it by giving the guy free services

8   following.

9           In the third case he paid the money back.  So

10  there's no misappropriation of funds, and this whole

11  crocodile tears about the vulnerable population, I mean,

12  it's hard to take.  Mr. Raja's presence in that court

13  protects that vulnerable population.  They were trying to

14  get him out of there without a hearing.  That's what hurts

15  the vulnerable population.  They're not protecting anybody.

16  They're hurting Mr. Raja.  They're hurting his clients

17  because they say one person three years ago who doesn't know

18  what a lawyer is, who doesn't know the difference between a

19  lawyer and a rep said he said he was a lawyer when he gave

20  him a business card that says he's not a lawyer.  Please?

21          This is just -- to say that there's something that

22  Mr. Raja has done when three scattered complaints, which

23  they get out of nowhere to suspend him now immediately

24  without a hearing, that's not due process.  That's not the

25  American style of justice.

Proceedings                                    48

1           THE COURT:  Let me ask you a question.  If

2    Mr. Raja gets a hearing, contrary to what you think will

3    happen in a few weeks after he files his opposition and

4    nonetheless is terminated as a registered representative,

5    will you argue in this case that the process was still -- or

6    rather that he wasn't given due process and assume for a

7    moment that he can appeal that decision in Article 78?

8           MR. ACKMAN:  If he's given a hearing where he's

9    allowed cross-examination, that will grant me some of the

10   wrongs.  Everything they say in the letter, which I trust, I

11   take them at their word at this point, said he's not going

12   to get that kind of hearing.  It says, Send us a letter.

13   Send us written submission.  We'll decide.  No sense of a

14   hearing.  No promise.

15          Will Ms. Stitelman promise that we'll have a

16   hearing on March 22nd?  If so, then that part of our case is

17   mooted, but she's not doing that, and they say they won't.

18          But the other thing is if the hearing is before

19   the judge who is also the prosecutor, that is as plain a day

20   a constitutional violation as you can imagine under both

21   New York Law and Supreme Court *Juris Prudence* from just

22   three years ago.  So how can they possibly justify that?  So

23   if they go through the process they say they're going

24   through, we certainly will be back here saying it's

25   unconstitutional.  If they go through a process that's a

1    little bit better, maybe it will be a little better.  But

2    the same man as the judge and the advocate?  That's

3    unconstitutional, too.

4            THE COURT:  All right.  Well, let me say this:  I

5    am obviously only addressing the request for temporary

6    restraining order, which as I mentioned before, has very

7    strict standards and should only be issued in extraordinary

8    circumstances.  Obviously, this is ultimately

9    Judge Donnelley's case and she may view it differently

10   either sooner or later, depending on what happens after

11   today and whether or not there's any additional filings by

12   Plaintiff.

13           But I am bond to have to say I cannot issue this

14   TRO.  And in fact, this conclusion, I think, is bolstered by

15   the very case that Mr. Ackman has pointed me to and is set

16   forth in their submission, and obviously I think it is my

17   conclusion after hearing the argument, and I think quite a

18   good argument from Ms. Ackman and also the argument of the

19   City as well, that this is just not a case where TRO is

20   appropriate at this stage of the process and considering

21   *Matthews'* factors overall.

22           So although I will be repeating myself to some

23   extent, let me point out that in *El Boutary*, the decision by

24   Judge Ross, I think she quite relevantly said, and I

25   mentioned this earlier, that in determining what process is

1    due, the Court should take a canvas on ranks and the

2    finality of the depravation, and this appears at Page 5 of

3    her opinion.  And then she goes on to say and I think this

4    is really quite apt here, For if the suspended employee

5    receives a sufficiently prompt post-suspension hearing, the

6    lost income is relatively insubstantial.

7         So as much as you may resist, Mr. Ackman, the

8    notion that this is more of a continuum than a

9    black-and-white situation, I think *El Boutary* does reinforce

10   what I think I have been saying all along, which is that I

11   do have to view this along some sliding scale, if you will,

12   or in the broader context of what process is actually being

13   given.  And without myself I think ruling on the merits of

14   the argument that you will be given an opportunity to make

15   to the adjudicative body below, namely, OATH and TLC.

16        And let me just say this:  Then she goes on to

17   discuss the *Pavberg* case which is Judge Dearie's decision

18   that you have also relied upon and there as Judge Ross

19   recounts, Judge Dearie said that the taxi driver's private

20   interest was all the weightier in light of the duration of

21   the summary suspension.

