

| | | |
|---|---|---|
| **JAMES E. JOHNSON**<br>*Corporation Counsel* | THE CITY OF NEW YORK<br>LAW DEPARTMENT<br>100 CHURCH STREET<br>NEW YORK, NY 10007 | **Jerald Horowitz**<br>Senior Counsel<br><br>Tel: (212) 356-2185<br>Fax:(212) 356-2019<br>email: jhorowit@law.nyc.gov |

December 16, 2019

**VIA ECF**
The Honorable Ann M. Donnelly
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re:  Raja v. Burns, et anno. 19-cv-01328 (AMD) (RER)

Dear Judge Donnelly:

   This office represents defendants John W. Burns, Supervising Administrative Law Judge and First Deputy Commissioner of the New York City Office of Administrative Trials and Hearings ("OATH"), and the City of New York ("City") in the above-referenced action. I write to respond to the Court's orders dated November 25, 2019 and December 2, 2019, directing the parties to brief the issues of qualified immunity for Supervising Administrative Law Judge Burns and whether the settlement of the underlying administrative proceeding mooted the plaintiff's procedural due process claims stemming from OATH's purported failure to afford him the opportunity to cross-examine certain affiants.

  **A.**  **Qualified Immunity for Then Acting Commissioner Burns**

   A defendant is entitled to qualified immunity under federal law if "(1) the defendant's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was objectively reasonable for the defendant to believe his actions were lawful at the time of the challenged act." Tooly v. Schwaller, 919 F.3d 165, 172 (2d Cir. 2019) (quotation and brackets omitted). When qualified immunity is invoked, the burden is on plaintiff to demonstrate that "in the light of pre-existing law[,] the unlawfulness" of defendant's conduct was apparent. Black v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107, 129 (2d Cir. 2004) (quoting Hope v. Pelzer, 536 U.S. 730, 739, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002)). See Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2080 (2011) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)); see also Manganiello v. City of New York, 612 F.3d 149, 164 (2d Cir. 2010) ("A government official sued in his individual

capacity is entitled to qualified immunity ... if the plaintiff's right not to be subjected to such conduct by the defendant was not clearly established at the time it occurred[.]"); Munafo v. Metro. Transp. Auth., 285 F.3d 201 (2d Cir. 2002) (qualified immunity granted to MTA officials who presided over disciplinary proceedings leading to plaintiff's termination).

The qualified immunity privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). As a result, the Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Hunter v. Bryant, 502 U.S. 224, 227 (1991). As we argued in support of defendants' motion to dismiss, defendant Burns is entitled to qualified immunity because it was objectively reasonable for him to believe that his conduct did not violate clearly established constitutional rights, and because his actions were lawful. See Def. Reply Mem. at 5-6 (Dkt. 37).

To start, for qualified immunity to apply, "it is sufficient that no clearly established law has held that 'an officer acting under similar circumstances' violated an employee's due process rights. Clearly established law should not be defined 'at a high level of generality,' but 'must be particularized to the facts of the case." Tooly, 919 F.3d at 175 (quoting White v. Pauly, 137 S. Ct. 548, 552 (2017)). In Tooly, a motor vehicle operator for a state university claimed, *inter alia*, that his due process rights were violated when the university summarily placed him on involuntary leave and later terminated his employment. The university president signed the letter summarily placing plaintiff on involuntary leave. The university president, who was named as a defendant in his individual capacity, asserted qualified immunity. The Second Circuit held that the President of SUNY was entitled to qualified immunity because there was no case cited where similar procedures were found violative of due process. Tooly, 919 F. 3d at 175.

Here, defendant Burns, like the university president in Tooly, did not violate clearly established constitutional rights. Plaintiff has not cited any case that is particularized to the facts of this case. At the time of the events in question, defendant Burns was acting as Chief Administrative Law Judge and Acting Commissioner of OATH, with the duties and responsibilities specified in Section 1049(1) of the New York City Charter. In that position, Burns was the chief executive officer, responsible to direct and administer OATH, and the only person who could authorize plaintiff's suspension at the time. Acting on behalf of the agency, Burns signed three letters: (1) a letter, dated February 28, 2019, notifying plaintiff of his impending suspension on March 8, 2019 (annexed hereto as Exhibit A); (2) a letter, dated March 7, 2019, designating the OATH tribunal to hear the disciplinary charges and issue a report and recommendation (annexed hereto as Exhibit B); and (3) a letter, dated March 26, 2018, authorizing the OATH Administrative Law Judge to make a memorandum decision, which would constitute the final agency determination (annexed hereto as Exhibit C). Plaintiff's suspension took effect on March 8, 2019, the day after a TRO was denied by District Court Judge Pamela K. Chen. See Minute Entry dated March 8, 2019.

