# DANIEL L. ACKMAN

ATTORNEY AT LAW

_____

222 BROADWAY, 19TH FLOOR ○ NEW YORK, NY 10038
TEL: 917-282-8178
E-MAIL: dan@danackmanlaw.com

December 18, 2019

**VIA ECF:**
Hon. Ann M. Donnelly
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn New York 11201

Re: Raja v. Burns, et al, 19-cv-01328 (AMD)

Your Honor:

      This letter is pursuant to the Court's Orders of November 25, 2019 and December 2, 2019, directing the parties to address whether defendant John W. Burns is entitled to qualified immunity and whether the settlement of administrative claims brought by the NYC Office of Administrative Trials and Hearings (OATH) against plaintiff Rizwan Raja make moot his due process claims stemming from OATH's failure to allow him to cross-examine certain complaining witnesses.

## Qualified Immunity

      Mr. Burns, the first deputy commissioner and supervising administrative law judge for OATH, is not entitled to qualified immunity because the claims against him are based on long-settled law and because Mr. Burns played a critical role in summarily suspending Mr. Raja in the constitutionally inadequate post-suspension hearing. As defendants themselves state, a defendant is entitled to qualified immunity only if the defendant's conduct does not violate clearly established statutory or constitutional rights or it was objectively reasonable for the defendant to believe his actions were lawful at the time of the challenged act. *Francis v. Fiacco*, 942 F.3d 126, 145 (2d Cir. 2019). Moreover, "Qualified immunity is an affirmative defense on which the defendant has the burden of proof." *Outlaw v. City of Hartford*, 884 F.3d 351, 367 (2d Cir. 2018) (citing *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980)).

      Defendants cannot credibly plead this defense much less carry their burden since Mr. Raja's rights were clearly established at the time of the summary suspension. Just recently, in *El Boutary v. City of New York*, Judge Ross denied the same qualified immunity claim as defendants suggest here, saying, "[I]t has long been settled that due process generally requires a state to afford its citizens 'some kind of hearing' prior to depriving them of" property." No. 118CV3996ARRJO, 2018 WL 6814370, at *10 (E.D.N.Y. Dec. 26, 2018) (quoting Velez v.

1

Levy, 401 F.3d 75, 101 (2d Cir. 2005)). Not only was *Velez* decided in 2005, other Supreme Court and Second Circuit cases decided long before Mr. Burns acted speak to this basic principle of American law. *E.g.*, *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 48 (1993) ( "individuals must receive notice and an opportunity to be heard before the Government deprives them of property"); *New Windsor Volunteer Ambulance Corps, Inc. v. Meyers* ("In general, 'the Constitution requires some kind of a hearing before the State deprives a person of liberty or property.'" 442 F.3d 101, 115–16 (2d Cir. 2006) (quoting *Zinermon v. Burch*, 494 U.S. 113, 127 (1990)); *Padberg v. McGrath-McKechnie*, 203 F.Supp.2d 261, 276 (E.D.N.Y. 2002), aff'd 60 Fed. Appx. 861 (2d. Cir.), cert. denied, 540 U.S. 967 (2003).

Defendants contend that "Government officials who are entrusted with enforcing lawfully adopted regulations are not expected to be 'omniscient predictors of the uncertain course of constitutional law.'" Def. Letter at 3 (quoting *Laverne v. Corning*, 522 F.2d 1144, 1149 (2d Cir. 1975)). Maybe so, but omniscience is hardly required to understand that an individual is entitled to a hearing before the government denies his livelihood. *See Padberg*, 203 F.Supp.2d at 277-78 ( "The Supreme Court has recognized on a number of occasions that a person's means of support enjoys heightened significance as a property interest"). *Laverne*, the case defendants cite, involved, by contrast, a tricky situation where a regulatory search yielded evidence used at a criminal trial. 522 F.2d at 1146–47. That issue divided the New York Court of Appeals by a 4-3 vote. Here, however, the law is not new and could hardly be more certain.

