FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ FEB 5 2020 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

**RIZWAN RAJA,**

                    Plaintiff,

          -against-

**JOHN W. BURNS** and
**THE CITY OF NEW YORK,**

                    Defendants.
-----------------------------------------------------------x

**MEMORANDUM & ORDER**
19-CV-01328

**ANN M. DONNELLY**, United States District Judge:

On April 15, 2019, Rizwan Raja brought this action against the City of New York and

John W. Burns, the first deputy commissioner and supervising administrative law judge for the

New York City Office of Administrative Trials and Hearings ("OATH"). The plaintiff alleges

violations of his Fourth, Fifth, and Fourteenth Amendment rights under 42 U.S.C. § 1983, and

related claims arising under the New York City Charter and OATH rules. (ECF No. 14.) The

plaintiff moved for partial summary judgment on liability, and the defendants cross-moved to

dismiss the complaint. (ECF Nos. 22, 24.) I held oral argument on November 25, 2019. For the

reasons that follow, the plaintiff's motion for summary judgment is granted in part and denied in

part, and the defendants' motion to dismiss is granted in part and denied in part.

## BACKGROUND

### I.    Statutory Framework

Pursuant to Chapter 45-a of the New York City Charter, OATH is responsible for

conducting adjudicatory hearings for agencies of the City of New York. Charter § 1048(1).

OATH's rules permit non-attorneys to represent parties appearing before OATH tribunals,

subject to certain requirements codified in Sections 6-23 and 6-25 of Title 48 of the Rules &
Regulations of the City of New York.

### a.  Section 6-23 Rules

Under Section 6-23, non-attorney representatives must register with OATH and renew
their registrations every year. N.Y. Comp. Codes R. & Regs. Tit. 48, § 6-23(b) (2019).  A non-
attorney representative cannot misrepresent his qualifications or services "so as to mislead
people into believing [he] is an attorney at law or a governmental employee if [he] is not."
*Id.* § 6-23(d).  Non-attorney representatives may be disciplined for misrepresenting their
qualifications, failing to register or re-register, or failing to follow any other OATH rules,
including those prescribed in Section 6-25.  *Id.* § 6-23(f).  Possible discipline includes "the
suspension or revocation of the representative's right to appear before the Tribunal." *Id.*

### b.  Section 6-25 Rules

Subsection 6-25(a) defines prohibited conduct for parties, witnesses, and representatives
appearing before OATH. N.Y. Comp. Codes R. & Regs. Tit. 48, § 6-25 (2019).  As relevant
here, a non-attorney representative may not submit false information to the tribunal (6-25(a)(9)),
or "[e]ngage in any disruptive verbal conduct, action or gesture that a reasonable person would
believe shows contempt or disrespect for the proceedings or that a reasonable person would
believe to be intimidating," (6-25(a)(2)).

Subsections (c)(1) and (c)(2) of Section 6-25 authorize the Chief Administrative Law
Judge to suspend or bar representatives who "fail[] to abide by these rules," but only "after the
attorney or representative is given notice and a reasonable opportunity to appear....to rebut the
claims against him[.]" *Id.* § 6-25(c).  Subsections (d)(1) and (d)(2), however, authorize the Chief
ALJ to suspend or bar a representative summarily "upon a determination that the representative

lacks honesty and integrity and that the lack of honesty and integrity will adversely affect his or her practice before the Tribunal." *Id.* § 6-25(d). Factors to be considered in determining whether a representative lacks honesty or integrity include "whether the representative has made false, misleading or inappropriate statements to parties or Tribunal staff." *Id.* § (d)(2).

After the summary suspension or bar under Subsection 6-25(d), "the representative will be given an opportunity to be heard in a proceeding prescribed by the Chief Administrative Law Judge or his or her designee." *Id.* An aggrieved representative may then seek review of the Chief ALJ's decision through Article 78 of the New York Civil Practice Law and Rules. *Id.* § 6-25(e).

## II. Factual and Procedural History[1]

The plaintiff became a non-attorney representative registered to appear before the OATH tribunal in 2005, after he passed an exam demonstrating sufficient knowledge of TLC rules and regulations. (ECF No. 32, Defs.' Response to Pl.'s Rule 56.1 Statement ("Defs.' 56.1 Response") ¶¶ 5-7.) As a registered representative, the plaintiff represents taxi drivers appearing before the tribunal accused of rule violations and facing the possibility of suspensions or fines. (*Id.* ¶¶ 9-10.)

