UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

―――――――――――――

№ 19-CV-1328 (AMD) (RER)

―――――――――――――

RIZWAN RAJA,

Plaintiff,

vs

JOHN W. BURNS AND THE CITY OF NEW YORK,

Defendants.

―――――――――――――

**REPORT & RECOMMENDATION**

February 2, 2021

―――――――――――――

**to the Honorable Ann M. Donnelly
United States District Judge**

**RAMON E. REYES, JR., U.S.M.J.:**

Plaintiff Rizwan Raja ("Plaintiff" or "Raja") brought suit against Supervising Administrative Law Judge ("ALJ") John W. Burns ("Burns") and the City of New York ("the City") (collectively "Defendants") asserting claims under 42 U.S.C. § 1983. (Dkt. No. 16 ("A.C.") ¶ 4, 9–10). After Your Honor granted partial summary judgment against the City in favor of Raja and dismissed Raja's claims against Burns, (Dkt. No. 49), Raja and the City signed a Rule 68 Offer of Judgment ("the Judgment"), (Dkt. No. 51 ("J.")). Raja's subsequent motion for attorney fees is pending. (Dkt. No. 54). Your Honor referred that motion to me for a report and recommendation. (Order dated 7/27/2020).

For the reasons discussed herein, I respectfully recommend that Raja's motion be granted he be awarded $30,888 in fees and $400 in costs.

**BACKGROUND**

The Court assumes familiarity with the underlying facts of this case. To summarize, Raja's claims arose because, after fourteen years of representing taxi drivers at the New York City Office of Administrative Trials and Hearings Taxi and Limousine Tribunal ("OATH-TL"), he received an email that he was suspended from representing taxi drivers as an industry representative "upon a determination that [he] lacks honesty and integrity." (Dkt. No 56 ("Pl.'s Mem.") at 2).

1

Raja brought action in this Court alleging that the City denied him due process of law by suspending his license as a representative before the OATH-TL without a hearing. (A.C. ¶¶ 1–3). Raja simultaneously applied to the Court for a temporary restraining order or preliminary injunction to prevent his summary suspension from OATH-TL. (Dkt. No. 2). The Honorable Pamela K. Chen denied this request in the first instance and upon reconsideration. *Raja v. Burns*, No. 19-CV-01328 (AMD) (RER), 2019 WL 1118044, at *1 (E.D.N.Y. Mar. 11, 2019).

Raja then appeared before the New York City Office of Administrative Trials and Hearings ("OATH") to challenge the allegations against him. (Pl.'s Mem. at 4; Dkt. No. 59 ("Def.'s Opp'n") at 1–2). Near the end of his three-day hearing, the parties held settlement discussions with another ALJ and reached an agreement. (Pl.'s Mem. at 5; Def,'s Opp'n at 2). "[T]he settlement does not contain any admission of wrongdoing and it specifically states: 'This Stipulation shall not be admissible in, nor is it related to, any other litigation or settlement negotiation.'" (Pl.'s Mem. at 5). The stipulation did not address the suit pending in federal court. (Def.'s Opp'n at 2).

After the OATH settlement, Raja amended his complaint, (*see generally* A.C.), and he moved for partial summary judgment, (Dkt. No. 22). Defendants filed a motion to dismiss. (Dkt. No. 24). Your Honor granted Raja's motion for partial summary judgment on federal and state procedural due process claims only "insofar as they relate to the summary suspension." (Dkt. No. 49). The Court simultaneously dismissed "all claims that the OATH rules are unconstitutionally vague and that defendants violated the plaintiff's right to due process by denying him the right to cross-examine all of his accusers." (*Id.*). The Court granted the City's motion to dismiss claims against Supervising ALJ Burns on grounds of qualified immunity. (*Id.*). Your Honor clarified that "[t]he merits of the [OATH] case against the plaintiff are not the subject of this proceeding. . .. The plaintiff's challenge is to the process provided to him, not an appeal of administrative fact-finding." (*Id.* at 6 n.4).

Raja then accepted the Judgment. (J. ¶ 1). He agreed to take judgement against the City in the amount of $20,001. (*Id.*). The Judgment included that it "shall not be construed as an admission of liability by defendant[s] . . . ; nor is it an admission that Plaintiff . . . has suffered any damages." (*Id.* ¶ 3).

Raja's subsequent motion for attorney fees is pending. (Dkt. No. 54). Your Honor referred that motion to me for a report and recommendation. (Order dated 7/27/2020).

