21-945
*Raja v. Burns*

# In the
# United States Court of Appeals
# For the Second Circuit

August Term, 2021

(Argued: February 18, 2022        Decided: August 1, 2022)

Docket No. 21-945

RIZWAN RAJA,

*Plaintiff-Appellant,*

– v. –

JOHN W. BURNS, CITY OF NEW YORK,

*Defendants-Appellees.*

B e f o r e :

CALABRESI, CARNEY, and ROBINSON, *Circuit Judges.*

Rizwan Raja appeals from an order of the United States District Court for the Eastern District of New York awarding him attorney's fees under 42 U.S.C. § 1988 in an amount substantially less than he sought. After Raja prevailed against the City of New York on the merits of his due process claim under 42 U.S.C. § 1983, the district court, adopting the report and recommendation of the magistrate judge, lowered the attorney's claimed hourly rate, excluded time spent on a related concurrent administrative proceeding, struck certain billing entries, and imposed a 40% across-the-board reduction to the fee request. In deciding to apply the blanket reduction, the district court cited Raja's lack of success on certain substantive claims, among other factors. Raja now challenges primarily the across-the-board reduction and the exclusion of time related to the administrative proceeding. On abuse of discretion review, we

CERTIFIED COPY ISSUED ON 08/01/2022

identify no error in the district court's decision to exclude all hours related to that proceeding, but we find that the 40% blanket reduction was not justified on this record.

VACATED AND REMANDED.

——————————

DANIEL L. ACKMAN, Law Office of Daniel L. Ackman, New York, NY, *for Appellant*.

LORENZO DI SILVIO (Richard P. Dearing, Scott Shorr, *on the brief*), *for* Georgia M. Pestana, Corporation Counsel of the City of New York, New York, NY, *for Appellees*.

——————————

CARNEY, *Circuit Judge*:

In March 2019, Rizwan Raja sued the City of New York and a City official in the U.S. District Court for the Eastern District of New York. He sought (and was denied) immediate temporary relief from the City's summary suspension of him in his role as a non-attorney representative authorized to appear in proceedings conducted by the City's Office of Administrative Trials and Hearings (OATH). A few weeks later, OATH conducted a three-day hearing on the administrative charges against Raja. The OATH proceeding concluded on April 11 with a settlement that ended Raja's suspension without an admission of wrongdoing. Raja then amended his federal court complaint, principally alleging violations of his due process rights and seeking compensatory and punitive damages under 42 U.S.C. § 1983 and under state and city law. In early 2020, the district court awarded Raja summary judgment on his due process claims related to his summary suspension. It dismissed Raja's request that the court declare the OATH rules to be unconstitutionally vague and his claim that defendants violated his due process rights by denying him the opportunity to cross-examine certain witnesses. It also dismissed Raja's claims against the City official, finding him entitled to qualified immunity.

Raja and the City then reached a financial settlement on the due process claims: on an offer of judgment made under Federal Rule of Civil Procedure 68, the City agreed to pay Raja $20,001, "plus reasonable attorneys' fees, expenses and costs." J. App'x 105. As the prevailing party, Raja moved under 42 U.S.C. § 1988 to recover attorney's fees. He sought a fee award of $89,775, citing his counsel's 189 hours of work on the federal suit and on the related OATH proceeding. Upon referral by the district court, a magistrate judge recommended a substantially reduced fee award of $30,888. The magistrate judge recommended that the district court (1) reduce the applicable hourly rate from $475 to $400; (2) exclude the portion of billed time that was devoted in whole or in part to the OATH proceeding; and (3) apply a 40% across-the-board reduction to the claimed fee award. The district court adopted this approach, lowering the applicable hourly rate, excluding time devoted to the OATH proceeding, and applying an overall reduction primarily on the grounds that Raja's counsel sometimes grouped unrelated tasks into one time entry on his bills (a practice known as "block billing") and that Raja did not succeed on some of his claims.

On appeal, Raja challenges the 40% across-the-board reduction as unreasonable and not in keeping with his overall success in the litigation. He argues further that the hours that his counsel devoted to the OATH hearing should have been included in the fee award because they were "useful and necessary" to the federal litigation. Appellant's Br. at 30.