22        So again, I think all of the precedent that has

23   being cited to me and the decisions of this Court in

24   particular reinforce the notion that there has to be some

25   consideration of what process is being given and how long

1   the suspension or depravation is.  Right now it has not even

2   taken affect yet.

3           Mr. Ackman, you surmise that it could go on for

4   some length of time without a hearing.  You may well be

5   right.  But I think right now it would be premature to

6   disallow the City to engage in the process they think is

7   appropriate and summarily suspend him for the next 14 days,

8   at least while he prepares his response.  But I fully

9   acknowledge that just as the decision made clear, there is

10  going to be a point in time at which the depravation and the

11  lack of a hearing or the property depravation/suspension and

12  the lack of a hearing will run afoul of the due process

13  requirement and then Mr. Ackman is free to come back here

14  and speak.  I think at that point, the preliminary

15  injunction can end the suspension or somehow intervene in

16  that process.  And certainly I will confer with

17  Judge Donnelly after today and give her my thoughts on that,

18  and obviously, she will have the benefit of this record.

19          So to reiterate, at this point I do not find based

20  on the facts of this case and the fact that the three

21  factors of the *Matthews* test show that the plaintiff at this

22  point in time can likely show that there is a constitutional

23  depravation or a constitutional violation, namely

24  due-process violation.  While I think there is, of course, a

25  private interest at stake here, namely Mr. Raja's

 1   livelihood, and I am not taking that lightly, the risks,

 2   however, of erroneous depravation, I think is, as I told

 3   you, not clear to me, though I think as time goes on there

 4   is more concern about that because if there is no hearing,

 5   as I mentioned before, I think that is the consideration,

 6   Judge Cote's decision in terms of the risk of an erroneous

 7   depravation.  And at that point there will be both longer

 8   suspension or greater depravation and also lack of process,

 9   and therefore, a greater risk of error.  So that after right

10   now I think is somewhat neutral.

11          But the last factor, the Government's interest, at

12   this point I think the Government does have the better of

13   the argument, that they have a systemic interest in trying

14   to police those individuals who represent parties before

15   OATH in TLC matters, and that while in this particular case

16   maybe the claims are wildly egregious, they certainly are

17   serious, namely taking money but not providing a service.

18   So I think that the Government does have an interest in some

19   summary process, but it cannot go on for long without the

20   plaintiff having a right to more process than he is getting

21   now, which is obviously only being able to write his

22   objection.

23          So that's how I weigh the factors, but I am bound

24   that I cannot say that I find a likelihood of success at

25   this point.  But I fully acknowledge that the circumstances

Proceedings                                                53

1  could evolve and change in a way that strengthens

2  Plaintiff's argument because, as I said, have said and I

3  think the case is made clear, all of these factors have to

4  be considered in combination and I think as time goes on and

5  if it goes on without Mr. Raja getting a hearing, then I

6  think it arguably becomes much more potent with respect to a

7  due-process violation.

8            So perhaps, Ms. Stitelman, it is something to take

9  back to your office and the related officers at OATH.  To

10 the extent you have any sway over them, I suggest they pay

11 attention to this case because Mr. Ackman is obviously on

12 the warpath right now and is going to continue, I assume, to

13 pursue this case here with the ammunition that he has,

14 namely, some favorable case law in this district and in the

15 Circuit as well, and more particularly, in this court.  But

16 the longer this goes on without some process, meaningful

17 process, the stronger his argument gets.  All right?

18            MS. STITELMAN:  Yes, Your Honor.

19            THE COURT:  So if OATH does not want this Court

20 interfering with what it is doing, it perhaps should hear

21 Mr. Raja out sooner rather than later.  All right?

22            MS. STITELMAN:  I understand.

23            THE COURT:  Okay.

24            MS. STITELMAN:  Thank you, Your Honor.

25            THE COURT:  Thank you both.  Thank you,

Proceedings                    54

1   Mr. Ackman.

2            MR. ACKMAN:  Thank you, Judge.

3            THE COURT:  I certainly appreciate your argument

4   and your advocacy.

5            MS. STITELMAN:  Thank you, Your Honor.

6            THE COURT:  Thank you, again, to both of you.

7            (Matter concluded.)

8                        --ooOoo--

9

10

11

12

13

14

15   *I (we) certify that the foregoing is a correct transcript*
    *from the record of proceedings in the above-entitled matter.*
16

17        */s/ David R. Roy*              *8th Day of March, 2019*
           *DAVID R. ROY*                        *Date*
18

19

20

21

22

23

24

25