Judge Chen, in denying plaintiff's motion for reconsideration of the TRO denial, specifically found that the evidence provided by OATH in support of plaintiff's summary suspension is "enough to suggest that the deprivation is 'not baseless or unwarranted' and shows

2

'reasonable grounds' for the suspension.'" Dkt. No. 6, p. 5.  Most importantly, in analyzing the risk of erroneous deprivation (the "second Mathews factor"), Judge Chen recognized that plaintiff will have an opportunity to be heard on his suspension and stated that, "[i]n contrast [to Padberg v. McGrath-McKechnie, 203 F. Supp.2d 261, 280 (E.D.N.Y. 2002)], in the instant case, Plaintiff is offered significant post-suspension process.  He is entitled to not only an Article 78 hearing, but also an administrative process . . . before a final deprivation decision is made."  Dkt. No. 9, p. 7.[1]   Consequently, plaintiff was afforded adequate due process, in accordance with OATH's rules (48 RCNY § 6-25(d)).  See Defalco v. MTA Bus Co., 333 F. Supp.3d 191, 207-208 (E.D.N.Y. 2018) (summary suspension of MTA employees who stole property did not violate due process) (citing Barry v. Barchi, 443U.S. 55, 64 (1979).  Even were the court to find that plaintiff should have been offered a pre-suspension opportunity to be heard, this does not change the fact that there had not been any clearly established law requiring that outcome.[2]

Second, the qualified immunity defense protects government actors if it was objectively reasonable for them to believe that their actions were lawful at the time of the challenged act.  See Taravella v. Town of Wolcott, 599 F.3d 129, 134 (2d Cir. 2010); Thomas v. Roach, 165 F.3d 137, 142-43 (2d Cir. 1999).

Here, plaintiff faults defendant Burns for enforcing rules lawfully promulgated by OATH.  Government officials who are entrusted with enforcing lawfully adopted regulations are not expected to be "omniscient predictors of the uncertain course of constitutional law."  Laverne v. Corning, 522 F.2d 1144, 1149 (2d Cir. 1975).  Plaintiffs fail to set forth any allegations that Burns knew or reasonably should have known that enforcement Rule 6-25(d) against plaintiff could be violating the Fifth and Fourteenth Amendments.  Therefore, as plaintiff cannot show an

---

[1] Judge Chen also analyzed this case under the Mathews factors at the March 7, 2019 hearing, and found that the factors weighed in the City's favor.  See Dkt. No. 14-1, 4:16-6:25; 28:21-31:13; 51:19-53:17.

[2] Contrary to the TLC officials, named as defendants in their individual capacity, who were denied qualified immunity in Boutary v. City of New York, 2018 U.S. Dist. LEXIS 216238 (E.D.N.Y. December 26, 2018) after summarily suspending a taxi driver after one act of misconduct, defendant Burns authorized a suspension after providing a 7-day notice of the suspension, which included detailed notice of the charges of misconduct, and an opportunity for plaintiff to present his side of the story before the suspension took effect (see Exhibit A hereto). Moreover, as Judge Chen noted, the suspension was based on six different, but related, incidents of misconduct over three years. (Summary Suspension Notice ("Notice"), Dkt. 1-3, at 2-3.) See Raja v. Burns, 2019 U.S. Dist. LEXIS 38603 (E.D.N.Y. March 11, 2019). Furthermore, Defendants support their allegations of misconduct with a variety of evidence, including three declarations signed under penalty of perjury (though not notarized), executed around the time the alleged misconduct occurred, and a contemporaneously filed incident report. ( [*7] See id. at ECF3 12-14 (1/19/2018 Declaration of Mohammed Siddiquee); id. at ECF 16-19 (11/29/2017 Declaration of Saiful Alam); id. at 21-22 (2/14/18 Declaration of Joseph Kwaku Adu); id. at 24-25 (8/14/18 Incident Report). The incident report indicates that Plaintiff was asked about and admitted to the behavior in the moments after it occurred. (Id. at 24.).

intent to violate his constitutional rights, defendant Burns is entitled to immunity. See Procunier v. Navarette, 434 U.S. 555, 565-66 (1978).