Perhaps for that reason, defendants do not actually claim that Mr. Raja's right was not clearly established. Instead they make three irrelevant points. First, they contend that "Plaintiff has not cited any case that is particularized to the facts of this case." But denying a qualified immunity defense does not depend on there being case law with the exact same fact pattern, only that the right in question be established generally. *Outlaw*, 884 F.3d at 367 (2d Cir. 2018) ("This is not to say, however, that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful") (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (internal quotation marks omitted)). What *Anderson* calls "the contours of the right" were clear. 483 U.S. at 640. Next, defendants note that Judge Chen said that OATH provided enough evidence to suggest that the suspension was "not baseless," which she said before Mr. Raja had a chance to challenge that evidence. In any event, Mr. Raja had a right to due process even if the suspension would later prove to be merited (which as happens was never proven). *Carey v. Piphus*, 435 U.S. 247, 266–67 (1978).

Third, they suggest, without quite making the argument, that Mr. Burn's conduct was "objectively reasonable" because he was "enforcing rules lawfully promulgated by OATH." Def. Letter 3. But that a regulation arguably permitted the action has never been a defense to a constitutional claim. Even a first year law student knows that regulations or statutes, lawfully promulgated otherwise, may be unconstitutional as applied or on their face. Thus, in another recent case, Judge Caproni held that a NYC Taxi and Limousine Commission practice of seizing vehicles without hearing and without a warrant was unconstitutional—even where it was authorized by a city *statute*, not just a rule. *Harrell v. City of New York*, 138 F. Supp. 3d 479, 492–93 (S.D.N.Y. 2015), on reconsideration in part sub nom. *Harrell v. Joshi*, No. 14-CV-7246 (VEC), 2015 WL 9275683 (S.D.N.Y. Dec. 18, 2015).

Nor can defendants claim that Mr. Burns was not personally involved in the challenged actions. The documents defendants attach to their letter establish that Mr. Burns ordered the summary suspension without even scheduling a *post*-suspension hearing. Def. Letter Ex. A. He also coordinated the prosecution, issuing not one but two "designations" about who should preside over the case and limiting the presiding ALJ to a recommendation rather than a ruling. Def. Letter Ex. B. Later, he switched gears and allowed the OATH judge to make a final decision, but even then the ALJ was never permitted to rule on Mr. Raja's suspension. Letter Exs. C & D; *see* Pl. S.J. Br. at 11 (Dkt. No, 28).

Finally, while qualified immunity is based on an objective standard—whether the law was established and whether the conduct was reasonable—Mr. Burns is a lawyer of considerable experience who should have known better. The OATH website says he is admitted to the Bars of the U.S. Supreme Court, the Second Circuit, the EDNY, the SDNY and even the Bar of Ireland. In addition to being an ALJ, he is said to be "an experienced legal professional having worked in both the private and public sectors," including as Senior Trial Attorney for the Brooklyn District Attorney's Office." OATH website: https://www1.nyc.gov/site/oath/institute/hon-john-burns.page. Regardless of what OATH rules permitted or purported to allow, Mr. Burns should have been aware that the summary suspension was unconstitutional.

**Mootness**

The amended complaint asserts that denying Mr. Raja the right to cross-examine witnesses whose affirmations were admitted against him is unconstitutional.[1] Contrary to defendants' letter, there was no "conclusion" of the trial. It ended without a decision and was followed by a settlement. There was, however, a consequence, namely a 9-week suspension of Mr. Raja's right to practice.

At the trial, OATH relied on affirmations by two complaining witnesses who failed to appear at trial and who could not be cross-examined. While Mr. Raja denied their hearsay testimony, it was admitted and could have been considered by the ALJ had he ruled. Instead of ruling, the ALJ urged the parties to settle, which they did. This settlement, like any settlement, was influenced by the evidence submitted and admitted in the prior, underlying litigation.

As we have noted, but which bears repeating, the stipulation of settlement of the administrative complaint specifically states that Mr. Raja does not admit the charges against him. It also states that the agreement "shall not be admissible in, nor is it related to, any other litigation or settlement negotiation." Dkt. No. 21, ¶ 9.[2] The stipulation does not address plaintiffs' federal claims though they were already extant when the agreement was signed. It

---

[1] Defendants' new argument, not stated in their briefs and without any legal citation, that there was no violation because Mr. Raja could have asked OATH to issue a subpoena, Def. Letter 4, n. 3, should not be considered. It is, in any event, outlandish. OATH relied these witnesses and it was OATH's responsibility to secure their appearance. Indeed, the e-mail they attach, Def. Ex, D, tells Mr. Raja he could subpoena a witness, Md. Akinlolu, who he wanted to call in his defense, which he did.