On March 1, 2019, OATH Assistant General Counsel Timothy R. Jones sent the plaintiff an email informing him that he was "summarily suspended starting **March 8, 2019**" pursuant to Section 6-25(d)(1). (*Id.* ¶ 22) (quoting ECF No. 23-1) (emphasis in original). The email attached a summary suspension letter detailing the allegations of the plaintiff's misconduct that gave rise to the summary suspension, which included: (i) failing to register as a representative, (ii) misrepresenting his qualifications to appear as an attorney, (iii) appropriating money under

---

[1] Unless otherwise noted, the factual background is based on my review of the entire record, including the parties' 56.1 statements.

false pretenses, (iv) submitting a false statement to the tribunal, and (v) engaging in disruptive verbal conduct. (ECF No. 23-2 at 2.) The author of the letter, First Deputy Commissioner and Supervising ALJ John W. Burns, concluded that the plaintiff should be summarily suspended pursuant to Section 6-25(d)(1) because the "fair and credible evidence…indicates a lack of honesty and integrity." (*Id.* at 3.) Both the email and the letter invited the plaintiff to submit a letter to Supervising ALJ Burns by March 22, 2019, if he wished to dispute the allegations of misconduct. (Defs.' 56.1 Response ¶ 22.)

On March 7, 2019, the day before the summary suspension was to take effect, the plaintiff filed this action and an order to show cause for a temporary restraining order. (ECF Nos. 1, 3-4.) United States District Judge Pamela K. Chen denied the TRO after a hearing that same day, and denied a motion for reconsideration on March 11, 2019. (ECF No. 9.) The plaintiff submitted a detailed refutation of the charges on March 14, 2019, but OATH determined that the plaintiff's suspension should not be lifted. (Defs.' 56.1 Response ¶¶ 29, 36.)

On March 19, 2019, OATH filed a new set of charges—styled as a "petition"—seeking to bar the plaintiff permanently from appearing before OATH. (*Id.* ¶¶ 37-39.) The petition contained many of the same charges from the summary suspension, but omitted the failure to register and false statement charges, and added a new charge of misappropriating client funds. (*Id.*) That same day, OATH informed the plaintiff that the charges in the petition would be tried before an OATH ALJ on March 22, 2019. (*Id.* ¶ 37.)

The hearing took place over three days, and ended on April 4, 2019. (*Id.* ¶ 46.) During the hearing, two of the plaintiff's former clients testified against him, and the OATH prosecutor submitted affirmations from two former clients who did not appear. (*Id.* ¶ 47.) Near the end of

trial, the parties negotiated a settlement, which they finalized and signed on April 11, 2019.[2] (*Id.* ¶ 49.) The settlement agreement does not contain any admissions of wrongdoing on the part of the plaintiff. (*Id.* ¶ 50.)

On April 15, 2019, the plaintiff filed the operative amended complaint. (ECF No. 16.) The plaintiff has been registered to appear as a representative before OATH since May 9, 2019.[3]

## STANDARD OF REVIEW

The plaintiff moves for summary judgment as to liability on the federal due process claims in the amended complaint. Summary judgment is appropriate only if the parties' submissions, including deposition transcripts, affidavits, or other documentation, show that there is "no genuine dispute as to any material fact," and the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The movant has the burden of showing the absence of any genuine dispute as to a material fact. *McLee v. Chrysler Corp.*, 109 F.3d 130, 134 (2d Cir. 1997) (citation omitted). A fact is "material" when it "might affect the outcome of the suit under the governing law," and an issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Barlow v. Male Geneva Police Officer Who Arrested Me on Jan. 2005*, 434 F. App'x 22, 25 (2d Cir. 2011) (internal citations omitted). Once the moving party has met its burden, the party opposing summary judgment must identify specific facts and affirmative evidence that contradict those offered by the moving party to demonstrate that there is a genuine issue for trial. *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 349 (E.D.N.Y. 2015) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

---

[2] Accordingly, the plaintiff's summary suspension lasted from March 8 to April 11, 2019, or 35 days. (*Id.* ¶ 51.)

[3] The parties confirmed the end date of Mr. Raja's suspension during oral argument.

Although Rule 56 permits a party to move for summary judgment "at any time," pre-discovery summary judgment "is the exception rather than the rule and will be granted only in the clearest of cases." *Wells Fargo Bank Nw., N.A. v. Taca Int'l Airlines, S.A.*, 247 F. Supp. 2d 352, 359-60 (S.D.N.Y. 2002) (internal quotation marks and citations omitted). "The Court must consider several factors in determining whether to grant summary judgment in the absence of discovery: (1) whether the lack of discovery was in any way due to fault or delay on the part of the nonmovant; (2) whether the nonmovant filed a sufficient Rule 56(f) affidavit explaining: (i) what facts are sought and how they are to be obtained, (ii) how those facts are reasonably expected to create a genuine issue of material fact, (iii) what effort the affiant has made to obtain them, and (iv) why the affiant was unsuccessful in those efforts; and (3) whether the nonmovant provided any basis for its belief that further discovery would alter the outcome of the summary judgment motion." *Id.* (citing *Berger v. United States*, 87 F. 3d 60, 65 (2d Cir. 1996) (citation omitted)).