**DISCUSSION**

I.  **It is Undisputed that the Court May Award Raja Reasonable Attorney's Fees**

The Court has discretion to award a reasonable attorney's fee to the "prevailing party" of an action to enforce a § 1983 claim. 42 U.S.C. § 1988(b). A civil rights plaintiff is considered the "prevailing party" if they "obtain at least some relief on the merits of [the] claim." *Farrar v. Hobby*, 506 U.S. 103, 111 (1992). "The Second Circuit has held that a plaintiff who accepts a Rule 68 offer of judgment qualifies as a prevailing party entitled to attorney's fees and costs." *Spence v. Ellis*, No. 07-CV-5249 (TCP) (ARL), 2012 WL 7660124, at *2 (E.D.N.Y. Dec. 19, 2012) (citing *Lyte v. Sara Lee Corp.*, 950 F.2d 101, 103–04 (2d Cir. 1991)), *R & R adopted by* 2013 WL 867533 (Mar. 7, 2013); *see also Gleason v. Scoppetta*, No. 12-CV-4123 (RJD) (RLM), 2015 U.S. Dist. LEXIS 178305, at *8 (E.D.N.Y. Dec. 30, 2015)

2

(explaining that "the relief obtained [must] . . . not [be] *de minimis* and . . . [must be] of the "same general type" as that demanded in the complaint."), *R & R adopted in part by* 2016 U.S. Dist. LEXIS 72753 (June 3, 2016). Courts in this Circuit abide by a "presumption that successful civil rights litigants should recover attorney's fees unless special circumstances would render such an award unjust.'" *Cruz v. Henry Modell & Co.*, No. 05-CV-1450 (AKT), 2008 WL 905351, at *2 (E.D.N.Y. Mar. 31, 2008) (quoting *Kerr v. Quinn*, 692 F.2d 875, 877 (2d Cir.1982)) ("The district court's discretion to deny fees begins . . . only after an initial determination that the plaintiff's claim was so strong on the merits and so likely to result in a substantial judgment that counsel in similar cases could be easily and readily obtained.").

The City admits that this Court has discretion to award Raja "reasonable attorney's fees." (Def.'s Opp'n at 5–6). Raja accepted a Rule 68 Offer of Judgment against the City for $20,001.00. (J. ¶ 1). This is not a *de minimis* amount. *See Gleason*, 2015 U.S. Dist. LEXIS 178305, at *9, 30 (finding that $25,001 was not a *de minimis* or technical amount). In addition, the Judgment provides for "reasonable attorney's fees, expenses and costs to the date of the offer." (J. ¶ 1). The parties do not raise, and the Court cannot find, reason to diverge from the general presumption that a prevailing civil rights litigant should recover attorney's fees. In light of § 1988(b) and the Judgment, I find that Raja is eligible for an award of attorney's fees. And I respectfully recommend that the Court grant Raja's motion for attorney's fee to the extent described below.

## II. Attorney's Fees

A district court has broad discretion to determine the reasonable amount of attorney's fees to be awarded. *Hugee v. Kimso Apartments, LLC*, 852 F. Supp. 2d 281, 297 (E.D.N.Y. 2012) (citing *Perdue v. Kenny A.*, 559 U.S. 542 (2010)). "[A] 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Id.*; *Farbotko v. Clinton Cnty.*, 433 F.3d 204, 209 (2d Cir. 2005) ("[Section] 1988(b)'s central purpose [is to] attract[] competent counsel to public interest litigation."). In this Circuit, courts calculate the presumptively reasonable attorney's fees as the product of a reasonable hourly rate and hours reasonably expended on the litigation. *Stanczyk v. City of New York*, 990 F. Supp. 2d 242, 247 (E.D.N.Y. 2013), *aff'd*, 752 F.3d 273 (2d Cir. 2014) (citing *Millea v. Metro–North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011)).

Raja requests attorney's fees totaling $89,775. (Pl.'s Mem. at 8). For the reasons discussed herein, I find this amount excessive and unreasonable.

### A. Reasonable Hourly Rate

Raja has the burden to prove that his requested rate is reasonable. *See Farbotko*, 433 F.3d at 209 (citing *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)). The central consideration is "what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." *Zhiwen Chen v. Cnty. of Suffolk*, 927 F. Supp. 2d 58, 71 (E.D.N.Y. 2013) (quoting *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009)). The Second Circuit has adopted the forum rule under which district courts may generally consider as reasonable the prevailing hourly rates in the district in which they sit. *Hugee*, 852 F. Supp. 2d at 298 (citing *Simmons,* 575 F.3d at 174–75).

In evaluating the reasonableness of a prevailing party's requested rate, the court should consider several factors, including the

3

degree of success plaintiff achieved, the attorney's experience and expertise, the novelty and complexity of the case, and the quality of counsel's representation. *Hugee*, 852 F. Supp. 2d at 298 (collecting cases); *Stanczyk*, 990 F. Supp. 2d at 247. The court may also consider the size of the attorney's firm but should not reduce a fee on this basis alone. *Zhiwen Chen*, 927 F. Supp. at 72 ("a solo practitioner [has] less overhead and fixed costs than law firm partners." (quoting *Wong v. Yoo*, 2010 WL 4137532, at *2 (E.D.N.Y. Oct. 19, 2010))).

In this District, hourly rates for civil rights litigation currently range from $300–$450 per hour for partners and $100–$325 per hour for senior associates. *Torcivia v. Suffolk Cnty.*, 437 F. Supp. 3d 239, 252 (E.D.N.Y. 2020) (collecting cases). "The highest rates . . . are reserved for expert trial attorneys with extensive experience before the federal bar, who specialize in the practice of civil rights law and are recognized by their peers as leaders and experts in their fields." *Hugee*, 852 F. Supp. 2d at 299 (citing *Luca v. Cnty. of Nassau*, 698 F. Supp. 2d 296, 301 (E.D.N.Y. 2010)); *Struthers v. City of New York*, No. 12-CV-242, 2013 WL 5407221 (JG), at *8 (E.D.N.Y. Sept. 25, 2013) ("such fees are typically awarded to those solo practitioners with over twenty years of experience, a significant chunk of which is devoted to civil rights litigation.").