On abuse of discretion review, we agree with Raja that, on the record before us, the 40% overall reduction applied by the district court was not justified: the district court was able to (and in fact did) examine the block-billed entries for reasonableness, and Raja's counsel obtained a strongly favorable result for him overall, prevailing on claims that rested on the same core set of facts as did the claims that the court dismissed. We identify no error, however, in the district court's decision to exclude

from the fee calculation the hours that Raja's counsel devoted to defending him in the OATH proceeding, because Raja has not shown that this work was necessary to the result achieved in the federal court.

The order of the district court is VACATED, and the case is REMANDED for further proceedings consistent with this Opinion.

## BACKGROUND[1]

After passing an examination and registering with the City in 2005, Rizwan Raja became credentialed to appear as a non-attorney representative before the Taxi and Limousine Commission (TLC) tribunal, a predecessor to the OATH–Taxi and Limousine tribunal. Non-attorney representatives are entitled to appear before that tribunal on behalf of New York City taxi and limousine drivers accused of violating TLC rules and facing potential suspensions or fines.

On March 1, 2019, an OATH attorney informed Raja by email that he was "summarily suspended" from acting as a non-attorney representative, effective seven days later, on March 8. J. App'x 19. Attached to the email was a letter signed by John W. Burns, OATH First Deputy Commissioner and Supervising Administrative Law Judge (ALJ), describing the misconduct allegations that underlay Raja's summary suspension and identifying legal authority for the action. The letter alleged that Raja failed to register with the tribunal as a representative, misrepresented himself to a client as an attorney, appropriated money under false pretenses, submitted a false statement to the tribunal, and engaged in disruptive verbal conduct on OATH premises. OATH directed Raja to submit a written response to Burns by March 22 if he "wish[ed] to refute" the allegations. *Id.* at 19, 22.

---

[1] This factual statement is drawn largely from the record at summary judgment. Any disputes are noted.

Raja retained Daniel Ackman, Esq., as counsel on the matter and, the day before the suspension was to go into effect, Raja filed suit, seeking a temporary restraining order against Burns and the City of New York. The district court held a hearing and orally denied the motion that same day. *See Raja v. Burns*, No. 19-cv-1328, 2019 WL 1118044, at *1 (E.D.N.Y. Mar. 11, 2019) (Chen, *J.*). Raja's suspension began as scheduled, and the district court denied reconsideration soon after. *Id.*

On March 19, Burns filed a fresh petition against Raja in the OATH proceeding, now seeking to permanently bar Raja from representing clients at OATH. The new petition omitted two of the initial allegations (failing to register and submitting a false statement), but it added a new charge that Raja had misappropriated client funds.

Represented by Ackman, Raja participated in the three-day OATH hearing, which took place on March 22, March 28, and April 4. On April 11, before any result was announced, Raja and the City entered into a settlement that ended Raja's suspension. The stipulation of settlement contained no admission of wrongdoing by Raja.[2]

On April 15, Raja filed an amended complaint in the district court, asserting claims under 42 U.S.C. § 1983 against Burns and the City for alleged violations of his Fourth, Fifth, and Fourteenth Amendment rights, the New York City Charter, and OATH rules. He sought compensatory damages from both defendants (for lost income, expenses, and emotional harm), punitive damages from Burns, and costs and fees. He also asked the district court for a judgment declaring that defendants violated the U.S. Constitution, New York common law, and local law; that the OATH rules that Raja was charged with violating were unconstitutionally vague; that defendants' summary

---

[2] The settlement document was filed under seal in the district court. Raja alleges that "[b]y its terms, the stipulation of settlement, which was drafted by OATH, is not admissible in any other litigation." J. App'x 72 (Am. Compl. ¶ 59).

suspension of Raja's right to represent individuals at OATH before affording him a fair hearing on the charges against him was unconstitutional; and that "defendants may not suspend [Raja's] right to practice without . . . some kind of hearing where he is entitled to present eviden[ce] and state his defenses." J. App'x 76. Finally, he requested an order "that defendants remove plaintiff's name from the published list of suspended or barred representatives." *Id.*