Finally, an individual defendant is entitled to absolute immunity where, as here, the conduct involved the performance of quasi-judicial functions, such as the issuance of decisions suspending a representative's permission to appear at the tribunal, See, e.g., New York State Professional Process Servers Assoc. v. City of New York, 2014 U.S. Dist. LEXIS 115137, *8 (S.D.N.Y. Aug. 18, 2014) (citations omitted).

Accordingly, defendants respectfully request the Court dismiss the claims against individual defendant Burns before further proceedings are undertaken.

**B.     Plaintiff's Claims are Moot because of the Settlement at OATH.**

Plaintiff's claims, including the claim that the use of sworn statements of absent witnesses at an administrative hearing violated due process, are moot.[3] At the outset, the Constitution limits the subject matter jurisdiction of the federal courts to disputes involving "live cases and controversies." County of Suffolk v. Sebelius, 605 F.3d 135, 140 (2d Cir. 2010) (citation and internal quotations omitted). When "the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome," Housing Works, Inc. v. City of New York, 203 F.3d 176, 178 (2d Cir. 2000) (citation and internal quotation marks omitted), the case becomes moot, no matter the stage of litigation, and it must be dismissed, Russman v. Bd. of Educ., 260 F.3d 114, 119-20 (2d Cir. 2001). Here, following the conclusion of a three-day trial at OATH to adjudicate the disciplinary charges against him, plaintiff entered into an agreement with OATH, where he agreed to serve a 90-day suspension, which included the *entire* period of suspension in dispute in this case, and pay restitution to his clients. See Settlement Stipulation terminating the OATH proceeding dated April 11, 2019 (Dkt. 21). Thus, any dispute about the constitutionality of admitting affidavits into evidence at an administrative proceeding without the benefit of cross-examination of the affiant became moot. Indeed, any judgment as to whether the procedures employed by OATH before or after the period of suspension satisfy due process would have been "without implications for practical enforcement upon the parties." S. Jackson & Son v. Coffee, Sugar & Cocoa Exch., 24 F.3d 427, 431 (2d Cir. 1994) (citation and internal quotation mark omitted).

The claim for damages – even nominal damages – is not sufficient to keep this case alive. Alvarez v. Smith, 558 U.S. 87 (2009). In Alvarez, Chicago police officers had seized vehicles and cash from six individuals. The individuals filed suit against the city and two officials, claiming that they were entitled to a timely post-seizure hearing to seek the return of

---

[3] The claim regarding the right to cross-examine absent affiants fails as a matter of law. During the trial, plaintiff was put on notice that these affiants would not *voluntarily* appear at the trial, and plaintiff was given the opportunity to subpoena their appearance, which he did not pursue. See e.g., Email of Administrative Judge Casey, dated March 26, 2019 (annexed hereto as Exhibit D).

their property.  Later, the parties informed the Supreme Court that the cars and some of the cash had been returned, and that the plaintiffs no longer sought the return of the remainder of the cash.  Id. at 92.  Nevertheless, the plaintiffs continued to dispute the lawfulness of the State's hearing procedures.  Id. at 93.  The Supreme Court held that the case was moot because the "dispute is no longer embedded in any actual controversy about the plaintiffs' particular legal rights," and "a dispute solely about the meaning of a law, abstracted from any concrete actual or threatened harm, falls outside the scope of constitutional words "Cases" and 'Controversies.'"  Id.; Carey v. Piphus, 435 U.S. 247, 254, 55 L. Ed. 2d 252, 98 S. Ct. 1042 (1978) obligates a court to award nominal damages when a plaintiff establishes the violation of his right to procedural due process but cannot prove actual injury.  But unlike in Carey, the plaintiff here agreed to the suspension, therefore, there was no injury of any kind.

        For the reasons stated above, the claim regarding violation of a purported right to cross-examine affiants should be dismissed as moot.

        Respectfully submitted,

        /s/
        Jerald Horowitz

cc:    Daniel L. Ackman Esq. (via ECF)