[2] Not only do defendants seek to admit the settlement and attempt to rely on it, their letter falsely states a key term. Mr. Raja did not agree "to serve a 90-day suspension." *See* Def. Letter 4. He agreed to a 9-week (63 days) suspension, much of which he had already served. Dkt. No. 21 ¶ 2.

does not purport to preclude a damages action. Nor does it purport to limit damages. Finally, by its terms, the stipulation "contains all the terms and conditions agreed upon by the Petitioner and Respondent." All told, it is hard to see how a settlement agreement that is not admissible in this case and which does not mention this case can impact this action or moot any aspect of it.

Mr. Raja has since been reinstated. But that there was a settlement does mean he was not harmed. The settlement merely limits that harm. Mr. Raja is suing for damages (and declaratory relief) to compensate him for that harm. The amended complaint, in contrast to the original complaint, does not demand injunctive relief. *See* Amended Complaint, Whereas Clause. It does, however, demand damages and the damages claims are live. It is common for an action to remain justiciable even after claims for injunctive relief become moot. *Ellis v. Blum*, 643 F.2d 68, 83 (2d Cir.1981) (claim for damages saves action from mootness); *McCabe v. Nassau Cty. Med. Ctr.*, 453 F.2d 698, 701–02 (2d Cir. 1971) ("The cases make clear that the damage claim … under 42 U.S.C. § 1983 is not mooted merely because [plaintiff] no longer needs equitable relief"); *Mawhinney v. Henderson*, 542 F.2d 1, 2–3 (2d Cir. 1976) ("claim for money damages stemming from … same allegedly unconstitutional actions [as which motivated injunction claim] survives"). Indeed, the Court of Appeals has held that even a claim for nominal damages precludes an action from being moot. *Van Wie v. Pataki*, 267 F.3d 109, 115 n. 4 (2d Cir.2001) (plaintiffs "could avoid the potential for mootness by simply expressly pleading that ... nominal money damages are requested"); *Beyah v. Coughlin*, 789 F.2d 986, 989 (2d Cir.1986). Thus, even if Mr. Raja agreed to the stipulation—with all its terms. But he did not agree to waive his right to damages to compensate him for lost income.

*Alvarez v. Smith*, 558 U.S. 87 (2009), the one case that defendants rely on, is not to the contrary. In *Alvarez*, which involved the seizure of vehicles allegedly used to facilitate crimes, the Court emphasized that the defendants had returned the vehicles. There was no properly filed damages claim. "Thus," the Court said, "we have before us a complaint that seeks only declaratory and injunctive relief, not damages." The case had become moot for that reason. 558 U.S. at 92-93. Indeed, in a concurring opinion in *Campbell-Ewald Co. v. Gomez*, Justice Thomas specifically stated that the mootness analysis in *Alvarez* does not apply where the plaintiff is suing for damages. *Alvarez,* Justice Thomas concluded, was "not on point" because it "involved claims for injunctive or declaratory relief that became moot when the defendants ceased causing actual or threatened injury. But whether a claim for prospective relief is moot is different from [a case that] involves claims for damages to remedy past harms." *Campbell-Ewald Co. v. Gomez*, 136 S.Ct. 663, 677 (2016) (J. Thomas, concurring). Here, Mr. Raja is on the *Campbell-Ewald* side of the line.

In sum, Mr. Raja's reinstatement moots the injunctive relief claim voiced in the original complaint, but it does not moot his damages action. The stipulation of settlement, meanwhile, moots nothing. It is inadmissible and, even if it were admissible, it would not impact Mr. Raja's case generally. Nor would it moot the particular claim that OATH's reliance on hearsay affirmations to support its administrative charges denied Mr. Raja due process of law.

        Respectfully submitted,

        /s/

        Daniel L. Ackman