None of those factors apply here. The parties do not dispute the factual history of the plaintiff's summary suspension and hearing before the ALJ, or the terms of the OATH rules authorizing the summary suspension.[4] Rather, they dispute whether these undisputed facts amount to violations of the plaintiff's constitutional rights to due process. Accordingly, I adjudicate the constitutional claims as a matter of law.[5]

---

[4] The plaintiff maintained at oral argument that there is still a dispute of fact about whether Mr. Raja acted dishonestly or inappropriately in violation of OATH rules. The merits of the case against the plaintiff are not the subject of this proceeding. In any event, the parties negotiated a settlement during the trial on the subject of Mr. Raja's conduct, a settlement that included no admission of wrongdoing. Therefore, the merits of Mr. Raja's suspension are moot. The plaintiff's challenge is to the process provided to him, not an appeal of administrative fact-finding.

[5] The defendants have not filed a Rule 56(f) affidavit or claimed that they lack adequate information to oppose the motion. Thus, they have waived any claim that adjudication of the plaintiff's motion for partial summary judgment should await further discovery.

The defendants move to dismiss the entire complaint under Rule 12(b)(6). To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This means that it must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Although the complaint need not include "detailed factual allegations," it must be more than "a formulaic recitation of the elements of a cause of action" and more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). In deciding a Rule 12(b)(6) motion to dismiss, the Court "must accept as true all of the allegations contained in the complaint;" however, this tenet does not apply to legal conclusions. *Id.* at 678 (internal citations omitted).

## DISCUSSION

The plaintiff claims that the City rule authorizing summary suspensions of OATH registrations is unconstitutionally vague and violates the right to procedural due process. The plaintiff also claims that the defendants violated his right to due process during the administrative hearing by denying him the right to cross-examine all of his accusers.

The defendants respond that the City rule is not unconstitutionally vague, and that the Constitution does not require it to provide a hearing before suspending a non-attorney representative's registration to appear before OATH. The defendants also argue that the claims against John W. Burns must be dismissed because the amended complaint does not allege his personal involvement.

7

## I.    Federal Claims

Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Ostroski v. Town of Southhold*, 443 F. Supp. 2d 325, 335 (E.D.N.Y. 2006) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). The challenged conduct must (a) be attributable at least in part to action under the color of state law, and (b) deprive the plaintiff of a right guaranteed under the Constitution of the United States. *Id.* (citing *Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999) (citation omitted)).

Since OATH claimed it suspended the plaintiff's registration pursuant to City rules, there is no doubt that the defendants acted "under color of law." The only question is whether the defendants' actions deprived the plaintiff of "any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983.

### a.    Summary Suspension – Procedural Due Process

The plaintiff argues that the defendants' failure to provide him a hearing before they suspended him violated his Fourteenth Amendment rights. The defendants counter that a pre-deprivation hearing is not required under the Constitution; the defendants cite the availability of post-deprivation measures and the City's overarching interest in ensuring the validity and integrity of the OATH tribunal.

The Fourteenth Amendment provides that the State may not "deprive any person of life, liberty, or property without due process of law." U.S. CONST. amend. XIV. To determine the level of process due, courts look to the three-part test articulated by the Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976). Under the *Mathews* test, courts weigh: (1) the private interest affected by the state action; (2) the risk of erroneous deprivation through the

procedures used and the value of additional procedural safeguards; and (3) the government's interest in taking the challenged action. *Id.* at 335 (citing *Goldberg v. Kelly*, 397 U.S. 254, 263-271 (1970)).

"The weight of the private interest depends on both the nature of the private interest and the duration of the deprivation." *Padberg v. McGrath-McKechnie*, 203 F. Supp. 2d 261, 277 (E.D.N.Y. 2002), *aff'd*, 60 F. App'x 861 (2d Cir. 2003) (citing *Gilbert v. Homar*, 520 U.S. 924, 932 (1997) (citations omitted)). The parties do not dispute that the nature of the plaintiff's interest implicates his livelihood and is therefore substantial. (*See, e.g.*, ECF No. 26, Defs.' Br., at 11 ("The plaintiff's interest in the continued ability to appear as a non-attorney representative before OATH pending the outcome of a hearing due him is a substantial one."). That position is supported by case law. *See, e.g.*, *Padberg*, 203 F. Supp. 2d at 277 ("Plaintiffs' interest in their taxicab license is profound. Suspending their licenses does far more than inconvenience drivers; it deprives them of their very livelihood."); *Bell v. Burson*, 402 U.S. 535, 539 (1971) (a driver's license, once issued, could become "essential in the pursuit of a livelihood").

Nevertheless, the defendants argue that the plaintiff's interest is less substantial because of the short duration of the suspension. Indeed, the Supreme Court has held that a plaintiff's substantial interest in his continued livelihood can be rendered insubstantial "so long as the suspended employee receives a sufficiently prompt post-suspension hearing." *Gilbert,* 520 U.S. at 932. That the plaintiff here received a hearing two weeks after his notice of suspension, the defendants argue, diminishes his interest in the registration.