Raja requests $475 per hour for his attorney, Daniel Ackman ("Ackman"). (Pl.'s Mem. at 8). Ackman graduated from Columbia Law School in 1988, where he was a Harlan Fiske Stone Scholar. (Dkt. No. 55 ("Ackman Decl.") ¶ 2). He began his career as an associate at Skadden, Arps, Slate, Meagher & Flom LLP and specialized in commercial and corporate litigation. (*Id.*). Sixteen years ago, Ackman redirected his focus to class action litigation, including taxi drivers' civil rights. (*Id.* ¶ 3). He cites his own success as co-lead counsel in several lawsuits challenging the constitutionality of City statutes, regulations, and practices as they relate to New York taxi drivers. (*Id.* ¶¶ 4–13). These factors tend to support an award at the upper end of the range, but no more.

However, several factors indicate that a slight reduction from the upper range would be more reasonable. Raja concedes that "no one is saying that this was an extraordinarily complex case." (Pl.'s Reply at 7; *see also* Def.'s Opp'n at 3–4, 14). As to Ackman's credentials, he is a solo practitioner, (Def.'s Opp'n at 4), and takes cases on a contingency basis or for a flat fee, (Ackman Decl. ¶ 3). Ackman did not provide evidence of his usual rate. Instead, Raja argues that the fee award should be based solely on fees granted in Ackman's previous litigation. (Pl.'s Mem. at 11–12).

The majority of cases Raja cites are class actions, most litigated in the Southern District of New York ("SDNY"). (*Id.*). Raja overstates his argument that courts in this District award the same rates as courts in the SDNY. *See Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, No. 10-CV-2262 (DRH) (AYS), 2019 WL 2870721, at *5 (E.D.N.Y. June 18, 2019) ("while an attorney representing clients in the [SDNY] may sometimes command a higher hourly fee than an attorney representing clients in the [EDNY], a routine matter in the [SDNY] does not, and indeed should not, necessarily translate to a higher hourly fee award."), *R & R adopted by* 2019 WL 2869150 (July 3, 2019); *see also Torcivia*, 437 F. Supp. 3d at 252 ("[R]ates in the [SDNY] are higher than the rates in this District."). Moreover, *Calvo* and *DeCastro*, the cases that Raja most heavily relies upon, are not sufficiently similar in complexity to merit an identical award in this case, let alone an increased award. (*See* Pl.'s Mem. at 11–

4

12; Dkt. No. 55-2 ("Calvo Order"); Dkt. No. 55-3 ("DeCastro Order")).

Raja cites to one analogous case that Ackman previously litigated. *See El Boutary v. City of New York*, No. 18-CV-3996 (ARR) (JO), 2018 WL 6814370, at *1 (E.D.N.Y. Dec. 26, 2018) ("The plaintiff [sought] a ruling . . . that the suspension of his [taxicab] license violated his due-process rights"). In his declaration, Ackman admits that *El Boutary* was a different kind of case from his other previous cases. (Ackman Decl. ¶ 13 ("In each of the cases notes above (except *El Boutary*) the City's actions negatively impacted hundreds or thousands of individuals.") (emphasis added)). Raja makes the same statement in reference to his own case. (Pl.'s Reply at 7 ("[i]n each [prior] case *except this one*, the City's conduct had been repeated hundreds or thousands of times.") (emphasis added)). Although the *El Boutary* fee order indicates that the plaintiff was entitled to attorney's fees, Ackman provides no evidence of the attorney's fees actually recovered in that case.

I find a rate of $475 per hour unreasonable given the lack of complexity of this case, limited success in this case (discussed *infra* Section II.C.i.), failure to provide Ackman's "usual rate" or rates awarded in prior *similar* cases, and Ackman's status as a solo practitioner. (*See* DeCastro Order at 6–7). *See also Centro de la Comunidad Hispana*, 2019 WL 2870721, at *3–4. After careful review of the rates awarded in this District, I respectfully recommend $400 as a reasonable rate. *See Feltzin v. Union Mall LLC*, 393 F. Supp. 3d 204, 212 (E.D.N.Y. 2019) (finding $425 per hour reasonable for a partner who was recently awarded the same in a substantially similar case; and $325 per hour reasonable for a partner with comparatively less relevant experience and who did not provide information for fee awards in similar cases).

B. Ackman's Records are Contemporaneous

The party seeking attorney's fees must provide "contemporaneous" time records that include dated descriptions of tasks performed and the hours expended on each task. *Hugee*, 852 F. Supp. 2d at 302–303 (quoting *N.Y. Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983)).