In June, Raja moved for summary judgment and the defendants cross-moved to dismiss the complaint. The following year, in February 2020, the district court granted summary judgment in Raja's favor "on the federal and state procedural due process claims insofar as they relate to [his] summary suspension."[3] *Raja v. Burns*, No. 19-cv-1328, 2020 WL 568236, at *12 (E.D.N.Y. Feb. 5, 2020) (Donnelly, *J.*). At the same time, it dismissed Raja's claims "that the OATH rules are unconstitutionally vague and that the defendants violated [Raja's] right to due process by denying him the right to cross-examine all of his accusers" and, on the ground of qualified immunity, dismissed the claims against Burns. *Id.* As described above, Raja and the City then settled the case for $20,001 "plus reasonable attorneys' fees, expenses and costs," on the City's offer of judgment under Rule 68. J. App'x 110.

On July 24, 2020, Raja—a "prevailing party" under 42 U.S.C. § 1988 by virtue of the district court's ruling and the financial settlement—then moved in the district court for an award of attorney's fees and costs.[4] He sought a fee award of $89,775 for 189 hours of work by his attorney, in relation to the federal court proceeding and the OATH

---

[3] In quotations from caselaw and the parties' briefing, this opinion omits all internal quotation marks, alterations, footnotes, and citations, unless otherwise noted.

[4] The claimed costs were $400—apparently, the district court filing fee. These were awarded upon the magistrate judge's favorable recommendation and are not at issue in this appeal.

proceeding. The district court referred the motion to a magistrate judge for detailed consideration.

The magistrate judge issued a report and recommendation proposing a total award of $30,888 in attorney's fees—approximately 34% of what Raja sought. *Raja v. Burns* (*Raja I*), No. 19-cv-1328, 2021 WL 1394638 (E.D.N.Y. Feb. 2, 2021) (Reyes, *M.J.*) The magistrate reached that figure in three steps: First, he reduced the applicable hourly rate from the claimed $475 to $400, based on his assessment of the prevailing rate in the Eastern District of New York for civil rights cases, reenforced by the case's "lack of complexity," the "limited" nature of Raja's success, counsel's failure to provide his "usual rate" in similar cases, and counsel's "status as a solo practitioner." *Id.* at *4. Next, the magistrate judge applied a 40% across-the-board reduction to the 138.8 hours billed for the district court litigation, on the ground that counsel relied on block billing for 23 of 51 entries, some of which (he found) included only vague descriptions or included clerical as well as legal tasks. He also considered again that Raja was only partially successful in the suit, pointing out that Raja had sought declarations from the district court that he did not in the end obtain. Third, he excluded from the calculation all time entries for work relating to the OATH hearing (and any entries that intermingled work on the OATH hearing with work on the federal litigation).

The district court adopted the magistrate judge's report and recommendation "in its entirety," over Raja's timely objections, and awarded Raja $30,888 in attorney's fees. *Raja v. Burns* (*Raja II*), No. 19-cv-1328, 2021 WL 1099931, at *5 (E.D.N.Y. Mar. 23, 2021) (Donnelly, *J.*).

## DISCUSSION

The determination of an award of attorney's fees under 42 U.S.C. § 1988 is committed to the sound discretion of the district court because the appropriate amount is "dependent on the unique facts of each case." *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d

Cir. 1992) (citing *Hensley*, 461 U.S. at 437). We therefore evaluate the reasonableness of a fee award for abuse of discretion, giving appropriate deference to the district court's determination. *Cullen v. Fliegner*, 18 F.3d 96, 105 (2d Cir. 1994). "A district court abuses its discretion when (1) its decision rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding, or (2) its decision—though not necessarily the product of a legal error or a clearly erroneous factual finding—cannot be located within the range of permissible decisions." *Fields v. Kijakazi*, 24 F.4th 845, 852 (2d Cir. 2022).

Raja challenges the district court's attorney's fee award in two respects. First, he submits that the district court abused its discretion by applying a 40% across-the-board reduction to the hours claimed. Second, he argues that the district court erred by excluding from the award all hours that counsel devoted to the OATH proceeding and hours in which he intermingled work on the OATH proceeding and the federal litigation.[5] On review, we conclude that the 40% blanket reduction was insufficiently supported by the record and not within the range of permissible decisions. We identify no error, however, in the district court's decision to exclude from the award any payment for those hours that counsel devoted in whole or part to the OATH proceeding.