This argument is not persuasive. Although the rule provides that summarily suspended representatives "will be given an opportunity to be heard," nothing in the rule guarantees that the hearing will take place "promptly" after the suspension, or that the hearing "prescribed by the

Chief Administrative Law Judge" will provide a meaningful opportunity to challenge the suspension on its merits. *See* N.Y. Comp. Codes R. & Regs. Tit. 48, § 6-25(d)(2). In other words, the rule on its face offers scant protections to ensure that representatives suspended under (d)(1) can avoid the prospect of extended suspensions during which they will be unable to earn a living. *See Padberg*, 203 F. Supp. 2d at 278 ("[A]lthough the TLC Rules seem crafted to avoid delay and ensure prompt review of suspension, in practice their protections are illusory. Drivers are still faced with the prospects of extended periods without the means to earn a living."). Accordingly, I find that the plaintiff's interest in the registration is substantial.[6]

The second factor under the *Matthews* test is "the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Matthews*, 424 U.S. at 335. The plaintiff argues that the risk of error was substantial because the suspension rested on a subjective assessment of his character—that he lacked "honesty and integrity"—and without any independent assurance that it was justified. The defendants counter that the risk of error was minimal because it rested on six different allegations of misconduct, three of which were in the form of declarations signed under penalty of perjury. The defendants also argue that any risk of error is mitigated by the availability of significant post-suspension process, including an administrative hearing (Section 6-25(d)(2)) and an Article 78 proceeding (Section 6-25(e)).

---

[6] Although the plaintiff received a hearing within two weeks of the suspension, it was thirty-five days before his registration was restored. A deprivation of that length, even with a "prompt hearing," is still substantial. *See El Boutary v. City of New York*, No. 18-CV-3996, 2018 WL 6814370, at *6 (E.D.N.Y. Dec. 26, 2018) ("But of course it was thirty-four days—more than a month—before the plaintiff's license was restored to him, even with the 'prompt' hearing that he was afforded. The plaintiff's deprivation may have been less than in *Padberg*, but the undisputed facts show that it was substantial nonetheless.") (internal citation omitted).

The purpose of a pre-suspension hearing is to "assure that there are reasonable grounds to support the suspension[.]" *Gilbert*, 520 U.S. at 933. Where there is readily verifiable, independent evidence that the suspension is *not unjustified*—such as an arrest (*Gilbert*, 520 U.S. at 933-34), indictment (*FDIC v. Mallen*, 486 U.S. 230, 240-41 (1988)), or affidavit of law enforcement (*Mackey v. Montrym*, 443 U.S. 1, 14 (1979))—the state can dispense with a pre-deprivation hearing because there is substantial assurance that the deprivation is not baseless, unwarranted, or arbitrary. If the suspension is based on a subjective assessment, there is an enhanced risk that the summary suspension is baseless no matter the source of the evidence. In a suit involving the summary suspension of taxicab drivers who refused service on impermissible grounds, the Honorable Raymond J. Dearie observed:

> It is the subjective nature of the evidence in service refusal suspension, *inter alia*, that distinguishes this case from other cases where pre-deprivation hearings were not required... [In *Mackey*], the risk of erroneous deprivation was far less because the suspension was based on objective facts. It is relatively easy to determine whether there is a legitimate reason to suspend someone of driving while intoxicated. The arresting officer will have the opportunity to observe the driver's condition and take note of the tell-tale signs of intoxication. Such readily verifiable evidence is not present in service refusal cases...In the case at bar, the focus is not on fact, but on impressions readily susceptible to mistake and misperception.

*Padberg*, 203 F. Supp. 2d at 278-79.

In her thoughtful and comprehensive opinion denying the plaintiff's motion to reconsider her denial of a temporary restraining order, *see Raja v. Burns*, No. 19-CV-01328, 2019 WL 1118044, at *3 (E.D.N.Y. Mar. 11, 2019), Judge Chen found that the defendants provided substantial support for their summary suspension, including three declarations signed under penalty of perjury. Thus, the Chief ALJ's assessment that the plaintiff lacked "honesty and integrity" was based on more than just subjective beliefs.

Moreover, any risk of an erroneous deprivation is mitigated by the availability of an Article 78 proceeding. As Judge Chen noted, the availability of several layers of post-suspension process distinguishes this case from *Padberg*, where the post-suspension procedures did not provide the drivers an opportunity to be heard on the merits, and thus "provided little, if any, protection of the taxicab driver's due process rights." *Id.* at *4 (quoting *Padberg*, 203 F. Supp. 2d at 279-800). Here, by contrast, the City rules allow the plaintiff to challenge his suspension through an Article 78 proceeding, which the Second Circuit has "on numerous occasions" held to be a "perfectly adequate post-deprivation remedy." *See Pierre v. N.Y.C Taxi and Limousine Comm'n*, No. 17-CV-973, 2017 WL 1417257, at *6 (E.D.N.Y. Apr. 19, 2017) (citations omitted); *see also Grillo v. N.Y.C Transit Auth.*, 291 F.3d 231, 234 (2d Cir. 2002) ("This court has held on numerous occasions that where, as here, a party sues the state and its officials and employees for the arbitrary and random deprivation of a property or liberty interest, an Article 78 proceeding is a perfectly adequate post-deprivation remedy.") (internal quotation marks and citation omitted). Because the plaintiff can challenge OATH's decision on the merits in an Article 78 proceeding, I find that the second *Matthews* factor weighs in favor of the defendants.