The City argues that Raja failed to meet his burden because Ackman's records were not contemporaneous and complains that "[his] records are not broken down to 15-minute increments." (Def.'s Opp'n at 20, 22). Raja requests attorney's fees for a total of 189 hours billed. (Dkt. No. 55-7 at 5). In support, Raja provides declarations from Ackman. (Ackman Decl.; Dkt. No. 58 ("Ackman Reply Decl.")). He also submits a table detailing Ackman's hours, including the dates on which the work was completed, brief descriptions of the tasks, and the time spent to complete the day's tasks. (Dkt. No. 55-7). The records comply with the unanimously accepted billing method of representing work in increments of one-tenth of an hour. *See, e.g.*, *Townes v. City of New York*, No. 12 CIV. 3201 (BMC), 2013 WL 153726, at *3 (E.D.N.Y. Jan. 15, 2013); *United States v. Sixty-One Thousand Nine Hundred Dollars & No Cents ($61,900.00)*, 856 F. Supp. 2d 484, 491 (E.D.N.Y. 2012).

After careful comparison of the records Raja provided during settlement and the records he provides with this motion,[1] (*See*

---

[1] Ackman does not argue that Federal Rule of Evidence 408 prohibits the Court from reviewing his draft timesheet submitted as part of settlement discussions. (*See* Pl.'s Reply). In this District, a court

5

Dkt. Nos. 55-7, 60-1, 60-2), I find that Ackman's records were contemporaneous. The City points to four entries as evidence that the records are not contemporaneous.[2] (Def.'s Opp'n at 20–21). Ackman specifically addresses each inconsistency. (*See generally* Ackman Reply Decl.). The entries dated 3/6/19 and 3/14/19 did not initially include any length of time; Ackman amended them to list 6 and 1.5 hours, respectively. (*Compare* Dkt. No. 60-1, *with* Dkt. No. 55-7). These revisions corrected omissions resulting from drafting errors in the initial submission. (Ackman Reply Decl. ¶ 3). Ackman also edited the entries dated 3/6/19, 3/7/19 and 6/5/19 to include a breakdown of the hours expended for each listed task. (*Compare* Dkt. No. 60-1, *with* Dkt. No. 55-7). These edits did not affect the total hours (with the exception of the entry dated 3/6/19), or the tasks listed. (*Id.*).

The City references "these and other edits," (Def.'s Opp'n at 21), but the Court could find no other edits tending to discredit Ackman's attestation that this table reflects his contemporaneous time records. (*See* Ackman Reply Decl. ¶ 2, 4). Although Ackman would do well to present his most accurate records available at settlement, this failure does not bar him from compensation for reasonable hours expended on Raja's case. *See Dagostino*, 238 F. Supp. 3d at 416 (reducing requested hours for unexplained inconsistencies between draft records submitted for settlement and final records submitted to the Court).

C. Reasonable Hours Expended

The Court must next examine the contemporaneous time records and assess the reasonableness of the hours expended based on its experience, knowledge of the case, and evidence and arguments presented. *See Hugee*, 852 F. Supp. 2d at 303 (citing *Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998)). "The goal is 'to do rough justice, not to achieve auditing perfection.'" *Gleason*, 2015 U.S. Dist. LEXIS 178305, at *22 (quoting *Fox v. Vice*, 563 U.S. 826, 837 (2011)).

The division of hours between "stages" of litigation is not as clean as Raja suggests. I will evaluate the reasonableness of the hours expended in three parts—(1) litigation before this Court, (2) the OATH hearing, and (3) post-Judgement discussions. Of the 189 hours that Ackman billed for Raja's case, he attributed 49.9 to the OATH hearing and 0.3 hours to post-Judgment discussions.[3] (*See* Dkt. No. 55-7). Ackman billed 138.8 hours for tasks conducted to further the litigation before this Court.[4]

*i. Litigation Before this Court*

I find that the litigation before this Court in furtherance of Raja's § 1983 claims includes the investigation and preparation of the initial complaint and preliminary

---

may "consider[] [a] draft timesheet in assessing the reasonableness of the hours for which plaintiff seeks compensation." *Dagostino v. Computer Credit, Inc.*, 238 F. Supp. 3d 404, 415 (E.D.N.Y. 2017).

[2] The City's exhibit highlighting the differences between the document presented during settlement discussions and the document now under review muddles the issue rather than illuminating any wrongdoing by Ackman. (*See* Dkt. No. 60-2).

[3] Raja's "stage 2" of his case, the OATH hearing, extended from March 10, 2019 through April 4, 2019. (Pl.'s Mem. at 15). He wrote that the hours totaled 65.3. (*Id.*). But the Court calculated that those entries accounted for 49.9 hours and proceeds with the analysis based on this lower number.

[4] 189 – 49.9 – 0.3 = 138.8

6

injunction motion; the summary judgment motion, the opposition to the motion to dismiss, and settlement negotiations. The proceeding analysis includes Ackman's billing entries dated March 2, 2019 through March 8, 2019 and April 5, 2019 through February 24, 2020.[5] (*See* Dkt. No. 55-7).

A court should make "an across-the-board fee reduction" when "counsel relies on vague or excessive entries or block billing practices" or requests compensation for redundant or otherwise unnecessary hours. *Zuffa, LLC v. S. Beach Saloon, Inc.*, No. 15-CV-06355 (ADS) (AKT), 2019 WL 1322620, at *8 (E.D.N.Y. Mar. 6, 2019), *R&R adopted by* 2019 WL 1317568 (Mar. 22, 2019); *see also Hugee*, 852 F. Supp. 2d at 303. Courts find time entries vague where the attorney listed tasks such as "[c]ommunications regarding records and status," "[r]eview communications," and "trial prep." *Houston v. Cotter*, 234 F. Supp. 3d 392, 409 (E.D.N.Y. 2017).