## I.  The record does not justify a 40% across-the-board reduction

### A.  Legal standards

Counsel for prevailing parties seeking a fee award under section 1988 must prepare and submit to the district court "contemporaneous time records" of the work performed, specifying "the date, the hours expended, and the nature of the work done." *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).

---

[5] Raja does not challenge the reduction to his claimed hourly rate on appeal.

Counsel is not required to "record in great detail how each minute of his time was expended," but he must "identify the general subject matter of his time expenditures." *Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12 (1983).

In determining the number of hours reasonably expended on a case, a district court properly excludes documented hours that are "excessive, redundant, or otherwise unnecessary." *Id.* at 434. The court may also decrease the total award from the claimed amount because of "vagueness, inconsistencies, and other deficiencies in the billing records." *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998). To address such redundancy or vagueness, "the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." *Id.* The court may also "reduce an attorney's hourly rate for time spent on clerical tasks or apply an across-the-board reduction . . . to account for time spent on clerical tasks (or block-billed time entries reflecting a mix of clerical and legal work)," although the "court is not required to make such reductions." *Lilly v. City of New York*, 934 F.3d 222, 234 (2d Cir. 2019).

Block billing—as noted above, the practice of lumping multiple distinct tasks into a single billing entry—is generally disfavored because it can complicate the district court's task of determining the reasonableness of the billed hours. *See Restivo v. Hessemann*, 846 F.3d 547, 591 (2d Cir. 2017). But the practice is by no means prohibited in this Circuit because block billing will not always result in inadequate documentation of an attorney's hours. We have found block billing to be permissible as long as the district court is still able "to conduct a meaningful review of the hours" for which counsel seeks reimbursement. *Id.*; *see also Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 266 (2d Cir. 2014) (affirming district court's finding that the billed hours were reasonable, despite "attorneys' use of block billing, vague descriptions of work, and

overabundant staffing," because "trial is a time consuming process" and the hours were not excessive overall).

As to the substantive aspects of a bill, a district court may award fees under section 1988 even if the plaintiff is not victorious on every claim, because "[a] civil rights plaintiff who obtains meaningful relief has corrected a violation of federal law and, in so doing, has vindicated Congress's statutory purposes." *Fox v. Vice*, 563 U.S. 826, 834 (2011). An attorney should therefore "recover a fully compensatory fee" where the "plaintiff has obtained excellent results." *Hensley*, 461 U.S. at 435. For the same reason, although the amount of damages may be a factor in the calculation, a fee award under section 1988 need not "be proportionate to the amount of damages a civil rights plaintiff actually recovers." *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986); *see also Kassim v. City of Schenectady*, 415 F.3d 246, 252 (2d Cir. 2005) ("[W]e have repeatedly rejected the notion that a fee may be reduced merely because the fee would be disproportionate to the financial interest at stake in the litigation.").

Where the "plaintiff has achieved only partial or limited success," an award based on the total hours expended on the litigation may in some cases result in an excessive amount. *Hensley*, 461 U.S. at 436. But the fee award "should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Id.* at 435. Rather, "the most critical factor is the degree of success obtained." *Id.* at 436.

When a plaintiff has achieved partial success but "the plaintiff's claims involve a common core of facts or are based on related legal theories and are therefore not severable, attorney's fees may be awarded for [work done on] unsuccessful claims as well as successful ones." *Green v. Torres*, 361 F.3d 96, 98 (2d Cir. 2004). In such cases, most of counsel's billed time is devoted "to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Hensley*, 461 U.S. at 435. The court need not determine how much time counsel devoted to each such overlapping

claim but should instead look to "the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.*; *see also Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994) ("So long as the plaintiff's unsuccessful claims are not wholly unrelated to the plaintiff's successful claims, hours spent on the unsuccessful claims need not be excluded from the [reasonable fee] amount.").

Where, however, unsuccessful claims were based on different facts and different legal theories and thus "bore no relation to the grant of relief," the prevailing party generally is not entitled to compensation for work on the unsuccessful claims. *Fox*, 563 U.S. at 834; *see Kirsch*, 148 F.3d at 173. Denying an award of fees for the severable unsuccessful claims in such cases appropriately discourages plaintiffs "from adding insubstantial or frivolous claims to potentially legitimate ones." *McCann v. Coughlin*, 698 F.2d 112, 130 (2d Cir. 1983).