The third *Matthews* factor is the "[g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Matthews*, 424 U.S. at 335 (citation omitted). The defendants argue that summary suspensions serve the legitimate interest of ensuring the "validity and integrity of the Tribunal." (ECF No. 26 at 13.) The plaintiff agrees that assuring the integrity of the tribunal is a legitimate government interest, but disputes that the interest can be served only by a summary suspension, and not a suspension after a hearing.

In assessing the strength of the government's interest in obtaining a pre-hearing

suspension, courts look to whether "exigent" or "extraordinary" circumstances are present.

*United States v. All Assets of Statewide Auto Parts*, 971 F.2d 896, 903 (2d Cir. 1992) (citing

*Fuentes v. Shevin*, 407 U.S. 67, 91 (1972)). "These circumstances exist not just when there is an

important government interest at stake, but also when very prompt action is necessary," *Padberg*,

203 F. Supp. 2d at 280 (citation omitted), such as "in cases involving pressing and immediate

threats to the public health and safety." *Id.* (citing *Mackey*, 443 U.S. at 17 ("We have

traditionally accorded the states great leeway in adopting summary procedures to protect public

health and safety.")). In *Mackey*, the Supreme Court upheld a summary suspension statute partly

because of the government's interest in protecting the public from drunk drivers. 443 U.S. at 17

The defendants place this case in the "pressing and immediate threat[] to the public health

and safety" category. *Padberg*, 203 F. Supp. 2d at 280-81. They argue that summary

suspensions protect a "vulnerable population"—taxicab drivers whose own livelihoods are at

stake—from duplicitous representatives. (ECF No. 26 at 14.) While certainly legitimate, the

government's interest in upholding the integrity of the OATH tribunal neither implicates public

health and safety, nor requires prompt regulatory intervention. Indeed, OATH's investigation

into the plaintiff took nearly two years during which OATH collected evidence against him.

(ECF No. 31, Decl. of Timothy Jones, ¶¶ 14-26.) The most serious allegation—that the plaintiff

misrepresented himself as an attorney—came to OATH on March 14, 2018, (ECF No. 23-5),

nearly a year before OATH suspended him. While the defendants are entitled to prosecute the

plaintiff as they see fit, the fact that they allowed him to represent "vulnerable" clients for a year

despite allegations of misconduct undermines the argument that a summary suspension was necessary. Accordingly, I find that the third *Matthews* factor weighs in favor of the plaintiff.[7]

The plaintiff has a substantial interest in his registration, the defendants have a minimal interest in obtaining a pre-hearing suspension, and any risk of an erroneous deprivation in the summary suspension process is offset by the availability of an Article 78 hearing. Given the strength of the plaintiff's interest in his license and the important, but not immediate, need for OATH to maintain the integrity of its tribunals, I find as a matter of law that depriving the plaintiff of a pre-suspension hearing violated his due process rights.

### b. *Summary Suspension – Constitutional Vagueness*

"[T]he due process doctrine of vagueness is designed to ensure that, before risking a deprivation of liberty or property, a person have fair notice of the type of conduct that is prohibited..." *Piscottano v. Murphy*, 511 F.3d 247, 280 (2d Cir. 2007). Due process requires that "a reasonably prudent person, familiar with the conditions the regulations are meant to address and the objectives the regulations are meant to achieve, has fair warning of what the regulations require." *Rock of Ages Corp. v. Sec'y of Labor*, 170 F.3d 148, 156 (2d Cir. 1999) (citations omitted). The Supreme Court has "expressed greater tolerance" for vagueness in the civil context "because the consequences of imprecision are qualitatively less severe." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498-99 (1982); *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972) (regulations need not achieve "meticulous specificity" and may instead embody "flexibility and reasonable breadth") (citations omitted).

---

[7] The defendants' argument that pre-suspension hearings would impose an excessive burden is also unpersuasive. Since OATH guarantees a post-deprivation hearing at some point after a summary suspension (*see* N.Y. Comp. Codes R. & Regs. Tit. 48, § 6-25(d)(2)), there is no additional burden associated with holding one before the deprivation. *See El Boutary*, 2018 WL 6814370, at *7 ("The defendants do not dispute that it would be no added administrative burden for the TLC to provide a hearing before it suspends instead of after.") (citations, quotation marks, and alterations omitted).