Block billing, or "the lumping together of discrete tasks . . . introduces an element of vagueness into a fee application." *Spence*, 2012 WL 7660124, at *7 (citations omitted); *see also Resnik v. Coulson*, No. 17-CV-676 (PKC) (SMG), 2020 WL 5802362, at *7 (E.D.N.Y. Sept. 28, 2020). "Block-billing is not per se unreasonable." *Centro de la Comunidad Hispana*, 2019 WL 2870721, at *7; *see also Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 266 (2d Cir. 2014)). However, the Court must be able to discern the reasonableness of the time spent on each task or service provided. *Id.* (citing *Miroglio S.P.A. v. Conway Stores, Inc.*, 629 F. Supp. 2d 307, 313-14 (S.D.N.Y. 2009)). If it cannot, an across-the-board reduction may be warranted. *Id.* (collecting cases).

The Court may also reduce the requested hours to adjust for attorney time billed for clerical tasks, even where the attorney is a solo practitioner. *Torcivia*, 437 F. Supp. 3d at 253 (citing *Lilly v. City of New York*, 934 F.3d 222, 234 (2d Cir. 2019)). Clerical tasks include but are not limited to "sending and receiving faxes, requesting and receiving medical records, serving papers, . . . hand-delivering courtesy copies of filings . . . , preparing a summons and complaint for service, ECF filings, . . . and communications regarding ordering a court reporter." *Id.* (citations omitted).

There are several deficiencies throughout Ackman's billing records. In addition to vague entries for tasks such as "prep for oral argument,"[6] Ackman used block billing for approximately twenty-three out of fifty-one entries. (*See* Dkt. No. 55-7).[7] This excludes three entries in which Ackman provided the breakdown of hours expended for each listed task.[8] (*Id.*). Block billing accounted for approximately 64.1 out of 138.8 hours, forty-six percent, that Ackman claims to have expended on the federal litigation. Several of those entries combine tasks such as legal research with telephone calls or emails.[9] (*Id.*). The Court therefore cannot discern if

---

[5] In Raja's analysis, he excludes entries dated 4/5/19–5/14/19. (*See* Pl.'s Mem. at 14–15). But he accounts for those hours in his total request. (*See* Dkt. No. 55-7). After careful review of the listed tasks, I find that the majority of those entries are reasonably related to the litigation before this Court and are appropriately discussed within this sub-part.

[6] Entries dated 11/22/19, 11/24/19, and 11/25/19.

[7] Entries dated 3/2/19, 3/3/19, 3/4/19, 3/8/19, 4/5/19, 4/7/2019, 4/8/2019, 4/10/2019, 4/11/2019, 6/7/19, 6/10/19, 6/11/19, 6/20/19, 7/8/19, 7/9/19, 7/10/19, 7/20/19, 11/22/19, 11/25/19, 12/17/19, 2/5/2020, 2/18/19, 2/21/2020.

[8] Entries dated 3/6/2019, 3/7/2019, and 6/5/2019.

[9] *E.g.*, 3/3/2019, 3/8/2019, 11/25/2019.

7

Ackman expended a reasonable amount of time to complete each type of task. Due to Ackman's block billing practices, several entries include tasks for this litigation intermingled with hours dedicated to the OATH hearing.[10] The Court also notes that several entries include time billed for clerical tasks.[11] (*Id.*).

In addition to reducing requested hours for vague, excessive, and redundant entries, there are circumstances in which full compensation for the remaining hours is not reasonable. *See Struthers*, 2013 WL 5407221, at *9. Courts reduce the overall award to account for limited success on the plaintiff's claims. *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436–37 (1983)). "[T]he most critical factor in a district court's determination of what constitutes reasonable attorney's fees in a given case is the degree of success obtained by the plaintiff." *Stanczyk*, 990 F. Supp. 2d at 252 (quoting *Barfield v. N.Y. City Health & Hosps. Corp.*, 537 F.3d 132, 152 (2d Cir. 2008)); *see also U.S. Football League v. Nat'l Football League*, 887 F.2d 408, 414 (2d Cir. 1989) ("Where a plaintiff has achieved only partial or limited success, full compensation for attorney's fees would not be reasonable." (citation omitted)).

When the plaintiff's successful claims involved facts or legal theories that are intertwined with less the successful claims, courts review "the quantity and quality of relief obtained, as compared to what the plaintiff sought to achieve as evidenced in [the] complaint." *Torcivia*, 437 F. Supp. 3d at 255 (quoting *Barfield*, 537 F.3d at 152 (affirming 50% to reflect plaintiff's limited success)); *see also Gleason*, 2015 U.S. Dist. LEXIS 178305, at *23–24 ("Reasonable paying clients may reject bills for time spent on entirely fruitless strategies while at the same time paying their lawyers for advancing plausible though ultimately unsuccessful arguments."). Courts also reduce the award when a plaintiff receives only *nominal* damage awards but otherwise should not take into account the amount of the plaintiff's award. *Grant v. Martinez*, 973 F.2d 96, 101–02 (2d Cir. 1992) (quoting *City of Riverside v. Rivera*, 477 U.S. 561, 578 (1986)) ("A majority of the Supreme Court . . . has rejected such a per se proportionality rule.").