## B. Specific billing practices

The district court first faulted Ackman for block billing, vague entries, and billing for clerical tasks. The magistrate judge identified block billing for 23 out of 51 entries (64.1 out of 138.8 hours, or 46% of the billed time);[6] deemed three entries vague; and determined that four entries "include[d]" some clerical tasks, such as "prepare tables" and "ECF filing." *Raja I*, 2021 WL 1394638, at *7 & nn.6–11. In adopting the report and recommendation, the district court acknowledged that "block billing is not *per se* unreasonable" but emphasized that it is nevertheless generally "disfavored." *Raja II*, 2021 WL 1099931, at *2. It concluded that, "when considered in the aggregate, the

---

[6] Although counsel recorded 189 hours of work, as discussed further below, the district court excluded 49.9 hours devoted to the OATH proceeding, as well as 0.3 hours devoted to "post-Judgment discussions." *Raja I*, 2021 WL 1394638, at *6 & nn.3–4.

prevalence of these types of entries" in Ackman's billing records made it "impossible to discern whether counsel's work was reasonable under the circumstances." *Id.*

In his briefing on appeal, Raja concedes that across-the-board reductions may be proper in some cases where block billing obscures the reasonableness of the billed hours, but he highlights the limits of this practice, observing that courts have generally "ordered such reductions for block-billing only where there was evidence that the hours billed were independently unreasonable or that the block-billing was mixing together tasks that were not all compensable, or not all compensable at the same rate." Appellant's Br. at 15 (quoting *Hnot v. Willis Grp. Holdings Ltd.*, No. 01-cv-6558, 2008 WL 1166309, at *6 (S.D.N.Y. Apr. 7, 2008)). As one district court commented, these defects are "most problematic where large amounts of time (*e.g.*, five hours or more) are block billed" and such lack of specificity "meaningfully clouds a reviewer's ability to determine the projects on which significant legal hours were spent." *Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 53 (S.D.N.Y. 2015) (considering Lanham Act fee award).

Here, Raja submits, the relevant block-billed entries averaged just 2.8 hours in length, with only three entries of five hours or longer. And, rather than finding independent unreasonableness in the sum of Ackman's block-billed hours, the magistrate judge closely examined the billing records and identified only four such entries that included time billed for "clerical tasks" and three entries that he deemed "vague." *Raja I*, 2021 WL 1394638, at *7. As to the entries that included clerical tasks, Raja contends that each of those entries comprised "mostly legal work" (for example, "ECF filing" was combined with "finalize SJ brief"), and those entries totaled only 12 hours. Appellant's Br. at 17; *see* J. App'x 224–25. As to the "vague" entries, Raja asserts that the description for each of those entries was sufficiently specific to support an award: they were, respectively, "prep for oral argument; review all briefs; draft letter

opposing extension"; "prep for oral argument"; and "prep for and conduct oral argument on motions; meet w/ Raja; e-mails w/ court re s[ch]eduling." J. App'x 225. Raja explains that these entries—which all occurred within the same four-day period and totaled only 6.5 hours—were recorded in the days leading up to and the day of oral argument, and he argues that they are therefore sufficiently precise when considered in context.

The City, for its part, disputes Raja's contention that the district court needed to make a finding of independent unreasonableness, pointing to language in both the report and recommendation and the district court opinion suggesting that these instances of block billing impeded the court's assessment of the billing records.[7] The City emphasizes the district court's conclusion that the "prevalence" of block-billed entries, "when considered in the aggregate," made it difficult or impossible for the court "to assess whether the time expended on any given task was reasonable." *Raja II*, 2021 WL 1099931, at *2.

We are unpersuaded by this conclusory statement, finding it to be unsupported by the record and in tension with other aspects of the district court's decision. We fail to identify any determination of independent unreasonableness in either the report and recommendation or the district court's opinion. Neither suggests (nor does the City contend on appeal) that the total number of hours Ackman devoted to this litigation was unreasonable in light of what the case involved.