In light of these permissive standards, the defendants argue that Sections 6-23 and 6-25 give sufficient warning that OATH practitioners may be summarily suspended for prohibited conduct. The plaintiff argues that the standard for prohibited conduct—conduct that lacks "honesty and integrity"—is nebulous, and that the misconduct defined in other subsections of the OATH rules cannot be used as a reference. According to the plaintiff, only the specific subsections that authorized the summary suspension (6-25(c) and (d)) can be evaluated for vagueness.

The plaintiff does not cite and the Court cannot find any authority suggesting that the Court must make a vagueness determination in a vacuum. In fact, case law demonstrates the opposite. *See, e.g.*, *United States v. Lanier*, 520 U.S. 259, 267 (1997) ("[T]he touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was [prohibited]."). In any event, Sections 6-25(c) and (d) are not vague. Section 6-25(d) specifies "factors to be considered in determining whether the representative lacks honesty and integrity," for example, "whether the representative has made false, misleading or inappropriate statements to parties or Tribunal staff." N.Y. Comp. Codes R. & Regs. Tit. 48, § 6-25(d)(2). This content gives a reasonably prudent OATH practitioner fair warning about the kind of conduct that merits a summary suspension. Accordingly, this claim is dismissed as a matter of law as against all defendants.

### c. OATH Hearing – Right to Cross-examination

The plaintiff argues that he was denied due process at his administrative trial before OATH because two of the four clients who accused him of wrongdoing submitted statements in lieu of testifying; the plaintiff says that he should have been permitted to cross-examine them. The defendants respond that the due process clause is not violated when hearsay evidence is

15

submitted during an administrative hearing or trial. At oral argument, I asked what effect the parties' settlement agreement—which they negotiated before the trial was complete—had on this claim. The parties addressed this question in supplemental briefing. (*See* ECF Nos. 46 and 48.)

As a preliminary matter, there is no absolute due process right to cross-examine witnesses during an administrative hearing or trial. *See Yancey v. Apfel*, 145 F.3d 106, 112-13 (2d Cir. 1998). Rather, an ALJ has the discretion to permit witness testimony "where reasonably necessary to a full development of the evidence in the case." *Id.* at 113 (quoting *Flatford v. Chater*, 93 F.3d 1296, 1307 (6th Cir. 1996)). In *Yancey*, for example, the Second Circuit concluded that it was not an abuse of discretion for the ALJ to deny a claimant the right to cross-examine a doctor whose medical report contributed to an adverse finding of disability. *Id.* ("After weighing the evidence, the ALJ found that although Yancey suffered from multiple pains and fatigue, she did not have an impairment or combination of impairments listed in the pertinent regulations. Under these circumstances, we believe that there was no deprivation of due process as the ALJ acted well within his discretion by refusing to subpoena Dr. Wong.").

In any event, the plaintiff waived his right to challenge the way the hearing was handled when he entered into a settlement agreement before a decision in the OATH proceeding. A plaintiff's right to assert a court challenge "is subject to waiver, just as other personal constitutional rights that dictate the procedures by which civil and criminal matters must be tried." *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 848-49 (1986) (citations omitted). A plaintiff's waiver may be explicit or implied. *See id.* (finding that the respondent effectively waived his right to proceed in federal court by electing to resolve the dispute through an administrative hearing). Here, the plaintiff could have elected to see the administrative trial through to the end, with a ruling by the ALJ. Had the ALJ ruled against him, he could have

appealed (*see* N.Y. Comp. Codes R. & Regs. Tit. 48, § 6-19), and raised the claim he seeks to press in this Court. But the plaintiff did not pursue that route. Instead, he voluntarily entered into a settlement agreement, which resolved the matters covered by the hearing "with prejudice," consistent with the parties' "wish to resolve this matter without further proceedings." (ECF No. 20.) By settling the case, the plaintiff waived his right to contest the way the hearing was conducted, including the ALJ's evidentiary rulings.

Alternatively, I find that under the circumstances of this case the cross-examination question is moot. The Constitution limits the subject matter jurisdiction of the federal courts to disputes involving "live cases and controversies." *Cnty. of Suffolk v. Sebelius*, 605 F.3d 135, 140 (2d Cir. 2010) (citation omitted). When "the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome," *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (citations omitted), the case becomes moot and must be dismissed, *Russman v. Bd. of Educ. of Enlarged City Sch. Dist. of City of Watervliet*, 260 F.3d 114, 119-20 (2d Cir. 2001). Likewise, "[t]he settlement of an individual claim typically moots any issues associated with it." *United Airlines, Inc. v. McDonald*, 432 U.S. 385 (1977) (Powell, J., dissenting) (citing 13B. Wright, A. Miller, & E. Cooper, Fed. Prac. & Proc. Juris. § 3533 (3d ed.)). Accordingly, this issue is also moot.

## II.    The Settlement

The next question is whether the settlement forecloses all of the plaintiff's claims. I find that it does not. The defendants say that by signing a settlement agreement with a suspension penalty, the plaintiff conceded the legitimacy of the initial summary suspension. The plaintiff responds that signing a settlement agreement—particularly one with no admission of fault—cannot be used against him to prove that the prior suspension was substantially justified. The

defendants' alternative argument, presented in a footnote, is that the settlement agreement bars the entire action.