Raja sued the City and ALJ Burns. (A.C.). Raja included claims of relief stemming from four alleged due process violations, suspension without hearing, fair warning of law, fair warning of penalty, and denial of right to cross examine. (*Id.*). He also brought claims under the NYC Charter and OATH Rules. (*Id.*). Raja sought a judgment declaring that all Defendants violated the federal Constitution, New York common law, and local law; a declaration that the OATH rules under which he was prosecuted were unconstitutionally vague; a declaration that his suspension without a fair hearing was unconstitutional; a declaration that he was entitled to a hearing at which he could present

---

[10] The majority of Ackman's time entries for March 2, 2019 through March 8, 2019 and April 4, 2019 through February 24, 2020 are reasonably attributed to necessary tasks for litigation before this Court. However, the 3/6/2019 entry includes 1.5 hours to "draft complaint & emails w/ Jones." Jones acted as the OATH prosecutor for Raja's OATH hearing. (Pl.'s Mem. at 4). Entries dated 4/8/19, 4/10/19, and 4/11/19 also intermingle tasks necessary to the OATH litigation (e.g., "settlement conf. call w/ Raja and ALJ Miller") with tasks before this Court (e.g., "draft amended complaint") without providing any further breakdown. The Court excludes these entries from its calculations. (1.5 + 3 + 3.2 + 2.4 = 10.1).

[11] The entry dated 6/10/2019 includes "prepare motion exhibits," the entry dated 6/11/19 includes "ECF filing," the entry dated 7/9/2019 includes "prepare tables," and the entry dated 7/20/2019 includes "prepare hard copy of motion papers." (Dkt. No. 55-7).

evidence and state his defenses; an order that his name be removed from the published list of suspended or barred OATH representatives; compensatory damages including for lost income, out of pocket expenses, and emotional harm; punitive damages against Burns; and an order awarding disbursements, costs, and attorney's fees. (A.C. at 15).

Raja filed a motion for partial summary judgment, (Dkt. No. 22), and the City filed a motion to dismiss, (Dkt. No. 24). Raja had some limited success. Your Honor granted Raja's motion for partial summary judgment as to the federal and state procedural due process claims as applied to his summary suspension. (Dkt. No. 49 at 23). The Order included that Raja was entitled to prove compensatory damages. (*Id.* at 18–19). Raja then accepted a Rule 68 Judgement. (*See* J.). He agreed to take $20,001.00 against the City, plus reasonable attorneys' fees, expenses, and costs. (*Id.* at 1).

However, many of Raja's claims did not prevail. Your Honor dismissed Raja's claims against Supervising ALJ Burns on grounds of qualified immunity. (Dkt. No. 49 at 23). Your Honor also dismissed all claims that the OATH rules are unconstitutionally vague and that Defendants violated the plaintiffs right to due process by denying him the right to cross-examine all of his accusers. (*Id.* at 15–17). The Order dated February 5, 2020, notes that OATH reinstated Raja as a representative on May 9, 2019. (*Id.* at 5).

"[F]ee awards under § 1988 were never intended to produce windfalls to attorneys." *Farrar*, 506 U.S. at 115 (citation omitted).[12]

For the deficiencies discussed above, including vague entries, block-billing, clerical tasks, and Raja's limited success, the Court finds reasonable a 40% across the board cut of all hours expended on the litigation before this court. *Chabad Lubavitch of Litchfield Cnty., Inc. v. Litchfield Historic Dist. Comm'n*, 934 F.3d 238, 245 (2d Cir. 2019) (approving 50% reduction); *Houston*, 234 F. Supp. 3d at 410–411 (applying a 50% reduction for excessive entries, vague entries, block billing, limited novelty and complexity of the case, and overstaffing); *Matusick v. Erie County Water Authority*, 757 F.3d 31, 64 (2d Cir. 2014) (upholding 50% reduction in light of "concerns regarding unspecified conferences, telephone calls, email correspondence, and reviews"); *Francois v. Mazer*, 523 F. App'x. 28, 29 (2d Cir. 2013) (upholding 40% reduction in hours).

I respectfully recommend compensating Raja for Ackman's time litigating before this Court in the amount of $30,888.[13]

### ii. Hours Expended on the OATH Hearing

"It is well-settled that generally, attorney's fees are not available for work performed in administrative proceedings." *Murray ex rel. Murray v. Mills*, 354 F. Supp. 2d 231, 239 (E.D.N.Y. 2005) (collecting cases). However, "[s]ection 1988 permits attorney's fees for time spent on administrative proceedings to enforce the civil rights claim prior to the litigation." *Chabad Lubavitch*, 934 F.3d at 244 (citations omitted). For example, courts award attorney's fees for administrative

---

[12] In a footnote, the City urges the Court to take special precaution when considering awards against "the government" but does not cite any case law binding on this Court. (Def.'s Opp'n at 8 n.5). Althought the recommended attorney's fees are greater than the City's proposed award, they are also significantly less than Raja's request.