Contrary to the district court's suggestion, this is not a case in which the billing records are so voluminous that it would be difficult for the court to parse the block-billed entries individually to determine to what extent the time was reasonably billed.

---

[7] The City also purports to identify additional "vague" entries for time spent drafting briefs, totaling 37.4 hours. Appellees' Br. at 24. But it does not appear that either the magistrate judge or the district court found those entries to be vague. Nor do we.

In fact, the court did just that: it was able to identify discrete tasks within the block-billed hours that it viewed as clerical work (which could be subject to a lower fee) and specific entries that it viewed as vague.[8] For example, the court discerned that, during the block-billed hours, Raja's counsel prepared motion exhibits and hard copies of motion papers. Identifying specific deficient entries in this way may justify itemized reductions or a very modest overall reduction, but it does not on its own reasonably lead to a substantial across-the-board cut—much less one as steep as 40%. *Cf., e.g.*, *Nnebe v. Daus*, No. 06-cv-4991, 2022 WL 612967, at *7–8 (S.D.N.Y. Mar. 1, 2022) (applying 15% across-the-board reduction in case spanning many years "to account for (1) unsuccessful litigation efforts, (2) unreliability in some of the records, and (3) block billing or vague entries" in "the various attorneys' time records," while finding that most of the "vague entries . . . still contain[ed] enough specificity to determine whether the time expended on the activity [was] reasonable"). This is particularly so where the record contains no indication of additional "fat" to trim within the block-billed entries. A single, competent attorney appeared for Raja throughout this relatively straightforward litigation, reducing the risk that the block-billed entries—which generally amounted to a reasonable number of hours devoted to the case—could obscure redundant or unreasonable billing practices.

---

[8] Moreover, we question whether the three identified entries are reasonably characterized as impermissibly vague when considered in their proper context. Any attorney might be reasonably expected to spend time "prep[aring] for oral argument" in the few days leading up to and the day of a hearing, and further specificity would not likely be required in most cases where the hours so described are not excessive. In any event, the "vague" entries, including time spent in the hearing before the district court, accounted for only 4.7% of the total billed hours.

### C. Degree of success in litigation

In applying an overall 40% reduction to the fee award, the district court also relied on its finding that Raja was only partially successful in the litigation. Raja disputes that his success was as limited as the district court's finding implied: he emphasizes that he achieved his principal goals, which were to obtain a declaratory ruling that his summary suspension was unconstitutional and to recover damages as compensation for income lost during his suspension.[9] The result obtained fell short, he says, only as to his requested declaration that the OATH rules under which he was suspended were unconstitutionally vague, his due process claim for declaration of a right to cross-examine witnesses, and his claims against ALJ Burns.[10] He submits that, because all of his unsuccessful claims were related to his successful ones (that is, based on the same core facts and requiring no separate briefing), the award should not have been reduced based on partial success. *See Green*, 361 F.3d at 98. Moreover, Raja asserts, the district court made no finding regarding the relative number of hours expended on the unsuccessful claims as against the others, making a 40% reduction arbitrary in addition to being disproportionate.

The City, in response, emphasizes in general terms the "vast relief" that Raja sought in his amended complaint and his lack of success as to "substantial additional relief" sought, including punitive damages against ALJ Burns, whom the district court dismissed from the suit. Appellees' Br. at 28. It submits that the district court appropriately factored this limited success into its decision to apply a 40% blanket reduction.

---

[9] He also achieved his goal of regaining his right to represent clients before OATH, but that came about as a result of the OATH settlement, rather than the district court's decision.

[10] We observe that Raja sought an order removing his name from the list of suspended or barred representatives, and the district court did not enter such an order, but presumably that relief followed from the parties' settlement of the OATH proceeding.

We once again agree with Raja that the record does not justify such a steep overall reduction. Raja was successful as to the due process claims that motivated this litigation, and, as a result, he received compensation for his unlawful suspension. *Cf. Hensley*, 461 U.S. at 435 ("Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee."). His claim that the OATH rules were unconstitutionally vague was a secondary argument that shared a common core of facts with his successful claims and to which he dedicated limited independent space in his brief supporting his motion for summary judgment. Similarly, as to his due process claim regarding cross-examination of witnesses, Raja did not move for summary judgment on that claim and appears to have submitted less than three pages of briefing on the issue in response to defendants' motion to dismiss, suggesting that counsel devoted little time to that argument. And, although ALJ Burns was dismissed from the suit based on qualified immunity, all substantive claims were brought against both ALJ Burns and the City, and thus both the factual bases and legal theories underlying those affirmative claims were inextricably linked.