First, the settlement agreement does not bar the entire action because the plaintiff did not waive his right to challenge the summary suspension in federal court. On the contrary, the settlement agreement is limited to resolving the administrative hearing pending in the OATH tribunal before ALJ Casey. It makes no reference to this lawsuit, and contains no releases of claims for OATH or the City. Interpreting this settlement agreement according to general principles of contract law, *see Powell v. Omnicom*, 497 F.3d 124, 128 (2d Cir. 2007), I find that the plaintiff did not waive, either expressly or implicitly, his right to continue prosecuting the summary suspension in federal court.

Second, the settlement agreement does not preclude a claim for compensatory damages. Under *Carey v. Piphus*, 435 U.S. 247 (1978), a plaintiff cannot recover compensatory damages for a violation of procedural due process if the ultimate deprivation was justified. The defendants argue that a settlement agreement with a temporary suspension component proves that the plaintiff's summary suspension was justified. In other words, the defendants claim that the plaintiff is estopped from arguing that the summary suspension was unconstitutional in the federal forum, because of issues "decided" in the settlement agreement in the administrative tribunal. As a general principle, however, "issue preclusion attaches only 'when an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment.'" *Arizona v. California*, 530 U.S. 392, 414 (2000), *supplemented*, 531 U.S. 1, (quoting Restatement (Second) of Judgments § 27, p. 250 (1982)). In light of this principle, "settlements ordinarily occasion no *issue preclusion*...unless it is clear...that the parties intend their agreement to have such an effect." *Id.*

18

The plaintiff entered into a settlement agreement that included a temporary suspension but no admission of wrongdoing. By entering into the settlement agreement, the plaintiff did not concede that the original summary suspension was legitimate. After all, parties settle for myriad reasons. *See United States v. Int'l Bldg. Co.*, 345 U.S. 502, 505 (1953) (the parties' agreement had no issue-preclusive effect because "[a]s the case reaches us, we are unable to tell whether the agreement of the parties was based on the merits or on some collateral consideration."). The plaintiff claims that he agreed to serve a brief suspension with no admission of wrongdoing because he was facing the prospect of a permanent loss of his livelihood, not because he "ultimately agreed to the 35-day suspension." (*See* ECF No. 29, Defs.' Opp'n Br., at 10.) Accordingly, the plaintiff is entitled to prove compensatory damages in a trial.

## III.    State Law Claims

The Court exercises supplemental jurisdiction over the plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a). The plaintiff's fifth and sixth claims for relief are a repackaging of his due process claims as violations of OATH rules or the New York City Charter. Accordingly, the motion to dismiss those claims is granted in part and denied in part as discussed above.

## IV.    Defendant Burns

The defendants argue that the complaint must be dismissed against John W. Burns because it does not allege his personal involvement in the alleged constitutional violations. The plaintiff responds that the allegations against Supervising ALJ Burns—that he signed the summary suspension letter and wrote two designation letters to the ALJ—are sufficient to establish his direct involvement in the alleged constitutional violations.

19

A supervisory official will not be found liable under Section 1983 simply by virtue of his "high position of authority." *Villafane v. Sposato*, No. 16-CV-3674, 2017 WL 4179855, at *12, (S.D.N.Y. Aug. 22, 2017) (quoting *Al-Jundi v. Estate of Rockefeller*, 885 F.2d 1060, 1065 (2d Cir. 1989) (citations omitted)), *report and recommendation adopted*, 2017 WL 4157220 (E.D.N.Y. Sept. 15, 2017). Rather, a plaintiff in a Section 1983 action must show that the supervisor was personally involved in a constitutional violation by: (1) directly participating in the violation; (2) failing to remedy the wrong after it comes to his attention; (3) creating a policy or custom under which unconstitutional practices occur, or allowing the continuation of such custom and policy; (4) being grossly negligent in supervising subordinates who committed the wrongful acts; or (5) failing to act on information indicating that unconstitutional acts are occurring. *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

It is undisputed that Supervising ALJ Burns authored the letter summarily suspending the plaintiff from appearing as a non-attorney representative. (Defs.' Response 56.1 ¶ 22.) In fact, it was Supervising ALJ Burns who decided that the plaintiff's actions merited a suspension without a hearing:

> In accordance with OATH rule 6-25(d)(1), I have reviewed the fair and credible evidence which indicates a lack of honesty and integrity that adversely affects your practice before OATH. I therefore summarily suspend you from appearing and representing individuals at OATH beginning **March 8, 2018** subject to my final determination in this proceeding.

(ECF No. 23-2 at 3) (emphasis in the original.)

Since the summary suspension violated the plaintiff's right to due process—and since Supervising ALJ Burns authorized the summary suspension—he is personally liable for the violation as a matter of law.