[13] (138.8-10.1)(.6) x 400 = $33,312. *See supra* n.10.

9

proceedings where the governing statute required that plaintiff exhaust administrative remedies before bringing action. *See Murray*, 354 F. Supp. 2d at 239.

District courts also have discretion to award attorney's fees for the portion of an attorney's time spent on an "administrative proceeding which 'was both useful and of a type ordinarily necessary to advance' the subsequent § 1988 civil rights litigation." *Cullen v. Fliegner*, 18 F.3d 96, 105–06 (2d Cir. 1994) (citing *N. Carolina Dep't of Transp. v. Crest St. Community Council, Inc.*, 479 U.S. 6, 15 (1986); *Webb v. Board of Educ.*, 471 U.S. 234, 243–44 (1985))). In those cases, courts in this Circuit require that the plaintiff "appropriately exclude[] from his request those fees incurred that were particular to the [administrative] proceeding and could not be transferred to the district court action." *Cullen*, 18 F. 3d at 106; *Webb*, 471 U.S. at 235.

I find that Raja's § 1983 claim did not require that he obtain relief or exhaust his remedies through administrative proceedings. He originally requested a stay of the administrative proceeding and sought immediate relief in federal court. *See Murray* 354 F. Supp. 2d at 239. Raja's initial request for relief was unsuccessful, in large part because of the post-deprivation hearing available to Raja. *Raja*, 2019 WL 1118044, at *4. Raja argues that the difference in outcome between his motion for a temporary restraining order or preliminary injunction and his motion for partial summary judgment is evidence of the usefulness of the OATH trial. (Pl.'s Reply. at 4–5). However, his argument overlooks Judge Chen's careful analysis that Raja failed to meet his burden of proof that he would suffer irreparable harm. *Raja*, 2019 WL 1118044, at *4 n.7. This additional burden was not required at the summary judgment stage.

The Court cannot agree with the City that "the three-day OATH trial had no benefit whatsoever to resolving the claims." (Def.'s Opp'n at 17 n.8). But that alone is insufficient to find that *all* efforts expended on the OATH hearing were useful and necessary to advance the civil rights litigation. Raja failed to identify any discrete hours expended on the OATH hearing that were both useful and necessary to the § 1983 litigation. (Pl.'s Reply at 4). Instead, he asserts that "it is not possible to separate the hours that related to the federal claim from those that did not." (*Id.* at 5). I find his assertion insufficient to ignore the deficiency.

The Court cannot not discern which portion of hours from the OATH hearing might be awarded without double counting hours already recommended as described *supra* Section II.C.i. First, Raja's argues that his "motion [for summary judgment] *relied* on OATH trial testimony." (Pl.'s Reply at 3 (emphasis added)). His argument is unsupported. Raja fails to mention, and the Court could not identify, specific testimony from the OATH hearing that carried the day before this Court.[14] According to Raja, "[a]t the OATH trial, [he] attempted to establish not just that he did not violate OATH rules, but that the alleged violations came long before his summary suspension and that he did not pose an immediate threat to public health or safety." (*Id.* at 5 n.1 (citing Dkt. No. 49)). Raja accurately notes that those "latter

---

[14] The Court acknowledges the OATH testimony of Kieran Holohan weakened the allegations against Raja. (Dkt. No. 28 at 7–8). However, neither Raja nor the Court seem to rely on that testimony in analysis regarding the summary suspension. (*See Id.* at 13–20; Dkt. No. 49). The Court acknowledges that Raja references Holohan's habit of recommending the harshest penalty within his incident reports. (Dkt. No 28 at 19).

10

two points carried the day in obtaining summary judgment." (*Id.*). But that information was available to Raja before the OATH hearing. He submitted the relevant evidence to the Court as attachments to his initial Complaint. (Dkt. Nos. 1, 4-1, 4-2). Raja attached the summary suspension notice, including allegations from Mohammad Siddiquee ("Siddiquee"), Saiful Alam, Joseph Kwaku Adu ("Adu"), and Felix Ortiz. (Dkt. No. 2-2). Critically, those allegations and Raja's declaration included the dates of the relevant accusations. (Dkt. No. 4 ¶ 28).

Second, Raja overstates the extent to which his motion for summary judgment "relied on . . . documents admitted at the OATH trial, including the summary suspension notice, incident reports crafted by OATH, Raja's declaration submitted to OATH and the OATH petition." (Pl.'s Reply at 3). Raja correctly notes that the factual and legal background of his memorandum in support of his motion for summary judgment incorporated OATH hearing testimony and other evidence obtained through the OATH proceeding. (Pl.'s Reply at 4). However, inclusion in the background section is not *per se* evidence that those submissions were useful or necessary to his limited success in District Court. That "[m]any of the same exhibits were submitted during the OATH proceedings" is no indication that the OATH proceedings were useful or necessary to this federal litigation. (*See* Dkt. No. 22 at 3 n.2).