We acknowledge that determining what fee may be reasonable to award in light of "limited success in a case where claims are not obviously severable" is often a challenging task. *Green*, 361 F.3d at 99. But Raja's unsuccessful claims—which, as explained, either share a common factual core with his successful claims or account for very little of counsel's billed time—do not justify the significant across-the-board cut that the district court applied to counsel's fee award here.[11] *See generally Fox*, 563 U.S. at 834 ("[T]he presence of the[] unsuccessful claims does not immunize a defendant against paying for the attorney's fees that the plaintiff reasonably incurred in

---

[11] Moreover, to the extent that the unsuccessful aspects of Raja's suit merit any consideration in determining the fee award, the district court already considered partial success as a factor justifying its reduction of counsel's hourly rate (which Raja does not challenge on appeal).

remedying a breach of his civil rights."). At bottom, in keeping with the purposes of section 1983, Raja "obtain[ed] meaningful relief" and "corrected a violation of federal law," and robust compensation for those efforts is called for by section 1988. *Id.*

As we acknowledged above, district courts generally retain broad discretion to impose an across-the-board reduction, rather than a series of itemized reductions, for defects identified in counsel's billing. But where the vast majority of the block-billed time appears to have been reasonably billed, and the unsuccessful aspects of the suit are not easily severable from the successful claims, the district court exceeded the reasonable bounds of its discretion in reducing the total fee award by 40% for the reasons given.[12] This result fails to serve the "general purpose" of statutes such as section 1988 to allow "plaintiffs with valid claims to attract effective legal representation and thereby to encourage private enforcement of civil rights statutes, to the benefit of the public as a whole." *Green*, 361 F.3d at 100.

## II. The hours spent on the OATH proceeding were properly excluded

Raja additionally challenges the district court's decision to exclude from the fee award all hours devoted to the OATH proceeding and all hours that "intermingled" work on the OATH proceeding and the federal litigation. Appellant's Br. at 30 (quoting *Raja I*, 2021 WL 1394638, at *7). In section 1988, Congress authorized district courts only "to allow the prevailing party a reasonable attorney's fee in an action or proceeding to enforce [section] 1983." *Webb v. Bd. of Educ.*, 471 U.S. 234, 241 (1985). Where related

---

[12] We note that the magistrate judge also listed the "intermingl[ing]" of hours devoted to the OATH proceeding and the federal proceeding among the issues with Ackman's block-billing practices. *Raja I*, 2021 WL 1394638, at *7. To the extent that the district court considered this intermingling of hours among the defects in Ackman's billing entries contributing to the 40% reduction, this was also improper because the magistrate judge entirely "exclude[d] these [intermingled] entries from its calculations" in addition to applying the 40% reduction. *Id.* at *7 & n.10. Applying an overall reduction based on separately excluded billing entries would essentially punish counsel twice for the same identified defect.

administrative proceedings precede litigation involving one of the civil rights claims covered by section 1988, however, the court "may still award attorney's fees for time spent on . . . the discrete portion of the work product from the administrative proceedings that was both useful and of a type ordinarily necessary to advance the civil rights litigation to the stage it reached before settlement." *N.C. Dep't of Transp. v. Crest St. Cmty. Council, Inc.*, 479 U.S. 6, 15 (1986).