The defendants argue that even if there was a constitutional violation, Supervising ALJ Burns is entitled to qualified immunity because his conduct did not violate clearly established law. "Qualified immunity protects officials from liability for civil damages as long as 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Gilles v. Repicky*, 511 F.3d 239, 243 (2d Cir. 2007) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "When a defendant invokes qualified immunity...courts engage in a two-part inquiry: whether the facts shown 'make out a violation of a constitutional right,' and 'whether the right at issue was clearly established at the time of defendant's alleged misconduct.'" *Taravella v. Town of Wolcott*, 599 F.3d 129, 133 (2d Cir. 2010) (quoting *Pearson v. Callahan*, 555 U.S. 223 (2009)). Because the facts make out a violation of the plaintiff's rights to procedural due process, I focus on the latter inquiry: whether the right to due process was clearly established at the time of the defendants' summary suspension.

In determining whether a right is clearly established, the Court considers whether "(1) the right was defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has confirmed the existence of the right, and (3) a reasonable defendant would have understood from the existing law that his conduct was unlawful." *Bailey v. Pataki*, 708 F.3d 391, 404-05 (2d Cir. 2013) (citing *Luna v. Pico*, 356 F.3d 481, 490 (2d Cir. 2004)). "For a right to be clearly established, it is not necessary that courts have agreed upon the precise formulation of the standard." *Id.* at 405 (quotation marks and citation omitted).

It is well settled that "where the State feasibly can provide a pre-deprivation hearing it generally must do so regardless of the adequacy of a postdeprivation remedy." *Bailey*, 708 F.3d at 405 (quoting *Zinermon v. Burch*, 494 U.S. 113, 132 (1990)); *see also Velez*, 401 F.3d at 101

21

("Nevertheless, it has long been settled that due process generally requires a state to afford its citizens 'some kind of hearing' prior to depriving them of liberty.") (citation omitted). It is equally well settled that the state ordinarily can dispense with a pre-deprivation hearing only when there is an immediate danger to society. *Id.* at 407 ("[T]he basic proposition that due process requires a predeprivation hearing unless there is an immediate danger to society was well established prior to 2005.") (quotation marks and citation omitted). Accordingly, I find that Supervising ALJ Burns' actions violated clearly established law.

Nevertheless, even where the law is clearly established, an official is entitled to qualified immunity if it was "objectively reasonable" for him to believe that his actions were lawful at the time of the challenged acts. *Soares v. State of Conn.*, 8 F.3d 917, 920 (2d Cir. 1993); *see also Davis v. Scherer*, 486 U.S. 183, 190 (1984) ("Even defendants who violate [clearly established] constitutional rights enjoy a qualified immunity that protects them from liability for damages unless it is further demonstrated that their conduct was unreasonable under the applicable standard."). "Ultimately, the question is not what a lawyer would learn or intuit from researching case law, but what a reasonable person in the defendant's position should know about the constitutionality of the conduct." *Velez*, 401 F.3d at 100 (quotation marks and citation omitted).

The Second Circuit has held that it is objectively reasonable for an official to believe that his actions were lawful when those actions were taken pursuant to a presumptively valid state or local law:

> absent contrary direction, state officials...are entitled to rely on a presumptively valid state statute...until and unless [the statute is] declared unconstitutional...The enactment of a law forecloses speculation by enforcement officers concerning [the law's] constitutionality—with the possible exception of a law so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws.

22

*Vives v. City of New York*, 405 F.3d 115, 117 (2d Cir. 2005) (quoting *Connecticut ex rel. Blumenthal v. Crotty*, 346 F.3d 84, 102-03 (2d Cir. 2003) (citations, quotation marks, and alterations omitted)). In other words, an official can still claim qualified immunity for the violation of a clearly established constitutional right if the challenged conduct involved the enforcement of a state or local statute that is not "grossly and flagrantly unconstitutional."

Supervising ALJ Burns authorized the plaintiff's summary suspension pursuant to Section 6-25 of the City's Rules and Regulations, a duly enacted regulation. Although the law favoring pre-deprivation hearings is well settled, it is not so absolute as to render any law authorizing summary suspensions "grossly and flagrantly unconstitutional." Therefore, because he relied on a regulation that was not flagrantly unconstitutional, Supervising ALJ Burns is entitled to qualified immunity.

## CONCLUSION

The Court grants summary judgment for the plaintiff on the federal and state procedural due process claims insofar as they relate to the summary suspension of the plaintiff. The Court dismisses all claims that the OATH rules are unconstitutionally vague and that the defendants violated the plaintiff's right to due process by denying him the right to cross-examine all of his accusers. The Court grants the defendants' motion to dismiss Supervising ALJ Burns on grounds of qualified immunity.

The Court respectfully refers this case to United States Magistrate Judge Ramon E. Reyes, Jr. for a determination of potential damages stemming from the defendants' due process violation.

**SO ORDERED.**

s/Ann M. Donnelly

Ann M. Donnelly
United States District Judge

Dated: Brooklyn, New York
     February 5, 2020