Many of the assertions within the background section of Raja's memorandum of law are attributed to his attached Declaration.[15] (*See* Dkt. No. 28). The Declaration does not reference the OATH hearing. (*See* Dkt. No. 23-7). It references only the suspension letter and attached allegations that were submitted to this Court with the initial Complaint. (*See id.*). The Declaration is nearly identical to the declaration that Raja submitted with his initial Complaint. (*Compare* Dkt. No. 4, *with* Dkt. No. 23-7). The only notable additions are that Raja reviewed *his own* records to provide further assurances as to his conduct relating to the allegations of Siddiquee and Adu. (Dkt. No. 23-7 ¶¶ 30, 36).

Lastly, the Court's analysis at summary judgment did not rely on the merits of the case before OATH. (*See* Dkt. No. 49). The Court reviewed only OATH's procedure to suspend Raja before fully evaluating the veracity of allegations against him. (*See id.* at 6 n.4). It found a due process violation because of the timing of the OATH hearing in relation to Raja's summary suspension. (*Id.* at 14). This timing did not emerge from anything that occurred at the hearing. Instead, the following factual details were relevant: time elapsed between the summary suspension and the OATH hearing, the time that elapsed between the allegations against Raja and his suspension, and that the summary suspension was supported by sufficient evidence within the attached letter. (*Id.* at 9–11). All of this information was in Raja's possession at the time he filed the initial complaint. The Court also highlighted that the OATH settlement did not waive Raja's right to compensatory damages for the time that he was suspended without due process of law. (*Id.* at 18). But the substance of the settlement was neither admissible in nor related to the litigation before this Court. (Pl.'s Mem. at 5).

Raja did not litigate his OATH case to enforce his claimed right to a pre-deprivation

---

[15] Raja also references declarations from individuals willing to attest to Raja's character. (Dkt. No. 28 at 8–9). These declarations were submitted with the Complaint. (*See* Dkt. Nos. 5, 6).

11

hearing. And beyond the hours expended on the OATH hearing, Ackman still billed substantial time researching, drafting, and editing the motion for summary judgment.[16] (Dkt. No. 55-7). His time records include 4.5 hours drafting just the fact sections of the brief and an entry for 6.5 hours that included, among other tasks, "draft[ing] declaration for SJ motion." (*Id.*). Because Ackman fails to explain how any additional hours expended on the OATH hearing were useful or necessary to advance his federal case, the Court cannot find that reasonable attorney's fees were not already fully recommended *supra*. I respectfully recommend that the Court deny Raja's request for attorney's fees for hours expended on the OATH hearing.

### iii. Post-Judgment Discussions

Raja concedes that he cannot recover attorney's fees for hours expended by his attorney on the fee litigation. (*See* Pl.'s Mem. at 14). This is supported by the law in this Circuit, *Lilly*, 934 F.3d at 237 ("when a settlement cuts off a plaintiff's entitlement to attorney's fees on a specific date, a district court may not award a party attorney's fees for work incurred after that cut-off date."), and the Judgment, (J. ¶ 1 (parties agreed to "reasonable attorneys' fees, expenses and costs to February 25, 2020.")). Nevertheless, Raja requests compensation for 0.3 hours that Ackman billed in March 2020. Ackman does not address why his discussions with Raja about the Rule 68 Judgment extended into March or why that time should not be considered part of the post-Judgment fee litigation. (*See* Pl.'s Reply).

I respectfully recommend that the Court deny Raja's request for award attorney's fees to the extent that he requests fees for 0.3 hours that Ackman billed in March 2020.

### III. Costs

Raja requests costs of $400 as reimbursement of his filing fee. (Pl.'s Mem. at 16). He did not provide supplemental material such as receipts or invoices to substantiate the request. However, the Court may take judicial notice of the District's filing fee. *See, e.g.*, *Rudler v. Houslanger & Assocs., PLLC*, No. 18-CV-7068 (SFJ) (AYS), 2020 WL 473619, at *12 (E.D.N.Y. Jan. 29, 2020). Therefore, I find it appropriate to take judicial notice of this District's $400 filing fee. (*See* Dkt. Entry dated 3/7/2019 (noting "$ 400, receipt number 4653137769"). I respectfully recommend that Raja be awarded $400 in costs.

### **CONCLUSION**

For the foregoing reasons, I respectfully recommend that Raja's motion for attorney's fees and costs be granted and he be awarded $30,888 in fees and $400 in costs.

Plaintiffs' counsel is hereby directed to serve copies of this Report and Recommendation upon Defendants by regular and certified mail and to file proof of service with the Clerk of the Court promptly thereafter. Any objections to the recommendations made in this Report must be filed with the Clerk of the Court and the Honorable Ann M. Donnelly within fourteen (14) days of receipt hereof. Failure to file timely objections waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Small v. Sec'y*

---

[16] *See* entries dated 5/17/19 through 6/11/19 amounting to approximately 46.7 hours, not including the letter motion for leave to file the motion for summary judgment or research and writing completed for the reply brief.

*of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).


**RESPECTFULLY RECOMMENDED**

/S/ Ramon E. Reyes, Jr.
RAMON E. REYES, JR.
United States Magistrate Judge
Dated: February 2, 2021
      Brooklyn, NY