Whether such fees are for work that is "useful and of a type ordinarily necessary" to advance the civil rights litigation depends on the circumstances of the case and of the prior administrative proceeding. For example, in *Webb v. Board of Education*, the Supreme Court held that the district court had properly exercised its discretion to exclude the administrative proceeding work in its entirety from the challenged fee award, because "neither the trial judge nor the parties had any difficulty identifying the dividing line between the administrative proceeding and the judicial proceeding," and the time counsel devoted to each was "easily separated." 471 U.S. at 243. In *Cullen v. Fliegner*, on the other hand, this court upheld a fee award made under section 1988 that included compensation for work done in a prior administrative, disciplinary proceeding. *See* 18 F.3d at 106. The *Cullen* decision emphasized that the plaintiff there did not "ask[] that all fees incurred in connection with the disciplinary proceedings be reimbursed, but rather only a discrete portion of the fees so incurred," and he "appropriately excluded from his request those fees incurred that were particular to the disciplinary proceeding and could not be transferred to the district court action." *Id.* In light of "the particular nexus between the work in the disciplinary proceeding for which fees were requested and the demands of the district court action," the panel found "no reason to reverse the district court's finding that this 'discrete portion' of counsel's work be reimbursable." *Id.*

Here, the district court agreed with the magistrate judge's conclusion that, although the OATH hearing had provided some "benefit . . . to resolving [Raja's] claims," not "*all* efforts expended on the OATH hearing were useful and necessary" to the federal action. *Raja I*, 2021 WL 1394638, at *9; *see Raja II*, 2021 WL 1099931, at *4. This left open the possibility that Raja could show some direct benefit to the civil rights action from work done for the OATH proceeding. But Raja did not "identify any discrete hours expended on the OATH hearing" that met this standard; he asserted generally that it would be impossible "to separate the hours that related to the federal claim from those that did not." *Raja I*, 2021 WL 1394638, at *9. In its decision rejecting the claim for compensation related to OATH hours, the district court explained the rejection in part by observing that it did not "rely on evidence adduced at the OATH proceeding in [its] summary judgment decision." *Raja II*, 2021 WL 1099931, at *4.

On appeal, Raja still fails to identify discrete hours devoted to the OATH proceeding that were useful and of a type generally necessary to advancing the federal civil rights litigation, and he provides no basis for concluding that the district court's ruling in his favor relied on work done in the OATH action. He instead focuses on distinguishing this case from *Webb*: here, the administrative proceeding took place "in the middle of the litigation," rather than "years before the complaint was filed." Appellant's Br. at 28. The decision in *Webb*, however, relied not on the timing of the administrative proceeding but on the ease of separation between the work done on the administrative and federal proceedings and the additional fact that the former was not "useful and . . . necessary" to pursuing the latter. 471 U.S. at 243.

Raja next asserts that the OATH proceeding "served as a substitute for traditional discovery" and allowed him "to cross-examine his accusers and OATH investigators" and gather testimony that he cited "repeatedly" in his summary judgment briefing. Appellant's Br. at 28–29. For this reason, he submits, he had no need

19

to conduct discovery in the federal action, and the federal litigation benefited directly from that work. He declares generally that the factual record developed during the OATH proceeding "made all the difference." *Id.* at 29. In support, he cites the fact that the district court first denied his motion for a preliminary injunction but later, after the OATH hearing, awarded him summary judgment on his due process claim.

But Raja does not cite any specific fact gleaned from the OATH proceeding on which the summary judgment decision relied—or even any information derived from the OATH hearing or settlement that proved relevant to the district court's decision. In keeping with this sign of separation, the City emphasizes the difference in focus between the two proceedings: the OATH hearing centered on whether Raja should be permanently barred from representing clients before OATH, whereas the federal litigation addressed whether OATH violated Raja's due process rights by summarily suspending him without a hearing. The City also emphasizes the point that, because Raja's success on his due process claim was the result of "facts available to [him] before the OATH hearing even took place, he did not need any discovery to win." Appellees' Br. at 20.

Raja fails to persuade us that counsel is due compensation for the time he spent working on the OATH proceeding. Although Raja shows that the proceedings were related in some respects, he fails to demonstrate that any discrete OATH-proceeding hours were "useful and of a type ordinarily necessary to advance" the federal litigation. *N.C. Dep't of Transp.*, 479 U.S. at 15. On this record, it was therefore well within the district court's discretion to exclude from the attorney's fee award all hours that Raja's counsel devoted in whole or in part to the OATH proceeding.

**CONCLUSION**

We therefore **VACATE** the judgment of the district court awarding attorney's fees to Raja under 42 U.S.C. § 1988, and we **REMAND** the case for further proceedings consistent with this Opinion.

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

21